**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Chanel, Inc.,

           Plaintiff,

v.

The RealReal, Inc.,

           Defendant.

Case No. 1:18-cv-10626-VSB

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**THE REALREAL, INC.'S MOTION TO DISMISS PLAINTIFF**
**CHANEL, INC.'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 4

PROCEDURAL HISTORY ................................................................................. 5

LEGAL STANDARD ......................................................................................... 6

ARGUMENT ..................................................................................................... 6

I.      Chanel Fails to State a Claim Under the Lanham Act for Trademark Infringement,
        Counterfeiting, or False Endorsement/Unfair Competition. ............................................... 6

        A.      Chanel Fails to Adequately Allege a Likelihood of Consumer Confusion. ........... 7

                1.      TRR's Use of Chanel's Marks Is Nominative Fair Use. ........................... 7

                2.      The Nominative Fair Use Factors Weigh in Favor of TRR. ...................... 8

                3.      The *Polaroid* Factors Weigh in Favor of TRR. ....................................... 13

        B.      The First Sale Rule Bars Chanel's Claims. ........................................................... 14

II.     Chanel Fails to State a Claim Under the Lanham Act for False Advertising. ................. 15

        A.      TRR's Advertising Does Not Imply Any Connection to Chanel. ....................... 16

        B.      Chanel Fails to Allege That TRR's Advertising Is Literally False. ..................... 18

        C.      Chanel Fails to Allege the Requisite Injury. ....................................................... 20

III.    Chanel Fails to State a Claim Under New York State Law. ........................................... 21

        A.      Chanel Fails to Plausibly Allege That TRR Acted in Bad Faith. ....................... 22

        B.      Chanel Fails to Allege Specific and Substantial Public Injury. .......................... 23

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Accurate Grading Quality Assur., Inc. v. Thorpe*,
  No. 12 CIV. 1343 ALC, 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013) ..................6, 11

*Alzheimer's Found. v. Alzheimer's Disease & Related Disorders Ass'n*,
  No. 10 Civ. 3314, 2018 WL 2084168 (S.D.N.Y. May 1, 2018)..................................23

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016) ...................................................................................16, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................6

*Chanel, Inc. v. WGACA, LLC*,
  No. 18 CIV. 2253 (LLS), 2018 WL 4440507 (S.D.N.Y. Sept. 14, 2018).......1, 9, 12, 23

*Coach, Inc. v. Horizon Trading USA Inc.*,
  908 F. Supp. 2d 426 (S.D.N.Y. 2012) .........................................................................24

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) .........................................................................................4

*Crye Precision LLC v. Duro Textiles, LLC*,
  No. 15CV1681 (DLC), 2016 WL 1629343 (S.D.N.Y. Apr. 22, 2016) ........................22

*Dow Jones & Co. v. Int'l Sec. Exch., Inc.*,
  451 F.3d 295 (2d Cir. 2006) ......................................................................................10

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
  228 F.3d 56 (2d Cir. 2000) ..........................................................................................9

*Ergowerx Int'l, LLC v. Maxell Corp.*,
  18 F. Supp. 3d 440 (S.D.N.Y. 2014) ..........................................................................15

*Goshen v. Mut. Life Ins. Co.*,
  98 N.Y.2d 314 (2002)................................................................................................23

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  277 F. Supp. 2d 269 (S.D.N.Y. 2003) ........................................................................24

*Hertz Corp. v. Avis, Inc.*,
  867 F. Supp. 208 (S.D.N.Y. 1994) .............................................................................19

*Hoey v. Sony Elecs. Inc.*,
  515 F. Supp. 2d 1099 (N.D. Cal. 2007) .....................................................................19

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 549 (S.D.N.Y. 2004) .................................................................6, 11

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
  823 F.3d 153 (2d Cir. 2016) ............................................................. *passim*

*Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*,
  960 F.2d 294 (2d Cir. 1992) .......................................................................16, 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014).....................................................................................20, 21

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
  306 F. Supp. 3d 629 (S.D.N.Y. 2018) .........................................................16, 18

*Luxottica Grp. S.p.A. v. Bausch & Lomb Inc.*,
  160 F. Supp. 2d 545 (S.D.N.Y. 2001) .............................................................15

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  175 F. Supp. 2d 489 (S.D.N.Y. 2000) ...........................................................6, 11

*O.D.F. Optronics Ltd. v. Remington Arms Co.*,
  No. 08 CIV. 4746 (DLC), 2008 WL 4410130 (S.D.N.Y. Sept. 26, 2008) ...................14

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
  32 F.3d 690 (2d Cir. 1994) ...........................................................................21

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
  887 F. Supp. 2d 519 (S.D.N.Y. 2012) ..........................................................23

*Polaroid Corp. v. Polarad Electronics Corp.*,
  287 F.2d 492 (2d Cir. 1961) ........................................................................8, 13

*Punian v. Gillette Co.*,
  No. 14-cv-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)........................19

*RCA Trademark Mgmt. S.A.S. v. Voxx Int'l Corp.*,
  No. 14CV6294-LTS-HBP, 2015 WL 5008762 (S.D.N.Y. August 24, 2015) .........23, 24

*Rogers v. HSN Direct Joint Venture*,
  No. 97 CIV. 7710 (LLS), 1999 WL 728651 (S.D.N.Y. Sept. 17, 1999)......................15

*Samsung Display Co. v. Acacia Research Corp.*,
  No. 14-CV-1353 JPO, 2014 WL 6791603 (S.D.N.Y. Dec. 3, 2014) ...........................22

*Savin Corp. v. Savin Grp.*,
  391 F.3d 439 (2d Cir. 2004) .........................................................................13

*Schering Corp. v. Pfizer Inc.*,
189 F.3d 218 (2d Cir. 1999) ......................................................................18

*Star Indus., Inc. v. Bacardi & Co.*,
412 F.3d 373 (2d Cir. 2005) ...........................................................13, 14, 22

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009) ...................................................................14, 22

*Tiffany (NJ) Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010) .............................................................8, 10, 21

*Time Inc. v. Petersen Pub. Co.*,
173 F.3d 113 (2d Cir. 1999) .......................................................................7

