**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Chanel, Inc., | |
|        Plaintiff, | |
| v. | Case No. 1:18-cv-10626-VSB |
| The RealReal, Inc., | |
|        Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**THE REALREAL, INC.'S MOTION TO DISMISS PLAINTIFF**
**CHANEL, INC.'S FIRST AMENDED COMPLAINT**
**FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ........................................................................... 4

PROCEDURAL HISTORY.............................................................................. 5

LEGAL STANDARD..................................................................................... 6

ARGUMENT ............................................................................................... 6

I.     Chanel Fails to State a Claim Under the Lanham Act for Trademark Infringement, Counterfeiting, or False Endorsement/Unfair Competition....................................6

     A.     Chanel Fails to Allege Facts Showing a Likelihood of Consumer Confusion.................................................................................7

          1.     TRR's Use of Chanel's Marks Is Nominative Fair Use. ................7

          2.     The Nominative Fair Use Factors Weigh in Favor of TRR.............8

          3.     The *Polaroid* Factors Weigh in Favor of TRR. ...........................12

     B.     The First-Sale Rule Bars Chanel's Claims. ...............................13

II.     Chanel Fails to State a Claim Under the Lanham Act for False Advertising. .......14

     A.     TRR's Representations Concerning Its Authentication Process Are Not Literally or Impliedly False. ...................................................15

     B.     TRR's Representations Concerning the Authenticity of Its Products Are Not Literally or Impliedly False. ..........................................18

     C.     TRR's Representations That Certain Goods Are "Vintage" Are Not Literally or Impliedly False. ...................................................21

     D.     Chanel Fails to Allege the Requisite Injury..............................22

III.     Chanel Fails to State a Claim Under New York State Law...................................23

     A.     Chanel Fails to Plausibly Allege That TRR Acted in Bad Faith. .............23

     B.     Chanel Fails to Allege Specific and Substantial Public Injury.................24

CONCLUSION............................................................................................ 25

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Accurate Grading Quality Assurance, Inc. v. Thorpe*,
  No. 12 CIV. 1343 ALC, 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013) ................6, 10

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016)....................................................................15, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................6, 22, 24

*Bd.-Tech Elec. Co. v. Eaton Corp.*,
  737 F. App'x 556 (2d Cir. 2018) .........................................................17, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................22, 24

*Cecere v. R.J. Reynolds Tobacco Co.*,
  No. 98 Civ.2011(RPP), 1998 WL 665334 (S.D.N.Y. Sept. 28, 1998) ......................22

*Chanel, Inc. v. WGACA, LLC*,
  No. 18 CIV. 2253 (LLS), 2018 WL 4440507 (S.D.N.Y. Sept. 14, 2018) .....1, 9, 11, 24

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
  911 F.2d 242 (9th Cir. 1990) ......................................................................18

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991).............................................................................4

*Crye Precision LLC v. Duro Textiles, LLC*,
  No. 15cv1681 (DLC), 2016 WL 1629343 (S.D.N.Y. Apr. 22, 2016),
  *aff'd,* 689 F. App'x 104 (2d Cir. 2017)........................................................23

*Davis v. Avvo, Inc.*,
  345 F. Supp. 3d 534 (S.D.N.Y. 2018)..........................................................16

*deVere Grp. GmbH v. Op. Corp.*,
  877 F. Supp. 2d 67 (E.D.N.Y. 2012) ...........................................................12

*Donnenfeld v. Petro Home Servs.*,
  Civil Action No. 16-882, 2017 WL 1250992 (D.N.J. Mar. 24, 2017)........................20

*Dow Jones & Co. v. Int'l Sec. Exch., Inc.*,
  451 F.3d 295 (2d Cir. 2006)..........................................................................8

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
  228 F.3d 56 (2d Cir. 2000)............................................................................8

*Ergowerx Int'l, LLC v. Maxell Corp.*,
 18 F. Supp. 3d 440 (S.D.N.Y. 2014)...............................................................13

*Groden v. Random House*,
 No. 94 Civ. 1074 (JSM), 1994 WL 455555 (S.D.N.Y. Aug. 23, 1994) ....................18

*Hertz Corp. v. Avis, Inc.*,
 867 F. Supp. 208 (S.D.N.Y. 1994).................................................................15

*Hoey v. Sony Elecs. Inc.*,
 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ..........................................................19

*In re Bristol-Myers Squibb Sec. Litig.*,
 312 F. Supp. 2d 549 (S.D.N.Y. 2004)..............................................................10

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
 823 F.3d 153 (2d Cir. 2016)................................................................. *passim*

*Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*,
 960 F.2d 294 (2d Cir. 1992)...........................................................................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014)......................................................................................22

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
 306 F. Supp. 3d 629 (S.D.N.Y. 2018).......................................15, 16, 17, 21

*Luxottica Grp. S.p.A. v. Bausch & Lomb Inc.*,
 160 F. Supp. 2d 545 (S.D.N.Y. 2001)...............................................................14

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 175 F. Supp. 2d 489 (S.D.N.Y. 2000)...............................................................10

*O.D.F. Optronics Ltd. v. Remington Arms Co.*,
 No. 08 Civ. 4746(DLC), 2008 WL 4410130 (S.D.N.Y. Sept. 26, 2008) ...................14

*Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*,
 816 F.2d 68 (2d Cir. 1987).............................................................................13

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
 32 F.3d 690 (2d Cir. 1994).............................................................................22

*Plazza v. Airbnb, Inc.*,
 289 F. Supp. 3d 537 (S.D.N.Y. 2018)...............................................................16

*Polaroid Corp. v. Polarad Electronics Corp.*,
 287 F.2d 492 (2d Cir. 1961)........................................................................8, 12

iv

*Punian v. Gillette Co.*,
    No. 14-cv-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016).....................19

*RCA Trademark Mgmt. S.A.S. v. Voxx Int'l Corp.*,
    No. 14CV6294-LTS-HBP, 2015 WL 5008762 (S.D.N.Y. August 24, 2015) .......24, 25

*Rogers v. HSN Direct Joint Venture*,
    No. 97 CIV. 7710 (LLS), 1999 WL 728651 (S.D.N.Y. Sept. 17, 1999) ....................13

*Schering Corp. v. Pfizer Inc.*,
    189 F.3d 218 (2d Cir. 1999)...........................................................................14, 16, 21

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005)...........................................................................12, 13, 23

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010)..................................................................... *passim*

*Vincent v. Utah Plastic Surgery Soc'y*,
    621 F. App'x 546 (10th Cir. 2015) ..............................................................................17

## <u>Statutes</u>

15 U.S.C. § 1114.........................................................................................................2, 6, 7

15 U.S.C. § 1125......................................................................................................2, 3, 6, 7

N.Y. G.B.L. § 349 .......................................................................................... *passim*

N.Y. G.B.L. § 350 .......................................................................................... *passim*

## <u>Other Authorities</u>

Tina Craig,
    *How to Shop for Vintage Bags*, Harper's Bazaar (Aug. 5, 2015) ...............................21

