SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore C. Max
Tyler E. Baker
Thomas M. Monahan
tmax@sheppardmullin.com
tbaker@sheppardmullin.com
tmonahan@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

*Attorneys for Plaintiff Chanel, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHANEL, INC.,<br><br>                              Plaintiff,<br><br>        v.<br><br>THE REALREAL, INC.,<br><br>                              Defendant. | Civil Action No. 1:18-cv-10626-VSB<br><br>*ORAL ARGUMENT REQUESTED* |

**PLAINTIFF CHANEL, INC.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT THE REALREAL, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................. 3

    A.    The CHANEL Brand and Trademarks Are Famous and Well Known Causing Merchandise Bearing the CHANEL Trademarks To Be in Great Demand............ 3

    B.    Defendant TRR's Counterfeiting and Advertising and Marketing Infringes and Trades on Chanel's Trademarks and Brand......................................................... 4

ARGUMENT .......................................................................................................................... 6

I.    The Standard of Review on a Motion to Dismiss Is Heavily Weighted In Favor of Chanel: All Factual Allegations in the Complaint Must Be Accepted As True ................ 6

II.    Chanel's Complaint Sufficiently Pleads Claims For Trademark Infringement and Counterfeiting ................................................................................................................ 7

    A.    TRR's Reliance on the Traditional Polaroid Factors Is Misplaced in a Counterfeiting Case ................................................................................................ 8

    B.    The "First-sale" Doctrine Is Inapplicable in the Case of Counterfeit Goods ....... 10

    C.    An Evaluation of "Nominative Fair Use" Is Not Appropriate on a Motion to Dismiss ............................................................................................................... 12

III.    Chanel's Complaint Sufficiently Pleads Claims For False Advertising.......................... 13

    A.    Chanel Has Sufficiently Pleaded That TRR's Claims Regarding the Authenticity of its Products and Authenticity Process Are False ............................................. 14

    B.    Chanel Has Adequately Pleaded Facts Regarding Plausible Confusion .............. 19

    C.    TRR Cannot Disclaim Away Its Literally False Statements and Evaluation of the Sufficiency of Any Disclaimers Is Not Appropriate on a Motion to Dismiss ...... 20

    D.    Whether Certain Goods Are "Vintage" Is an Issue of Fact ................................. 23

IV.    TRR's Contrary Fact Assertions Cannot Be Credited, Let Alone Dispositive, On a Motion To Dismiss ...................................................................................................... 24

V.    To the Extent the Court is Inclined to Grant Any Part of TRR's Motion, Chanel Should be Permitted Leave to Amend the FAC ...................................................................... 25

CONCLUSION..................................................................................................................... 25

# **TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*
    131 F. Supp. 3d 196 (S.D.N.Y. 2015)....................................................................................6

*Abbott Labs. v. Adelphia Supply USA*
    No. 15CV5826CBAMDG, 2015 WL 10906060 (E.D.N.Y. Nov. 6, 2015),
    *aff'd sub nom. Abbott Labs. v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6
    (2d Cir. 2016)......................................................................................................................10

*Agerbrink v. Model Serv. LLC*
    155 F. Supp. 3d 448 (S.D.N.Y. 2016)..................................................................................25

*Am. Home Prods. Corp. v. Johnson & Johnson*
    654 F. Supp. 568 (S.D.N.Y. 1987) ......................................................................................22

*Ashcroft* v. *Jabal*
    556 U.S. 662 (2009)..............................................................................................................6

*Avola v. Louisiana–Pac. Corp.*
    991 F. Supp. 2d 381 (E.D.N.Y. 2013) .................................................................................13

*Basmadjian v. RealReal, Inc.*
    No. C 17-06910 WHA, 2018 WL 2761857 (N.D. Cal. June 8, 2018).....................................2

*Basquiat ex rel. Estate of Basquiat v. Sakura Int'l*
    No. 04 CIV. 1369 (GEL), 2005 WL 1639413 (S.D.N.Y. July 5, 2005)................................16

*In re Bausch & Lomb, Inc. Sec. Litig.*
    No. 01-CV-6190-CJS, 2003 WL 23101782 (W.D.N.Y. Mar. 28, 2003)...............................23

*Bd.-Tech Elec. Co. v. Eaton Corp.*
    737 F. App'x 556 (2d Cir. 2018) .........................................................................................18

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)....................................................................................................6, 7, 24

*BIC Corp. v. Far Eastern Source Corp.*
    No. 99-CV-11385 (HB), 2000 WL 1855116 (S.D.N.Y. Dec. 19, 2000), *aff'd*,
    23 F. App'x 36 (2d Cir. 2001) .............................................................................................20

*Burberry Ltd., v. Euro Moda, Inc.*
    No. 08 Civ. 5781(CM), 2009 WL 1675080 (S.D.N.Y. June 10, 2009)...................................8

*Burton v. iYogi, Inc.*
   No. 13-CV-6926 DAB, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015)............................15, 17

*Cashmere & Camel Hair Mfgs. Inst. v. Saks Fifth Ave.*
   284 F.3d 302 (1st Cir. 2002) ....................................................................................19

*Chambers v. Time Warner, Inc.*
   282 F.3d 147 (2d Cir. 2002)........................................................................................6

*Chanel, Inc. v. Veronique Idea Corp.*
   795 F. Supp. 2d 262 (S.D.N.Y. 2011)..........................................................................9

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*
   843 F.3d 48 ........................................................................................................14, 18

*CJ Prods. LLC v. Snuggly Plushez LLC*
   809 F. Supp. 2d 127 (E.D.N.Y. 2011) ..........................................................15, 17, 18, 19

*Coach, Inc. v. Horizon Trading USA Inc.*
   908 F. Supp. 2d 426 (S.D.N.Y. 2012)..........................................................................9

*Colligan v. Activities Club of New York, Ltd.*
   442 F.2d 686 (2d Cir. 1971)........................................................................................7

*Cvent, Inc. v. Eventbrite, Inc.*
   739 F. Supp. 2d 927 (E.D. Va. 2010) ........................................................................23

*Davis v. Avvo, Inc.*
   345 F. Supp. 3d 534 (S.D.N.Y. 2018).........................................................................23

*Doe v. Columbia Univ.*
   831 F.3d 46 (2d Cir. 2016)........................................................................................24

*ESPN, Inc. v. Quicksilver, Inc.*
   586 F. Supp. 2d 219 (S.D.N.Y. 2008)......................................................................6, 11

*Euro-Pro Operating LLC v. Euroflex Ams.*
   No. 08CV6231 (HB), 2008 WL 5137060 (S.D.N.Y. Dec. 8, 2008)....................................22

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*
   No. 12-MD-2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ......................19

*FUJIFILM N. Am. Corp. v. Big Value Inc.*
   No. 16-CV-5677 (BMC), 2018 WL 4210132 (E.D.N.Y. Sept. 4, 2018)...............................10

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...........................................................................19

*Grand v. Schwarz*
   15-CV-8779 (KMW), 2016 WL 2733133 (S.D.N.Y. May 10, 2016) ....................................12

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*
   286 F. Supp. 2d 284 (S.D.N.Y. 2003) ................................................................................8, 10

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*
   No. 12 CIV. 8205, 2013 WL 3943267 (S.D.N.Y. July 31, 2013) ...........................................9

*Hoey v. Sony Elecs. Inc.*
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ...............................................................................17

*In re Houbigant Inc.*
   914 F. Supp. 964 (S.D.N.Y. 1995) .......................................................................................10

*Hughs v. Ester C Co.*
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ..................................................................................21

*Int'l Council of Shopping Ctrs., Inc.*
   No. 17-CV-5526 (AJN), 2018 WL 4284279 (S.D.N.Y. Sept. 7, 2018) .................................12

