**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Chanel, Inc., | |
|     Plaintiff, | |
| v. | Case No. 1:18-cv-10626-VSB |
| The RealReal, Inc., | ORAL ARGUMENT REQUESTED |
|     Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT
THE REALREAL, INC.'S MOTION TO DISMISS PLAINTIFF
CHANEL, INC.'S FIRST AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I.    Chanel's Lanham Act Claims for Trademark Infringement, False Endorsement/Unfair Competition, and Counterfeiting Are Each Fatally Deficient............................................2

    A.    Chanel Has Abandoned the Heart of Its Trademark Infringement Claims. ............2

    B.    Chanel Has Abandoned Its False Endorsement/Unfair Competition Claims..........3

    C.    Chanel's Counterfeiting Claims Are Barred by Controlling Precedent..................3

II.    Chanel Fails to State a Claim Under the Lanham Act for False Advertising. ....................5

    A.    TRR's Representations Concerning the Authenticity of Its Products and Its Authentication Process Are Not Literally or Impliedly False. ...............................6

    B.    TRR's Representations that Certain Goods Are "Vintage" Are Not Literally or Impliedly False. ....................................................................................................8

III.    Chanel Has Failed to Preserve Its Claims Under New York Law. ...................................9

IV.    Chanel Has No Basis to Demand Yet Another Opportunity to Amend Its Complaint. ....10

CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Accurate Grading Quality Assurance, Inc. v. Thorpe*,
   2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013) ....................................................................... 3

*Avola v. La.–Pac. Corp.*,
   991 F. Supp. 2d 381 (E.D.N.Y. 2013) ................................................................................... 6

*Burberry Ltd. v. Euro Moda, Inc.*,
   2009 WL 1675080 (S.D.N.Y. June 10, 2009) ....................................................................... 4

*Chanel, Inc. v. Veronique Idea Corp.*,
   795 F. Supp. 2d 262 (S.D.N.Y. 2011) ................................................................................... 5

*Chanel, Inc. v. WGACA, LLC*,
   2018 WL 4440507 (S.D.N.Y. Sept. 14, 2018) ...................................................................... 8

*Coach, Inc. v. Horizon Trading USA Inc.*,
   908 F. Supp. 2d 426 (S.D.N.Y. 2012) ............................................................................. 5, 10

*Confederate Mem'l Ass'n, Inc. v. Hines*,
   995 F.2d 295 (D.C. Cir. 1993) ............................................................................................ 10

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ................................................................................................ 7

*Davis v. Avvo, Inc.*,
   345 F. Supp. 3d 534 (S.D.N.Y. 2018) ............................................................................... 7, 8

*FUJIFILM N. Am. Corp. v. Big Value Inc.*,
   2018 WL 4210132 (E.D.N.Y. Sept. 4, 2018) ........................................................................ 2

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
   286 F. Supp. 2d 284 (S.D.N.Y. 2003) ............................................................................... 4, 5

*Gurary v. Winehouse*,
   235 F.3d 792 (2d Cir. 2000) ............................................................................................... 10

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
   2013 WL 3943267 (S.D.N.Y. July 31, 2013) ..................................................................... 10

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
   275 F. Supp. 3d 910 (N.D. Ill. 2017) .................................................................................... 6

*In re Gen. Mills Glyphosate Litig.*,
   2017 WL 2983877 (D. Minn. July 12, 2017) ....................................................................... 7

*In re Houbigant Inc.*,
  914 F. Supp. 964 (S.D.N.Y. 1995)
  *on reargument sub nom. In re Houbigant, Inc.*,
  914 F. Supp. 997 (S.D.N.Y. 1996).....................................................................................9, 10

*JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc.*,
  957 F. Supp. 426 (S.D.N.Y. 1997).............................................................................................8

*Louis v. N.Y.C. Hous. Auth.*,
  152 F. Supp. 3d 143 (S.D.N.Y. 2016)........................................................................................3

