**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700 main
212.653.8701 fax
www.sheppardmullin.com

Theodore C. Max
212.653.8702 direct
tmax@sheppardmullin.com

September 18, 2020

**By ECF**

The Honorable Vernon S. Broderick
U.S. District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re:     Chanel, Inc. v. The RealReal, Inc.; Civil Action No. 18-cv-10626-VSB

Dear Judge Broderick:

We are counsel for plaintiff Chanel, Inc. ("Chanel") in the above-referenced matter and write jointly with counsel for defendant The RealReal, Inc. ("TRR"), pursuant to Your Honor's Individual Rule 3, to raise for the Court's resolution a discovery dispute identified by counsel for the parties during a ninety-minute meet and confer call on Friday, September 11, 2020 with Theodore Max, Tyler Baker, Hyo Jin Paik for Chanel, and Laura Harris, Leigh Nathanson, and Danielle Chattin, and Arianna Markel for TRR, namely, whether TRR's following objection to certain requests for production seeking material concerning all Chanel products and limitation of discovery under those particular requests is proper: "Chanel has identified Seven Handbags which it plausibly believes are counterfeit, and as such TRR has properly limited its responses to produce documents and communications relating to those seven instances so identified."[1]

**Chanel's Position**

As the Court observed in its March 30, 2020 Opinion & Order [ECF No. 39] (the "MTD Order"), "Chanel adequately alleges that The RealReal marketed and sold counterfeit Chanel products" and "The RealReal's advertising regarding the authenticity of the products it sells is literally false." *See id.* at 2, 9.  Further, the MTD Order acknowledges that Chanel's allegations of false advertising and trademark infringement and counterfeiting are not restricted to the seven identified items.  *See id*. at 9, 25.  Chanel has alleged, and the MTD described (*see id.* at 4-7, 25-29), that TRR has created and profited from advertising claims that every CHANEL-branded item that TRR offers for sale is genuine and rigorously authenticated by TRR's team of experts.

Chanel served Requests for Production ("Requests") and Interrogatories seeking discovery regarding: (i) TRR's sales of CHANEL-branded items; (ii) TRR's advertising and

---

[1] Chanel and TRR had identified a difference regarding discovery requests relating to Chanel's false advertising claims.  Following the meet and confer and Chanel's draft letter, TRR subsequently agreed to produce materials related to Chanel's claims, including the development, substantiation for and business strategy behind of TRR's advertising claims, not limited only to the seven handbags listed in the Amended Complaint.

**SheppardMullin**

The Honorable Vernon S. Broderick
September 18, 2020
Page 2

marketing of CHANEL-branded items; (iii) TRR's acquisition and authentication of CHANEL-branded items; (iv) TRR's development of, vetting of, substantiation for, and business strategy for its advertising claims alleged in the Complaint; (vi) authentication training and/or instruction provided by TRR to employees on luxury items, including CHANEL-branded items; and (vii) the hiring, qualifications, and work practices of TRR's authentication "experts" and copywriters.[2]   TRR contends that Chanel is not entitled to such discovery beyond the seven counterfeit bags identified in the Amended Complaint: "Chanel has identified Seven Handbags which it plausibly believes are counterfeit, and as such TRR has properly limited its responses to produce documents and communications relating to those seven instances so identified." (Quoting TRR's Sept. 3, 2020 letter to Chanel.)

In the parties' meet and confer teleconference, in order to reduce the potential production burden upon TRR, Chanel proposed, as an initial step, that TRR produce a list of CHANEL-branded items sold by TRR with TRR SKU Numbers, dates of purchase and sale, descriptions, and Chanel serial numbers so that Chanel can identify plausibly non-genuine or counterfeit items.  In order to try to address considerations of proportionality, Chanel asked TRR to articulate the burden of the proposed production.  TRR refused, saying it need not explain any burden because such information is not relevant to the Seven Handbags and is confidential and proprietary.[3]   Chanel submits that the proposal provides a reasonable mechanism that permits Chanel with limited discovery using TRR's system, which is readily-accessible without imposing a great burden.[4]   The potential public benefit by eliminating the sale of infringing and counterfeit goods is great and Chanel has no other way of obtaining this information because TRR no longer displays Chanel serial numbers.[5]

---

[2] For the Court's reference, attached as Exhibit A are TRR's responses and objections to Chanel's Interrogatories 2-7 and attached as Exhibit B are TRR's responses and objections to Requests 2- 3, 6-8, 18-19, 22, 27-32, 38, 40-41, 44; *see id.,* Requests 9, 20-21, 24-27, 33-35, 43.
[3] TRR's concerns about confidentiality do not justify blocking the production of relevant discovery, especially where any such concerns can be addressed by an appropriate protective order.  *See Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018).
[4] Subsequent to the parties' meet and confer, TRR's counsel proposed a "compromise" offering "to produce information from its database regarding Chanel items sold on TRR's website for a three-month period to be agreed upon by the parties."  Chanel reiterated its request that TRR explain the burden regarding Chanel's initial request, but TRR refused, stating without explanation "[t]he burden of such discovery extends beyond the burden of producing the database records themselves because Chanel will undoubtedly argue that those records open the door to further discovery into a whole host of items sold by TRR that are unrelated to Chanel's allegations."
[5] Any comparison by TRR to the *Chanel, Inc. v. WGACA* case is misguided; that action is different on its underlying facts and claims, and in any event, the defendant WGACA actually provided Chanel with the exact relief sought here -- a spreadsheet on the item descriptions, sales information, and serial numbers of all the CHANEL-branded items it sold for Chanel's review and assessment.

