# King & Spalding

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Leigh Nathanson
Direct Dial: +1 212 790 5359
Direct Fax: +1 212 556 2222
lnathanson@kslaw.com

October 5, 2020

**VIA CM/ECF**

The Honorable Vernon S. Broderick
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

The Honorable Gabriel W. Gorenstein
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

   RE: *Chanel, Inc. v. The RealReal, Inc.*, 18-CV-10626 (VSB) (S.D.N.Y.)

Dear Judges Broderick and Gorenstein:

  Pursuant to Judge Broderick's Individual Rule 3, Defendant The RealReal, Inc. ("TRR") and Plaintiff Chanel, Inc. ("Chanel") write jointly in connection with a discovery dispute as to TRR's requests for information related to: (1) Chanel's internal database used for "brand enforcement" purposes; (2) third parties involved with the design, manufacture, or repair of Chanel handbags; and (3) Chanel's relationships with other resellers of preowned Chanel-branded products.

  The parties met and conferred on these issues through letters dated September 3 and 11, 2020, and via telephone conference on September 18, 2020. The telephone conference, which lasted approximately one hour and twenty minutes, was attended by Leigh Nathanson, Danielle Chattin, Arianna Markel, and Rachel Corrigan for TRR, and by Ted Max and Tyler Baker for Chanel. The meet and confer process did not resolve the issues we now ask the Court to address.

**I. TRR'S POSITION**

  **(1)** Chanel's allegation that TRR sold seven purportedly counterfeit handbags (the "Seven Handbags") is based in large part on Chanel's representation that TRR lacks the knowledge to authenticate Chanel goods without the ability to reference Chanel's internal database for the serial numbers associated with the handbags it manufactures. TRR therefore propounded a request for

Hons. Vernon S. Broderick and Gabriel W. Gorenstein
October 5, 2020
Page 2

"documents and communications concerning Chanel's internal authentication database, including but not limited to Chanel's representation that it is the sole method by which to authenticate Chanel products." *See* Ex. A, TRR Request No. 12. Chanel objected on vagueness grounds, contending that it has no "authentication database" because it does not authenticate Chanel products that it manufactures. Chanel explained, however, that it does maintain a proprietary database that "includes certain information that can be reviewed for brand enforcement purposes." Based on Chanel's representations, TRR explained that it is seeking records from and documents related to that database, including how information is input, accessed, maintained, and used. Chanel now contends this request is disproportionate to the needs of the case. In light of Chanel's continued objections, TRR agreed to narrow its request to: (1) database records for the Seven Handbags or the serial numbers associated with those Handbags; (2) database records for a sample of 50 Chanel handbags for each year from 2005 to the present; (3) policies and procedures for maintaining and using the database; (4) documents and communications related to handbag serial numbers in the database, including serial numbers that were allegedly stolen and serial numbers for handbags that were never received by Chanel for quality control; and (5) documents and communications related to database errors or inaccuracies with respect to handbags. Even with these limitations, Chanel still refuses to produce information regarding the database beyond categories (1) and (3).[1]

There appears to be no dispute that this information is relevant, given Chanel's reliance on the database to make the allegation that the Seven Handbags—one of which it has noteven seen—are counterfeit. To defend against Chanel's claims, TRR must have sufficient information as to how the database is maintained in order to assess its relevance to authentication and the reliability of its records. The relevance of the requested information outweighs any burden to Chanel, particularly in light of TRR's efforts to narrow the scope of information sought.

**(2)** Chanel has also refused to produce any documents and communications regarding third parties that Chanel uses to perform any service concerning its handbags, including "design, manufacturing, authentication, repair, or restoration services." *See* Ex. A, TRR Request Nos. 10, 13, 20; Ex. B, TRR Interrogatory No. 5. Chanel contends this information is not relevant, and that the requests are unduly burdensome.

