**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS    NEW YORK, NEW YORK 10019-6064
TELEPHONE  (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(202) 223-7308

WRITER'S DIRECT FACSIMILE
(202) 379-4217

WRITER'S DIRECT E-MAIL ADDRESS
kdunn@paulweiss.com

**MEMORANDUM ENDORSEMENT**

October 30, 2020

**By ECF**
The Honorable Gabriel W. Gorenstein
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   Chanel, Inc. v. The RealReal, Inc.; Civil Action No. 18-cv-10626-VSB-GWG

Dear Judge Gorenstein:

We represent Defendant TheRealReal, Inc. ("TRR") in the above-referenced matter. Pursuant to your individual Rule 2.A, we write respectfully to request a pre-motion conference in regards to TRR's anticipated Motion to Amend TRR's Answer and Affirmative Defenses ("Answer") to assert antitrust and related anticompetitive counterclaims against Chanel. TRR's Amended Answer and Proposed Counterclaims are attached as Exhibit A.

**I.    Background**

In November 2018, Chanel filed this lawsuit challenging the right of TRR—a secondary reseller of luxury handbags and clothing and one of Chanel's major competitors—to authenticate, advertise, and resell Chanel goods and alleging that TRR sold seven purportedly counterfeit Chanel handbags on its platform. Chanel's sweeping claims for trademark infringement, unfair competition, false endorsement, and false advertising attacked the core of TRR's business model in a blatant attempt to stifle legitimate competition and undermine confidence in sellers of Chanel goods other than Chanel itself. The crux of Chanel's lawsuit was that TRR should not be permitted to represent that the Chanel goods it sells are authentic because "[o]nly Chanel itself can know what is genuine Chanel." ECF 26 ¶ 34. Chanel's lawsuit against TRR is not Chanel's first or only attempt to shut down its competition. A few months prior to initiating the instant proceeding, Chanel commenced a similar action against another luxury consignment company, What Goes Around Comes Around ("WGACA"). Both actions are now in the discovery phase with the conclusion of fact discovery expected in spring of 2021. And in both actions, Chanel has vigorously opposed the production of documents that would reveal the extent of Chanel's anti-competitive actions as well as Chanel's motivation in bringing these lawsuits against its competitors.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

Recently, however, Chanel disclosed new evidence demonstrating that Chanel's actions are not a good faith effort to police counterfeiting but rather a targeted campaign to prevent certain competitors from operating in this specialized market while sparing others—specifically, those in which Chanel has a financial stake. On or around August 13, 2020, TRR learned for the first time, through the public filings in *WGACA*, that Chanel's outside counsel (the same as in this litigation) sent a cease-and-desist letter to Farfetch UK Limited ("Farfetch") in November 2018, alleging that Farfetch was engaging in unacceptable behavior by advertising, offering for sale, and selling second-hand Chanel products on Farfetch's website in a portion of the website entitled "Chanel Vintage." *Chanel, Inc. v. WGACA LLC*, No. 18-cv-2253 (LLS), ECF 129-2, 137-1. Like TRR and WGACA, Farfetch is a secondary reseller that markets, authenticates, and sells pre-owned Chanel handbags as well as other investment grade handbags. However, Farfetch is no ordinary competitor to Chanel. At the time, Chanel held a significant investment in Farfetch and had just executed a lucrative partnership deal with Farfetch. Moreover, as Farfetch announced a few months prior to the cease-and-desist letter, Chanel joined Farfetch's existing shareholders as part of the partnership deal. WGACA ECF No. 120-3. Thus, Farfetch's response to Chanel's outside counsel was unsurprising: "Given the existing relationship between Farfetch and Chanel, we will pick up the contents of the letter with Chanel directly." WGACA ECF 137-1 at 3. These disclosures in the *WGACA* litigation provide direct support for TRR's proposed counterclaims against Chanel.