*Wi-Lan, Inc. v. LG Elecs., Inc.*,
No. 10 CIV. 432 LAK AJP, 2011 WL 3279075 (S.D.N.Y. Aug. 2, 2011),
*report and recommendation adopted as modified*, No. 10 CIV.432 LAK AJP, 2012
WL 760148 (S.D.N.Y. Mar. 7, 2012),
*aff'd*, 493 F. App'x 103 (Fed. Cir. 2012)............................................10, 11

## Statutes

15 U.S.C. § 1114(1) ...................................................................................2, 6, 7

15 U.S.C. § 1125(a) ................................................................................ *passim*

N.Y. G.B.L. § 349....................................................................................*passim*

N.Y. G.B.L. § 350....................................................................................*passim*

## Other Authorities

4 McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.) ......................8, 10

Defendant The RealReal, Inc. ("The RealReal" or "TRR") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Chanel Inc.'s ("Chanel") Complaint (the "Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

TRR is a leader in the market for luxury consignment, providing a safe, secure, and reliable platform for the resale of high-end clothing, handbags, fine jewelry and watches, art, and furniture.  In response to TRR's success in expanding the availability of the resale market to consumers, Chanel seeks to shut down the secondary market for Chanel goods by permanently preventing TRR from reselling its consignors' products.  *See* Compl. ¶ 97(1)(a).  This action constitutes Chanel's most recent attempt to do so.  *See Chanel, Inc. v. WGACA, LLC*, No. 18 CIV. 2253 (LLS), 2018 WL 4440507 (S.D.N.Y. Sept. 14, 2018).  Chanel's objective is contrary to settled law and consumer rights: while trademark law allows manufacturers like Chanel to choose who may and may not sell their products in the first instance, manufacturers have no right to control the secondary market—a well-established principle based on the consumer's right to do as she wishes with her own property, including resell it.  This lawsuit is an effort by Chanel to uproot this settled doctrine to the detriment of consumers, undermine consumer confidence in the secondary market, and stifle legitimate competition.

Chanel complains that TRR's consignment and resale service to consumers, including TRR's independent authentication of Chanel products, confuses consumers into believing that Chanel is affiliated with TRR.  Chanel's contention that no reseller may describe a Chanel product as authentic because "[o]nly Chanel itself can know what is genuine Chanel," Compl. ¶ 33, would make it impossible for all secondary dealers to do business—from small brick-and-

mortar consignment shops to auction houses like Sotheby's and Christie's, which have relied for decades on independent authenticators and appraisers.

Furthermore, Chanel fails to plead facts to support its claim that TRR's marketing of Chanel products or its representations about authenticity imply any affiliation between the parties or any involvement by Chanel in the authentication process. Nor can it. In fact, TRR's website, which Chanel incorporates by reference into its Complaint, expressly represents that TRR has ***no*** affiliation with the brands of the products it sells and that the brands themselves ***do not*** warrant that their products sold by TRR are authentic:

> The RealReal's authentication process is unique to The RealReal and independent of any brands. Brands identified are not involved in the authentication of the products being sold, and none of the brands sold assume any responsibility for any products purchased from or through the website. Brands sold on The RealReal are not partnered or affiliated with The RealReal in any manner.

*Id.* Ex. D at 3.

Based on this untenable theory, Chanel brings trademark- and advertising-related claims under the Lanham Act and New York state-law equivalents. Chanel fails to state a claim under any of these causes of action.

Chanel's trademark infringement, counterfeiting, and false endorsement/unfair competition claims, brought under Sections 32(1) and 43(a) of the Lanham Act (First, Second, and Third Claims for Relief), fail for two independently dispositive reasons. *First*, Chanel cannot allege the statutory prerequisite of consumer confusion because it does not plead facts establishing that a reasonable consumer would believe that TRR is affiliated with Chanel or that Chanel has approved the goods sold by TRR's consignors. Indeed, settled trademark law establishes that TRR's use of Chanel's marks to describe and promote the sale of Chanel goods is nominative fair use, not infringement. *Second*, Chanel's attack on TRR's business on the basis

that it resells inventory from third parties, including consumers and secondhand businesses, is barred by the first sale rule. Chanel is entitled to control the *initial* sale of its branded goods by designating authorized retailers; however, once those goods have made it into the marketplace, the first sale rule bars Chanel from dictating to consumers when or how they may part with their Chanel items, including through resale in secondary marketplaces like TRR.

Chanel's false advertising claim under Section 43(a) of the Lanham Act (Third Claim for Relief),[1] based on largely the same factual allegations, likewise fails. *First*, as discussed above, TRR's express disclaimer of any affiliation with the brands of its products, including in the authentication process, defeats Chanel's claim that TRR is "likely to cause consumers to believe mistakenly that Chanel verified their [*sic*] authenticity of the CHANEL-branded products." Compl. ¶ 70. *Second*, Chanel's claim that "The RealReal is [*sic*] falsely and/or misleadingly represents to consumers The RealReal's ability to authenticate secondhand CHANEL products," *id.* ¶ 67, fails because TRR warrants only that the products it resells have been authenticated through its own internal, proprietary process—and, as TRR expressly states, not by the brand. In the rare instance that TRR suspects that a counterfeit item may have deceived TRR's team of authentication experts—a possibility that exists in any secondary market, including for renowned appraisers—TRR attempts to verify the authenticity of the item and destroys any item determined to be counterfeit. *Id.* Ex. D at 3.

Finally, Chanel fails to state a claim for unfair competition under New York law or violations of New York's General Business Law ("N.Y. G.B.L.") sections 349 and 350 (Fourth, Fifth, and Sixth Claims for Relief), because—in addition to the previously described defects—

---

[1] Chanel designates two claims as its "Third Claim for Relief," both brought pursuant to 15 U.S.C. § 1125(a) – the first for "False Advertising" and the second for "False Endorsement/Unfair Competition."

Chanel has not adequately alleged that TRR acted in bad faith with intent to confuse consumers, nor that TRR's conduct resulted in a public harm above and beyond ordinary trademark infringement.

## FACTUAL BACKGROUND

TRR is the premier site for online luxury consignment and has multiple physical locations across the United States, including in Chicago, Dallas, Los Angeles, Miami, New York, San Francisco, and Washington, D.C. *See* Compl. ¶¶ 2, 12. TRR provides both an online and a brick-and-mortar platform where consumers-turned-consignors can sell and buy secondhand luxury items from hundreds of brands, including Chanel, a seller of luxury consumer accessories and beauty products. *Id.* ¶¶ 12, 15, Ex. C. TRR does not produce or manufacture the products it sells; rather, it functions as a marketplace and service for consumers to consign and resell their secondhand luxury items. *See id.* ¶ 12.