Maggie Maloney,
    *The Last Time We Saw Blake Lively's Vintage Chanel Dress, It Was Worn By a
    Princess*, Town & Country (Oct. 17, 2017)................................................................21

J. Thomas McCarthy,
    *McCarthy on Trademarks and Unfair Competition* (5th ed.)........................................7

## <u>Rules</u>

Federal Rule of Civil Procedure 12(b)(6) .......................................................................1, 6

Defendant The RealReal, Inc. ("The RealReal" or "TRR") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Chanel Inc.'s ("Chanel") First Amended Complaint (the "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

TRR is a leader in the luxury consignment, or secondary, market. It provides a safe, secure, and reliable platform for the consignment and resale of luxury clothing, handbags, fine jewelry and watches, art, and furniture. Chanel seeks to shut down the secondary market for Chanel goods in part by permanently preventing TRR and its consignors from reselling Chanel products on TRR's platform. *See* FAC ¶ 118(1)(a). This litigation is only the most recent front in Chanel's broader campaign to stifle legitimate competition and undermine consumer confidence in a market Chanel views as a competitive threat. *See Chanel, Inc. v. WGACA, LLC*, No. 18 Civ. 2253 (LLS), 2018 WL 4440507 (S.D.N.Y. Sept. 14, 2018). Chanel's continued insistence that "[o]nly Chanel itself can know what is genuine Chanel," FAC ¶ 34, would effectively preclude all secondary dealers from doing business. This includes brick-and-mortar consignment shops and auction houses like Sotheby's and Christie's, which have relied for decades on independent authenticators and appraisers. Chanel's position would also deny consumers their rights to use the secondary market to sell the Chanel goods they purchased and own, contrary to settled law.

In its FAC, Chanel continues to insist that TRR's consignment service and independent authentication of Chanel products confuses consumers into believing that Chanel is affiliated with TRR. But not only does Chanel fail to substantiate that claim, it pleads facts that refute it. TRR's website, which Chanel incorporates by reference into the FAC, states unambiguously that

(1) TRR has **no** affiliation with any of the brands of the products it sells and (2) that the brands **do not** guarantee the authenticity of the products sold on TRR:

> The RealReal's authentication process is unique to The RealReal and independent of any brands. Brands identified are not involved in the authentication of the products being sold, and none of the brands sold assume any responsibility for any products purchased from or through the website. Brands sold on The RealReal are not partnered or affiliated with The RealReal in any manner.

*Id.*, Ex. D at 3.

The integrity and sophistication of TRR's authentication process are paramount to its business. TRR continuously reviews its practices to stay ahead of counterfeiters and prevent counterfeit goods from entering commerce. Most recently, TRR began to omit product serial numbers from Chanel and other product listings—a common-sense best practice intended to prevent counterfeiters from incorporating legitimate serial numbers into their counterfeit goods.[1] Chanel's flagrant distortion of TRR's policy reveals its true intent: to shut down the legitimate resale market. *See id.* ¶ 60.

In its FAC, Chanel again brings trademark and advertising-related claims under the Lanham Act and New York law, but again fails to state a claim under any cause of action.

Chanel's trademark infringement, counterfeiting, and false endorsement/unfair competition claims, brought under Sections 32(1) and 43(a) of the Lanham Act (First, Second, and Third Claims for Relief), fail for two independently dispositive reasons. *First*, Chanel cannot allege the requisite consumer confusion because it does not, and cannot, plead facts supporting any affiliation between TRR and Chanel. TRR's use of Chanel's marks to describe Chanel goods is lawful nominative fair use, not infringement. *Second*, Chanel's attack on TRR's business facilitating the resale of property owned by its consignors is barred by the first-sale rule.

---

[1] In some legacy product listings, the serial number is redacted rather than removed.

Chanel cannot deny consumers their right to determine when or how they choose to part with the Chanel items they own, including resale in secondary marketplaces like TRR.

Chanel's false advertising claim under the Lanham Act (Third Claim for Relief)[2] likewise fails.  *First*, as discussed above, TRR's express disclaimers of any affiliation with the brands it sells, both in TRR's Terms of Service and in the authentication process, defeat Chanel's nonsensical claim that these same representations confuse consumers into believing that Chanel authenticates their purchases.  *See id.* ¶ 85.  *Second*, Chanel's claim that TRR's authenticity guarantee is false fails because TRR warrants only that it authenticates the products it sells, using its own internal, proprietary process.  TRR is clear with consumers that if it determines that a counterfeit item was submitted for consignment it is TRR's policy to destroy the item.  *Id.*, Ex. D at 3.  *Third*, the FAC's new theory of false advertising based on TRR's use of the word "vintage"—apparently recycled from Chanel's lawsuit against another reseller of Chanel goods because the FAC inadvertently refers to the other reseller, What Goes Around Comes Around ("WGACA"), rather than TRR, *id.* ¶ 91—is undermined by Chanel's own allegations and similarly fails.  *Fourth*, Chanel fails to, and cannot, plausibly allege the requisite injury.

Finally, Chanel again fails to state a claim for common law unfair competition or violations of New York's General Business Law ("N.Y. G.B.L.") Sections 349 and 350 (Fourth, Fifth, and Sixth Claims for Relief), because—in addition to the previously described defects— Chanel fails to plead the additional requirements of those claims under New York law.

---

[2] As in the first version of the complaint, the FAC still designates two claims as its "Third Claim for Relief," both brought pursuant to 15 U.S.C. § 1125(a)—the first for "False Advertising" and the second for "False Endorsement/Unfair Competition."

**FACTUAL BACKGROUND**

TRR is the premier site for online luxury consignment and has multiple physical locations across the United States.  *See* FAC ¶¶ 2, 12.  TRR provides online and brick-and-mortar platforms where consumers-turned-consignors sell and buy secondhand luxury items from hundreds of brands, including Chanel.  *Id.* ¶¶ 12, 33, Ex. C.  TRR does not manufacture the products it sells; rather, it provides consumers with a marketplace to consign and resell the luxury items they already own.  *Id.* ¶ 12.