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*
   823 F.3d (2d Cir. 2016).........................................................................................................12

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Procter & Gamble Co.*
   90 F. App'x 8 (2d Cir. 2003) .................................................................................................13

*JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc.*
   957 F. Supp. 426 (S.D.N.Y. 1997) ........................................................................................21

*Luxottica Grp. S.p.A. v. Bausch & Lomb Inc.*
   160 F. Supp. 2d 545 (S.D.N.Y. 2001) ...................................................................................11

*Manigault v. ABC Inc.*
   17-CV-7375 (KNF), 2018 WL 2022823 (S.D.N.Y. Apr. 12, 2018)........................................12

*Manning Int'l Inc. v. Home Shopping Network, Inc.*
   152 F. Supp. 2d 432 (S.D.N.Y. 2001) ...................................................................................24

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*
   112 F.3d 1296 (5th Cir. 1997) ..............................................................................................11

*Merck Eprova AG v. Gnosis S.p.A.*
   760 F.3d 247 (2d Cir. 2014)............................................................................................18, 19

*In Re Milo's Dog Treats Consol. Cases*
   9 F. Supp. 3d 523 (W.D. Penn. 2014) ..................................................................................15

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Krege Co.*
  316 U.S. 203 (1942)..................................................................................................7

*Museum of Modern Art v. MoMacha IP LLC*
  339 F. Supp. 3d 461 (S.D.N.Y. 2018)....................................................................21

*Nat'l Ass'n of Pharma-Mfrs., Inc. v. Ayerst Labs., Div. of and A.M. Haye Prods.
  Corp.*
  850 F.2d 904 (2d Cir. 1988)....................................................................................17

*Nicosia v. Amazon.com, Inc.*
  834 F.3d 220 (2d Cir. 2016)....................................................................................22

*Pirone v. MacMillian*
  894 F.2d 579 (2d Cir. 1990)......................................................................................8

*Plazza v. Airbnb, Inc.*
  289 F. Supp. 3d 537 (S.D.N.Y. 2018)....................................................................22

*Pulse Creations, Inc. v Vesture Grp., Inc.*
  154 F. Supp. 3d 48 (S.D.N.Y. 2015)........................................................................6

*Punian v. Gillette Co.*
  No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ...............17

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*
  No. 14CV6294-LTS-HBP, 2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015)............10

*Sawabeh Info. Servs. Co. v. Brody*
  832 F. Supp. 2d 280 (S.D.N.Y. 2011)..............................................................13, 20

*Schering Corp. v. Pfizer Inc.*
  189 F.3d 218 (2d Cir. 1999)....................................................................................14

*Sciele Pharma, Inc. v. Brookstone Pharm.*
  LLC, No. 1:09-CV-3283-JEC, 2010 WL 9098290 (N.D. Ga. June 23, 2010) .......20

*Southland Sod Farms v. Stover Seed Co.*
  108 F.3d 1134 (9th Cir. 1997) ................................................................................15

*Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*
  No. 17-CV-5845 (VSB), 2019 WL 464583 (S.D.N.Y. Feb. 6, 2019) ......................8

*Streit v. Bushnell*
  424 F. Supp. 2d 633 (S.D.N.Y. 2006)....................................................................25

*Student Advantage, Inc. v. CollegeClub.com*
  No. 99 CIV. 8604 (JSR), 1999 WL 1095601 (S.D.N.Y. Dec. 3, 1999) .......13, 14, 20

*Sung Cho v. City of New York*
    910 F.3d 639 (2d Cir. 2018)..................................................................6, 9, 24

*Telebrands Corp. v. E. Mishan & Sons*
    Civil Action No. 97 Civ. 1414 (RPP), 1997 WL 232595 (S.D.N.Y. May 7,
    1997) ...............................................................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007)............................................................................................6

*Tiffany (NJ) Inc. v. eBay Inc.*
    600 F.3d 93 (2d Cir. 2010)................................................................................12

*Time Warner Cable, Inc. v. DIRECTV, Inc.*
    497 F.3d 144 (2d Cir. 2007)..................................................................13, 15, 17

*Verizon Directories Corp. v. Yellow Book USA, Inc.*
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ..............................................................16

*Villager Pond, Inc. v. Town of Darien*
    56 F.3d 375 (2d Cir. 1995)..................................................................................6

*Walia v. Veritas Healthcare Solutions, L.L.C.*
    No. 13 Civ. 6935 (KPF), 2015 WL 4743542 (S.D.N.Y. Aug. 11, 2015) ..............24

*Williams v. Gerber Products Co.*
    552 F.3d 934 (9th Cir. 2008) .............................................................................19

*Zino Davidoff S.A. v. CVS Corp.*
    571 F.3d 238 (2d Cir. 2009)..........................................................................7, 11

Other Authorities

Fed. R. Civ. P. 12(b)(6)................................................................................................3

Fed. R. Evid. 201(b)..................................................................................................24

Rule 8(a)....................................................................................................................13

## PRELIMINARY STATEMENT

There is no dispute that Defendant The RealReal, Inc. ("TRR" or "Defendant") has repeatedly and widely advertised, marketed and branded its business to consumers as "authenticated luxury consignment" which ensures that each item it sells "is 100% the real thing" because there is "an expert behind every item", and of its rigorous authentication process conducted by its "team of authentication experts, horologists and gemologists."  Plaintiff Chanel, Inc. ("Chanel" or "Plaintiff")'s First Amended Complaint ("FAC") ¶¶ 2, 33; Declaration of Tyler E. Baker In Support of Chanel's Opposition to TRR's Motion to Dismiss Chanel's FAC For Failure to State a Claim (the "Motion"), executed April 3, 2019,  (the "Baker Decl.") ¶¶ 2-4, Exs. 1-3.  TRR claims that "[e]ach product we accept is put through a multiple-point, brand specific authentication process by a team of luxury experts headed by our Director of Authentication & Brand Compliance."  FAC ¶ 34.  TRR's Founder and CEO Julie Wainwright and its Chief Authenticator, Graham Wetzbarger, chronicle these advertising claims in promotional videos and advertisements:

> You can be assured that every product's been inspected, authenticated, and we stand behind it as a company.  So as a customer, any anxiety you have about ordering online should be eliminated.  *We don't sell fakes and we have experts that stand behind each product.  It's so important for us to be authentic, we put "real" in our name twice.*

*See* Baker Decl. ¶¶ 3, 4; Exs. 2, 3 (Mr. Wetzbarger states that: "Every item you buy from The RealReal is just that: real.  It's in our name.  It's the backbone and pillar of our company."); FAC ¶¶ 2, 5, 33, 34, 38; Ex. D.

Plaintiff Chanel's FAC alleges that, notwithstanding TRR's repeated advertising and marketing claims, TRR has falsely advertised as genuine and sold counterfeit CHANEL-branded goods.  Chanel also has alleged that TRR uses the term "vintage" with regard to items that are not "vintage" as that term has been defined by the Federal Trade Commission ("FTC").  FAC ¶

-1-

41.  In response to Chanel's Complaint, rather than change the advertising copy, TRR removed CHANEL product serial numbers which can be used to help detect counterfeit CHANEL-branded goods, compounding its misleading and false advertising claims.  *Id.* ¶¶ 60, 61.