*Luxottica Grp. S.p.A. v. Bausch & Lomb Inc.*,
  160 F. Supp. 2d 545 (S.D.N.Y. 2001) .......................................................................................3

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
  265 F.R.D. 106 (S.D.N.Y. 2010) ...............................................................................................5

*Manning Int'l Inc. v. Home Shopping Network, Inc.*,
  152 F. Supp. 2d 432 (S.D.N.Y. 2001) .......................................................................................8

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) .......................................................................................................8

*Phillip Morris USA Inc. v. Marlboro Express*,
  2005 WL 2076921 (E.D.N.Y. Aug. 26, 2005)...........................................................................5

*Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*,
  2019 WL 464583 (S.D.N.Y. Feb. 6, 2019)............................................................................5, 9

*Stinnett v. Delta Air Lines, Inc.*,
  278 F. Supp. 3d 599 (E.D.N.Y. 2017)........................................................................................5

*Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*,
  83 F. Supp. 2d 1016 (D. Minn. 2000) ........................................................................................9

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010) ........................................................................................... 1, 3, 4, 7

*Weslowski v. Zugibe*,
  96 F. Supp. 3d 308 (S.D.N.Y),
  *aff'd*, 626 F. App'x 20 (2d Cir. 2015) .......................................................................................9

*Williamson v. Apple, Inc.*,
  2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ............................................................................6

*Zino Davidoff SA v. CVS Corp.*,
  571 F.3d 238 (2d Cir. 2009) .......................................................................................................3

**Statutes**

15 U.S.C. § 1125(a) ........................................................................................................................1

N.Y. G.B.L. § 349.........................................................................................................................10

N.Y. G.B.L. § 350.........................................................................................................................10

**Other Authorities**

*Shopping for Antiques*, FTC (Apr. 2008),
    https://www.consumer.ftc.gov/articles/0092-shopping-antiques............................................8

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................................1

Fed. R. Evid. § 201(b) ....................................................................................................................5

Defendant The RealReal, Inc. ("The RealReal" or "TRR") respectfully submits this Reply in Support of its Motion to Dismiss Plaintiff Chanel, Inc.'s ("Chanel") First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## INTRODUCTION

Chanel's Memorandum of Law in Opposition ("Opp.") to TRR's Motion to Dismiss ("Motion" or "Mot.") ignores the better part of TRR's Motion and abandons the principal theories of Chanel's FAC. Chanel no longer insists that "[o]nly Chanel itself can know what is genuine Chanel," FAC ¶ 34, and no longer argues that TRR's proprietary authentication process and sale of Chanel goods dupe consumers into believing that TRR is endorsed by or affiliated with Chanel, *see, e.g.*, *id.* ¶ 69. In dropping those arguments, Chanel concedes the heart of its Trademark Infringement claim (First Claim for Relief) and ignores its False Endorsement/Unfair Competition claim (Third Claim for Relief) entirely. The remainder of Chanel's Trademark Infringement claim and its Counterfeiting claim (Second Claim for Relief) are squarely foreclosed by controlling precedent, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010). Chanel similarly abandons the better part of its False Advertising allegations (Third Claim for Relief)[1] and cannot overcome its failure to state a claim of literal or implied falsehood. Its claims under New York law (Fourth, Fifth, and Sixth Claims for Relief) are likewise deficient.

Although TRR has repeatedly offered to partner with Chanel to combat counterfeiting (including most recently before Chanel filed this very case, *see, e.g.*, FAC, Ex. F, at 2), Chanel's Opposition makes clear that Chanel's objective is not to police the market for counterfeit goods, but rather to stifle the legitimate secondary market by harassing TRR with meritless litigation. The FAC must be dismissed in its entirety and Chanel denied leave to amend.

---

[1] The FAC designates two claims as its "Third Claim for Relief," both brought pursuant to 15 U.S.C. § 1125(a)—the first for "False Advertising" and the second for "False Endorsement/Unfair Competition."