**Sheppard**Mullin

The Honorable Vernon S. Broderick
September 18, 2020
Page 3

The information sought by Chanel falls within the liberal discovery standard of Fed. R. Civ. P. 26(b)(1). "It is well-established within this Circuit that the rule of discovery will be satisfied if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action" and "[d]iscovery is relevant if there is a possibility that the information sought may be material to a 'party's claim.'" *MacCartney v. O'Dell*, No. 14-CV-3925 (NSR), 2018 WL 5023947, at *2-3 (S.D.N.Y. Oct. 17, 2018) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) and *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992)); 6 *Moore's Federal Practice: Civil* § 26.42 ("[D]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on claims and defenses of the parties.");*Cosmas v. Merrill Lynch & Co.*, No. 92 CIV. 6560 (LMM), 1995 WL 152526, at *1 (S.D.N.Y. Apr. 5, 1995) (following partial denial of a motion to dismiss, "plaintiff is not limited to less than *complete discovery* as to the issues remaining. . . .").

Production of TRR's database records on sales of CHANEL-branded items is relevant to not only Chanel's prosecution of its trademark and counterfeiting claims but also for discovery as to the extent of TRR's sales of non-genuine and counterfeit CHANEL-branded items. *See Design Basics, LLC v. Kerstiens Homes & Designs Inc.*, No. 1:16-CV-0726-TWP-DKL, 2017 WL 10776719, at *2 (S.D. Ind. Mar. 29, 2017) (plaintiffs who identified a limited number of allegedly infringing house plans were entitled to discover the extent of defendants' infringement and "the specific allegations of infringement in the Amended Complaint raise a reasonable expectation that discovery will reveal evidence of other infringing plans.").

Chanel respectfully requests a ruling compelling TRR to produce the discovery as follows: (ii) TRR shall provide a spreadsheet of CHANEL-branded items from its automated system, containing the item name, item sales description/attribute text, serial number, TRR SKU, sale date, web URL (if listed online), sales channel, and sales price, and (ii) TRR shall not limit its production in response to Chanel's Requests and Interrogatories to discovery merely on the "Seven Handbags."

### TRR's Position

Chanel filed this lawsuit challenging TRR's right to resell, authenticate, and advertise Chanel-branded goods and, separately, charging TRR with selling seven counterfeit Chanel handbags. This Court dismissed Chanel's broad challenge to TRR's business, upholding TRR's legal right to sell and market genuine Chanel goods. *See* MTD Order at 13-14, 17 ("the Lanham Act does not impose liability for 'the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner"). The only claims remaining in this case (Counts II, III, and V) hinge on whether the seven handbags Chanel identifies in its complaint are, in fact, counterfeit. *See id.* at 27 ("Chanel's allegations are only that The RealReal has 'sold at least seven counterfeit Chanel handbags").

Chanel seeks discovery that is drastically disproportionate to the needs of this case (*see* Fed. R. Civ. P. 26(b)(1)). Coupled with its pattern and practice of obfuscation and delay in

**Sheppard**Mullin

The Honorable Vernon S. Broderick
September 18, 2020
Page 4

responding to TRR's discovery requests, Chanel is treating discovery as a one-sided fishing expedition into TRR's business as part of a larger strategy to harm TRR as a competitor. Although TRR has already agreed to broaden its responses to certain requests where appropriate,[6] Chanel's demand for broad discovery into years of TRR's sales data ignores Rule 26's requirement that discovery be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

As a measure of good faith, TRR offered to produce information from its database regarding Chanel items sold on TRR's website for a three-month period to be agreed upon by the parties—a compromise that would enable Chanel to explore whether there is any evidence of counterfeiting apart from the seven handbags at issue—but Chanel refused to explore any compromise.  Rather, Chanel continues to seek broad discovery into the entirety of TRR's sales data.  Chanel's contention that it is entitled to discovery "if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action" is premised on a now-defunct version of the rule that permitted discovery "reasonably calculated to lead to the discovery of admissible evidence."  *See, e.g.*, *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991).  This standard is no longer applicable in light of the proportionality limitation under the revised Rule 26, which "encourage[s] judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016)

Chanel's broad requests—for example, for all documents and communications concerning TRR's "acquisition, purchase or buying of CHANEL-branded items," the authenticity of which Chanel has no basis to question—are disproportionate to the needs of Chanel's remaining claims and would require TRR to produce thousands of documents unrelated to Chanel's allegations in this matter. Rule 26(b)(1) does not allow Chanel broad, unfettered access to documents without regard to proportionality or burden.  *See In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2020 WL 1812801, at *3 (S.D.N.Y. Apr. 9, 2020).