This information is relevant to two of the central issues in this case: (1) the authenticity of the Seven Handbags, and (2) the sufficiency of TRR's authentication process, including in comparison with Chanel's authentication process for "brand enforcement purposes." With respect to the first issue, Chanel has stated in related litigation that certain handbag serial numbers were stolen from a third-party manufacturing facility and that, for other serial numbers, Chanel never received the corresponding handbags from the manufacturer for quality control. *See Chanel, Inc. v. WGACA, LLC*, No. 18 CIV. 2253 (LLS) (S.D.N.Y.), Dkt. No. 119 at 4-6. In fact, Chanel has accused one of its authorized manufacturers of "manufacturing more handbags than contracted for and selling the excess and adding Authenticity Cards in its possession." *Id.* at 5. TRR is entitled to

---

[1] Chanel conditions its release of any other database records on TRR's agreement to produce its sales records for all Chanel products—which are not at issue in this case—at which point Chanel will produce database records only for those products that it believes to be counterfeit. This is not the information TRR has requested, and Chanel's proposal is a fishing expedition poorly disguised as a compromise.

Hons. Vernon S. Broderick and Gabriel W. Gorenstein
October 5, 2020
Page 3

explore whether any of Chanel's third-party vendors were the original source of any or all of the Seven Handbags, which bears on Chanel's counterfeiting claim. *TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 490 (S.D.N.Y. 2012) (dismissing counterfeit claim where watches were produced by the same manufacturer that produced authorized watches, using the same materials and designs, but were stolen), *overruled on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013). Moreover, information regarding the source and care of materials used in authentic handbags, including the leather, hardware, zippers, and authentication cards, is necessary for TRR to defend against Chanel's claim that the Seven Handbags are inauthentic.

As to the second issue, Chanel claims that TRR's authentication process—which involve physically inspecting a handbag's leather, construction, hardware, logos, etc.—is insufficient and that only Chanel can authenticate a Chanel handbag. But if Chanel is reliant on third parties for the materials and construction of its handbags, it is no better positioned than TRR to identify a genuine Chanel handbag. Moreover, if Chanel engages third-party The Leather Surgeons to restore or authenticate Chanel handbags, then this too refutes Chanel's contention.

**(3)** Finally, TRR seeks information relating to the secondary market for Chanel products, including documents and communications concerning: the resale of Chanel handbags on the secondary market; agreements between Chanel and any other reseller of Chanel handbags, including reseller Farfetch; Farfetch's use of Chanel trademarks to sell Chanel products; Chanel's approval of "authorized sellers" of Chanel products; and Chanel's communications with retailers or media outlets regarding TRR or other resellers. *See* Ex. A, TRR Request Nos. 6, 8, 9, 16, 21, 22, 2; Ex. B, TRR Interrogatory No. 10 (requesting identity of persons with knowledge of agreements between Chanel and any reseller of Chanel products).

Chanel objects that this information is not relevant. But these requests seek information directly relevant to TRR's unclean hands defense, such as evidence that Chanel is actively trying to block TRR's participation in the secondary market for Chanel products or that Chanel is engaged in the same allegedly deceptive practices as TRR through its relationship with other resellers of Chanel products. Chanel appears to concede that it has agreements in place with numerous other resellers, contending that it will take "weeks of time to assemble the necessary documents" to respond to TRR's request for the identity of persons with knowledge of those agreements. Chanel also admits that it has a business relationship with Farfetch, but Chanel refuses to produce information regarding that relationship, contending it is "highly proprietary"—a concern that can be addressed through a protective order—and "has nothing to do with this case." To the contrary, the extent of Chanel's financial interest in a TRR competitor, which is engaged in the exact same conduct as TRR, is directly relevant to TRR's unclean hands defense and Chanel's false advertising allegation.

In response to Chanel's contention that TRR's requests are overly broad and unduly burdensome, TRR agreed to limit certain of its requests to resellers of Chanel handbags only. However, TRR explained that this limitation would not make sense for other requests, which seek documents that are not specific to any product (Request Nos. 8, 9, 21, 22). Given Chanel's repeated insistence that it does not participate in the secondary market, TRR cannot imagine how its requests for information related to the secondary market could create an undue burden. In any event, the relevancy of these documents outweighs Chanel's unsupported contention of an undue burden.