## II.   TRR's Should Be Permitted to Amend Its Answer to Assert Counterclaims

TRR seeks leave to amend its Answer to assert antitrust and related anticompetitive counterclaims against Chanel under Federal Rule of Civil Procedure Rule 15(a) or, in the alternative, under Rule 16(b).

Rule 15(a) sets forth a liberal standard for amending pleadings and provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). There is a general presumption in favor of granting the moving party leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Curtis v. Citibank*, No. 97CIV.1065, 1998 WL 3354, at *2 (S.D.N.Y. Jan. 5, 1998).

Where a scheduling order has been entered and the deadline for an action has passed, the lenient standard under Rule 15(a) must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of "good cause." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (Gorenstein, J.). Good cause "turns on the diligence of the party seeking to modify the scheduling order." *Id.* Even where the moving party did not act diligently, a district court may nevertheless allow an amendment if it would cause no prejudice to the opposing party. *See id.* (explaining that district courts have allowed amendments that cause no prejudice to the opposing party even where the moving party failed to show good cause and noting that "'[s]cheduling orders are not the Code of Hammurabi.'").

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

Where, as here, a scheduling order exists but does not explicitly prescribe the time for a specific action, the court may apply the Rule 15 analysis. *See Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 676 n.12 (S.D.N.Y. 1996) (the court declined to apply the "good cause" standard of Rule 16(b) because, although the scheduling order in the case "implicitly incorporate[d] a deadline of December 21, 1994 to add additional defendants . . . [it] did not explicitly prescribe the time by which the Town was required to move to add parties to its complaint.").

Under the Rule 15 analysis, "it would be an abuse of discretion, 'inconsistent with the spirit of the Federal Rules,' for a district court to deny leave without some justification, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Dynamic Worldwide Logistics, Inc. v. Exclusive*, 2015 WL 5439217, at *4 (S.D.N.Y. Sept. 14, 2015). This is TRR's first request to amend. Nor is there any undue delay, bad faith, or dilatory motive by TRR. Further, the proposed amendment would not cause undue prejudice to Chanel: TRR filed its Answer a few months ago, in late May 2020; neither party has produced any documents thus far; TRR has already requested relevant discovery concerning Farfetch and Chanel's relationships with secondary resellers from Chanel; and the parties have until May 2021 to complete all discovery.

Even if this Court were to apply the heightened Rule 16 standard, TRR has ample "good cause" to amend its Answer and assert counterclaims. The "key question under Rule 16's good cause standard is whether [the party seeking leave to amend] has acted diligently." *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 148 (S.D.N.Y. 2012). Here, TRR has acted diligently in seeking leave to amend because it is moving shortly after uncovering evidence from August 2020 that gives rise to counterclaims. The Chanel-Farfetch correspondence described above indicates that Chanel sought to insulate Farfetch from actions Chanel was aggressively taking against other competitors, due to Chanel and Farfetch's partnership and investment relationship. That Chanel made an affirmative decision not to pursue similar claims against Farfetch—which only came to light two months ago—provides "good cause" for TRR to amend its Answer. TRR has acted diligently in the two months since learning of Chanel's decision not to pursue claims against Farfetch. In those two months, TRR has conducted further research and prepared the moving papers. TRR's diligence is particularly apparent in light of general delays and inconveniences caused by the ongoing COVID-19 pandemic.

Respectfully yours,

*/s/ Karen L. Dunn*
Karen L. Dunn

**The pre-motion conference requirement is waived. Before filing the motion, however, the defendant should discuss with plaintiff whether plaintiff will stipulate to the filing of the proposed amended pleading in light of the fact that any such stipulation will not waive or otherwise affect plaintiff's right to challenge any aspect of the proposed amended pleading on "futility" grounds (for example, by means of a motion to dismiss, for judgment on the pleadings, or for summary judgment). If no agreement can be reached, the defendant should file the motion promptly. Briefing shall be in accordance with paragraph 2.B of the Court's Individual Practices.**

**So Ordered.**

*[signature]*
GABRIEL W. GORENSTEIN
United States Magistrate Judge
October 30, 2020