To protect the interests of both customers and the owners of the brands that are sold through its website and stores, all items offered to TRR for consignment and resale are put through a rigorous, multi-point, and brand-specific authentication process before being accepted for consignment. *Id.* Ex. D at 3. In that process, TRR's authenticators inspect items for brand markings, date codes, serial tags, hologram sticks, and other unique indicia of authenticity. *Id.* TRR authenticators inspect thousands of items every day.[2]

TRR guarantees that it authenticates the products that it sells and stands behind that guarantee if any issue is raised as to authenticity. *Id.* ¶¶ 32, 33. TRR conspicuously discloses

---

[2] *An Expert Behind Every Item*, The RealReal, https://promotion.therealreal.com/therealreal-experts (last visited Jan. 10, 2019). Because Chanel's Complaint relies on and incorporates by reference portions of TRR's website, the Court may properly consider these materials on a motion to dismiss. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

that brands "are not involved in the authentication of the products being sold" and that "[b]rands sold on The RealReal are not partnered or affiliated with The RealReal in any manner." *Id.* Ex. D at 3. TRR also informs users that it does not accept or sell counterfeit merchandise and that, if TRR suspects or has reason to believe that property submitted for consignment is not authentic, TRR will contact the consignor for proof of purchase in an effort to establish the authenticity of the property. *Id.* ("The RealReal fully cooperates with brands and state and federal agencies seeking to track down the source of stolen or counterfeit items, which includes revealing the contact information of consignors submitting counterfeit goods."). Items that TRR determines to be counterfeit are not returned to the consignor but, rather, are destroyed. *Id.*

## PROCEDURAL HISTORY

On June 22, 2018, Chanel informed TRR that it believed that TRR had advertised and sold four counterfeit Chanel handbags. *See* Compl. Ex. F at 1. Chanel also claimed, *inter alia*, that TRR misleads consumers into falsely believing that its authentication experts "have been in some way authorized, approved or trained by Chanel." *Id.*

On July 10, 2018, TRR asked Chanel to submit "additional information regarding [Chanel's] analysis of the handbags and the reason for [Chanel's] belief that they are counterfeit" so that TRR could "evaluate the legitimacy of [Chanel's] claim." *Id.* Ex. F at 4-5. TRR also denied any misleading statements concerning any affiliation between Chanel and TRR, directing Chanel to the express disclaimer on its website. *Id.* Ex. F at 2. Chanel neither responded nor provided information about the purportedly counterfeit handbags. Instead, five months later, on November 14, 2018, Chanel initiated this lawsuit, alleging trademark infringement, counterfeiting, false designation/unfair competition, and false advertising under the Lanham Act, unfair competition under New York law, and violations of N.Y. G.B.L. §§ 349 and 350. *See id.* ¶ 9.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although a court generally must accept the complaint's factual allegations as true, "[a] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself." *Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12 CIV. 1343 ALC, 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2013); *see also In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies."); *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 175 F. Supp. 2d 489, 492 (S.D.N.Y. 2000).

**ARGUMENT**

**I.  Chanel Fails to State a Claim Under the Lanham Act for Trademark Infringement, Counterfeiting, or False Endorsement/Unfair Competition.**

Chanel brings claims for trademark infringement and counterfeiting under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and false endorsement/unfair competition under Section 43(a), 15 U.S.C. § 1125(a) (First, Second, and Third Claims for Relief).

Section 32(1) of the Lanham Act prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering

for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion." 15 U.S.C. § 1114(1)(a).[3] Section 43(a), directed at similar conduct but without reference to a registered mark, prohibits the use in commerce of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). The same standard governs claims under both sections: "plaintiff must demonstrate that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." *Time Inc. v. Petersen Pub. Co.*, 173 F.3d 113, 117 (2d Cir. 1999).

Chanel fails to state a claim for two dispositive reasons. *First*, Chanel fails to plausibly allege a likelihood of consumer confusion. *Second*, the claims are barred by the first sale rule.

### A.   Chanel Fails to Adequately Allege a Likelihood of Consumer Confusion.

#### 1.    *TRR's Use of Chanel's Marks Is Nominative Fair Use.*

TRR's use of Chanel's marks is nominative fair use, defined as the "use of another's trademark to identify, not the defendant's goods or services, but the plaintiff's goods or services." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153,

---

[3] Chanel purports to bring distinct claims for trademark "infringement" and "counterfeiting" under Section 32(1) of the Lanham Act. Although the statute does prohibit counterfeiting (as distinct from the "use in commerce" of such counterfeits), *see* 15 U.S.C. §1114(1)(b), Chanel does not appear to allege that TRR itself engaged in counterfeiting, and cites the same facts as the basis of both claims. *Compare* Compl. ¶¶ 54-58 *with id.* ¶¶ 60-64. Thus, the claims are properly analyzed together under the same Lanham Act requirements.

To the extent that the Complaint can be read to include a claim for trademark counterfeiting under Section 32(1)(b), Chanel is not entitled to recover profits or damages on such a claim because it has failed to allege that TRR acted with "knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(b). Chanel does not allege, for example, that TRR itself manufactured counterfeit products, sold products knowing that they were counterfeit, or permitted a known counterfeiter to sell products.

165 (2d Cir. 2016). Nominative fair use "is not an infringement so long as there is no likelihood of confusion." 4 McCarthy on Trademarks and Unfair Competition ("McCarthy") § 23:11 (5th ed.); *see Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102–03 (2d Cir. 2010) ("[A] defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant.").

The question, then, is whether confusion is likely. Courts analyzing likelihood of confusion in nominative fair use cases are required to consider not only the eight factors articulated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), but also the following factors specific to nominative fair use:

> (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

*Int'l Info. Sys.*, 823 F.3d at 168. Analysis of these factors demonstrates that Chanel fails to plead a likelihood of confusion.