To protect the interests of both customers and the owners of the brands it sells, TRR puts all items offered for consignment and resale through its own unique, rigorous, multi-point, and brand-specific authentication process before being accepted.  *Id.*, Ex. D at 3.  TRR's trained authenticators, including gemologists, horologists, art appraisers, and apparel experts, inspect items offered for consignment for brand markings, date codes, serial numbers, hologram stickers, and other indicia of authenticity.  *Id.*  This process is "independent of any brands," and the brands sold on TRR "are not partnered or affiliated with The RealReal in any manner."  *Id.*

TRR guarantees that it authenticates the products it sells, and it stands behind that guarantee if any question is raised as to authenticity.  *Id.* ¶¶ 33, 34.  TRR conspicuously discloses that brands "are not involved in the authentication of the products being sold" and that "[b]rands sold on The RealReal are not partnered or affiliated with The RealReal in any manner."  *Id.*, Ex. D at 3.  Before a consumer can even access the items available on TRR's website, he or she must register as a member and agree to TRR's Terms of Service, which contain the same disclaimers reiterating that TRR is not sponsored or endorsed by the brands it sells.[3]

---

[3] *Terms of Service*, The RealReal, https://www.therealreal.com/terms (last visited Mar. 3, 2019).  Because the FAC relies on and incorporates by reference portions of TRR's website, the Court may properly consider these materials on a motion to dismiss.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint

TRR also informs users that it does not accept or sell counterfeit merchandise and that, if TRR suspects that property submitted for consignment is not authentic, TRR will contact the consignor for proof of purchase to establish the authenticity of the property.  *Id.*  TRR fully cooperates with brands and law enforcement seeking to identify the source of stolen or counterfeit items, including revealing the identity of consignors submitting counterfeit goods. *Id*.  TRR also makes clear, including in its consignor agreement, that it destroys counterfeits found during the authentication process.  *Id.*[4]

## PROCEDURAL HISTORY

On June 22, 2018, Chanel sent a letter to TRR, asserting that TRR had advertised and sold four counterfeit Chanel handbags.  *See* FAC, Ex. F at 2.  Chanel also claimed, *inter alia*, that TRR misleads consumers into falsely believing that its authentication experts "have been in some way authorized, approved or trained by Chanel."  *Id.*

TRR responded on July 10, 2018, and asked Chanel to submit "additional information" regarding "the reason for [Chanel's] belief that they are counterfeit" so that TRR could "evaluate the legitimacy of [Chanel's] claim."  *Id.*, Ex. F at 5-6.  TRR also denied making any misleading statements concerning any affiliation between Chanel and TRR, directing Chanel to the express disclaimer on its website.  *Id.*, Ex. F at 3.  Chanel responded by suing TRR five months later, on November 14, 2018, alleging trademark infringement, counterfeiting, false endorsement/unfair competition, and false advertising under the Lanham Act, unfair competition under New York law, and violations of N.Y. G.B.L. §§ 349 and 350.  *See* ECF No. 1 ¶ 9.

---

is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

[4] *See Consignment Terms*, The RealReal, https://www.therealreal.com/consignor_terms (last visited Mar. 3, 2019).

On January 10, 2019, TRR moved to dismiss the complaint.  *See* ECF No. 16.  Rather than oppose TRR's motion, Chanel filed the FAC asserting for the second time the same factually and legally deficient claims.  *See* FAC ¶ 9.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The "court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself."  *Accurate Grading Quality Assurance, Inc. v. Thorpe*, No. 12 Civ. 1343(ALC), 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2013).

## ARGUMENT

### I.  <u>Chanel Fails to State a Claim Under the Lanham Act for Trademark Infringement, Counterfeiting, or False Endorsement/Unfair Competition.</u>

Chanel brings claims for trademark infringement and counterfeiting under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and false endorsement/unfair competition under Section 43(a), 15 U.S.C. § 1125(a) (First, Second, and Third Claims for Relief).  Section 32(1) prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion."  15

U.S.C. § 1114(1)(a).[5]  Section 43(a) prohibits the use in commerce of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1)(A).

Chanel fails to state a claim under these sections for two independently fatal reasons. *First*, Chanel does not and cannot allege facts that establish TRR's use of Chanel's mark is "likely to cause confusion," as required under both sections.  15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a)(1)(A).  *Second*, Chanel's claims are barred by the first-sale rule.

### A.      Chanel Fails to Allege Facts Showing a Likelihood of Consumer Confusion.

#### 1.      *TRR's Use of Chanel's Marks Is Nominative Fair Use.*

TRR's use of Chanel's marks constitutes nominative fair use, defined as the "use of another's trademark to identify, not the defendant's goods or services, but the plaintiff's goods or services."  *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 165 (2d Cir. 2016).  Nominative fair use "is not an infringement so long as there is no likelihood of confusion."  4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:11 (5th ed. 2018); *see Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102–03 (2d Cir. 2010) ("[A] defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the

---

[5] Chanel purports to bring distinct claims for trademark "infringement" and "counterfeiting" under Section 32(1) of the Lanham Act.  Although the statute does prohibit counterfeiting (as distinct from the "use in commerce" of such counterfeits), *see* 15 U.S.C. § 1114(1)(b), Chanel does not, and cannot truthfully, allege that TRR itself engaged in counterfeiting, and cites the same facts as the basis of both claims.  *Compare* FAC ¶¶ 68-73, *with id.* ¶¶ 74-79.  Thus, the claims are properly analyzed together under the same Lanham Act requirements.

defendant.").  Trademark law does not prohibit TRR from "accurately describing" items it resells
by "brand name."  *Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir. 2006).

To determine whether confusion is likely, courts must consider not only the eight factors
in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), but also:

> (1) whether the use of the plaintiff's mark is necessary to describe both the
> plaintiff's product or service and the defendant's product or service, that is,
> whether the product or service is not readily identifiable without use of the mark;
> (2) whether the defendant uses only so much of the plaintiff's mark as is
> necessary to identify the product or service; and (3) whether the defendant did
> anything that would, in conjunction with the mark, suggest sponsorship or
> endorsement by the plaintiff holder, that is, whether the defendant's conduct or
> language reflects the true or accurate relationship between plaintiff's and
> defendant's products or services.

*Int'l Info. Sys.*, 823 F.3d at 168.  Under this test, Chanel fails to plead a likelihood of confusion.

### 2.    *The Nominative Fair Use Factors Weigh in Favor of TRR.*

*First*, TRR uses Chanel marks solely to identify and properly market the secondhand
Chanel goods its consignors choose to sell on TRR's website and in brick-and-mortar stores.
*See, e.g.*, FAC ¶¶ 12, 33, 50, Ex. E ("Chanel Classic Jumbo Double Flap Bag").  This "use of
[Chanel's] mark is necessary to describe both [Chanel's] product or service and [TRR's] product
or service"; in other words, Chanel's "product or service is not readily identifiable without use of
the mark." *Int'l Info. Sys.*, 823 F.3d at 168.  In *Tiffany*, Tiffany challenged eBay's use of its
marks to advertise Tiffany-branded jewelry, where certain sellers offered counterfeit "Tiffany"
jewelry on the site.  600 F.3d at 96.  The Second Circuit rejected Tiffany's infringement claim,
noting that "a defendant may lawfully use a plaintiff's trademark where doing so is necessary to
describe the plaintiff's product." *Id.* at 102; *see also EMI Catalogue P'ship v. Hill, Holliday,
Connors, Cosmopulos Inc.*, 228 F.3d 56, 65 (2d Cir. 2000) ("Where a mark incorporates a term
that is the only reasonably available means of describing a characteristic of another's goods, the
other's use of that term in a descriptive sense is usually protected by the fair use doctrine.").