In TRR's Memorandum of Law in Support of their Motion ("Memo") [Dkt. No. 30], TRR contends that "Chanel seeks to shut down the secondary market for Chanel goods in part by permanently preventing TRR and its consignors from reselling Chanel products on TRR's platform" (Memo at 1) and that TRR's counterfeiting and false and misleading advertising are exculpated by the first sale doctrine and nominative fair use defense (*id.* at 2).  In addition, TRR also incredibly asserts that TRR's advertising claims about the genuineness of its CHANEL-branded products and its rigorous authentication by its experts are only "expression of opinion." TRR further argues that its claim that each item it sells "is 100% the real thing" means only that TRR has an authentication process that is used with respect to every item sold (Memo at 18-19).[1]

TRR's business model and its trust with customers is founded upon TRR's advertising and marketing, which claims, *inter alia*, that each item sold "is 100% the real thing," its authentication process is "rigorous," and that there is "an expert behind every item."  Having made such claims, TRR bears the responsibility of substantiating its claims and faces the consequences when such claims are false.  Simply put, TRR cannot hold itself out as an expert authenticator and seller of "100% real" CHANEL-branded products and then, after advertising and selling counterfeit CHANEL-branded goods, claim that its advertising claims are merely "general expression[s] of opinion" that are "immune from challenge."  Memo at 18.

---

[1] In contrast, the United States District Court for the Northern District of California recently observed that "[TRR]'s website guarantees that its products are '100% the real thing.'" *Basmadjian v. RealReal, Inc.*, No. C 17-06910 WHA, 2018 WL 2761857, at *1 (N.D. Cal. June 8, 2018) (denying TRR's motion to dismiss on false advertising and unfair competition claims).

Contrary to TRR's assertions, this is _**not**_ a case about stifling competition but instead part of Chanel's ongoing effort to stop counterfeiting of its exclusive CHANEL products and the deception of consumers with false advertising.  If TRR had not misrepresented its purported "rigorous expert authentication" and the authenticity of the counterfeit CHANEL-branded goods it sells, Chanel would have not brought this action.  There is no basis for a dismissal of Chanel's counterfeiting and trademark infringement claims.  In addition, whether or not TRR can substantiate its advertising claims is an issue of fact which cannot be resolved on a motion to dismiss.  TRR's first-sale doctrine and nominative fair use defenses also are not on point. Chanel's FAC sufficiently pleads its counterfeiting and trademark infringement, false advertising, unfair competition and deceptive trade practices claims, and TRR's Motion under Federal Rule of Civil Procedure 12(b)(6) should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The CHANEL Brand and Trademarks Are Famous and Well Known Causing Merchandise Bearing the CHANEL Trademarks To Be in Great Demand.

Chanel is an iconic fashion company and an undisputed, recognized leader in fashion and beauty in the United States and worldwide.  FAC ¶¶ 1, 15.  Authentic CHANEL products -- new or secondhand -- command top-dollar prices because of their extraordinary design and quality and the limited manufacture.  _Id._  Chanel's registered CHANEL and "CC" monogram trademarks (collectively, the "CHANEL Trademarks"), which represent the prestige and quality associated with Chanel and its luxury designs, are likewise world-famous and are well known. _Id._ ¶¶ 1, 16, 17, 28; Ex. A.  Due to the worldwide public recognition, overwhelming fame and tremendous goodwill of the CHANEL Trademarks and brand, CHANEL-branded goods -- even unauthorized and counterfeit goods -- are in great demand.  _Id._ ¶ 19.

Chanel is the owner of multiple registered trademarks in connection with luxury goods and has devoted hundreds of millions of dollars to advertising and promotional campaigns featuring top models and celebrities wearing CHANEL apparel and accessories in a variety of media, including print and social media.  *Id.* ¶¶ 23, 25, 26, 27.  The recognition of the CHANEL Trademarks and brand among the public at large is enhanced by Chanel's extensive advertising efforts and limited and select distribution.  *Id.* ¶ 27.

The CHANEL Trademarks and brand have earned great value and extraordinary goodwill by Chanel's tremendous sales of designs through its selective distribution network.  *Id.* ¶¶ 19, 24.  In order to preserve the prestige of the CHANEL Trademarks and brand, Chanel limits the sale of its coveted accessories and apparel to its own Chanel retail stores and select, exclusive and prestigious department and specialty stores.  Chanel does not permit online sales of CHANEL-branded accessories and apparel.  *Id.* ¶ 24.  This select distribution policy is designed to maintain the prestige and special nature of the Chanel retail experience and brand.  Chanel items are sold in CHANEL-branded packaging and with a distinctive black and white "Carte D'Authenticite" (authenticity card) with product serial numbers that are also featured on genuine products bearing the CHANEL Trademarks and state: "We certify the authenticity of this item and confirm that it has been subjected to the most exacting quality control."  *Id.* ¶¶ 24, 29.  Chanel's high quality is a symbol of the fine reputation and good will of the CHANEL Trademarks.  *Id.* ¶ 20.  Chanel uses these tools to aggressively battle the sale of counterfeits and false advertising of fake CHANEL-branded goods to protect consumers.  *Id.* ¶¶ 24, 29.

**B.    Defendant TRR's Counterfeiting and Advertising and Marketing Infringes and Trades on Chanel's Trademarks and Brand.**

The FAC alleges, *inter alia*, that:  (1)  TRR is falsely advertising counterfeit and non-genuine goods prominently marked with the CHANEL Trademarks as genuine goods, and uses

the CHANEL Trademarks prominently, frequently, and intentionally to market such goods (*id.* ¶¶ 45, 68-79);[2] (2) TRR falsely advertises that it has trained experts who can authenticate CHANEL-branded goods, and that its rigorous authentication process ensures that there is "an expert behind every item" and that each item it sells is "100% the real thing." (*id.* ¶¶ 2, 33; Baker Decl. ¶¶ 3, 4; Exs. 2, 3); (3) TRR's advertising and marketing claims about its CHANEL-branded goods and its experts and authentication process are false because TRR is selling counterfeit goods (FAC ¶¶ 45-52, 60, 63-66; Ex. E); (4) TRR's prominent use and display of the CHANEL Trademarks and the prominence of CHANEL-branded products in TRR's advertising and marketing materials along with TRR's claims of having "experts" that can verify that each item it sells is "100% the real thing" conveys the false impression of an association or relationship between Chanel and TRR (*id.* ¶¶ 53-59); (5) TRR's "experts" cannot and do not properly authenticate and advertise counterfeit CHANEL-branded products, rendering TRR's claims false, as evidenced by the counterfeit and non-genuine products set forth in the FAC, and rendering the association with Chanel conveyed through its advertising misleading and harmful to Chanel's brand and reputation (*id.* ¶¶ 38, 45-67); and (6) In an attempt to prevent Chanel and consumers from being able to identify counterfeit CHANEL-branded products, rather than work with Chanel to identify the source of the counterfeits, TRR removed the serial numbers of purported CHANEL-branded products from its website (*id.* ¶¶ 60, 61) and claimed that this was "intended to prevent counterfeiters from incorporating legitimate serial numbers into their counterfeit goods and "demonstrates its good-faith efforts to combat counterfeits." Memo at 2, 13.

---

[2] As set forth in the FAC, Chanel's investigations during a short period of weeks revealed seven counterfeit CHANEL-branded goods advertised and marketed as "real" on TRR's website. *Id.* ¶¶ 45, 63, 64.