1

## ARGUMENT

I. **Chanel's Lanham Act Claims for Trademark Infringement, False Endorsement/Unfair Competition, and Counterfeiting Are Each Fatally Deficient.**

   A. **Chanel Has Abandoned the Heart of Its Trademark Infringement Claims.**

In its original Complaint and FAC, Chanel premised its Trademark Infringement claims on the allegation that TRR's conduct dupes consumers into believing that TRR is endorsed by or affiliated with Chanel. *See, e.g.*, FAC ¶ 69. Chanel's Opposition fails to respond to any of TRR's arguments supporting dismissal and thereby abandons its affiliation theory entirely.

As TRR set forth in its Motion, the *Polaroid* factors foreclose the allegations in the FAC: *inter alia*, in light of TRR's express disclaimers, Chanel cannot plausibly allege that consumers are likely to conclude mistakenly that TRR is affiliated with Chanel because TRR uses the Chanel mark in connection with genuine goods. *See* Mot. 12-13. Chanel does not argue that its theory as pleaded in the FAC survives the *Polaroid* factors. *See* Opp. 7-13.

Chanel's arguments regarding the first-sale rule are similarly inapplicable. *See* Mot. 13-14; Opp. 10-11. Chanel's cases *support* the proposition that "[t]he first sale/exhaustion doctrine generally prohibits a trademark holder from recovering for unauthorized resales of goods as long as the goods are genuine." *FUJIFILM N. Am. Corp. v. Big Value Inc.*, 2018 WL 4210132, at *1 (E.D.N.Y. Sept. 4, 2018). By arguing only that the first-sale rule does not apply to "*counterfeit* CHANEL-branded goods," Opp. 11 (emphasis added), Chanel does not dispute that the rule bars its broader theory that TRR confuses consumers into believing that TRR is affiliated with Chanel merely by consigning genuine Chanel products. Chanel appears to argue that TRR's removal of serial numbers from its written product *listings* (including but not limited to Chanel) makes the first-sale rule inapplicable. *Id.* However, by simply altering its own written product *descriptions*, TRR did not tamper with or otherwise "alter[] the *goods*" within the meaning of the

2

first-sale rule. *See Luxottica Grp. S.p.A. v. Bausch & Lomb Inc.*, 160 F. Supp. 2d 545, 552 (S.D.N.Y. 2001) (emphasis added).[2]  The first-sale rule applies and Chanel's claim is barred.

### B. Chanel Has Abandoned Its False Endorsement/Unfair Competition Claims.

Chanel's Opposition does not even mention its false endorsement/unfair competition claim (Third Claim for Relief), which explicitly relies on Chanel's now-abandoned theory that TRR "deceive[s] consumers by conveying the erroneous impression that . . . [TRR's] goods and services are authentic and approved by Chanel," FAC ¶ 99. *See generally* Opp. § II. Chanel thus abandons and so concedes the claim. *See Louis v. N.Y.C. Hous. Auth.*, 152 F. Supp. 3d 143, 156 (S.D.N.Y. 2016) ("[P]laintiffs do not respond to [defendant's] arguments or include any of their own arguments in support of these claims. Accordingly, we may properly infer that plaintiffs . . . have abandoned them." (citations omitted)).[3]

### C. Chanel's Counterfeiting Claims Are Barred by Controlling Precedent.

After Chanel's concessions, its only remaining theory of Trademark Infringement and Counterfeiting is the proposition that TRR infringed Chanel's trademark and engaged in trademark counterfeiting by selling seven allegedly counterfeit bags. *See* Opp. 8-9. That theory is barred unequivocally by *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010).

In that case, Tiffany challenged eBay's use of its marks to advertise jewelry because counterfeit "Tiffany" jewelry had been offered on the site. *Id.* at 96. Tiffany argued that eBay's

---

[2] *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009), is distinguishable. There, the defendant removed UPC codes from the *products themselves*, which involved "tampering—the cutting of packaging, the application of chemicals to wipe away the labeling, and the grinding of the bottles," *id.* at 246, and thus "interfered with the trademark holder's ability to control quality," *id.* at 243.