As the Court in Chanel's case against another resale competitor, What Goes Around Comes Around, recognized, its discovery requests essentially amount to an audit of TRR's entire business. *See Chanel, Inc. v. What Goes Around Comes Around, LLC ("WGACA")*, No. 18 CIV. 2253*, ECF No. 81 at 4:10-13.  There, Judge Stanton vacated Chanel's broad discovery request for documents concerning the sale of Chanel-branded products, noting that the request "boggles the mind," and "goes beyond an audit of the entire business."  *Id.*  Likewise, Judge Stanton vacated Chanel's request for all documents concerning Chanel-branded products, noting that the

---

[6] For example, TRR has already agreed to produce information relevant to the development of the "100% authentic" marketing language challenged in the complaint.  Similarly, TRR has agreed to produce information regarding its authentication of Chanel handbags.

**Sheppard**Mullin

The Honorable Vernon S. Broderick
September 18, 2020
Page 5

request was "broad beyond conception," that this was a "pattern" throughout the requests, and that "it's very rare [to] see[] a bunch of requests drawn in this manner." *Id*. at 3:23-4:6.

Chanel's contention that copyright infringement plaintiffs are entitled to a widened scope of discovery is baseless, and the only case it cites in support of that contention is inapposite. *See Design Basics,* 2017 WL 10776719, at *2. In that case, the court permitted discovery to transcend the specific instances of infringement the plaintiffs identified because it held that the complaint plausibly alleged a broad *pattern* of infringement, citing only certain *examples*. In fact, that case recognized that other courts have held that where a complaint's infringement allegations are limited to specific items—as Chanel's are—discovery should not be expanded beyond those items. *See id. (citing Design Basics LLC v. Ahmann Design, Inc.*, No. C16-0015, 2016 WL 4251076, at *3 (N.D. Iowa Aug. 10, 2016) (holding that where the complaint specifically identified allegedly infringing plans, documents relating to other plans were irrelevant and not subject to production); *Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*, No. 07-21659-CIV, 2007 WL 4117261, at *3 (S.D. Fla. Nov. 16, 2007) (denying motion to compel production of all defendant's drawings and designs where complaint's allegations were limited to three specific projects)). Because Chanel has no basis to allege that TRR sold other counterfeit items, discovery should be limited to information relevant to the Seven Handbags.

*Second,* Chanel's overly broad discovery requests are part of a strategy to stall discovery in order to prolong the harm to TRR's business and reputation caused by the cloud of this litigation. Chanel has refused to allow TRR to inspect the Handbags on the grounds that its warehouse is closed (despite the fact that TRR first made its inspection request in 2018, before this lawsuit was filed) and has only recently revealed—contrary to prior representations—that it has never had possession of one of the seven handbags.[7] Chanel took over six weeks to identify the individuals involved in the handbags' chain of custody on the basis that it did not understand the meaning of that term, preventing TRR from identifying relevant custodians for document searches. These tactics—also employed by Chanel in the *WGACA* litigation, where the defendant was forced repeatedly to seek court intervention to police Chanel's compliance with its discovery obligations and its repeated misuse of the word "counterfeit"[8]—demonstrate that Chanel's purpose is not to prosecute its claims in good faith, but rather to disrupt TRR's business and harm TRR as a competitor.

Because Chanel's remaining claims involve only the seven allegedly counterfeit handbags and to prevent further abuse of the discovery process by Chanel, TRR respectfully

---

[7] It is unclear how Chanel intends to prove its claims as to the seventh Handbag, which it now admits it never possessed and therefore has never inspected. Moreover, without the ability to physically inspect the seventh Handbag, TRR cannot defend against Chanel's claim that the Handbag was counterfeit.

[8] *Chanel, Inc. v. WGACA, LLC*, No. 18 CIV. 2253 (LLS), 2018 WL 4440507 (S.D.N.Y. Sept. 14, 2018), ECF Nos. 119, 120, 139, 146; *see also id.* at ECF No. 128 (ordering Chanel to show cause why the court should not enter an order striking five documents filed by Chanel from the record for its "irresponsible abuse of the word 'counterfeit'").

**Sheppard**Mullin

The Honorable Vernon S. Broderick
September 18, 2020
Page 6

requests that the Court (i) deny Chanel's request for access to TRR's entire database for consignments and sales of Chanel items and instead require Chanel to narrowly tailor its records request to be proportional to the needs of the case; and (ii) order that scope of discovery be limited to information reasonably related to the seven allegedly counterfeit handbags with the exception of specific requests that call for more generalized responses such as those to which TRR has already agreed.

\*       \*       \*

      We thank Your Honor for your consideration of this matter.

Respectfully submitted,

*/s/ Theodore C. Max*

Theodore C. Max

TCM:er
cc: Counsel of Record

SMRH:4830-6376-6987.12