Hons. Vernon S. Broderick and Gabriel W. Gorenstein
October 5, 2020
Page 4

**II.     CHANEL'S POSITION**

Chanel respectfully submits that TRR's application with regard to the enumerated issues is without merit because: (1) TRR's application misstates Chanel's position on a number of the Responses to the Requests for Production at issue; (2) TRR's application is premature because TRR failed to narrow its requests as it had agreed to do during the meet and confer call and moved for the Court's assistance before recivingChanel's to response to TRR's September 23, 2020 email; and (3) Many of the requests seek information for which, notwithstanding repeated requests during the meet and confer process, TRR has not demonstrated any relation to the calims and defenses at issue.  The issues will be addresses *ad seriatim*:

**(1)** TRR's discovery requests regarding "Chanel's internal authentication database" are based on the false premise that Chanel's "allegation that TRR sold seven purportedly counterfeit handbags (the 'Seven Handbags') is based in large part on Chanel's representation that TRR lacks the knowledge to authenticate Chanel goods without the ability to reference Chanel's internal database for the serial numbers associated with the handbags it manufactures." That statement is not true and Chanel's allegations are not "based on large part" on that false premise.  Nor has Chanel represented that it has an "authentication" database or that reference to its database is the sole method by which Chanel determines whether secondhand items are genuine or not. What Chanel did explain was that the database that is used to track serial numbers for handbags is used to track information concerning *all* Chanel products and is highly proprietary and confidential. Chanel explained to TRR that the process of determining whether a handbag is genuine depends, in part, upon the item at issue and many factors, including its source and provenance. Chanel employs different means, including this database, to analyze these facts and assess whether a given item is genuine or counterfeit.

TRR also misstates Chanel's position.  To be clear, during the meet and confer call, Chanel agreed to provide responsive documents regarding:  (1) database records for the Seven Handbags or the serial numbers associated with those Handbags; (2) policies and procedures for entering, maintaining, and using the database; (3) documents and communications related to use of the handbag serial numbers at issue in this case in the database, including serial numbers that were allegedly stolen and serial numbers for handbags that were never received by Chanel for quality control; and (4) documents and communications related to database errors or inaccuracies with respect to the handbags at issue in this case.  If additional infringements are found in discovery, for example, after TRR provides Chanel Serial numbers for TRR CHANEL-branded product in inventory or which it has sold, Chanel would supplement its production accordingly.  With regard to the request for database records for seven hundred fifty  Chanel  handbags that have nothing to do with the action (a sample of 50 for each year from 2005 to the present), Chanel previously asked TRR to explain how a similarly-requested "three month" sampling of Chanel's database records related to the claims and defenses in this case and TRR refused to do so; TRR's updated request for a random 750 handbags fares no better in terms of relevance and is likewise unjustified.

Further, TRR's letter prematurely raises this issue before the Court without waiting for Chanel's production in response to the Request for Production.  Indeed, by email correspondence dated September 23, 2020, TRR requested the five categories of discovery for which TRR now seeks the Court's assistance. Sept 23, 2020 email by TRR counsel.  In response to such email, Chanel's counsel informed counsel for TRR that it was conferring with Chanel regarding the

Case 1:18-cv-10626-VSB-GWG   Document 61   Filed 10/05/20   Page 5 of 6

Hons. Vernon S. Broderick and Gabriel W. Gorenstein
October 5, 2020
Page 5

modified requests and would provide a response soon. Rather than wait for that response and reasonably work with Chanel, TRR instead elected to file this letter.

Chanel has already informed TRR that it would provide certain information on items from its database corresponding to the serial numbers that appear on the Seven Handbags sold by TRR, and expected that TRR would provide its own information pertaining to those Seven Handbags. The request for database information on "50 randomly selected Chanel handbags for each year from 2005 to the present" is untethered, and TRR has not provided an explanation as to how this random number of randomly-selected items actually seeks relevant information. If TRR is interested in learning more about the generalized capabilities and functions of Chanel's proprietary, highly confidential, and competitively-sensitive database, the proper course should be to explore such topics through interrogatories and depositions, rather than subjecting Chanel to potentially voluminous document production when there is no foundation laid to support TRR's fishing expedition for random errors in Chanel's database. *See* Fed. R. Civ. P. 16(b)(2)(C) (discovery sought "must" be limited if "the discovery sought is . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive"). TRR's application should therefore be denied.