### 2. The Nominative Fair Use Factors Weigh in Favor of TRR.

*First*, "the use of [Chanel's] mark is necessary to describe both [Chanel's] product or service and [TRR's] product or service"; in other words, Chanel's "product or service is not readily identifiable without use of the mark." *Int'l Info. Sys.*, 823 F.3d at 165. Chanel alleges that TRR uses its marks to identify secondhand Chanel goods sold on its website and in brick-and-mortar stores. *See, e.g.*, Compl. ¶¶ 12, 32, 45, Ex. E. TRR's use is not infringement.

Similarly, in *Tiffany (NJ) Inc. v. eBay Inc.*, Tiffany challenged eBay's use of Tiffany's marks to advertise the sale of Tiffany-branded jewelry through eBay, where certain of the goods

sellers offered and advertised as "Tiffany" jewelry were counterfeit. 600 F.3d at 96. The Second Circuit rejected Tiffany's infringement claim, noting that "a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product." *Id.* at 102. Such use is permissible and unlikely to lead to consumer confusion. *See id.*; *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 65 (2d Cir. 2000) ("Where a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods, the other's use of that term in a descriptive sense is usually protected by the fair use doctrine.").

The distinctions between this case and *Chanel, Inc. v. WGACA, LLC*, 2018 WL 4440507, another recent challenge to a secondary reseller of used Chanel products, are instructive. There, the district court upheld Chanel's claim of infringement against reseller What Goes Around Comes Around ("WGACA") specifically because WGACA's use of Chanel's marks went ***above and beyond*** merely identifying the resold goods by incorporating the Chanel name and mark into WGACA's own hashtag, #WGACACHANEL. *Id.* at *2. The district court found, relevant to the first nominative fair use factor, that "WGACA's Chanel-branded items would be readily identifiable as Chanel without the #WGACACHANEL hashtag," and WGACA's use was thus unnecessary to identify Chanel products. *Id.* at *3. Unlike WGACA, TRR uses Chanel's marks only as necessary to identify the Chanel products it resells—the allegations upon which the *WGACA* court relied are simply not present here. Compl. ¶¶ 12, 32, 45, Ex. E.

*Second*, TRR uses the Chanel marks descriptively to identify Chanel products and "uses only so much of [Chanel's] mark as is necessary to identify the product or service." *Int'l Info. Sys.*, 823 F.3d at 165. As the Complaint demonstrates, TRR's use of the Chanel mark is limited to photographs of the Chanel products being sold and product descriptions using the word

"Chanel." Compl. Ex. E. This is a permissible use. *See Tiffany*, 600 F.3d at 102-03; *Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir. 2006) (trademark law "does not prevent one who trades a branded product from accurately describing it by its brand name"); *Wi-Lan, Inc. v. LG Elecs., Inc.*, No. 10 CIV. 432 LAK AJP, 2011 WL 3279075, at *26 (S.D.N.Y. Aug. 2, 2011) ("Merely using a logo to identify the company associated with that logo, without more, does not constitute trademark infringement."), *report and recommendation adopted as modified*, No. 10 CIV.432 LAK AJP, 2012 WL 760148 (S.D.N.Y. Mar. 7, 2012), *aff'd*, 493 F. App'x 103 (Fed. Cir. 2012).

In this analysis, "courts are to consider whether the alleged infringer 'step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition.'" *Int'l Info. Sys.*, 823 F.3d at 168 (quoting McCarthy § 23:11). The *WGACA* court found "WGACA's display of Chanel-branded goods more prominently than other luxury-brand goods," including in advertising and on social media, to be persuasive in Chanel's favor. 2018 WL 4440507, at *3. In contrast to *WGACA*, the Complaint here does not (and cannot) allege that TRR displays Chanel's marks "more prominently" than other brands'. In fact, such an allegation would be contradicted by another exhibit to the Complaint, a TRR industry report stating that Gucci (not Chanel) is the top brand searched on TRR and featuring images and marks of luxury items from Gucci, Louis Vuitton, Fendi, Hermes, Yeezy, and more than a dozen other brands. Compl. Ex. C.

*Third*, Chanel does not allege that TRR did "anything that would, in conjunction with the mark, suggest sponsorship or endorsement by" Chanel; rather, TRR's "conduct or language reflects the true or accurate relationship between [Chanel's] and [TRR's] products or services." *Int'l Info. Sys.*, 823 F.3d at 168. Again as demonstrated in the Complaint, TRR expressly and

unambiguously represents that "[b]rands sold on The RealReal are not partnered or affiliated with The RealReal in any manner" and "are not involved in the authentication of the products being sold." Compl. Ex. D at 3. Furthermore, before even browsing TRR's website, a consumer must become a member and agree to TRR's Terms of Service, which contain the same disclaimers of any brand sponsorship or endorsement of TRR.[4]

Chanel asserts that TRR's use of Chanel's marks to advertise Chanel goods deceives or is likely to deceive consumers into believing that TRR is affiliated with Chanel or that Chanel has approved or authenticated the luxury goods sold by TRR. *E.g., id.* ¶ 54. However, any allegations that TRR's use of the mark and authenticity guarantee "suggest sponsorship or endorsement," *Int'l Info. Sys.*, 823 F.3d at 168, are contradicted by TRR's express disclaimer stating that the authentication process is "***independent*** of any brands," that the brands sold "are ***not*** involved" in authentication, and that TRR is "***not partnered or affiliated***" with any brands sold. Compl. Ex. D at 3 (emphasis added). Because Chanel's allegations of consumer confusion are squarely contradicted by documents attached to the Complaint, the Court should disregard them. *Accurate Grading Quality Assur.*, 2013 WL 1234836, at *8; *Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d at 555; *Nat'l W. Life Ins.*, 175 F. Supp. 2d at 492.

Analogously, the Second Circuit in *Tiffany* found that "none of eBay's uses of [Tiffany's] mark suggested that Tiffany affiliated itself with eBay or endorsed the sale of its products through eBay's website," including because a Tiffany disclaimer on eBay's website explained that "Tiffany itself sells its products only through its own stores, catalogues, and website." 600 F.3d at 103; *see Wi-Lan*, 2011 WL 3279075, at *26 (where patent holder used LG logo to advertise LG licensing of patent, confusion was unlikely because any consumer would

---

[4] *Terms of Service*, The RealReal, https://www.therealreal.com/terms (last visited Jan. 10, 2019).