8

By contrast, in *Chanel, Inc. v. WGACA, LLC*, the district court upheld Chanel's infringement claim against WGACA because WGACA's use of Chanel's mark went **well beyond** identifying resold Chanel goods.  For example, WGACA's social media "tag[ged] photos of Chanel-branded products with the hashtag '#WGACACHANEL' and refer[red] to Chanel-branded products as 'our #WGACACHANEL.'"  2018 WL 4440507, at *2.  Additionally, "WGACA's retail stores prominently feature[d]" Chanel, including displaying "a giant Chanel No. 5 perfume bottle," listing "Vintage Chanel" in larger print than other brands, and exclusively featuring Chanel-branded window display items.  *Id.* at *1.  WGACA's website also "offer[ed] more Chanel-branded products for sale than those of any other brand."  *Id.*  TRR does none of these things.  Rather, TRR uses Chanel's marks to identify and market the specific Chanel products it resells for its consignors.  *E.g.*, FAC ¶¶ 12, 33, 50, Ex. E.

*Second*, TRR "uses only so much of [Chanel's] mark as is necessary to identify the product or service."  *Int'l Info. Sys.*, 823 F.3d at 168.  This analysis considers "whether the alleged infringer 'step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition.'"  *Id.*  In *WGACA*, "WGACA's display of Chanel-branded goods more prominently than other luxury-brand goods" weighed in Chanel's favor.  *WGACA*, 2018 WL 4440507, at *3.  In contrast, Chanel does not and cannot identify TRR marketing featuring its marks "too prominently or too often" relative to other brands.  To the contrary, the FAC actually attaches a TRR report that states unambiguously that *Gucci* is the top brand searched on TRR, and actually highlights more than a dozen **other** brands.  *See* FAC, Ex. C at 5 ("Gucci Is King Among Millennials").  Similarly, the YouTube video quoted in paragraph 33 of the FAC lists Chanel as just one of several "top designers," alongside "Louis Vuitton, Hermes, Gucci, and hundreds more."  *Id.* ¶ 33.  Even the "How to

authenticate Chanel" video cited in the FAC, only two minutes long, prominently features nearly forty seconds of footage of Christian Louboutin shoes and Louis Vuitton handbags alongside TRR's own marks.[6]  *See id.* ¶ 38 n.1.  Chanel thus establishes in its own FAC that TRR does ***not*** promote Chanel more prominently than other top luxury brands.

*Third*, TRR has done nothing to "suggest sponsorship or endorsement" by Chanel; on the contrary, its "conduct [and] language reflect[] the true [and] accurate relationship between [Chanel's] and [TRR's] products [and] services."  *Int'l Info. Sys.*, 823 F.3d at 168.  As Chanel's exhibits to the FAC establish, TRR expressly and unambiguously represents that its authentication is "independent of any brands," that the brands sold "are not involved" in authentication, and that TRR is "not partnered or affiliated" with any brands sold.  FAC, Ex. D at 3.  Before visitors can enter the TRR website, they must first agree to its Terms of Service, which contain the same disclaimers.[7]  Chanel's assertions that TRR deceives or is likely to deceive consumers into believing that TRR is affiliated with Chanel, *e.g.*, *id.* ¶ 57, are squarely contradicted by the FAC.  On that basis, the court need not accept them as true.  *Accurate Grading Quality Assurance*, 2013 WL 1234836, at *8 ("A court need not feel constrained to accept as truth conflicting pleadings . . . contradicted either by statements in the complaint itself or by documents upon which its pleadings rely . . . ."); *accord In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004); *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 175 F. Supp. 2d 489, 492 (S.D.N.Y. 2000).

The Second Circuit in *Tiffany* likewise found that "none of eBay's uses of [Tiffany's] mark suggested that Tiffany affiliated itself with eBay or endorsed the sale of its products

---

[6] *How to authenticate Chanel*, YouTube (Apr. 11, 2013), https://www.youtube.com/watch?v=XWGTGg8URAs.

[7] *Terms of Service*, The RealReal, https://www.therealreal.com/terms (last visited Mar. 3, 2019).

through eBay's website," relying in part upon a disclaimer on eBay's website.  600 F.3d at 103.

Chanel does not and cannot allege that TRR's practices are meaningfully different than eBay's.

Unlike in *WGACA*, Chanel has alleged conduct by TRR that is in fact expressly permitted by

trademark law.  *See WGACA*, 2018 WL 4440507, at *2-3.

Chanel's allegation that it identified and purchased on TRR's site seven Chanel bags it

says are counterfeit, FAC ¶ 45, does not save its claims.  The Second Circuit rejected this very

argument in *Tiffany*, finding that

> eBay's knowledge *vel non* that counterfeit Tiffany wares were offered through its
> website . . . is not a basis for a claim of direct trademark infringement against
> eBay, especially inasmuch as it is undisputed that eBay promptly removed all
> listings that Tiffany challenged as counterfeit and took affirmative steps to
> identify and remove illegitimate Tiffany goods.

600 F.3d at 103.  In a statement remarkably relevant to this case, the Second Circuit rejected

Tiffany's argument that it should "impose liability because eBay cannot guarantee the

genuineness of all of the purported Tiffany products offered on its website" because doing so

"would unduly inhibit the lawful resale of genuine Tiffany goods."  *Id.*  Like eBay, TRR is

committed to preventing the sale of counterfeit merchandise, including by (1) cooperating with

brands and law enforcement to identify sources of stolen or counterfeit goods; (2) refusing to

accept counterfeit merchandise; (3) communicating with consignors to establish product

authenticity; and (4) destroying counterfeit items.  FAC, Ex. D at 3.  Indeed, when Chanel

informed TRR that it had identified allegedly counterfeit Chanel handbags, TRR requested

additional information so it could "evaluate[] [Chanel's] claims." *Id.*, Ex. F at 2; *see also id.* at

5.[8]  Chanel ignored TRR's request.  Nor does it provide such additional information in the FAC.

---

[8] As the letter from TRR to Chanel attached to Chanel's FAC makes clear, Ex. F. at 2, and as TRR represents, TRR
"fully cooperates with brands and state and federal agencies seeking to track down the source of stolen or counterfeit
items," Ex. D at 3.

3.    *The* Polaroid *Factors Weigh in Favor of TRR.*

In addition to the nominative fair use factors, courts are required to consider the *Polaroid* factors, even though many are a "bad fit" for nominative fair use cases like this one. *Int'l Info. Sys.*, 823 F.3d at 168. The analysis "focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005). Consistent with the above, the *Polaroid* factors establish that confusion is unlikely here: TRR uses Chanel's marks solely to identify Chanel goods, and clearly informs consumers that no affiliation exists between TRR and Chanel.