## ARGUMENT

**I.      The Standard of Review on a Motion to Dismiss Is Heavily Weighted In Favor of Chanel: All Factual Allegations in the Complaint Must Be Accepted As True**

"The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff," *ESPN, Inc. v. Quicksilver, Inc.,* 586 F. Supp. 2d 219, 224 (S.D.N.Y. 2008) (internal quotation marks and citation omitted), and "courts must. . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551* U.S. 308, 309 (2007); *Sung Cho v. City of New York*, 910 F.3d 639, 642 n. 1 (2d Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007)).  A court's reading of the complaint on a motion to dismiss should be liberal and all reasonable inferences from its allegations are to be drawn in favor of the plaintiff.  *ESPN. Inc.,* 586 F. Supp. 2d at 224.  The Second Circuit has noted that "[t]he issue [on a motion to dismiss] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC,* 131 F. Supp. 3d 196, 204 (S.D.N.Y. 2015) ("[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." ) (internal quotation marks and citation omitted).[3]  A plaintiff's factual allegations

---

[3] As the Supreme Court in *Ashcroft* v. *Jabal,* 556 U.S. 662, 678, 679 (2009), observed: "The plausibility standard is not akin to a 'probability requirement'" and "[w]hen there, *are* well-pleaded factual allegations, a court should assume their veracity.…"  In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Pulse Creations, Inc. v Vesture Grp., Inc.,* 154 F. Supp. 3d 48, 53 (S.D.N.Y. 2015) (citation omitted); *see also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (court can consider documents which have not been incorporated by reference where complaint "relies heavily upon its terms and effect.").

need only "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555.

## II.    Chanel's Complaint Sufficiently Pleads Claims For Trademark Infringement and Counterfeiting

It is well-established that a trademark owner "is entitled to protection against acts that subvert its ability to protect the reputation of its marks by exercising quality control." *Zino Davidoff S.A. v. CVS Corp.*, 571 F.3d 238, 246 (2d Cir. 2009).  As Justice Frankfurter noted in *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Krege Co.*, 316 U.S. 203, 205 (1942), the bedrock of trademark protection is the commercial magnetism created by trademarks which induces consumers to buy a product:

> The protection of trademarks is the law's recognition of the psychological function of symbols. If it is true that we live by symbols, it is no less true that we purchase goods by them.  A trademark is a merchandising shortcut which induces a purchaser to select what he wants, or what he has been led to believe he wants….Whatever the means employed, the aim is the same -- to convey through the mark, in the minds of potential customers, the desirability of the commodity upon which it appears….If another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress.

Counterfeiting is the most egregious form of poaching the commercial magnetism of a famous trademark.  By making advertising claims that TRR does not sell counterfeits and has a rigorous authentication process conducted by trained experts who, based upon TRR's superior knowledge and expertise, ensure each item it sells is "100% the real thing," (*see* Baker Decl. Exs. 1-9) TRR represents that any anxiety a customer may have about buying counterfeit CHANEL-branded item should be eliminated.  *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 692, n. 27 (2d Cir. 1971) (purpose of federal trademark law "is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct" and explaining that its import "'[i]n effect in says: you may not conduct your business in a way that unnecessarily or unfairly interferes with and injures that of another; you may not destroy the basis of genuine

-7-

competition by destroying the buyer's opportunity to judge fairly between rival commodities by introducing such factors as false descriptive trademarks which are capable of misinforming as to the true qualities of the competitive products.'") (quoting *Gold Seal Co. v. Weeks*, 129 F. Supp. 928, 940 (D.D.C. 1955)); *see Pirone v. MacMillian*, 894 F.2d 579, 585 (2d Cir. 1990).  TRR's Motion must fail because it is based a flawed and meritless legal arguments.

### A.    *TRR's Reliance on the Traditional Polaroid Factors Is Misplaced in a Counterfeiting Case*

Plaintiff Chanel seeks to stop TRR's sale of counterfeit CHANEL-branded goods not genuine goods.  TRR erroneously contends that the traditional *Polaroid*  likelihood of confusion factors control and weigh in its favor in this counterfeiting case.  *See* Memo at 12, 13.  But, as Professor McCarthy has explained, the *Polaroid* analysis is not necessary in counterfeiting cases because a likelihood of confusion is presumed:

> If the accused use is so closely similar as to be a "counterfeit," then traditional likelihood of confusion analysis is not necessary.  Courts assume that if the goods are so closely similar as to be regarded as "counterfeit," then a likelihood of confusion must be present.

5 *McCarthy on Trademarks and Unfair Competition* § 25:15.50 (5th ed.); *see also Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion . . . . [i]ndeed, confusing the customer is the whole purpose of creating counterfeit goods"); *Burberry Ltd., v. Euro Moda, Inc.*, No. 08 Civ. 5781(CM), 2009 WL 1675080, at *5 (S.D.N.Y. June 10, 2009).

This Court has held that "in cases involving the use of counterfeit marks, 'the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion.'"  *Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*, No. 17-CV-5845 (VSB), 2019 WL 464583, at *3 (S.D.N.Y. Feb. 6, 2019) (Broderick, J.) (quoting *Philip Morris USA Inc. v. Marlboro Express*, No. CV-03-1161 (CPS), 2005 WL 2076921, at *4

-8-

(E.D.N.Y. Aug. 26, 2005)); *see Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 267,

(S.D.N.Y. 2011) ("[T]he Court need not undertake a step-by-step analysis under *Polaroid*

because counterfeits, by their very nature, cause confusion. . . .  Indeed, causing customer

confusion is the entire purpose behind the manufacture of counterfeit goods.").

 The FAC plainly alleges that TRR advertised as genuine and sold seven counterfeit

CHANEL-branded handbags.  *See* FAC ¶ 45; Ex. E.  These allegations must be credited for

purposes of a motion to dismiss.  *See Sung Cho*, 910 F.3d at 642, n. 1.  Given that consumer

confusion is presumed when counterfeiting is alleged, TRR's argument that "Chanel does not,

and cannot, plausibly allege 'evidence of actual consumer confusion' or 'evidence that the

imitative mark was adopted in bad faith'" (Memo at 12) is without merit.  As this Court noted in

*Coach, Inc. v. Horizon Trading USA Inc*., 908 F. Supp. 2d 426, 436 (S.D.N.Y. 2012), "bad faith

is presumed" in counterfeiting cases.[4]  In addition, this Court must accept as true the FAC

pleadings of (a) harm to Chanel and consumers from the sale of non-genuine Chanel-branded

goods by TRR (FAC ¶¶ 45, 63, 64), and (b) specific examples of consumer confusion and

disappointment from TRR's sales of fake goods (*id*. ¶¶ 62-64).[5]

---

[4] TRR's argument that Chanel has not pleaded the requisite "bad faith" for its state law unfair competition claim also is without merit.  As this Court held recently, where the defendant is alleged to have engaged in sales of counterfeit goods, the requisite bad faith showing under New York law has been made.  *Spin Master, Inc.*, 2019 WL 464583, at *5 (S.D.N.Y. Feb. 6, 2019) (Broderick, J.).  Not only has Chanel adequately pleaded TRR's bad faith sale of counterfeit goods, but also pleaded TRR's bad faith removal of Chanel's serial numbers after this case was commenced.  FAC ¶¶45, 60, 61, 63, 64.

[5] TRR's contention (Memo at 24-25) that Chanel failed to properly plead a specific and substantial public injury under N.Y. G.B.L. §§ 349 and 350 is likewise without merit.  As this Court has held, allegations of counterfeit sales to consumers sufficiently allege a "public harm" under the New York law.  *See In re Houbigant Inc*., 914 F. Supp. 964, 983–84 (S.D.N.Y. 1995) (public harm requirement satisfied where defendants' sales were part of counterfeiting scheme); *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 CIV. 8205, 2013 WL 3943267, at *13 (S.D.N.Y. July 31, 2013).  Chanel has alleged not only that TRR's false statements and

TRR's argument that its alleged sale of seven counterfeit CHANEL-branded handbags is insufficient to make out a case of trademark counterfeiting is without merit:

> The plain language of the relevant statutes does not require that the plaintiff prove that a defendant committed the infringement in any particular amount, or with any amount of regularity. *See* 15 U.S.C. §§ 1114(1), 1125(a). '[T]he amount of harm that the infringer inflicts goes to the amount of damages rather than to his liability for damages.