[3] Chanel likewise does not now dispute that TRR's use of the Chanel mark to identify genuine Chanel goods for resale is permissible under the nominative fair use factors. *See* Mot. 7-11. Rather, Chanel disputes that the analysis is proper on a motion to dismiss. *See* Opp. 12-13. But as there is no plausibility whatsoever to Chanel's now-abandoned factual allegations that TRR's use of Chanel's mark deceives its consumers into believing that TRR is "licensed, sponsored, or otherwise approved by Chanel," FAC ¶ 69, dismissal is appropriate on this ground. *See Accurate Grading Quality Assurance, Inc. v. Thorpe*, 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2013) (dismissal appropriate where pleadings "make no sense" or are expressly "contradicted either by statements in the complaint itself or by documents upon which its pleadings rely").

3

facilitated sale of counterfeit items supported a trademark infringement claim. *Id.* at 103. The Second Circuit expressly held that it did not: "eBay's knowledge *vel non* that counterfeit Tiffany wares were offered through its website . . . is **not a basis for a claim of direct trademark infringement** against eBay, especially inasmuch as it is undisputed that eBay promptly removed all listings that Tiffany challenged as counterfeit and took affirmative steps to identify and remove illegitimate Tiffany goods." *Id.* (emphasis added). The Second Circuit recognized that a different rule would impermissibly cripple the legitimate secondary market. *Id.* ("To impose liability because eBay cannot guarantee the genuineness of all of the purported Tiffany products offered on its website would unduly inhibit the lawful resale of genuine Tiffany goods.").

In response, Chanel ignores the analysis quoted above and cites a separate, irrelevant passage related to a distinct claim for false advertising. *See* Opp. 12. Chanel also attempts to distinguish TRR and eBay factually. *See id.* 12-13. However, like eBay, TRR is an online secondary market through which counterfeit goods allegedly were sold. TRR, like eBay, affirmatively identifies and removes counterfeit items, always cooperates with brands and law enforcement to identify sources of stolen or counterfeit goods, and destroys counterfeit items. *See* FAC, Ex. D, at 3; *see also id.*, Ex. F, at 2 (requesting information from Chanel to evaluate its claims as to counterfeit goods). The Second Circuit's rationale—that to impose liability on a secondary online reseller under the trademark laws "would unduly inhibit the lawful resale of genuine [] goods," 600 F.3d at 103—likewise bars Chanel's claims here.

The cases on which Chanel relies do not apply here. Several predate *Tiffany*, calling their viability into question.[4] Others concern *counterfeiters* and accomplices, not secondary retailers

---

[4] *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284 (S.D.N.Y. 2003); *Burberry Ltd. v. Euro Moda, Inc.*, 2009 WL 1675080 (S.D.N.Y. June 10, 2009).

4

like TRR.[5]  Still others concern *primary* retailers of counterfeit goods supplied by co-defendants.[6]  In cases involving actual counterfeiters, the concern underlying *Tiffany*—that liability for a retailer would "inhibit" legitimate owners' "lawful resale" of goods, *id.*—is absent.  Chanel's cases demonstrate that the proper defendant for a counterfeiting claim as to these seven items is the *counterfeiter*, not a legitimate secondary reseller like TRR.

## II.      Chanel Fails to State a Claim Under the Lanham Act for False Advertising.

Chanel has also significantly narrowed the scope of its false advertising claim.  While the FAC advanced the absurd claims that only those "trained by Chanel" can be called authentication "experts," FAC ¶ 38, and so TRR's advertising "deceive[s] consumers that there is an affiliation, sponsorship and/or association between Chanel and The RealReal," *id.* ¶ 55, Chanel abandoned those theories by failing to respond to the arguments set forth in the Motion, or even to raise the theories at all.  Instead, Chanel now bases its claim only on the alleged falsity of TRR's "100% the real thing[]" and "vintage" representations.  *See* Opp. § III.  Chanel's now-narrowed false advertising claim nonetheless fails because TRR's representations regarding the authenticity of its products and its authentication process, as well as its use of the term "vintage," are not false.[7]