**(2)** As was explained previously to TRR, its request for ***any and all*** documents and communications regarding ***any and all*** third parties that Chanel uses to perform any service concerning its handbags, including "design, manufacturing, authentication, repair, or restoration services" is incredibly overbroad, burdensome, and not proportional to the needs of the case, yet TRR has refused to narrow the request at all. This would be tantamount to an audit of every aspect of Chanel's business for ten years. When asked, TRR, could not articulate a relationship between this request and the defenses and claims in this action. Nor is any such claim of relevance set forth in this letter. In addition, the burden of this request is grossly out of proportion with the possible relevance. Chanel previously explained both in correspondence to TRR and meet and confer discussion that during the ten-year period that TRR asserts is at issue, Chanel has sold ***hundreds and hundreds of millions*** of products and ***millions*** of handbags and worked with ***thousands of third party entities***. Compiling documents and preparing a list of such entities and disclosing the identity relating to such entities is not only highly confidential and proprietary but also would be a Herculean task requiring months of time. Chanel requested that before Chanel is required to undertake any such effort, TRR should explain the reason and relevance of such discovery and meet and confer to try to narrow the scope of any such request proportionate to the incredible burden imposed. TRR refused to narrow the scope or adequately explain the relevance of such a volume of material. TRR has simply not explained how the absurdly enormous volume of materials implicated by its overbroad request are justified or tailored to the actual concerns advanced in its letter. The request should be denied.

**(3)** The discovery TRR seeks with regard to Farfetch is overly broad and, as explained to TRR, seeks irrelevant information. Chanel's contractual relationship with Farfetch involved confidential and proprietary augmented retail technology, which has nothing to do with Farfetch's re-sale of secondhand CHANEL-branded items or use of CHANEL Trademarks on Farfetch's online marketplace. TRR's request for "[a]ll documents and communications concerning Farfetch UK Limited ('Farfetch'), including any financial or business agreement or arrangement between Chanel and Farfetch" is not relevant or directly related to any claim or defense in this action. Given

Hons. Vernon S. Broderick and Gabriel W. Gorenstein
October 5, 2020
Page 6

the sensitivity of the Farfetch relationship concerning brick-and-mortar retail technology, Chanel requests permission to file additional declarations from Chanel and/or formal briefing if necessary.

Nevertheless, Chanel already stated that it will produce the documents "related to actions against Farfetch regarding the advertising of CHANEL-branded items on Farfetch's online platform." Chanel further explained to TRR that with regard to "actions against Farfetch," Chanel's counsel sent Farfetch a cease and desist letter on November 13, 2018 (the "C&D Letter") regarding Farfetch's improper use of CHANEL Trademarks and incorrect representations of certain CHANEL-branded handbags on Farfetch's website, and that Chanel will produce to TRR the C&D Letter as well as other, relevant and non-privileged communications regarding the C&D Letter. TRR's assertion that Chanel's relationship with Farfetch is relevant to TRR's unclean hands defense that Chanel has no actionable false advertising claim because supposedly Chanel condones the same conduct by Farfetch is without any factual basis and incorrect. Indeed, Chanel has not "condone[d]" Farfetch's conduct. To the contrary, Chanel's counsel sent the C&D Letter.[2] TRR has not made a showing of any actual facts indicating how the information being requested regarding Farfetch is relevant to this case. *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97 CIV 4661(RCC), 2001 WL 630481, at *2 (S.D.N.Y. June 7, 2001) (district court may refuse discovery where a party fails to produce any specific facts whatsoever to support an allegation).

With regard to TRR's broad requests relating to "resellers" of Chanel goods, Chanel explained that, as propounded, these discovery requests would require weeks of time to assemble the necessary documents and responses. Chanel asked TRR to narrow the scope of the request in terms of time frame, geography, and scope so that Chanel would eliminate, for example, take-down letters sent to auction sites and sites selling such products that are not sold by TRR such as fragrance and beauty products. Chanel had understood, based on TRR's representations during the parties' meet and confer, that TRR was working to narrow these requests. However, based upon TRR's letter, this did not happen. TRR has refused to narrow its requested scope, and continues to seek broad discovery not properly tailored or proportional to the needs of the case. TRR's requests should be denied.

\*     \*     \*

We thank Your Honor for your consideration of this matter.

Sincerely,

Leigh Nathanson

---

[2] Chanel notes that in the *Chanel v. WGACA* action, Judge Stanton denied broad discovery relating to Farfetch, including further discovery on Chanel's relationship with Farfetch, and further denied the defendants' second motion to compel on the defendants' request that Chanel identify the person with most knowledge regarding Chanel's "partnership" with Farfetch.