"underst[and] that LG's logo was being used only to identify LG as licensee").  By contrast, in *WGACA*, the court found that WGACA's use of the #WGACACHANEL hashtag incorporating the Chanel mark may have plausibly led to the impression that WGACA was affiliated with Chanel or that Chanel sponsored or endorsed WGACA.  *WGACA*, 2018 WL 4440507, at *2-3. Chanel does not allege such conduct by TRR—nor can it.

Chanel's conclusory claim that it identified a specific handful of counterfeit Chanel bags purchased from the TRR platform, Compl. ¶ 36, does not alter this analysis.  The Second Circuit rejected a similar argument in *Tiffany*, finding that "eBay's knowledge *vel non* that counterfeit Tiffany wares were offered through its website . . . is not a basis for a claim of direct trademark infringement against eBay, especially inasmuch as it is undisputed that eBay promptly removed all listings that Tiffany challenged as counterfeit and took affirmative steps to identify and remove illegitimate Tiffany goods."  600 F.3d at 103.  Indeed, the court observed, "To impose liability because eBay cannot guarantee the genuineness of all of the purported Tiffany products offered on its website would unduly inhibit the lawful resale of genuine Tiffany goods."  *Id.* TRR similarly works to identify and prevent the sale of counterfeit merchandise, including cooperating with brands and law enforcement to identify sources of stolen or counterfeit goods; refusing to accept fake or counterfeit merchandise; communicating as necessary with consignors to establish product authenticity; and destroying items determined to be counterfeit.  Compl. Ex. D at 3.  Chanel's allegation that TRR "knowingly continues to sell counterfeit CHANEL-branded products," *id.* ¶ 66; *see id.* ¶ 50, is without merit: not only does TRR seek to identify and *prevent* the sale of counterfeit merchandise, but also, when Chanel informed TRR of the allegedly counterfeit bags, TRR quickly responded by asking for further information so that it could assess the claim.  Rather than responding, Chanel filed the instant lawsuit.  *See id.* Ex. F at

1, 4-5.  Finally, Chanel's allegation, without elaboration, that "an investigation conducted by Chanel has revealed" that TRR advertised and sold seven counterfeit Chanel bags, *id.* ¶ 36, may independently be disregarded because it is entirely conclusory and lacks supporting facts.

### 3. *The* Polaroid *Factors Weigh in Favor of TRR.*

In addition to the nominative fair use factors, courts are required to consider the *Polaroid* factors in assessing the likelihood of confusion, even though many are a "bad fit" for nominative fair use cases such as this one.  *Int'l Info. Sys.*, 823 F.3d at 168.  The "analysis is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused."  *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005).  The *Polaroid* factors confirm that consumer confusion is unlikely here.

The first two factors, "strength of the trademark" and "similarity of the marks," *Int'l Info. Sys.*, 823 F.3d at 165, are inapplicable because both Chanel and TRR use the actual Chanel mark. *See* Compl. Ex. E.  Chanel does not allege that TRR uses a separate mark incorporating Chanel's mark, such as the hashtag in *WGACA*, 2018 WL 4440507, at *2.

The third factor, "proximity of the products and their competitiveness with one another," *Int'l Info. Sys.*, 823 F.3d at 165, weighs in TRR's favor because, as TRR explicitly states, TRR is a consignment retailer for secondhand goods from various brands, whereas Chanel sells only new Chanel products.  The fourth factor, "evidence that the senior user may 'bridge the gap,'" *id.*, similarly weighs in TRR's favor because Chanel does not allege that it intends to participate in the secondary market (to the contrary, Chanel appears intent on destroying the secondary market).  *See Savin Corp. v. Savin Grp.*, 391 F.3d 439, 459-60 (2d Cir. 2004).

The fifth and sixth factors, "evidence of actual consumer confusion" and "evidence that the imitative mark was adopted in bad faith," *Int'l Info. Sys.*, 823 F.3d at 165, weigh in TRR's favor because Chanel does not plausibly allege consumer confusion or bad faith by TRR.  *See*

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009); *deVere Grp. GmbH v. Opinion Corp.*, 877 F. Supp. 2d 67, 72 (E.D.N.Y. 2012) (dismissing complaint where plaintiff did not "provide[] any allegations of consumer confusion" or "bad faith").

Finally, the seventh and eighth factors, the "respective quality of the products" and "sophistication of consumers in the relevant market," *Int'l Info. Sys.*, 823 F.3d at 165, weigh in TRR's favor because TRR is a leading consignment retailer with sophisticated consumers who understand that TRR is independent of the brands it sells, especially in light of TRR's express representations to that effect, Compl. Ex. D at 3. *See Star Indus.*, 412 F.3d at 389-90.

Chanel asks this Court to find that the promotion of Chanel goods by a company that is not a Chanel-authorized retailer is confusing as a matter of law because "[o]nly Chanel itself can know what is genuine Chanel." Compl. ¶ 33. Such a finding would eviscerate all secondary markets—including for jewelry, watches, fine art, preowned cars, antiques, and more—by preventing the resale of goods without the consent of the manufacturer. The Lanham Act does not countenance this result. Because Chanel does not—and cannot, particularly in light of TRR's express disclaimers—plead that TRR's use of Chanel's mark goes beyond legally permissible nominative fair use, Chanel's Lanham Act claims must be dismissed with prejudice.

## B. The First Sale Rule Bars Chanel's Claims.

Chanel's attack on TRR's business for reselling inventory from third-party consignors is plainly barred by the "first sale rule." Chanel is entitled to control the *initial* sale of its branded goods by designating authorized retailers. Thereafter, the first sale rule bars Chanel from dictating to consumers when or how they part with their Chanel-branded items: "As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner." *O.D.F. Optronics Ltd. v. Remington Arms Co.*, No. 08 CIV. 4746 (DLC), 2008 WL 4410130, at *12 (S.D.N.Y. Sept. 26, 2008); *see Luxottica Grp.*

*S.p.A. v. Bausch & Lomb Inc.*, 160 F. Supp. 2d 545, 552 (S.D.N.Y. 2001). Thus, a distributor

who resells trademarked goods without modification is not liable for trademark infringement.