Specifically, the first two factors, "strength of the trademark" and "similarity of the marks," *Int'l Info. Sys.*, 823 F.3d at 165, are inapplicable since both Chanel and TRR use the actual Chanel mark. Third, the "products" are not "proxim[ate]." *Id.* TRR resells many secondhand brand items on behalf of its consignors, whereas Chanel sells only new Chanel products. *See* FAC ¶ 30 ("Chanel does not sell secondhand or vintage Chanel goods."). Fourth, there is no "evidence that the senior user may 'bridge the gap,'" *Int'l Info. Sys.*, 823 F.3d at 165, because Chanel seeks to destroy rather than participate in the secondary market, *see* FAC ¶ 30.

Fifth and sixth, Chanel does not, and cannot, plausibly allege "evidence of actual consumer confusion" or "evidence that the imitative mark was adopted in bad faith." *Int'l Info. Sys.*, 823 F.3d at 165; *see also deVere Grp. GmbH v. Op. Corp.*, 877 F. Supp. 2d 67, 72 (E.D.N.Y. 2012). The FAC's allegations of consumer confusion are conclusory. *See* FAC ¶¶ 55, 77, 101. Although Chanel alleges that TRR removed certain serial numbers from product listings "in bad faith," *id.* ¶ 60, the relevant *Polaroid* factor requires evidence that a "*mark was adopted* in bad faith," *Int'l Info. Sys.*, 823 F.3d at 165 (emphasis added), and Chanel does not allege that TRR "adopted" the Chanel "mark" "in bad faith." Rather, TRR's "adoption" of Chanel's mark is permissive nominative fair use, and TRR disclaims any affiliation with Chanel,

12

FAC, Ex. D at 3, defeating any suggestion of bad faith.  Moreover, TRR's industry-standard practice of removing serial numbers demonstrates its good-faith efforts to combat counterfeits.

The seventh and eighth factors, the "respective quality of the products" and "sophistication of consumers in the relevant market," *Int'l Info. Sys.*, 823 F.3d at 165, likewise weigh in TRR's favor because, as TRR's consumers understand, TRR is a leading consignment marketplace, which, as it expressly makes clear in its terms of use and on its site, operates independent of the brands it sells, FAC, Ex. D at 3.  *See Star Indus.*, 412 F.3d at 389-90.

Chanel alleges that the promotion of Chanel goods by a company that is not a Chanel-authorized retailer is confusing because "[o]nly Chanel itself can know what is genuine Chanel." FAC ¶ 34.  With this allegation, Chanel at once lays plain its true litigation goal—to prevent consumers who legally purchased Chanel items from exercising their right to sell their property in the secondary market—and defeats its Lanham Act claims.  In truth, Chanel cannot, in light of TRR's express disclaimers, plead that TRR's use of Chanel's mark exceeds legally permissible nominative fair use.  Chanel's Lanham Act claims must therefore be dismissed with prejudice.

**B.**     **The First-Sale Rule Bars Chanel's Claims.**

Chanel's attack on TRR's business is also barred by the "first-sale rule," which holds that "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product.  Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition."  *Rogers v. HSN Direct Joint Venture*, No. 97 CIV. 7710(LLS), 1999 WL 728651, at *2 (S.D.N.Y. Sept. 17, 1999); *see Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 76 (2d Cir. 1987); *Ergowerx Int'l, LLC v. Maxell Corp.*, 18 F. Supp. 3d 430, 450 (S.D.N.Y. 2014).

Although Chanel is entitled to control the *initial* sale of its branded goods by designating authorized retailers, it is barred from dictating to consumers when or how they part with their

Chanel items thereafter.  Chanel's goal to shut down the lawful secondary market for Chanel goods is precisely the sort of anti-competitive maneuver the first-sale doctrine prohibits.  *See* FAC ¶¶ 45, 118(1)(a) (seeking to enjoin TRR from selling "any product that bears any mark that is a simulation, reproduction, [or] copy . . . of any of the CHANEL Trademarks").

Chanel's vague allegations "[u]pon information and belief" that the products TRR sells come "from unknown third-party consignors," including "counterfeiters, consumers . . . and other secondhand resale businesses," *id.* ¶ 36, do not alter this conclusion.  The consignors' identities are legally irrelevant—the first-sale rule protects the secondary sales from sources *other than* the original manufacturer.  *See, e.g.*, *O.D.F. Optronics Ltd. v. Remington Arms Co.*, No. 08 Civ. 4746(DLC), 2008 WL 4410130, at *12 (S.D.N.Y. Sept. 26, 2008) (first-sale rule applies to "distributor" "even though the sale is not authorized").  Chanel also does not, and cannot, allege that TRR or its consignors materially altered any products sold.  *See Luxottica Grp. S.p.A. v. Bausch & Lomb Inc.*, 160 F. Supp. 2d 545, 552 (S.D.N.Y. 2001) (first-sale rule applied where plaintiff did not allege that reseller "altered the goods" it resold).  This doctrine thus independently defeats Chanel's Lanham Act claims as well.

## II.    <u>Chanel Fails to State a Claim Under the Lanham Act for False Advertising.</u>

To state a claim of false advertising under the Lanham Act, a plaintiff must first "show that either: (1) the challenged advertisement is literally false, or (2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers."  *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992).  Chanel does not state a claim under either theory.

A claim of "literal falsehood" requires "a statement, on its face, [that] conflicts with reality."  *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999).  A court "may rely on its own common sense and logic in interpreting the message of the advertisement."  *Hertz Corp.*

*v. Avis, Inc.*, 867 F. Supp. 208, 212 (S.D.N.Y. 1994). "This inquiry requires evaluating the message conveyed in full context. . . . [O]nly an *unambiguous* message can be literally false; if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016) (emphasis in original) (internal quotation marks omitted). By contrast, "[p]laintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener that conflicts with reality—a claim that invites a comparison of the impression, rather than the statement, with the truth." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018) (internal quotation marks and alterations omitted) (dismissing claim that bracelet contained water from Mount Everest was literally or impliedly false notwithstanding possibility of evaporation).

Chanel's central claim is that TRR's representations about its process and the authenticity of the products it sells "falsely convey[] that Chanel, not The RealReal, has authenticated the item at issue or otherwise confirmed its authenticity." FAC ¶ 52. If, as Chanel alleges, "*only Chanel itself*" can ever authenticate Chanel merchandise, *id.* ¶ 34 (emphasis added), *any* independent authentication would seed a false advertising claim, a blow to lawful competition that is neither contemplated nor permitted by the statute. *See Tiffany*, 600 F.3d at 103.

### A.    TRR's Representations Concerning Its Authentication Process Are Not Literally or Impliedly False.

The FAC contends that TRR's representations falsely represent and/or misleadingly suggest that Chanel is affiliated with TRR, has endorsed TRR and its authentication process, and/or trained TRR's authenticators. *E.g.*, FAC ¶¶ 38, 51, 52, 81, 82, 85, 87, 89. To the contrary, and as established in the FAC itself, TRR expressly informs consumers that it has **no** affiliation with any brands it sells:

- "The RealReal's authentication process is unique to The RealReal and independent of any brands";

- "We staff trained, in-house professionals . . . who work to ensure the items we sell are authentic and in beautiful condition";

- "All items are put through a multi-point, brand-specific authentication process by a trained team of luxury experts headed by our Senior Director of Authentication & Brand Compliance";

- "Brands identified are not involved in the authentication of the products being sold, and none of the brands sold assume any responsibility for any products purchased from or through the website."