*Gucci Am., Inc.*, 286 F. Supp. 2d at 290 and n.5 (quoting *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 537 (7th Cir. 1989)).

**B.      *The "First-sale" Doctrine Is Inapplicable in the Case of Counterfeit Goods***

TRR incorrectly contends that Chanel's counterfeiting and false and misleading advertising claims should be dismissed because of the "first-sale" doctrine. *See* Memo at 13-14. It is well-established that the "first-sale" doctrine is inapplicable with respect to counterfeiting and false and misleading advertising claims. *See, e.g., FUJIFILM N. Am. Corp. v. Big Value Inc.*, No. 16-CV-5677 (BMC), 2018 WL 4210132, at *1 (E.D.N.Y. Sept. 4, 2018) ("The first sale/exhaustion doctrine generally prohibits a trademark holder from recovering for unauthorized resales of goods ***as long as the goods are genuine***.") (emphasis added) (citing *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992)); *Abbott Labs. v. Adelphia Supply USA*, No. 15CV5826CBAMDG, 2015 WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015), *aff'd sub nom.*

---

counterfeit products cause public harm but also the sale of counterfeit products and resulting consumer complaints describing such harm. *See* FAC ¶¶ 45, 63, 64. Even the case cited by TRR makes plain that "[t]he type of violation generally contemplated by [section 349] involves an individual consumer who falls victim to misrepresentations…usually by way of false and misleading advertising" and that "[c]laims for false advertising under N.Y. GBL § 350 are subject to the same standard." *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294-LTS-HBP, 2015 WL 5008762, at *3 (S.D.N.Y. Aug. 24, 2015) (internal quotations omitted).

*Abbott Labs. v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6 (2d Cir. 2016).  As another federal

circuit has explained,

> "[T]he [first-sale] rule applies only to identical genuine goods. No one would
> argue, for example, that a seller of fake Rolex watches or Gucci bags, or pirated
> compact discs, could escape liability by showing that he was merely reselling the
> fakes after purchasing them from the manufacturer of the pirated works.

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co*., 112 F.3d 1296, 303

(5th Cir. 1997).

TRR's contention that "Chanel also does not, and cannot, allege that TRR or its

consignors materially altered any products sold" (Memo at 14) also misses the mark.  Chanel

does *not* allege that TRR or its consignors materially altered any products sold.  Instead, Chanel

is alleging that TRR has advertised and sold counterfeit goods as genuine CHANEL-branded

goods.  TRR's reliance upon *Luxottica Grp. S.p.A. v. Bausch & Lomb Inc*., 160 F. Supp. 2d 545,

552 (S.D.N.Y. 2001), is inapposite because "Luxottica resold *genuine goods produced or*

*approved by B & L*," not counterfeits.  In this case, not only does Chanel allege that TRR

advertised and sold counterfeit CHANEL-branded goods but also that TRR removed the Chanel

serial numbers from its online site, rendering this quality control/anti-counterfeiting tool

useless.[6]

---

[6] *Cf. Zino Davidoff*, 571 F.3d at 246-47 (the removal of UPC code from genuine products was
trademark infringement because it interfered with quality control and resulted in increased risk
that consumers would "unwittingly purchase counterfeit or defective product because of the
disabling of owner's device to guard against these things.").  While TRR makes the bald
assertion that removal of serial numbers from online listings is an "industry standard" practice
(Memo at 13), *Zino Davidoff* suggests otherwise.  The disputed intent behind this removal
creates an issue of fact which cannot be resolved on this motion.  *ESPN, Inc.*, 586 F. Supp. 2d at
224.

### C.    *An Evaluation of "Nominative Fair Use" Is Not Appropriate on a Motion to Dismiss*

TRR's attempt to absolve its counterfeiting, trademark infringement, and false advertising liability by maintaining that its use of the CHANEL Trademarks constitutes nominative fair use is not only improper at this procedural stage because it involves an inherently factual analysis, but also not supported by the facts. "Nominative fair use is a 'merits issue[ ] to be determined on a summary judgment motion or at trial.'" *Int'l Council of Shopping Ctrs., Inc.*, No. 17-CV-5526 (AJN), 2018 WL 4284279, at *5 (S.D.N.Y. Sept. 7, 2018) (quoting *Manigault v. ABC Inc.*, 17-CV-7375 (KNF), 2018 WL 2022823, at *4 (S.D.N.Y. Apr. 12, 2018)). As the Second Circuit observed in *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d, 153 (2d Cir. 2016), the question of whether TRR's use of the CHANEL Trademarks in TRR's marketing materials or website "step[s] over the line into likelihood of confusion by using [Chanel's] mark too prominently or too often, in terms of size, emphasis, or repetition" is a question of fact not appropriate for adjudication on a motion to dismiss. 823 F.3d at 168; *see Int'l Council of Shopping Ctrs., Inc.*, 2018 WL 4284279, at *5 ("[C]ourts have routinely rejected nominative fair use arguments at the motion to dismiss stage because of its inherently factual inquiry."); *Grand v. Schwarz*, 15-CV-8779 (KMW), 2016 WL 2733133, at *4 (S.D.N.Y. May 10, 2016).

TRR's reliance upon *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010), is likewise misplaced. *Tiffany* supports Chanel's position. As the Second Circuit held: "[T]he law prohibits an advertisement that implies that all of the goods offered on a defendant's website are genuine when in fact, as here, a sizeable proportion of them are not." 600 F.3d at 114. TRR's advertising claims go further. TRR's contention that "Chanel does not and cannot allege that TRR's practices are meaningfully different than eBay's" (Memo at 11) misstates the facts. The

truth is that eBay is an online auction site where third parties sell products and it does not take

possession or hold goods on consignment nor make any advertising claims about the items sold

on its auction site.  Unlike eBay, TRR takes items on consignment basis and makes the

affirmative advertising claims about each item sold and its purported rigorous expert

authentication process.  *See* FAC ¶¶ 5, 33-35, 47, 82, 104; Ex. D.

## III.    Chanel's Complaint Sufficiently Pleads Claims For False Advertising

The Second Circuit has held that:  "To prevail on a false advertising claim, a plaintiff

must show that either: 1) the challenged advertisement is literally false, or 2) while the

advertisement is literally true it is nevertheless likely to mislead or confuse consumers."

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Procter & Gamble Co.*, 90 F. App'x 8, 9

(2d Cir. 2003) (internal quotations omitted).  Chanel's FAC has sufficiently pleaded false

advertising under either test.  In evaluating a false advertising claim, courts "consider the

advertisement in its entirety. . . . The entire mosaic should be viewed rather than each tile

separately."  *Avola v. Louisiana–Pac. Corp.*, 991 F. Supp. 2d 381, 393 (E.D.N.Y. 2013); *Time

Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (affirming the district

court's holding that plaintiff has established a likelihood of success on its claim that defendant's

commercial is literally false since advertisements are to be reviewed as a whole.); *Student

Advantage, Inc. v. CollegeClub.com*, No. 99 CIV. 8604 (JSR), 1999 WL 1095601, at *1

(S.D.N.Y. Dec. 3, 1999) ("Lanham Act claims are not subject to any heightened pleading

standard, but rather need only satisfy the liberal notice pleading standard of Rule 8(a). . . .")