---

[5] *See Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*, 2019 WL 464583 (S.D.N.Y. Feb. 6, 2019) (China-based counterfeiters of toys); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426 (S.D.N.Y. 2012) (supplier of counterfeit sunglasses); *Phillip Morris USA Inc. v. Marlboro Express*, 2005 WL 2076921 (E.D.N.Y. Aug. 26, 2005) (importer of counterfeit cigarettes who pleaded guilty to criminal counterfeiting).
[6] *See Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262 (S.D.N.Y. 2011) (retailer that sold counterfeit Chanel jewelry); *Gucci*, 286 F. Supp. 2d 284 (retailer selling counterfeit Gucci items).
[7] Chanel improperly attempts to constructively amend its pleading by resort to materials extrinsic to its complaint. *See* Baker Decl. Exs. 2-9.  "Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010).  Documents are "part of the pleadings" and thus properly considered on a motion to dismiss only if they are attached, incorporated, or integral to the complaint.  *Id.* at 123; *see also id.* at 124 (documents not "integral" when the complaint "lack[ed] any quotations from the[m]").  Nor are the materials appropriate for judicial notice.  *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 607 (E.D.N.Y. 2017) (judicial notice appropriate only if "a fact . . . is not subject to reasonable dispute" (quoting Fed. R. Evid. § 201(b))).  Exhibits 2 through 9 to Plaintiff's Opposition are not properly before the Court.

5

A.   **TRR's Representations Concerning the Authenticity of Its Products and Its Authentication Process Are Not Literally or Impliedly False.**

Chanel's attack on TRR's representations regarding the authenticity of its products and its authentication process is now apparently premised on a single statement: that "[The RealReal] ensure[s] that **every item on the [*sic*] RealReal is 100% the real thing[], thanks to our dedicated team of authentication experts** . . . ." Opp. 14.  "Consider[ing] the advertisement in its entirety," as Chanel admits is required, Chanel's allegations establish that this claim is neither literally nor impliedly false.  *Id.* at 13 (quoting *Avola v. La.–Pac. Corp.*, 991 F. Supp. 2d 381, 393 n.11 (E.D.N.Y. 2013)).  TRR's express and persistent acknowledgement of its authentication process makes clear what is no secret, particularly for TRR customers in the luxury secondary market: in a world where luxury fashion is big business, there have been and likely always will be sophisticated counterfeiters.  Were that not true, TRR would have no need for an entire *team* of authentication experts.  TRR's repeated celebration of and references to its "authentication experts" in its marketing provide the necessary and obvious context for TRR's guarantee: bad actors sometimes try to pass off counterfeit products and TRR fights against this reality by employing a team of trained authenticators.  TRR stands behind its record and commitment to identify and thwart counterfeiters.[8]  *Cf. Williamson v. Apple, Inc.*, 2012 WL 3835104, at *6 (N.D. Cal. Sept. 4, 2012) (representations regarding durability of iPhone's glass housing not false because of "well-known fact of life that glass can break under impact"); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017) (reasonable consumer would not interpret "100% Grated Parmesan Cheese" to mean that "shelf-stable" product was "nothing-but-cheese" because "pure dairy products spoil").

---

[8] TRR asked Chanel to assist it in those efforts to combat counterfeits and Chanel's response was to sue.  *See* FAC, Ex. F, at 2.  It is also telling that Chanel—a longtime opponent of the luxury resale market—bases its FAC on *seven* allegedly counterfeit handbags, as compared to the *more than eight million* items that TRR has sold.  *Id.*, Ex. C, at 3.

6

Chanel's attempt to isolate "100% the real thing[]" as an "unambiguous statement[] of measurable fact," Opp. 14, not only misconstrues the instruction to consider an advertisement in its entirety, but also ignores the fact that courts do not woodenly interpret "100%" as a measurable claim when, as here, context suggests otherwise. *See, e.g.*, *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("Made with 100% Natural Whole Grain Oats" not false when products contained glyphosate because "[i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule").