*Id.*; *accord Ergowerx Int'l, LLC v. Maxell Corp.*, 18 F. Supp. 3d 440, 450 (S.D.N.Y. 2014);

*Rogers v. HSN Direct Joint Venture*, No. 97 CIV. 7710 (LLS), 1999 WL 728651, at *3

(S.D.N.Y. Sept. 17, 1999).

Settled law makes clear that Chanel is not entitled to control the sale of unaltered,

genuine Chanel goods beyond the first sale, yet that is precisely the relief that Chanel seeks. *See*

Compl. ¶ 45, Prayer for Relief ¶ 1(a) (seeking to enjoin TRR from selling or advertising any

product that "bears any mark that is a simulation, reproduction, [or] copy . . . of any of the

CHANEL Trademarks"). Chanel's anti-consumer efforts must be rejected. Chanel vaguely

alleges "[u]pon information and belief" that the products TRR sells come from "unknown third-

party consignors, which upon information and belief, include counterfeiters, consumers . . . and

other secondhand resale businesses." *Id.* ¶ 34; *see id.* ¶ 2. But the identity of consignors to TRR

is legally irrelevant—indeed, the very purpose of the first sale rule is to protect secondary sales

from sources *other than* the original manufacturer. Chanel's assertion that some products sold

through TRR come from "counterfeiters" has no apparent basis other than its speculation about

the seven bags specifically identified in the Complaint—Chanel has not alleged credible facts

supporting its insinuation that there is anything illegitimate about resales by consignors or other

"secondhand" sources, nor can it. Chanel also does not allege that TRR or its consignors

materially altered any of the products sold. The first sale rule bars Chanel's Lanham Act claims.

II.     **Chanel Fails to State a Claim Under the Lanham Act for False Advertising.**

Chanel's false advertising claim under the Lanham Act (Third Claim for Relief) is also

fatally deficient. To state a claim, a plaintiff must first allege falsity by "show[ing] that either: 1)

the challenged advertisement is literally false, or 2) while the advertisement is literally true it is

nevertheless likely to mislead or confuse consumers." *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992). "This inquiry requires evaluating the message conveyed in full context . . . . Importantly, however, only an *unambiguous* message can be literally false; if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016) (internal quotation marks omitted). "Plaintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener that conflicts with reality—a claim that invites a comparison of the impression, rather than the statement, with the truth." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018) (internal quotation marks and alterations omitted) (dismissing claim that bracelet contained water from Mount Everest was literally false notwithstanding possibility of evaporation). "Where, as here, a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff *must* demonstrate, by extrinsic evidence, that the challenged [statements] tend to mislead or confuse consumers." *Johnson & Johnson*, 960 F.2d at 297 (emphasis added).

Here, too, Chanel's attacks on TRR's advertising are in reality attacks on the legitimacy of the entire secondhand market for Chanel products. Chanel contends that TRR's representations regarding the authenticity of the products it sells and its authentication process must be false and misleading because "*[o]nly Chanel* itself can know what is genuine Chanel." Compl. ¶ 33 (emphasis added). Such allegations are both nonsensical and legally insufficient.

## A.    TRR's Advertising Does Not Imply Any Connection to Chanel.

Chanel asserts that "The RealReal's [g]uarantee of [a]uthenticity is [i]mpliedly [f]alse," Compl. § II(B), not because TRR *does not* authenticate the merchandise it sells, but because TRR is categorically *incapable of ever authenticating* its merchandise. *See, e.g.*, *id.* ¶ 42 ("Such

representation is misleading because Defendant The RealReal does not advise consumers that neither Defendant The RealReal nor its purported experts have any affiliation with or training with respect to authentication from Chanel, that The RealReal does not obtain its inventory from Chanel, and that Chanel has not authenticated or opined on behalf of The RealReal . . . as to the genuineness of the product.").  But TRR clearly informs consumers of the basis and extent of its authenticity guarantee, and there is nothing impliedly false about its representation.  Chanel's argument that "*[o]nly Chanel* itself can know what is genuine Chanel" would make any suggestion of independent authentication either impossible or misleading.  *Id.* ¶ 33 (emphasis added).  Under that standard, there could be no secondary market, as no auction house or consignment store could authenticate the products it sells, regardless of their expertise.  As trademark law makes clear, Chanel is not entitled to a monopoly over the resale of its goods.

Moreover, Chanel does not and cannot plausibly plead facts that any consumer has been led to believe that Chanel has authenticated or verified the products on TRR's site.  To the contrary, the Complaint contains only conclusory allegations of assumed consumer confusion. *E.g.*, *id.* ¶ 70 ("Defendant's implicitly false statements of the authenticity of its goods and services have caused and are likely to cause consumers to believe mistakenly that Chanel verified their authenticity . . . ."); *see id.* ¶¶ 40, 46 (referring generally to "confusion" and "false impression").  Chanel does not substantiate these generalized claims and does not—as it must— allege that any particular consumer was confused.  To the contrary, as noted *supra* Part I.A.2, all consumers must become members and agree to TRR's Terms of Service—including numerous disclaimers of any affiliation with brands—even to peruse TRR's website.  *See Johnson & Johnson*, 960 F.2d at 298 (implied falsehood claim requires plaintiff to "demonstrate that a statistically significant part of the commercial audience holds the false belief allegedly

communicated by the challenged advertisement"); *Lokai Holdings LLC*, 306 F. Supp. 3d at 639

("At the pleading stage, the plaintiff must allege that consumers or retailers were misled or

confused by the challenged advertisement and *offer facts* to support that claim." (internal

quotation marks omitted)).  That deficiency alone requires dismissal.

In any event, Chanel's conclusory claims of consumer confusion are not credible in light

of the express disclosures to the contrary included in the Complaint.  TRR's representations on

its website regarding its "independent," "in-house" authentication process make clear it has no

affiliation with any of the brands it sells:

- "The RealReal's authentication process is unique to The RealReal and independent of any brands";

- "We staff trained, in-house professionals . . . who work to ensure the items we sell are authentic and in beautiful condition";

- "All items are put through a multi-point, brand-specific authentication process by a trained team of luxury experts headed by our Senior Director of Authentication & Brand Compliance";

- "Brands identified are not involved in the authentication of the products being sold, and none of the brands sold assume any responsibility for any products purchased from or through the website."