*Id.*, Ex. D at 3. By expressly disclaiming any relationship with any one brand, including Chanel, TRR's advertising neither "conflicts with reality" on its face, *Schering*, 189 F.3d at 229, nor leaves "an impression . . . that conflicts with reality," *Lokai*, 306 F. Supp. 3d at 638.

Faced with TRR's clear disclaimers, Chanel now tries to plead that they are "neither present nor sufficiently conspicuous or likely to be seen by all consumers." FAC ¶ 39. However, TRR's disclaimers exist in two places: (1) TRR's Terms of Service; and (2) immediately alongside TRR's description of its authentication process on the TRR website. *Id.*, Ex. D at 3. Because TRR's customers must agree to TRR's Terms of Service even to enter the website, they are bound by those terms.[9] *See Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534 (S.D.N.Y. 2018) (dismissing false advertising claim concerning allegedly misleading attorney profile where disclaimer informed consumers that some reviews might not be posted); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548, 551-52 (S.D.N.Y. 2018) (Broderick, J.) (plaintiff was bound to terms of service where users were required to agree to terms in order to register for website). Chanel's claim that the disclaimers are "not sufficient to adequately qualify, contextualize, explain, or

---

[9] *Terms of Service*, The RealReal, https://www.therealreal.com/terms (last visited Mar. 3, 2019). TRR's website, which the FAC incorporates by reference, requires visitors to register as members and agree to the Terms of Service in order to enter the website. Users cannot access product listings or purchase goods without registering and agreeing to the Terms. *See* The RealReal, https://www.therealreal.com (last visited Mar. 3, 2019).

negate" TRR's representations, FAC ¶ 39, is contradicted by TRR's clear and repeated repudiation of *any* affiliation with the brands it sells, *see id.*, Ex. D at 3.  Moreover, the disclaimers appear in precisely the same font and location as certain statements that Chanel claims are false and misleading.  *See id.* ¶ 34 & Ex. D.  Chanel cannot have it both ways:  it cannot contend that certain TRR statements are sufficiently present and conspicuous to confuse or mislead consumers and then summarily dismiss *immediately adjacent language* in the same font as "neither present nor sufficiently conspicuous or likely to be seen."  *Id.* ¶ 39.

Chanel's allegations also fail because Chanel does not and cannot allege that any consumer has actually mistakenly believed that Chanel authenticated or verified the products on TRR's website.  *See Bd.-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556, 560-61 (2d Cir. 2018) (affirming dismissal where "[t]he Complaint offers no non-conclusory allegations or facts to support the claim that *consumers* have been misled or confused," *id.* at 561 (emphasis added)); *accord Vincent v. Utah Plastic Surgery Soc'y*, 621 F. App'x 546, 550 (10th Cir. 2015) (affirming dismissal where complaint pled no "specific factual allegation on the issue of actual consumer deception" and included only "mere speculation"); *Lokai*, 306 F. Supp. 3d at 639 ("At the pleading stage, the plaintiff must allege that consumers or retailers were misled or confused by the challenged advertisement and '*offer facts* to support that claim.'" (emphasis added)).  The FAC contains only conclusory allegations of assumed consumer confusion, without alleging facts establishing that any particular consumer was actually confused.  *E.g.*, FAC ¶¶ 85 ("Defendant's implicitly false statements . . . have caused and are likely to cause consumers to believe mistakenly that Chanel verified their authenticity . . . ."), 49, 55.  These allegations are also implausible given the express disclaimers included in the FAC, *id.*, Ex. D. at 3, and in TRR's Terms of Service.  Chanel's contrary reading—that TRR's disclosures somehow evince

some involvement by Chanel—ignores both the fact and the plain meaning of the statements themselves.[10]  That deficiency alone requires dismissal.

Finally, Chanel makes the absurd, and manifestly legally insufficient, assertion that TRR's representations regarding its authenticators are false because "[o]nly such persons that have been properly and adequately trained by Chanel have the requisite expertise to fully authenticate genuine Chanel products."  *Id.* ¶ 38.  TRR's description of its authenticators as experts is immune from challenge as "a general expression of opinion."  *Groden v. Random House*, No. 94 Civ. 1074 (JSM), 1994 WL 455555, at *5 (S.D.N.Y. Aug. 23, 1994) ("Subjective claims . . . which cannot be proven either true or false, are not actionable under the Lanham Act.") (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (holding that "we're the low cost commercial collection experts" constituted nonactionable opinion)).  This argument is nothing more than Chanel's wholly untenable "only Chanel itself can know what is genuine Chanel" proposition.  FAC ¶ 34.  As set forth above, this assertion fails as a matter of law.

**B.    TRR's Representations Concerning the Authenticity of Its Products Are Not Literally or Impliedly False.**

Chanel also claims that TRR's "[g]uarantee of [a]uthenticity is [f]alse," *id.* § II(B), because "The RealReal has and knowingly continues to sell counterfeit CHANEL-branded products," *id.* ¶ 81.  This theory is also fatally deficient.

*First*, TRR's authenticity guarantee must be read "in full context," *Apotex*, 823 F.3d at 63:  TRR "ensure[s] that every item on the RealReal is 100% the real thing[], thanks to our

---

[10] These disclaimers also flatly contradict Chanel's allegations that TRR "does not advise consumers that neither Defendant The RealReal nor its purported experts have any affiliation with or training with respect to authentication from Chanel, that The RealReal does not obtain its inventory from Chanel, and that Chanel has not authenticated or opined on behalf of The RealReal . . . as to the genuineness of the product."  FAC ¶ 51.  As Chanel's own pleading makes clear, *see id.*, Ex. D at 3, those assertions are false and do not deserve the presumption of truth.

dedicated team of authentication experts," FAC ¶ 2. TRR's guarantee that each item "is 100% the real thing[]" is a guarantee that each item offered for sale has been authenticated through TRR's authentication process, a fact which Chanel does not and cannot dispute. *See id.* ¶¶ 33, 34, Ex. D at 3 ("Everything passes through our strict authenticity tests before it is curated into daily sales."). As in any secondary market, TRR's authentication process may not immediately catch every instance of attempted deception. Indeed, TRR explains that it will destroy any items found to be counterfeit—a guarantee that acknowledges occasional attempts to consign counterfeit goods. *Id.*, Ex. D at 3.