(internal citations omitted).[7]  *See Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 293

---

[7] Since "the standard for setting forth a claim of unfair competition under New York common
law is 'essentially the same' as for stating a claim under section 43(a) of the Lanham Act," for
the same reasons explained herein, Chanel has also adequately set forth a claim for unfair

(S.D.N.Y. 2011) (on motion to dismiss, the court draws all reasonable inferences in plaintiff's

favor and a claim is facially plausible if the plaintiff has pleaded factual content which would

allow the court to draw a reasonable inference that the defendant is liable).

A.  **Chanel Has Sufficiently Pleaded That TRR's Claims Regarding the Authenticity of its Products and Authenticity Process Are False**

There is no dispute that TRR makes advertising claims that: "[The RealReal] ensure[s]

that **every item on the RealReal is 100% the real thing**[], thanks to our dedicated team of

authentication experts. . . ."  FAC ¶¶ 2, 33 (emphasis added); Baker Decl. ¶¶ 2-4; Ex. 1-3.  These

are clear, precise, and unambiguous statements of measurable fact designed to explicitly tell

consumers that each item offered by sale by TRR is "100% the real thing" and that a TRR expert

verified the genuineness of such item by virtue of its rigorous authentication process.  The FAC

alleges, as explained below, these advertising claims are literally false.  But even if the Court

were to determine that such advertising claims are not literally false, the claims are at a minimum

impliedly false, and the FAC sufficiently pleads facts demonstrating that TRR's marketing is

likely to mislead or confuse consumers.

A claim of "literal falsehood" only requires a "statement, on its face, [that] conflicts with

reality."  *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999).  "[T]o establish literal

falsity, a plaintiff must show that the advertisement either makes an express statement that is

false or a statement that is 'false by necessary implication,' meaning that the advertisement's

'words or images, considered in context, necessarily and unambiguously imply a false

message.'"  *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH,* 843 F.3d

48. 65 (2d Cir. 2016) (quoting *Time Warner Cable, Inc.,* 497 F.3d at 158).  Literal falsity

---

competition under New York common law.  *Student Advantage, Inc.*, 1999 WL 1095601, at *2
(citation omitted)

obviates the need to rely on extrinsic evidence of consumer deception or confusion. *See CJ Prods. LLC v. Snuggly Plushez LLC,* 809 F. Supp. 2d 127, 147 (E.D.N.Y. 2011); *Time Warner Cable,* 497 F.3d at 153. The FAC alleges that TRR advertised and sold multiple counterfeit items, each of which they claimed were "100% the real thing," because TRR used its purported rigorous authentication process to verify that each was genuine. *See* FAC ¶¶ 2, 45, 63, 64; Ex. E. This claim is not true and literally false. TRR's repeated and purposeful advertising claims regarding the products it sells, *i.e.*, that every item sold "is 100% the real thing" and its expert authentication process -- there is "an expert behind every item" from its team of "experts, fashion directions, stylists, curators, who have this deep understanding and knowledge of heritage brands" "so you can shop with confidence" -- are literally false because TRR failed to detect counterfeit CHANEL-branded handbags. *Id.* ¶ 12, 33, 34, 45, 63, 64.

TRR's advertising claims, all part of the overall branding message "The RealReal's" so-called "rigorous" "expert" authentication process *always* ensures that each item is "100% the real thing", are unambiguous, measurable statements of fact that leave no room for even unintended error or mistake. *See Burton v. iYogi, Inc.*, No. 13-CV-6926 DAB, 2015 WL 4385665, at *8 (S.D.N.Y. Mar. 16, 2015) ("where one party []has[] superior knowledge…[,] he *knows nothing which contradicts the statement*.") (emphasis added). Moreover, courts have held that claims which employ specific, quantifiable numbers, such as 100%, are measurable claims and verifiable statements of fact upon which consumers rely. *See, e.g., In Re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 531-32 (W.D. Penn. 2014) (denying motion to dismiss and finding that advertising claims for dog treats of "100% Real - Wholesome and delicious" and "100% real jerky, sausage slices, and meatballs" were actionable as representations of "verifiable facts and sufficiently specific to induce customer reliance"); *Southland Sod Farms v. Stover Seed*

*Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (claim of "50% Less Mowing" actionable under the

Lanham Act because such advertisement is specific and measurable.); *cf. Basquiat ex rel. Estate*

*of Basquiat v. Sakura Int'l*, No. 04 CIV. 1369 (GEL), 2005 WL 1639413, at *5 (S.D.N.Y. July 5,

2005).[8]  Indeed, TRR's Chief Authenticator proclaims that TRR's authentication "***really is a***

***science*** . . . .  It's like a complex algorithm. . . ."  Baker Decl. ¶ 4; Ex. 3.  Since, as alleged,

TRR's advertising claim is a measurable statement of fact upon which consumers rely and TRR

has been alleged to sell counterfeit goods which refutes that claim, the FAC makes out a claim

for literal falsity.

TRR's new contention that "TRR's description of its authenticators as experts is immune

from challenge as 'a general  expression  of opinion'" (Memo at 18) or puffery and that it

"warrants only that it authenticates the products it sells, using its own internal, proprietary

process" (*id.* at 3), is completely at odds with its advertising claims that its authentication process

is a "science."  At a minimum, this raises questions of fact which are not properly resolved on a

motion to dismiss.  Puffery can come in at least two forms: "a general claim of superiority over

comparable products that is so vague that it can be understood as *nothing more than a mere*

*expression of opinion*," and "an exaggerated, blustering, and boasting statement upon which no

reasonable buyer would be justified in relying."  *Time Warner Cable, Inc.*, 497 F.3d at 159

(emphasis added).  Further, TRR's argument that its claims are "general expression[s] of

opinion" and non-actionable puffery also is without merit because TRR's advertising claims can

be proven true or false, especially where TRR's customers have been asked to rely on TRR's so-

---

[8] The intended advertising message is clear.  *See Verizon Directories Corp. v. Yellow Book USA,*
*Inc.*, 309 F. Supp. 2d 401, 408 (E.D.N.Y. 2004) (in refusing to dismiss plaintiff's Lanham Act
claim, the court held what the defendant intended to communicate and what was communicated
to the consumer should be assessed, not whether the communication should be characterized as
puffery).

called expert authentication.  *See, e.g., Burton*, 2015 WL 4385665, at *8 ("if, as Plaintiff alleges, Defendant presents its software as 'diagnostics' and identifies its employees as 'tech experts' through its advertising…***it cannot be said that Defendant's representations are mere puffery or opinions***; ***Defendant is presenting statements about customers' computers as fact based on expert assessment***.") (emphasis added).

TRR's argument that "Chanel's allegations regarding TRR's sale of a few purportedly counterfeit products do not render TRR's marketing false" is without merit.  Courts find literal (and implied) falsity when a defendant's unqualified and absolute claims in advertising is disproved by evidence to the contrary, especially where the advertising claim is critical to the message.  *See Nat'l Ass'n of Pharma-Mfrs., Inc. v. Ayerst Labs., Div. of and A.M. Haye Prods. Corp.*, 850 F.2d 904, 917 (2d Cir. 1988); *CJ Prods. LLC*, 809 F. Supp. 2d at 148; *Telebrands Corp. v. E. Mishan & Sons*, Civil Action No. 97 Civ. 1414 (RPP), 1997 WL 232595, at *22-23 (S.D.N.Y. May 7, 1997) (finding defendant's advertisement of "NEVER A JAGGED EDGE!" for a can opener to be expressly and impliedly false where the running theme in defendant's print and TV advertisement was that the can opener did not produce sharp or jagged edges when, in fact, the rim of the can opened with defendant's product often had a jagged edge).  TRR's advertising claims of offering for sale each item as the "100% the real thing" are by definition rendered false by sale of *any* counterfeit item, regardless of whether one or a million counterfeit products are sold.  The sale of even a single counterfeit goods renders TRR's advertising literally false, and Chanel has plausibly demonstrated and put forth multiple examples of such fraudulent products.[9]  Likewise, the plain and unambiguous meaning of TRR's advertising claims is that

---

[9] TRR's reliance on defective product/warranty cases, including *Bd.-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556 (2d Cir. 2018), *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016), and *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099

TRR employs and uses experts to put each item through a rigorous brand specific authentication process and that such process ensures that each item is "100% real" and genuine.