The same goes for TRR's use of the term "expert," an argument Chanel grossly mischaracterizes. *Compare* Opp. 2, *with* Mot. 18. Chanel has not alleged that the term "expert" "has [] definite meaning or defining factors," thereby rendering TRR's usage false. *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) (use of "Pro" was not false as "one would presume that the attorneys are pros in the opinion of the defendant"). TRR stands firmly behind its authenticators' training and expertise. But the fact remains that "expert" is not a standardized term in this context, which dooms Chanel's claim. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("we're the low cost commercial collection experts" was nonactionable under the Lanham Act).

Chanel's bluster that "TRR's advertising claims . . . are by definition rendered false by sale of *any* counterfeit item, regardless of whether one or a million counterfeit products are sold," Opp. 17, is completely devoid of support; this is not surprising as it is a serious distortion of applicable false advertising law. *See Tiffany*, 600 F.3d at 113 (noting "that eBay's advertisements were not literally false inasmuch as genuine Tiffany merchandise was offered for sale through eBay's website," notwithstanding the alleged sale of some counterfeit products). Nor is a different conclusion warranted under an implied falsehood theory, given the ample

7

context that TRR supplies regarding its authentication process, not to mention the FAC's lack of any credible evidence of consumer confusion, as required. *See* Mot. 18-20.

Finally, notwithstanding abandoning its affiliation theory in its Opposition, Chanel argues that TRR's disclaimers of any affiliation with Chanel are improper for the Court's consideration on a motion to dismiss. To the contrary, it is clear that courts may dismiss claims based on disclaimers. *See, e.g.*, *Davis*, 345 F. Supp. 3d at 543. *Davis*'s reliance on a disclaimer did not, as Chanel suggests, depend on the advertisement's subject matter. *See* Opp. 23 n.12. In any event, Chanel's cases instruct only that "a disclaimer is ineffective to *cure* a literally false statement." *JR Tobacco of Am., Inc. v. Davidoff of Geneva (CT), Inc.*, 957 F. Supp. 426, 437 (S.D.N.Y. 1997) (emphasis added). Those cases do not apply here, where the "100% the real thing[]" statement is not, as described above, literally false.[9]

### B. TRR's Representations that Certain Goods Are "Vintage" Are Not Literally or Impliedly False.

Chanel's theory of falsity based on TRR's use of the term "vintage," resurrected from its lawsuit against another luxury reseller, also fails. *See Chanel, Inc. v. WGACA, LLC*, 2018 WL 4440507 (S.D.N.Y. Sept. 14, 2018) (omitting any discussion of "vintage" allegations raised in Chanel's complaint). Although Chanel strains to argue that "[t]he FTC's guidance should be afforded great weight," Opp. 24, the case it cites concerned FTC guidelines found within the Code of Federal Regulations, *not* an article posted on the agency's website.[10]

Even if the online article deserved any weight, "it would be inappropriate to focus too

---

[9] Further, Chanel's insistence that a factual issue as to whether consumers in fact see the disclaimers precludes dismissal at this stage, Opp. 22, is undermined by the very case on which Chanel relies, which acknowledged that courts *should* consider "whether the design and content of [a] webpage rendered the existence of terms reasonably conspicuous," and whether the disclaimer was incorporated by reference, as it was here, FAC, Ex. D, at 3. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233, 234 (2d Cir. 2016).

[10] *Compare* Opp. 24 (quoting *Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001) (referencing guidance at 16 C.F.R. § 23.23(c))), *with* FAC ¶ 41 (quoting *Shopping for Antiques*, FTC (Apr. 2008), https://www.consumer.ftc.gov/articles/0092-shopping-antiques).

8

narrowly on" FTC guidance "when evaluating the question of [] liability under the Lanham Act," because a plaintiff must still prove falsehood and "not merely that the advertisements violate FTC guidelines." *Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016, 1022 n.2 (D. Minn. 2000). The FTC's nonbinding website article does not render TRR's representations literally false. Further, Chanel has not substantiated its cursory allegations of consumer confusion stemming from TRR's use of "vintage," as required for implied falsehood.