Compl. Ex. D at 3.  Chanel's contrary reading—that these disclosures somehow evince some

involvement by Chanel—ignores the plain meaning of the statements themselves.[5]

## B.  Chanel Fails to Allege That TRR's Advertising Is Literally False.

A claim of "literal falsehood" contends that "a statement, on its face, conflicts with

reality."  *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999).  A court "may rely on

---

[5] These disclaimers also flatly contradict Chanel's allegations that TRR "does not advise consumers that neither Defendant The RealReal nor its purported experts have any affiliation with or training with respect to authentication from Chanel, that The RealReal does not obtain its inventory from Chanel, and that Chanel has not authenticated or opined on behalf of The RealReal . . . as to the genuineness of the product."  Compl. ¶ 42.  As Chanel's own pleading makes clear, *see id.* Ex. D at 3, those assertions are false and do not deserve the presumption of truth.

its own common sense and logic in interpreting the message of the advertisement." *Hertz Corp. v. Avis, Inc.*, 867 F. Supp. 208, 212 (S.D.N.Y. 1994). "This inquiry requires evaluating the message conveyed in full context . . . . Importantly, however, only an *unambiguous* message can be literally false; if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Apotex*, 823 F.3d at 63 (internal quotation marks omitted).

Chanel's allegations that certain merchandise TRR sold is inauthentic do not support a claim for literal falsehood. The purported existence of a defective product does not, without more, undermine the accuracy of a marketing statement applied to tens of thousands of products. *Cf., e.g.*, *Punian v. Gillette Co.*, No. 14-cv-05028-LHK, 2016 WL 1029607, at *6 (N.D. Cal. Mar. 15, 2016) (dismissing false advertising claims concerning statement that batteries were "guaranteed for 10 years in storage" despite allegations that certain batteries leaked because "[a]n express warranty is not a representation that a product has no defects, but rather a promise to repair, replace, or refund a failed product"); *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (rejecting attempt "to bootstrap Sony's express warranty into a representation that the VAIO notebooks are defect-free"). Were the contrary true, any consumer action to return a defective product would seed a claim for false advertising. TRR's representation that the products it sells are "authentic" is a statement of confidence in its authentication process, which—as in any secondary market—may not catch every instance of attempted deception. Indeed, TRR explains that it will destroy any items determined on review to be counterfeit—a guarantee that acknowledges and contemplates occasional attempts to consign counterfeit goods among the thousands of items reviewed each day. Compl. Ex. D at 3.

Chanel's disputes regarding the legitimacy of TRR's authentication process simply are not colorable false advertising claims under the Lanham Act.

In any event, Chanel does not—and cannot—allege that TRR's representations are literally false. The "common sense" message of TRR's marketing is simply that 100% of the products TRR sells are authenticated by the company's authentication experts. *See Hertz*, 867 F. Supp. at 212. Chanel does not dispute that TRR subjects every item accepted for consignment to its authentication process to "ensure that every item on The RealReal is 100% the real thing[], thanks to [its] dedicated team of authentication experts." Compl. ¶¶ 2, 32; *see id.* ¶¶ 33, 35, Ex. D at 3 ("Everything passes through our strict authenticity tests before it is curated into daily sales."). Further, as Chanel's own Complaint establishes, TRR expressly informs its customers that it is "independent of any brands" and that brands "are not involved in the authentication of the products being sold." *Id.* Ex. D at 3. Chanel does not, and cannot, dispute the truth of those statements. *See id.* ¶ 35. Instead, Chanel simply ignores them and nonetheless suggests that the statements imply—contrary to their clear meaning—that the "products [are] inspected or guaranteed by Chanel." *Id.* ¶ 66. That allegation is insufficient to state a claim for literal falsehood.

Because Chanel has not pled and cannot plead that TRR's representation that the products it sells are authentic based on its own authentication process are either literally or impliedly false, Chanel's Lanham Act false advertising claims must be dismissed with prejudice.

### C. Chanel Fails to Allege the Requisite Injury.

To state a false advertising claim under the Lanham Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales" and "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising" (*i.e.*, must prove proximate cause). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–33

(2014).  The "likelihood of injury and causation will not be presumed, but must be demonstrated in some manner."  *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994).  A "more substantial showing" is required in this case because (1) Chanel's "products are not obviously in competition" with TRR, as Chanel sells solely new Chanel-branded products whereas TRR sells consigned products from various brands, and (2) TRR's "advertisements do not draw direct comparisons between" Chanel and TRR.  *Id.*

Chanel fails to allege a plausible injury to its "reputation or sales" from TRR's purportedly false advertising.  Chanel's allegation that TRR's advertising is "directly diverting sales," Compl. ¶ 74, is conclusory, devoid of supporting facts, and implausible given that the companies operate in different spheres with different customers: whether TRR's authenticity guarantee to its own customers is false cannot plausibly bear on Chanel's sales of new Chanel goods to customers and certainly would not harm Chanel "directly," as required for proximate cause.  *See Lexmark*, 572 U.S. at 132-33.  Chanel's claim that TRR's advertising is "harming Chanel's goodwill and reputation," Compl. ¶ 74, is similarly conclusory and implausible given that TRR's allegedly false advertising does not refer to Chanel; rather, it describes (accurately) TRR's authentication process.

## III.    Chanel Fails to State a Claim Under New York State Law.

Chanel's state-law claims for common-law unfair competition and statutory unfair competition and false advertising under N.Y. G.B.L. §§ 349 and 350 likewise fail because (1) they are premised on the same defective factual allegations as the Lanham Act claims and (2) Chanel fails to plausibly allege the additional elements required for each claim.

Lanham Act and related New York state claims for unfair competition and false advertising are generally analyzed and resolved together.  *See, e.g.*, *Tiffany*, 600 F.3d at 101 n.6 ("[C]auses of action under both the Lanham Act and New York State common law . . . are

composed of the same elements.  We therefore analyze them together."); *Crye Precision LLC v. Duro Textiles, LLC*, No. 15-CV-1681 (DLC), 2016 WL 1629343, at *8 (S.D.N.Y. Apr. 22, 2016) (dismissing unfair competition claim where plaintiff failed to state claim under Lanham Act), *aff'd,* 689 F. App'x 104 (2d Cir. 2017); *Samsung Display Co. v. Acacia Research Corp.*, No. 14-CV-1353 JPO, 2014 WL 6791603, at *5 (S.D.N.Y. Dec. 3, 2014) ("The analysis applied under § 43(a) of the Lanham Act, New York common law, and § 349 of the General Business Law is 'substantially the same.'").  Because Chanel's Lanham Act claims fail as explained above, Chanel's state-law claims must be dismissed as well.  The state-law claims must also be dismissed because Chanel has not pled and cannot plead the additional elements that these claims require.