*Second*, Chanel's allegations regarding TRR's sale of a few purportedly counterfeit products do not render TRR's marketing false. The alleged existence of a defective product does not, without more, undermine the accuracy of a marketing statement applied to thousands of products. *See Bd.-Tech*, 737 F. App'x at 559 (certification that light switches complied with safety standards was not false although certain switches tested by plaintiff allegedly did not comply); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *6 (N.D. Cal. Mar. 15, 2016) (dismissing state law false advertising claims concerning statement that batteries were "guaranteed for 10 years in storage" despite allegations that certain batteries leaked, because "[a]n express warranty is not a representation that a product has no defects, but rather a promise to repair, replace, or refund a failed product"); *accord Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007). Were the contrary true, any consumer who returns a defective product could state a claim for false advertising.

The FAC fares no better by including two negative reviews posted on the Better Business Bureau's ("BBB") website. Instead of alleging statements of fact based on identifiable TRR customers, Chanel relies on anonymous reviews devoid of any identifying information or

19

context.  FAC ¶¶ 62-64.  These anonymous, online reviews do not substantiate Chanel's falsity allegations and are insufficient to render Chanel's claims plausible.  *See Donnenfeld v. Petro Home Servs.*, Civil Action No. 16-882, 2017 WL 1250992, at *5 (D.N.J. Mar. 24, 2017) (dismissing false advertising claim in part because plaintiff could not use "unconfirmed, cut-and-pasted, on-line complaints to support a plausibility finding," including because the "Court does not even know if the persons who posted are actually real" or "whether the persons who posted were doing so for other than their stated reason," such as "at the request of a competitor").  Moreover, in cherry-picking two anonymous reviews, Chanel ignores TRR's "BBB Rating" of "A+," which independently renders Chanel's conclusions implausible.[11]

Finally, Chanel's claim that TRR "knowingly continues to sell counterfeit CHANEL-branded products," FAC ¶ 81; *see also id.* ¶ 47, is flatly contradicted by documents attached to the FAC, which show that TRR seeks to *prevent* the sale of counterfeit merchandise, *id.*, Ex. D at 3.  Chanel's assertion that, after it informed TRR of the alleged counterfeit bags, TRR "rejected the claims," *id.* ¶ 60, is simply false.  As shown in Exhibit F to the FAC, TRR responded quickly and asked Chanel for further information so that it could assess its claim, understand why Chanel believed the bags were not authentic, and thereby ensure that any counterfeits would be discovered and destroyed.  *Id.*, Ex. F at 2, 5-6.  Chanel's response was to file this lawsuit.

---

[11] *See TheRealReal.com*, Better Business Bureau, https://www.bbb.org/us/ca/san-francisco/profile/ecommerce/therealrealcom-1116-460621 (last visited Mar. 3, 2019).  The "A+" rating reflects whether the business, among other factors, "appropriately responded to" complaints; "resolved the complaints in a timely manner to the customer's satisfaction"; "made a good faith effort to resolve complaints"; and "failed to resolve the underlying cause(s) of a pattern of complaints."  *Overview of Ratings: Rating Elements*, Better Business Bureau, https://www.bbb.org/overview-of-bbb-ratings (last visited Mar. 3, 2019).

### C.     TRR's Representations That Certain Goods Are "Vintage" Are Not Literally or Impliedly False.

In the FAC, Chanel has introduced a new and unsustainable theory of falsity: that TRR represents "that certain CHANEL-branded goods are 'vintage,' when, in fact, they are not.'" *Id.* ¶ 90; *see id.* ¶¶ 40, 91-93, 95. These allegations—apparently lifted from Chanel's complaint against WGACA—also fail. Chanel's attack on TRR's representation of Chanel products that "are likely less than 20 years old" as "vintage" depends entirely on an informal Federal Trade Commission ("FTC") article stating, in the context of "Shopping for Antiques," that a "vintage collectible is an item that is at least 50 years old." *Id.* ¶¶ 40-41.[12] Despite misleadingly characterizing this consumer-oriented article as an "advisory," *id.* ¶ 41, Chanel does not and cannot allege that this definition applies to Chanel products consigned to TRR, or that the definition has any legal effect.[13] Chanel thus fails to allege that TRR's representations are literally false. *See Schering*, 189 F.3d at 229. Nor does Chanel plead implied falsity, including because it does not and cannot either "allege that consumers or retailers were misled or confused" or "offer facts to support that claim." *Lokai*, 306 F. Supp. 3d at 639.[14]

---

[12] *Shopping for Antiques*, FTC (Apr. 2008), https://www.consumer.ftc.gov/articles/0092-shopping-antiques. The consumer-oriented article appears in the "Money & Credit > Shopping & Saving" section of the FTC's website.

[13] Indeed, such an inflexible definition would conflict with the dictionary definition of "vintage" as simply "old." *Vintage*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/vintage (last visited Mar. 3, 2019). That definition would also conflict with the common usage of the word "vintage," including in publications cited in FAC ¶ 23. *See* Maggie Maloney, *The Last Time We Saw Blake Lively's Vintage Chanel Dress, It Was Worn By a Princess*, Town & Country (Oct. 17, 2017), https://www.townandcountrymag.com/style/fashion-trends/a13039487/blake-lively-chanel-dress (describing ten-year-old Chanel dress as "vintage"); Tina Craig, *How to Shop for Vintage Bags*, Harper's Bazaar (Aug. 5, 2015), https://www.harpersbazaar.com/fashion/trends/a11702/ how-to-shop-for-vintage-bags/ ("It was once the rule that for a bag to be considered officially vintage, it had to be at least 20 years old. Now a bag 10 years or older can be termed vintage.").

[14] Chanel's allegations are also internally inconsistent: if the FTC's "50 years old" definition governs, then there is no particular reason for Chanel to have identified only those products "less than 20 years old" as mislabeled. FAC ¶¶ 40-41.

### D.    Chanel Fails to Allege the Requisite Injury.

To state a false advertising claim, "a plaintiff must allege an injury to a commercial interest in reputation or sales" and must prove proximate cause, *i.e.*, that the injury "flow[ed] directly from the deception wrought by the defendant's advertising."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–33 (2014); *see Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994) ("[L]ikelihood of injury and causation will not be presumed, but must be demonstrated in some manner."); *Cecere v. R.J. Reynolds Tobacco Co.*, No. 98 Civ.2011(RPP), 1998 WL 665334, at *2 (S.D.N.Y. Sept. 28, 1998) (dismissing complaint due to plaintiffs' "conclusory allegation" of injury and economic loss).

Chanel fails to allege an injury to its "reputation or sales" from TRR's alleged false advertising.  Chanel's allegation that TRR's advertising is "diverting consumer purchases of genuine Chanel goods," FAC ¶ 89, is conclusory and devoid of any supporting facts.  Indeed, the Court can credit the equally if not more likely conclusion that, far from diverting sales, TRR's business actually increases Chanel's sales by cultivating consumer interest in the brand.  *See Iqbal*, 556 U.S. at 681 (rejecting respondent's theory of discriminatory purpose "given more likely explanations" of defendants' purpose); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (rejecting plaintiffs' conspiracy theory in light of "an obvious alternative explanation" for defendants' conduct).  Whether TRR's advertisements to its own customers (who must sign TRR's Terms of Service to enter the site and thereby demonstrate an intent to use the site) are false has no bearing on Chanel's sales of new Chanel goods to its customers.  Therefore, Chanel does not and cannot show the "direct[]" injury required to establish proximate cause.  *See Lexmark*, 572 U.S. at 132-33.