At a bare minimum, Chanel's FAC has satisfactorily pleaded the implied falsity of TRR's advertising claims. A plaintiff may demonstrate that a message is "impliedly false if the message leaves an impression on the listener or viewer that conflicts with reality." *Church & Dwight,* 843 F.3d at 65 (internal quotation marks and citation omitted). Courts within the Second Circuit have required implied falsity claims to be supported either by: (i) extrinsic evidence of consumer confusion or (ii) evidence that the defendant intended to deceive the public through deliberate conduct of an egregious nature, in which case a rebuttable presumption of consumer confusion arises. *Merck Eprova AG v. Gnosis S.p.A.,* 760 F.3d 247, 255-56 (2d Cir. 2014). Both literal falsity and implied falsity require that the plaintiff show that the false or misleading representation involved an inherent or material quality of the product. *CJ Prods.,* 809 F. Supp. 2d at 146. The FAC clearly pleads the material nature of TRR's advertising claims and the way in which the counterfeit sales harm Chanel and consumers, including customer reviews showing consumer confusion and disappointment resulting from counterfeit CHANEL-branded goods. FAC ¶¶ 63, 64. The FAC further alleges TRR's intent to deceive the public through its false advertising claims and sale of counterfeit CHANEL-branded goods. *Id.* ¶¶ 2, 45, 63, 64; Ex. E. The FAC pleads that TRR's false advertising goes to the inherent and material qualities of the products offered, *i.e.*, that they were genuine, authentic, and "100%" real CHANEL-branded products, as represented by TRR's expert authentication process. *Id.* ¶¶ 35, 52, 58, 65, 87, 95, 116. The totality of TRR's conduct -- advertising that TRR is an "authenticated luxury

---

(N.D. Cal. 2007) is misplaced. Chanel does not allege that TRR sold genuine CHANEL-branded goods that were defective. Rather, Chanel alleges that TRR sells Chanel-branded goods that *were never genuine authorized goods in the first place*.

consignment" business which guarantees that every item it sells is "100% the real thing" because there is an "expert behind every item" when TRR has sold counterfeit goods -- as pleaded makes out actionable literal and implied false advertising claims.

### B.    Chanel Has Adequately Pleaded Facts Regarding Plausible Confusion

TRR argues that Chanel's conclusions about the falsity of or confusion resulting from TRR's advertisements are "implausible" because Chanel has only provided a few examples of negative reviews of TRR in its Complaint.  Memo at 20.  First, it is well-settled that the determination of whether a reasonable consumer is likely to be deceived is a question of fact that should not be resolved on a motion to dismiss.  *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013).  Indeed, it is a "rare situation in which granting a motion to dismiss is appropriate" under the "reasonable consumer" standard. *Williams v. Gerber Products Co*., 552 F.3d 934, 939 (9th Cir. 2008).  Because Chanel has adequately pleaded that TRR's advertising is literally false, Chanel has met its pleading burden with respect to plausibility of confusion.  Further, where an advertising claim is literally false, as Chanel alleges in the FAC with regard to TRR's sale of counterfeits, consumer confusion is presumed.  *Merck Eprova AG*, 760 F.3d at 256; *CJ Prods. LLC*, 809 F. Supp. 2d at 147 (literal falsity obviates the need to rely on extrinsic evidence of consumer confusion); *see also Cashmere & Camel Hair Mfgs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 314-15 (1st Cir. 2002) (the Lanham Act does not require plaintiff to demonstrate actual consumer confusion to obtain relief where plaintiff demonstrates that a defendant has made a literally false, material misrepresentation).

Second, even assuming *arguendo* that literal falsity is not properly pleaded, Chanel has sufficiently alleged the implied falsity of TRR's statements, the harm to consumers and itself,

and provided examples, even if limited, of customer dissatisfaction from TRR's false statements and failure to deliver promised authentic products. *See Student Advantage, Inc.*, 1999 WL 1095601, at *1. Chanel is not required at this stage to provide evidence of every negative review or confused or deceived customer. *Id.* TRR's argument on "implausibility" improperly asks the Court to not only weigh the credibility of evidence on a motion to dismiss, but also asks the Court to choose TRR's version of the facts which is entirely improper on a motion to dismiss where the plaintiff's allegations are to be credited as true.[10] *See Sawabeh Info. Servs. Co.*, 832 F. Supp. 2d at 293.

### C.    *TRR Cannot Disclaim Away Its Literally False Statements and Evaluation of the Sufficiency of Any Disclaimers Is Not Appropriate on a Motion to Dismiss*

TRR's contention that Chanel's claims should be dismissed because its embedded disclaimers in TRR's terms of service or at the time of purchase remedy any potential consumer confusion is without merit. First, the burden of proof as to whether a disclaimer may prevent consumer confusion as a result of TRR's false statements rests squarely upon TRR, *BIC Corp. v. Far Eastern Source Corp.*, No. 99-CV-11385 (HB), 2000 WL 1855116, at *6 (S.D.N.Y. Dec. 19, 2000), *aff'd*, 23 F. App'x 36 (2d Cir. 2001), and whether the disclaimer is effective is a question for a factfinder at a later procedural point, and certainly not on a motion to dismiss. *See Hughs v. Ester C Co.*, 930 F. Supp. 439, 464 (E.D.N.Y. 2013) (denying motion to dismiss and stating that a disclaimer's effectiveness is a fact question); *Sciele Pharma, Inc. v. Brookstone Pharm.*, LLC, No. 1:09-CV-3283-JEC, 2010 WL 9098290, at *7 (N.D. Ga. June 23, 2010) (denying

---

[10] To the extent that TRR argues that, despite such negative reviews, its "BBB Rating is "A+"" (Memo at 20 n. 2), that is an evidentiary question to be resolved by the factfinder following discovery.

motion to dismiss Lanham Act claim and finding that "the disclaimer issue is more appropriately resolved on a motion for summary judgment or at trial.").

Further, it is well established that a disclaimer cannot undo the deceptive effect of a literally false claim.  *See JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc*., 957 F. Supp. 426, 437 (S.D.N.Y. 1997) ("a disclaimer is ineffective to cure a literally false statement.") . "[T]he [Second Circuit] has recognized that disclaimers are particularly ineffective where a discount imitator of brand-name goods attempts to disabuse the unwary customer."  *Id.* (citing *Charles of the Ritz Grp. Ltd. v. Quality King Distrib., Inc.*, 832 F.2d 1317, 1324 (2d Cir. 1987)); *Museum of Modern Art v. MoMacha IP LLC*, 339 F. Supp. 3d 461, 377 (S.D.N.Y. 2018) ("'disclaimers are frequently not effective,' especially those that 'employ brief negator words such as 'no' or 'not[.]'") (quoting *Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1316 (2d Cir. 1987)).  Here, TRR's disclaimers attempt to reverse the association with Chanel and the false impression given to consumers as to the nature of its purported "rigorous" authentication process with "an expert behind every item."  Where, as here, such claims are literally false, a disclaimer is legally insufficient to cure the false effect of such claims.