### III. Chanel Has Failed to Preserve Its Claims Under New York Law.

Chanel briefly opposes, in footnotes, TRR's arguments as to its state-law unfair competition claim and violation of the N.Y. G.B.L. (Fourth, Fifth, and Sixth Claims for Relief). Opp. 9 nn.4-5. "[B]ecause the arguments appear only in footnotes, they are not properly raised, and the Court is under no obligation to consider them." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y.) (collecting cases), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).

In any case, Chanel's arguments that it has properly pleaded "bad faith" and "public harm" under New York law—citing cases involving "sales of counterfeit goods" and "counterfeit sales to consumers," Opp. 9 nn.4-5—reaffirm its other concessions. It is now limited to its remaining theory that TRR violated New York law solely by selling seven counterfeit bags. However, as the cases cited by Chanel demonstrate, such claims are properly brought against *counterfeiters*, not legitimate secondary resellers like TRR.[11] There is no allegation here that TRR manufactures counterfeit goods, so Chanel's claims must be dismissed.

Furthermore, contrary to Chanel's argument, *see id.* at n.5, alleged consumer confusion arising from counterfeit items does not constitute the "public harm" required under G.B.L.

---

[11] *See, e.g.*, *Spin Master*, 2019 WL 464583, at *5 (China-based counterfeiters of toys); *In re Houbigant Inc.*, 914 F. Supp. 964, 975 (S.D.N.Y. 1995) (manufacturer and exporter of counterfeit products), *on reargument sub nom. In re Houbigant, Inc.*, 914 F. Supp. 997 (S.D.N.Y. 1996).

9

§§ 349 and 350 because such harm "is not distinct from the very harm that trademark laws generally seek to redress," *Coach*, 908 F. Supp. 2d at 436. Chanel's cases concern defendants who themselves allegedly engaged in counterfeiting schemes.[12] Accordingly, these claims likewise fail.

### IV. <u>Chanel Has No Basis to Demand Yet Another Opportunity to Amend Its Complaint.</u>

Chanel should not be granted further leave to amend its complaint. "A district court has broad discretion in determining whether to grant leave to amend." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). The Court made clear in its order on January 11, 2019, that "[i]t is unlikely that Plaintiff will have a further opportunity to amend." Doc. No. 18 at 1. Chanel has articulated no basis to depart from that mandate: "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment in sought—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) (citations omitted). Chanel has had two opportunities to state a claim against TRR and failed. There is no basis to grant it a third.

### CONCLUSION

For the foregoing reasons, together with those stated in TRR's opening memorandum, TRR respectfully requests that the Court grant its motion to dismiss the FAC with prejudice.

---

[12] *See In re Houbigant Inc.*, 914 F. Supp. at 984 (defendants "part of an unlawful scheme to export and sell counterfeit . . . goods in the United States"); *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 2013 WL 3943267, at *13 (S.D.N.Y. July 31, 2013) ("Defendants conspired to deceive . . . consumers with counterfeit goods.").

Dated: April 17, 2019

Respectfully submitted,

*/s/ Karen L. Dunn*
BOIES SCHILLER FLEXNER LLP
Karen L. Dunn (Admitted *Pro Hac Vice*)
kdunn@bsfllp.com
1401 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

BOIES SCHILLER FLEXNER LLP
Leigh M. Nathanson
lnathanson@bsfllp.com
Laura E. Harris
lharris@bsfllp.com
Yotam Barkai
ybarkai@bsfllp.com
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

SIDLEY AUSTIN LLP
Rollin A. Ransom (Admitted *Pro Hac Vice*)
rransom@sidley.com
Lauren M. De Lilly (Admitted *Pro Hac Vice*)
ldelilly@sidley.com
555 West Fifth Street
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant The RealReal, Inc.*