### A.   Chanel Fails to Plausibly Allege That TRR Acted in Bad Faith.

"Under New York law, unfair competition claims 'closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or intent.'" *Crye Precision*, 2016 WL 1629343, at *8.  "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus.*, 412 F.3d at 388.  In analyzing whether the defendant acted in bad faith, the "'only relevant intent is intent to confuse.'" *Crye Precision*, 2016 WL 1629343, at *8 (quoting *Starbucks*, 588 F.3d at 117).

Chanel fails to allege facts demonstrating that TRR "inten[ded] to sow confusion" as to the parties' affiliation; to the contrary, and as established in the Complaint, TRR makes clear to consumers that it has *no* relationship with the brands of the products it resells and that its authenticity guarantee is based solely on its own, independent authentication process—*not* on any verification by the brands.  *See, e.g.*, Compl. Ex. D at 3.  Indeed, Chanel acknowledges that TRR's intent is to facilitate the legal resale of authentic, secondhand Chanel goods. *E.g.*, *id.* ¶¶ 2

22

("The RealReal advertises and purports to sell authentic, secondhand luxury products, including purportedly authentic CHANEL-branded products . . . ."), 33 ("'We staff trained, in-house professionals including gemologists, horologists, art appraisers and apparel experts who work to ensure the items we sell are authentic and in beautiful condition.'").  Chanel thus fails to state a common-law unfair competition claim.  *See WGACA, LLC*, 2018 WL 4440507, at *4 (dismissing unfair competition claim where Chanel did not "show[] that WGACA intended to sow confusion between the two companies' products," but rather alleged that "WGACA's intent was to display the Chanel brand conspicuously, and emphasize that their source was Chanel").

### B.    Chanel Fails to Allege Specific and Substantial Public Injury.

To state a claim under N.Y. G.B.L. §§ 349 and 350, Chanel must allege that "(1) the defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was misleading in a material way, and (3) that plaintiff consequently suffered injury." *RCA Trademark Mgmt. S.A.S. v. Voxx Int'l Corp.*, No. 14CV6294-LTS-HBP, 2015 WL 5008762, at *3 (S.D.N.Y. August 24, 2015); *see Alzheimer's Found. v. Alzheimer's Disease & Related Disorders Ass'n*, No. 10 Civ. 3314, 2018 WL 2084168, at *8 (S.D.N.Y. May 1, 2018); *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 n.1 (N.Y. 2002).

"The goals of GBL §§ 349–350 were major assaults upon fraud against consumers, particularly the disadvantaged . . . .  Accordingly, courts routinely reject . . . attempts to fashion Section 349 and 350 claims from garden variety disputes between competitors." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 542 (S.D.N.Y. 2012) (citations, internal quotation marks, and alterations omitted).  Therefore, claims involving trademark violations are not cognizable under Section 349 or 350 "unless 'there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution.'" *RCA Trademark Mgmt.*, 2015 WL 5008762, at *4; *see Alzheimer's Found.*, 2018 WL 2084168, at *8.

The type of injury needed to sustain a trademark violation under Sections 349 and 350 is one that poses "potential danger to the public health or safety." *RCA Trademark Mgmt.*, 2015 WL 5008762, at *3; *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003). Allegations of mere consumer confusion or the sale of counterfeit goods generally do not meet the public harm requirement. *RCA Trademark Mgmt.*, 2015 WL 5008762, at *5 ("[A] party's 'claim that consumers will be confused, on its own, does not meet the threshold for liability' under N.Y. GBL §§ 349 and 350."); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 435-36 (S.D.N.Y. 2012).

The gravamen of Chanel's Complaint is an unfounded and anticompetitive attack on a business model it perceives as a threat—a secondary marketplace where consumers exercise their established right to consign, sell, and buy luxury items. *See* Compl. ¶ 12. Although Chanel pleads in the most conclusory fashion that TRR's conduct "harm[s] the public," *id.* ¶ 97, it is clear that Chanel's real concern is *not* with public injury but rather with lawful competition from its customers' sale of their used goods at lower prices in the secondary market. As Chanel alleges, TRR's conduct "is causing immediate and irreparable injury to Chanel, both by direct diversion of sales and by harming the CHANEL Trademarks and Chanel's goodwill and reputation." *Id.* Chanel does not and cannot allege harm to the public caused by consumers' participation in the legitimate secondary market, let alone a public harm "over and above ordinary trademark infringement," *RCA Trademark Mgmt.*, 2015 WL 5008762, at *4. Rather, the Complaint sets forth the quintessential infringement injuries: harm to a competitor's goodwill and reputation and consumer confusion. *E.g.*, Compl. ¶¶ 8, 46, 93, 97. These allegations of harm do not create liability under Sections 349 and 350. *E.g.*, *RCA Trademark Mgmt.*, 2015 WL 5008762, at *5; *Coach*, 908 F. Supp. 2d at 435-36; *Gucci*, 277 F. Supp. 2d at 273.

24

## CONCLUSION

For the foregoing reasons, TRR respectfully requests that the Court grant its motion to dismiss the Complaint with prejudice.

Dated: January 10, 2019

Respectfully submitted,

*/s/ Leigh M. Nathanson*
BOIES SCHILLER FLEXNER LLP
Karen L. Dunn (*Pro Hac Vice* Pending)
kdunn@bsfllp.com
1401 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Leigh M. Nathanson
lnathanson@bsfllp.com
Laura E. Harris
lharris@bsfllp.com
Yotam Barkai
ybarkai@bsfllp.com
575 Lexington Avenue
New York, New York
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

SIDLEY AUSTIN LLP
Rollin A. Ransom (*Pro Hac Vice*
   Application Forthcoming)
rransom@sidley.com
Lauren M. De Lilly (*Pro Hac Vice*
   Application Forthcoming)
ldelilly@sidley.com
555 West Fifth Street
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant The RealReal, Inc.*