Chanel's claim that TRR's advertising is "harming Chanel's goodwill and reputation," FAC ¶ 89, is similarly conclusory and implausible given that TRR's allegedly false advertising

does not refer to Chanel; rather, it accurately describes TRR's authentication process.  The FAC now alleges reputational harm from when products are "passed off as genuine (when in fact they are made of substandard materials and/or not manufactured and approved by Chanel)," *id.* ¶ 61, but that alleged harm would derive from the existence of counterfeits, not from TRR's allegedly false advertising.  The FAC's claim that "reputational harm" results from the "implied association or affiliation between Chanel and [TRR]," *id.*, also does not sufficiently plead proximate cause because TRR repeatedly disclaims any such association, *id.*, Ex. D at 3.

## III.    Chanel Fails to State a Claim Under New York State Law.

Chanel also alleges common law unfair competition under New York law and statutory unfair competition and false advertising under N.Y. G.B.L. §§ 349 and 350.  Lanham Act and related state-law claims are resolved together.  *E.g.*, *Tiffany*, 600 F.3d at 101 n.6; *Crye Precision LLC v. Duro Textiles, LLC*, No. 15cv1681 (DLC), 2016 WL 1629343, at *8 (S.D.N.Y. Apr. 22, 2016), *aff'd*, 689 F. App'x 104 (2d Cir. 2017).  Chanel's state law claims fail because (1) they are premised on the same defective factual allegations as the Lanham Act claims and (2) Chanel fails to allege the additional elements required for each claim.

### A.    Chanel Fails to Plausibly Allege That TRR Acted in Bad Faith.

"Under New York law, unfair competition claims 'closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or intent.'" *Crye Precision*, 2016 WL 1629343, at *8.  "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."  *Id.*

Despite alleging in conclusory fashion that TRR acted "in bad faith" by removing serial numbers from certain product listings, FAC ¶ 60, Chanel fails to plausibly allege, as required, that TRR "adopt[ed] the [Chanel] mark with the intent to sow confusion" as to the parties'

affiliation.[15]  *Crye Precision*, 2016 WL 1629343, at *8.  To the contrary, as Chanel itself

establishes in the FAC, TRR makes clear to consumers that it has ***no*** relationship with the brands

of the products it resells.  FAC, Ex. D at 3.  Further, as Chanel acknowledges, TRR advertises its

business as a legal reseller of authentic, secondhand Chanel goods.  *E.g.*, *id.* ¶¶ 2 (TRR

"advertises and purports to sell authentic, secondhand luxury products, including purportedly

authentic CHANEL-branded products"), 36.  Thus, despite its passing reference to "bad faith,"

the FAC does not and cannot state an unfair competition claim.  *See WGACA, LLC*, 2018 WL

4440507, at *4 (dismissing unfair competition claim where Chanel did not "show[] that

WGACA intended to sow confusion between the two companies' products").

### B.    Chanel Fails to Allege Specific and Substantial Public Injury.

To state a claim under N.Y. G.B.L. §§ 349 and 350, Chanel must allege that "(1) [the]

defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was misleading

in a material way, and (3) that [the] plaintiff consequently suffered injury."  *RCA Trademark*

*Mgmt. S.A.S. v. Voxx Int'l Corp.*, No. 14CV6294-LTS-HBP, 2015 WL 5008762, at *3 (S.D.N.Y.

Aug. 24, 2015).  Trademark claims are not cognizable under Sections 349 or 350 "unless 'there

is a specific and substantial injury to the public interest over and above ordinary trademark

infringement or dilution.'"  *Id.* at *4.  Only injuries posing a "potential danger to the public

health or safety"—not mere consumer confusion or the sale of counterfeit goods—will sustain a

violation under these sections.  *Id.*; *see also id.* at *3-5.

---

[15] Chanel's allegations are implausible.  Although Chanel claims that TRR's removing serial numbers "impedes Chanel's ability to identify counterfeit goods," FAC ¶ 60, Chanel acknowledges that serial numbers alone are insufficient to identify counterfeits:  before filing suit, Chanel told TRR that it had determined that the allegedly counterfeit bags were counterfeit only after "review of the bags and the related identification materials," *id.*, Ex. F at 2.  In addition, on a motion to dismiss, the Court should not accept Chanel's conclusory allegation of "bad faith" but rather the equally likely conclusion that TRR removed serial numbers to impede counterfeiters' use of those numbers in their imitations.  *See Iqbal*, 556 U.S. at 681; *Twombly*, 550 U.S. at 567.

Chanel has now added unfounded and unsupportable assertions of "harm suffered by consumers and the buying public," FAC ¶ 62, including harm supposedly "substantial and injurious to the public," *id.* ¶ 61.  Despite those stray conclusory allegations, it is clear that Chanel's real concern is *not* with public injury but with the very existence of the secondary market for Chanel goods:  according to Chanel, TRR is injuring Chanel by "diverting consumer purchases of genuine Chanel goods, and by harming Chanel's goodwill and reputation."  *Id.* ¶ 118.[16]  Chanel does not and cannot allege facts showing any public harm caused by consumers' participation in the legitimate secondary market, let alone harm posing "potential danger to the public health or safety."  *RCA Trademark Mgmt.*, 2015 WL 5008762, at *4.  Rather, the FAC alleges only the quintessential infringement injuries: harm to a competitor's goodwill and reputation.  *E.g.*, FAC ¶¶ 8, 61, 86, 89, 94, 100, 118.  These allegations do not create liability under Sections 349 and 350.  *See RCA Trademark Mgmt.*, 2015 WL 5008762, at *5.

## CONCLUSION

For the foregoing reasons, TRR respectfully requests that the Court grant its motion to dismiss the FAC with prejudice.

---

[16] Chanel's allegations of public harm may independently be disregarded as conclusory and implausible.  Chanel claims that "[t]he harm suffered by consumers and the buying public . . . is well-documented online," but supports that allegation with just two anonymous reviews lacking any supporting identifying information.  FAC ¶¶ 62-64.

Dated: March 4, 2019

Respectfully submitted,

*/s/ Karen L. Dunn*
BOIES SCHILLER FLEXNER LLP
Karen L. Dunn (Admitted *Pro Hac Vice*)
kdunn@bsfllp.com
1401 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Leigh M. Nathanson
lnathanson@bsfllp.com
Laura E. Harris
lharris@bsfllp.com
Yotam Barkai
ybarkai@bsfllp.com
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

SIDLEY AUSTIN LLP
Rollin A. Ransom (Admitted *Pro Hac Vice*)
rransom@sidley.com
Lauren M. De Lilly (Admitted *Pro Hac Vice*)
ldelilly@sidley.com
555 West Fifth Street
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant The RealReal, Inc.*