Third, although TRR argues that its disclaimers make plain that there is no association between TRR and Chanel and clarifies the nature of its authentication process, Chanel has alleged that TRR's disclaimers are not "present nor sufficiently conspicuous or likely to be seen by all consumers prior to purchasing from The RealReal, and is not sufficient to adequately qualify, contextualize, explain, or negate the representations and guarantees The RealReal makes to consumers regarding the authenticity of the products it resells, the reliability of its authentication process, or any express or implied claims regarding an association with any of

such brands."  FAC ¶ 39.  As this Court has made clear, a disclaimer that "purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, . . . will not remedy the misleading nature of the claims."  *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987); *Euro-Pro Operating LLC v. Euroflex Ams.*, No. 08CV6231 (HB), 2008 WL 5137060, at *6 (S.D.N.Y. Dec. 8, 2008) ("a disclaimer or contradictory claim placed in an advertisement will not necessarily remedy an advertisement that is misleading *per se* where the disclaimer is in small text or difficult to read").

TRR's Opposition raises a defensive disclaimer factual issue, arguing that "[b]ecause TRR's customers must agree to TRR's Terms of Service [allegedly containing a disclaimer] even to enter the website, they are bound by those terms."  Memo at 16.  However, whether TRR's terms of service are conspicuous and whether consent to them is actually necessary to use TRR's website are issues of fact improper to resolve now, particularly when the FAC alleges any disclaimers are not conspicuous and Chanel did not rely on TRR's registration page as part of the FAC.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233, 234 (2d Cir. 2016) ("Whether there was notice of the existence of additional contract terms presented on a webpage depends heavily on whether the design and content of that webpage rendered the existence of terms reasonably conspicuous.") (reversing grant of motion to dismiss and finding district court "erred in considering certain factual materials extrinsic to the complaint," including the registration page of the website in question, as the plaintiff did not "rel[y] heavily upon its terms and effect" in drafting his complaint).[11]  TRR's reliance on this Court's decision in *Plazza v. Airbnb, Inc.,* 289

---

[11] Indeed, while TRR argues that consumers must consent to its terms before using its website, the TOS link is excessively tiny and there is no button or checkbox for a user to click to manifest affirmative consent to those terms, and thus there is no enforceable "click-wrap" agreement. *See*

F. Supp. 3d 537 (S.D.N.Y. 2018), regarding a clickwrap arbitration provision in an *Airbnb* contract is misplaced. *Plazza*, which did not deal with false advertising claims and involved a motion to compel arbitration involved a different legal standard "similar to that applied in considering a motion for summary judgment" rather than the sufficiency of a disclaimer in a false advertising case. *Id.* at 547. TRR's disclaimer featured in its Terms of Service does not impose an obligation upon its customers (such as the agreement to adjudicate their claims via arbitration), but instead contains a unilateral fine print claim about TRR's affiliations.[12]

### D.    *Whether Certain Goods Are "Vintage" Is an Issue of Fact*

TRR urges dismissal because it alleges that the definition of "vintage" provided by the FTC in a consumer guide for shopping for collectibles is not controlling and offers its own alternate, non-legally binding dictionary definitions of "vintage," Memo at 21. Chanel's FAC plainly alleges that TRR advertises that certain CHANEL-branded goods listed and offered for sale on its website are "vintage," when they are not, and instead, are likely less than 20 years old. *See* FAC ¶ 40. Chanel's FAC further pleads that TRR's "false statements of the vintage nature of certain of its goods" have caused harm to consumers "by causing them to mistakenly believe that certain Chanel products are vintage when they are not" and have "actually deceived" a substantial portion of the intended audience. FAC ¶¶ 93-94. TRR's argument to the contrary raises an issue which is not properly resolved on a motion to dismiss. *See In re Bausch & Lomb,*

---

*Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 936–37 (E.D. Va. 2010) (website's "Terms of Use" link hard to see and users of website were not required to click link, or required to read or assent to the Terms of Use in order to use the website or access any of its content). What kind of agreement is presented is an issue of fact. And of course, customers exposed to TRR's advertising who elect to shop in in TRR's stores would not, as a pre-condition to shopping at TRR, have to consent to any terms of service and any disclaimers buried therein.

[12] TRR's reliance on *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 543 (S.D.N.Y. 2018) is also misplaced because unlike the plaintiff in *Davis*, Chanel is not accusing TRR of false advertising based on the removal of negative reviews or being selective in posting positive information.

*Inc. Sec. Litig.*, No. 01-CV-6190-CJS, 2003 WL 23101782, at *16 (W.D.N.Y. Mar. 28, 2003) (declining to take judicial notice of the definition of an industry term of art because "defendant has not demonstrated that the dictionary meets the requirements of Federal Rule of Evidence 201(b)."). Chanel's FAC further pleads that TRR's "false statements of the vintage nature of certain of its goods" have caused harm to consumers "by causing them to mistakenly believe that certain Chanel products are vintage when they are not" and have "actually deceived" a substantial portion of the intended audience. FAC ¶¶ 93-94. Chanel has also alleged that such representations are material and likely to influence purchasing decisions. *Id*. ¶ 95. The FTC's guidance should be afforded great weight because "as the administrative agency charged with preventing unfair trade practices, the [FTC]'s assessment of what constitutes deceptive advertising commands deference from the judiciary." *Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001).

## IV.   **TRR's Contrary Fact Assertions Cannot Be Credited, Let Alone Dispositive, On a Motion To Dismiss**

It is well-established Second Circuit precedent that a motion to dismiss should not involve a battle of competing facts. *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) ("a court at this stage of our proceeding is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim."); *Bell Atl. Corp.*, 550 U.S. at 572; *Sung Cho,* 910 F.3d at 642 n. 1. TRR's Motion proffers "alternative facts" on a number of occasions to explain its alleged bad faith by removing serial numbers ("to impede counterfeiters") and asks that the Court to accept its version of the facts instead of the allegations in the FAC. Memo at 24 n. 15. This Court has repeatedly rejected such efforts. *See, e.g., Walia v. Veritas Healthcare Solutions, L.L.C.*, No. 13 Civ. 6935 (KPF), 2015 WL 4743542, at *4 (S.D.N.Y. Aug. 11, 2015) (where defendants pointed to

proffered contradictory facts that undercut the plausibility of [p]laintiff's allegations, the court held that "a motion to dismiss is not the proper vehicle to test a plaintiff's sincerity."); *Streit v. Bushnell*, 424 F. Supp. 2d 633, 642 (S.D.N.Y. 2006).

**V.      To the Extent the Court is Inclined to Grant Any Part of TRR's Motion, Chanel Should be Permitted Leave to Amend the FAC**

In the event that the Court finds, even under Rule 8's liberal pleading standard, that Chanel has failed to allege sufficient facts to satisfactorily plead any of the causes of action in the FAC, Chanel respectfully requests that it be granted leave to amend the FAC, if necessary, to address any such deficiencies.  Under Rule 15's liberal standard, "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile."  *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (quoting Fed. R. Civ. P. 15(a)(2)). While Chanel strenuously disagrees with TRR's contentions of "conclusory" pleading, the interests justice would be served by permitting amendment, particularly whereas here Chanel has not unduly delayed the proceeding or acted in bad faith.  In addition, TRR would not be prejudiced by any amendment, and such amendment by Chanel would not be futile.  *See id.*

## CONCLUSION

For the foregoing reasons, Chanel respectfully requests that the Court deny TRR's motion to dismiss the First Amended Complaint in its entirety.

Dated:  April 3, 2019                          Respectfully submitted,
          New York, New York

                                               SHEPPARD MULLIN RICHTER & HAMPTON LLP


                                               /s/*Theodore C. Max*

Theodore C. Max
Tyler E. Baker
Thomas M. Monahan
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

*Attorneys for Plaintiff Chanel, Inc.*