# ATTACHMENT 1

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore C. Max
tmax@sheppardmullin.com
Thomas M. Monahan
tmonahan@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

*Attorneys for Plaintiff Chanel, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Chanel, Inc., <br><br>               Plaintiff, <br><br>     v. <br><br> The RealReal, Inc., <br><br>               Defendant. | 1:18 CV10626 (VSB) <br><br> **FIRST AMENDED COMPLAINT** |

      Plaintiff Chanel, Inc. ("Plaintiff" or "Chanel"), by its undersigned counsel, Sheppard Mullin Richter & Hampton LLP, for its First Amended Complaint against defendant The RealReal, Inc. ("Defendant" or "The RealReal"), alleges as follows:

<u>SUBSTANCE OF THE ACTION</u>

      1.    Chanel is an iconic fashion company whose luxury products are advertised and sought worldwide. Celebrities, stylists, and influencers covet Chanel designs and accessories. Chanel designs are prominently featured in print, television and social media. Authentic CHANEL products -- new or secondhand -- command top-dollar prices because of their extraordinary design and quality and the limited number of each design that are manufactured. Chanel owns rights to several CHANEL and "CC" monogram trademarks which represent the prestige and quality that have become associated with Chanel and its luxury designs.

2.     This action arises out of The RealReal's improper business practices.  The

RealReal represents itself on its website as "the premier site for online luxury consignment" and

represents to consumers that "[The RealReal] is authentic.  [The RealReal] ensure[s] that every

item on the RealReal is 100% the real things, thanks to our dedicated team of authentication

experts…."  Defendant The RealReal advertises and purports to sell authentic, secondhand

luxury products, including purportedly authentic CHANEL-branded products, that it obtains

from third-party consignors.  In fact, Defendant The RealReal also sells CHANEL-branded

products, including handbags, which it purports to be genuine but are in fact counterfeit.

Through its business advertising and marketing practices, Defendant The RealReal has attempted

to deceive consumers into falsely believing that Defendant The RealReal has some kind of

approval from or an association or affiliation with Chanel or that all CHANEL-branded goods

sold by The RealReal are authentic.

3.     The RealReal presents and conducts workshops for consumers on Chanel titled

"History of Chanel" and on authenticating luxury goods, including CHANEL products, when the

workshops have not been authorized or approved by Chanel.

4.     There is no nor has there ever been any approval by or association or affiliation

between Chanel and Defendant The RealReal.  The RealReal understands that the value of its

CHANEL-branded inventory and attraction for consumers is enhanced if consumers believe that

Chanel has a business relationship or affiliation with Defendant The RealReal and that Chanel

approves and/or confirms the authenticity of the products The RealReal sells.

5.     Customers considering purchasing purportedly genuine CHANEL-branded items

from The RealReal are, in fact, relying solely on The RealReal's – not Chanel's – inspection of

the CHANEL-branded items and The RealReal's representation that The RealReal's consumers can be sure that "every item is 100% authentic."

6.      As stated above, Chanel recently learned that Defendant The RealReal has sold counterfeit CHANEL handbags.

7.      The RealReal's distribution and sale of counterfeit CHANEL handbags causes irreparable harm to Chanel and deceives the consuming public because such conduct by The RealReal results in The RealReal's unapproved use of Chanel's trademarks to sell counterfeit goods which are not authorized and are vastly inferior and materially different from genuine Chanel products.

8.      Chanel is seeking to prevent Defendant The RealReal from: (i) continuing to mislead consumers into believing that The RealReal has an association, affiliation or association with Chanel and/or that Chanel has approved of or authenticated the second-hand and counterfeit items being sold by The RealReal, and (ii) continuing to sell counterfeit Chanel products. Chanel takes this action in order to protect its brand, its goodwill and hard-earned reputation of the CHANEL Trademarks (as defined below), and to protect consumers.

9.      Based on Defendant's misleading and infringing conduct, Chanel asserts claims for counterfeiting and trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false endorsement and association under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); unfair competition under Section 349 of the New York General Business Law; false advertising under Section 350 of the New York General Business Law; and unfair competition under the common law of New York. Chanel seeks injunctive relief, an accounting of Defendant's sales and profits flowing from its counterfeiting and

trademark infringement, false endorsement and false association, false advertising, with Chanel and its goods, Chanel's damages, attorneys' fees, and such other relief as the Court deems just and proper.

## PARTIES

10. Plaintiff Chanel, Inc. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 9 West 57th Street, New York, New York 10019.

11. Upon information and belief, Defendant The RealReal, Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at 55 San Francisco Street, Suite 600, San Francisco, California 94133.

12. Upon information and belief, The RealReal owns and does business under the name The RealReal; operates retail stores that purport to sell CHANEL-branded items, including in various locations in Chicago, Dallas, Los Angeles, Miami, New York, San Francisco and Washington, D.C.; operates a fully-functioning retail website at www.therealreal.com through which consumers can consign or purchase used luxury goods, including purportedly genuine CHANEL-branded items; operates and posts content on social media accounts to promote and advertise The RealReal's retail business and secondhand products, including Facebook, Twitter, Tumblr and Instagram; engages in the sale of counterfeit products; and operates product valuation services and luxury goods authentication workshops by The RealReal's experts who purport to be "certified gemologists, horologists, or brand experts."

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and

1338(b). The Court has supplemental jurisdiction over the state law claims under Section

1367(a) of the Judicial Code, 28 U.S.C. §§ 1367(a).

14. Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial

Code, 28 U.S.C. § 1391(b) and (c), because Defendant The RealReal is subject to personal

jurisdiction in this district due to its residing in the jurisdiction, voluntary transacting of business

herein, operating stores in this district, advertising in this district, offering products to consumers

in this district, shipping and selling products, including allegedly genuine CHANEL-branded

products, in and to this district, operating workshops on authenticating luxury goods, including

CHANEL-branded products, and operating a fully interactive retail website that allows

consumers from this district to consign and purchase allegedly genuine CHANEL-branded

products, and because a substantial portion of the events at issue have arisen and will arise in this

judicial district and, as a result, Chanel is suffering harm in this judicial district.

<u>FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>

I.    <u>Chanel's Business</u>

15. Plaintiff Chanel is a premier seller of a wide variety of luxury consumer products

including bags, shoes, clothing, jewelry, sunglasses, accessories, and beauty products, and is an

undisputed leader in the field of fashion and beauty.

16. The CHANEL brand and trademarks have been in use for more than eight

decades in United States commerce in connection with Chanel's fashion and beauty products and

has enjoyed remarkable success and renown.

17. Chanel is the owner of all rights in and to the following registrations for the

CHANEL and CC Monogram trademarks in connection with handbags and accessories,

including, but not limited to, the following registrations: (collectively the "CHANEL

Trademarks"). Printouts from the U.S. Patent and Trademark Office database reflecting the

CHANEL Trademarks are attached as Exhibit A.

| Trademark | Reg. No. | Registration Date | Goods |
|---|---|---|---|
| CHANEL | 626,035 | May 1, 1956 | Women's handbags |
| CHANEL | 902,190 | November 10, 1970 | Bracelets, pins and earrings |
| CC Monogram | 1,314,511 | January 15, 1985 | Leather goods namely, handbags |
| CHANEL | 1,347,677 | July 9, 1985 | Leather goods namely, handbags |
| CC Monogram | 1,501,898 | August 30, 1988 | Costume jewelry |
| CHANEL | 1,733,051 | November 17, 1992 | Leather goods namely, handbags, wallets, travel bags, luggage, business and credit card cases, change purses, tote bags, cosmetic bags sold empty, and garment bags for travel |
| CC Monogram | 1,734,822 | November 24, 1992 | Leather goods namely, handbags, wallets, travel bags, luggage, business card cases, change purses, tote bags, and cosmetic bags sold empty |
| CC and Design | 3,025,934 | Dec. 13, 2005 | Handbags |

18.     All of the CHANEL Trademarks are valid, subsisting, and in full force and effect.

Moreover, those CHANEL Trademarks listed above are incontestable pursuant to § 15 of the

Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of Chanel's ownership of the

trademarks and of its exclusive right to use the trademarks in commerce on or in connection with all of the goods identified in the registrations. See 15 U.S.C. § 1115(b).

19.     As the result of Chanel's exclusive and extensive use of the CHANEL Trademarks, the CHANEL Trademarks have acquired enormous value and have become extremely well known to the consuming public and to the trade as identifying and distinguishing Chanel exclusively and uniquely as the source of products available under the CHANEL Trademarks. Due to the worldwide public acceptance, overwhelming fame, and great recognition of products bearing or sold under the CHANEL Trademarks, these trademarks have come to represent an enormous amount of goodwill for Chanel and have caused merchandise bearing the CHANEL Trademarks -- even unauthorized goods -- to be in great demand.

20.     The CHANEL Trademarks are famous and have developed secondary meaning and significance in the minds of the purchasing public, and the products utilizing and/or bearing such marks are immediately identified by the purchasing public with Chanel, as high quality merchandise created and approved by Chanel.

21.     Chanel has carefully and diligently monitored and policed the use of the CHANEL Trademarks.

22.     The CHANEL Trademarks are vital to Chanel, and Chanel will suffer irreparable harm if any third parties, including Defendant, are allowed to continue selling infringing, counterfeit and/or knock-off goods utilizing and/or bearing identical or substantially similar trademarks to the CHANEL Trademarks and if Defendant is allowed to continue to purport to have a business association, relationship or affiliation with Chanel.

23.     Chanel has advertised and promoted its products in critically-acclaimed advertising campaigns featuring top fashion models and celebrities wearing exclusive CHANEL

apparel and accessories.  Chanel has devoted hundreds of millions of dollars promoting

CHANEL designs and products in such advertising campaigns.  Chanel's products have been

featured in fashion editorials in major fashion magazines such as Vogue, Elle, Harper's Bazaar,

W, Marie Claire, as well as newspapers and magazines such as The New York Times, The

Financial Times, Time, WWD and Town and Country.

24.     Hundreds of millions of dollars' worth of consumer goods are sold each year in

the United States under the CHANEL Trademarks.  Chanel's products are known and lauded for

their high quality and style in all forms of media.  To maintain the prestige of the CHANEL

brand and CHANEL Trademarks and to ensure that consumers receive the type of attention

commensurate with Chanel's reputation for luxury and quality leather products, Chanel

authorizes its leather products, including handbags, to be sold only through its own retail stores

and carefully selected high-end, prestigious specialty stores, such as Neiman Marcus, Barney's,

Nordstrom and Saks Fifth Avenue.  Chanel's fragrance, cosmetics and sunglasses are only sold

online at www.chanel.com and at a limited number of prestigious retailers' specialty stores and

websites.

25.     Chanel operates social media accounts to promote and advertise its designs and

products, including Facebook, Twitter, Tumblr and Instagram.  Chanel's Instagram site,

@chanelofficial, has 30.9 million followers and features CHANEL designs, advertising and

references to Chanel's iconic designer, Gabrielle "Coco" Chanel, including, for example, her

famous quotes, such as "Chanel is above all style.  Fashion passes, style remains."

26.     Chanel's products and services are instantly recognized by the use of the famous

and well-known CHANEL Trademarks, which are federally-registered and have been used

exclusively by Chanel for decades in connection with CHANEL product lines.

27.     The recognition of the CHANEL brand and CHANEL Trademarks among the public at large is enhanced not only by Chanel's own extensive advertising efforts and limited and select distribution but also by fashion editorial and press coverage of Chanel, as well as the coverage of Chanel in social media by influencers, celebrities and fashion aficionados. Such press coverage reaches hundreds of millions of consumers. Indeed, Chanel consistently appears year after year in the *Women's Wear Daily* list of the 100 best known brands in the fashion industry.

28.     The CHANEL brand and CHANEL Trademarks have become famous and extraordinarily well known across all social and demographic groups and are in demand by consumers of all ages and from all demographics.

29.     Each genuine Chanel leather good manufactured since the mid-1980s was sold with a Chanel authenticity card ("Carte D'Authenticite") bearing a serial number, which matches the serial number appearing on a label within the handbag or other leather good. Chanel and consumers use the authenticity cards and serial numbers as one means of identifying the nature and identity of genuine goods. For example, it is commonly known that certain serial numbers are used by counterfeiters. As a result, if a handbag bears such a number, this is an indicator that the leather good in question is counterfeit. Also, if a serial number is used which does not match the type of genuine Chanel product which was sold bearing the serial number, this would also indicate that the item is not genuine. Serial numbers are also a means for consumers to identifying the nature and identity of genuine goods. Chanel also scrutinizes the materials, specifications, hardware, and provenance of handbags as a means of identifying counterfeit goods.

30. The only way for consumers to absolutely ensure that they are in fact receiving genuine CHANEL products is to purchase such goods from Chanel or from an authorized retailer of Chanel. Chanel does not sell secondhand or vintage Chanel goods. Chanel does not sell to or authorize sales and distribution through Defendant The RealReal and does not authenticate The RealReal's inventory of CHANEL-branded products as genuine. Defendant The RealReal has not obtained the CHANEL products that it offers for sale as "100% authentic" directly from Chanel.

II.      Defendant The RealReal's Unlawful Conduct

31. Upon information and belief, The RealReal is a retailer specializing in pre-owned handbags, jewelry, and apparel with an online site and brick and mortar retail locations for luxury consignment which has built its business by piggybacking on the reputation of a handful of select luxury brands -- including Chanel.

32. For example, an article promoting The RealReal discusses a report entitled "State of Luxury Resale | Midyear 2018," which is backed by items sold by The RealReal, that Chanel is one of the top searched-for luxury brands. *See* Exhibit B. The report features a photo in the "Industry Insights Women's" section that prominently features a Chanel handbag and lists Chanel as the Number 1 brand among the five most popular brands millennial women are buying and consigning (*see* Exhibit C).

33. Defendant The RealReal also offers scores of allegedly genuine secondhand CHANEL products through brick and mortar stores and online and holds itself out as an expert on the authenticity and genuineness of secondhand CHANEL designs. For example, The RealReal states the following regarding the alleged secondhand CHANEL-branded products it sells: "We ensure that every item on The RealReal is 100% the real thing…. Our team of luxury

-10-

experts inspects each item we sells so you can shop with confidence."  Defendant The RealReale has advertised that its consumer offerings of secondhand goods are unique:

> The finest luxury items from the world's top designers.  Including Chanel, Louis Vuitton, Hermes, Gucci, and hundreds more.  All at up to ninety percent off retail.  And each and every one authenticated by our team of experts.  Real luxury, unreal value.  Only at The RealReal.

See https://www.youtube.com/watch?v=ed-2iNnZmEg.

34.     Defendant The RealReal further represents on its website that:  "Each product we accept is put through a multiple-point, brand specific authentication process by a team of luxury experts headed by our Director of Authentication & Brand Compliance."  Through its business advertising and practices, The RealReal represents to consumers that its so-called experts have been "trained" to authenticate genuine Chanel-branded goods.  Moreover, Defendant The Real Real's website tells consumers that "Authenticity is the cornerstone of The RealReal.  We staff trained, in-house professionals including gemologists, horologists, art appraisers and apparel experts who work to ensure the items we sell are authentic and in beautiful condition."  Such training and knowledge regarding authentication of genuine CHANEL-branded goods could only reside within Chanel.  Only Chanel itself can know what is genuine Chanel.  *See* Exhibit D.

35.     In making these representations and guarantees to consumers, The RealReal assures consumers that not only does The RealReal (and its staff) have the credentials, training, and expertise to properly and fully authenticate real Chanel products (and consequently, detect counterfeit products), but also that the products that consumers purchase from The RealReal are genuine and "100% authentic[.]"  The RealReal's representations and guarantees about the reliability and expertise of its authentication process are not only material to consumer purchasing decisions (and clear, definitive statements of fact upon which consumers rely), but

are critical and foundational to The RealReal's business model. Upon information and belief, the fact The RealReal guarantees that its Chanel-branded products are "all authenticated by our experts" ("Real luxury. Unreal value.") is an essential part of the advertising and marketing of The RealReal shopping experience and brand and material to consumers.

36.     Upon information and belief, Defendant The RealReal obtains the CHANEL-branded products it offers for sale not from Chanel nor any authorized Chanel retailer or distributor but rather from unknown third-party consignors, which, upon information and belief, include counterfeiters, consumers (some of whom may not even know that they own counterfeit products), and other secondhand resale businesses.

37.     Upon information and belief, to verify and guarantee the authenticity of the CHANEL products it sells, Defendant The RealReal relies solely on its own purported expertise or that of undisclosed third parties. Chanel has not authorized or approved The RealReal's authentication or approval of secondhand CHANEL products as genuine. Chanel is not involved in authenticating or approving any products sold by The RealReal and does not offer any guarantee to The RealReal's consumers that the products purchased from The RealReal are authentic or approved by Chanel.

38.     Upon information and belief, The RealReal's advertised "team of luxury experts headed by our Director of Authentication & Brand Compliance" is in fact not properly qualified or trained in authentication of Chanel products to support The RealReal's claims as to the genuineness of the products it resells. While The RealReal's marketing materials, including its website, advertisements, and YouTube videos[1], tout the credentials of its Chief Authenticator,

---

[1] Indeed, The Real Real even goes so far as to promote its own videos entitled "How to authenticate Chanel" to give the public a 2-minute instruction on "The RealReal ™ Inspection Process Materials". *See* https://youtu.be/XWGTGg8URAs (last visited January 30, 2019). In the

Graham Wetzbarger, and those of its "luxury experts," upon information and belief, neither Mr. Wetzbarger nor his team members are former Chanel employees or persons that have been trained by Chanel in the ways to properly authenticate a genuine Chanel product.  Only such persons that have been properly and adequately trained by Chanel have the requisite expertise to fully authenticate genuine Chanel products.  Upon information and belief, employees of The RealReal, including Mr. Wetzbarger, claim to have credentials, work experience, and educational training and possess a great deal of knowledge about Chanel products and the ability and authorization to be and train others to be Chanel "experts."  Upon information and belief, no The RealReal employees are trained by or authorized by Chanel as "experts."  Such experience and training is not sufficient to support The RealReal's representations and guarantees that The RealReal exployees are experts at authenticating Chanel-branded products and the Chanel-branded products authenticated by The RealReal's so-called employee "experts" are "genuine" and "100% authentic."  Only products purchased directly from Chanel and its authorized retailers can be certain to be genuine and authentic.

39.     Upon information and belief, any disclaimer that The RealReal purports to offer consumers to distance itself from the brands of the products it resells is neither present nor sufficiently conspicuous or likely to be seen by all consumers prior to purchasing from The RealReal, and is not sufficient to adequately qualify, contextualize, explain, or negate the representations and guarantees The RealReal makes to consumers regarding the authenticity of the products it resells, the reliability of its authentication process, or any express or implied claims regarding an association with any of such brands.

---

video, The RealReal's Mr. Wetzbarger acknowledges that the Chanel hologram and serial number are one means of determining whether a Chanel-branded product is counterfeit.

40.     Upon information and belief, The RealReal additionally offers for sale and holds out certain CHANEL-branded products to consumers as "vintage," when in fact, they are not actual vintage products, and instead, are likely less than 20 years old.

41.     2.     The Federal Trade Commission ("FTC")'s advisory "Shopping for Antiques" states: "A **vintage collectible** is an item that is at least 50 years old."

42.     Upon information and belief, a number of the second-hand CHANEL-branded products offered for sale and sold by The RealReal are not "vintage collectibles" as defined by the FTC.

43.     Upon information and belief, a number of the second-hand CHANEL-branded products offered for sale and sold by The RealReal are less than twenty years old.

44.     The RealReal's website listing references to items as "vintage" misrepresent the nature and description of second-hand CHANEL-branded products.,

A.     Defendant The RealReal's Unlawful Business Practices and Consumer Deception

45.     Although The RealReal purports to offer genuine and "100% authentic" products, including CHANEL-branded products, an investigation conducted by Chanel has revealed that The RealReal has advertised as genuine and authentic at least seven (7) counterfeit Chanel handbags ("Counterfeit Chanel Bags").  For example:

1)     Chanel Pink Patent Flap Bag;

2)     Chanel Purple Quilted Flap Bag;

3)     Chanel Black Hobo Bag;

4)     Chanel Classic Black Flap Bag;

5)     Chanel Black Flap with Handle Bag;

6)     Chanel Black Chevron Tote; and

7)     Chanel Naked Flap Bag.

-14-

*See* Exhibit E.

46.     The Counterfeit Chanel Bags are of a quality that is different from that of

Chanel's genuine goods.  In addition, after inspection of some of the CHANEL-branded

handbags and the serial numbers indicated on Cartes D'Authenticite and/or the leather or fabric

sewn inside the bag itself and/or on Defendant The RealReal's website, Chanel determined

certain handbags to be counterfeits because certain purported CHANEL serial numbers on the

Cartes D'Authenticite do not correspond with the serial numbers designated for the particular

style of handbag.  With regard to other counterfeit Chanel Bags sold by The RealReal, certain

aspects of the handbags indicated that the serial numbers were not genuine and that the hardware

or other aspects of certain of the handbags were counterfeit.

47.     Despite having sold at least seven counterfeit CHANEL handbags and being put

on notice by counsel for Chanel of its sale of counterfeit CHANEL-branded products, Defendant

The RealReal continues to represent to the consuming public that:

>       The RealReal does not accept fake or counterfeit merchandise.  If
>       we suspect for any reason that a submitted consignment is not
>       authentic we will contact the consignor for proof of purchase in an
>       effort to establish the items [sic] authenticity.  Items The RealReal
>       determines are counterfeit will not be returned to the consignor and
>       will be destroyed.

*See* Exhibit D.  If The RealReal's trained experts were in fact able to distinguish between

genuine and counterfeit CHANEL handbags, The RealReal would have seized the Counterfeit

Chanel Bags and not sold them to the public.

48.     Upon information and belief, The RealReal's purported experts who claim to be

able to authenticate genuine CHANEL items are failing to screen counterfeit CHANEL-branded

handbags properly, and the sale of counterfeit as genuine CHANEL products is causing harm to

consumers as well as false advertising, false endorsement and association and causing harm to the CHANEL Trademarks and brand.

49. Defendant The RealReal's above-described counterfeiting activities are likely to cause confusion, deception and mistake in the minds of consumers. Moreover, Defendant's wrongful conduct creates a false impression and deceives consumers into believing that there is a connection, affiliation, sponsorship and/or association between Chanel and The RealReal and between Chanel's genuine goods and Defendant's counterfeit Chanel goods, causing irreparable harm and damages to the consuming public and Chanel.

B.      <u>Defendant The RealReal's Guarantee of Authenticity is False</u>

50. Defendant The RealReal represents to potential customers in its advertising, marketing and sales of CHANEL-branded products that "authenticity is [its] cornerstone" and that Defendant "does not accept fake or counterfeit merchandise." In fact, Defendant The RealReal's very name -- "The RealReal" -- suggests to consumers that all of its products are genuine and authentic.

51. Such representation is misleading because Defendant The RealReal does not advise consumers that neither Defendant The RealReal nor its purported experts have any affiliation with or training with respect to authentication from Chanel, that The RealReal does not obtain its inventory from Chanel, and that Chanel has not authenticated or opined on behalf of The RealReal or its business associates, such as What Goes Around Comes Around, as to the genuineness of the product.

52. Consumers who purchase secondhand CHANEL products through Defendant The RealReal, which are purported to be "100% authentic," view their expectation that the products they purchase from The RealReal are genuine and properly authenticated as a material condition

of sale. The representation on The RealReal's website falsely conveys that Chanel, not The RealReal, has authenticated the item at issue or otherwise confirmed its authenticity on behalf of The RealReal.

      C.    <u>The Total Effect of The RealReal's Misleading Conduct</u>

53.    Defendant The RealReal is earning substantial profits while engaging in counterfeiting activities that use CHANEL Trademarks on purported CHANEL-branded items when such items are not, in fact, genuine Chanel goods.

54.    Defendant The RealReal's use of the CHANEL Trademarks, including the promotion, advertising, marketing, distribution, sale and offering for sale of Defendant's goods, is without Chanel's consent or authorization.

55.    Defendant The RealReal's above-identified counterfeiting activities and false advertising and false endorsement and association with the CHANEL Trademarks cause consumer confusion and create a false impression and deceive consumers that there is an affiliation, sponsorship and/or association between Chanel and The RealReal when there is not and there has not been any such relationship.

56.    Defendant The RealReal's representations regarding authenticity on its website and workshops in its retail locations contain impliedly false and misleading statements indicating that the CHANEL-branded products purchased or to be purchased are genuine CHANEL-branded products, when they are not.

57.    By engaging in the activities described above and other similar activities (together the "Misleading Conduct"), Defendant The RealReal is misleading and intends to mislead consumers into believing that: (a) Defendant The RealReal is an authorized partner or distributor of Chanel; (b) Chanel has authorized or approved of Defendant The RealReal's conduct and/or

the authenticity or genuineness of its inventory; and/or (c) by doing business with Defendant The RealReal, consumers will receive a "100% authentic" CHANEL-branded product.

58. The purportedly guaranteed authenticity of Defendant The RealReal's products is a material factor for consumers and affects purchasing decisions. The mistaken belief that Chanel stands behind Defendant The RealReal's CHANEL-branded products is a material factor for consumers.

59. Upon information and belief, Defendant The RealReal is fully aware that the Misleading Conduct deceives consumers regarding The RealReal's relationship with Chanel. Nevertheless, Defendant continues to engage in such improper and unlawful business practices in order to attract consumers to Defendant The RealReal's website and stores and to induce consumers into buying products from Defendant The RealReal. Chanel has put Defendant The RealReal on notice of Chanel's concerns with respect to The RealReal's sales of counterfeit CHANEL-branded products and unlawful business and advertising activities. Yet, Defendant The RealReal has taken no steps to rectify its unlawful and wrongful conduct or address any of Chanel's requests.

60. After Chanel determined through investigation that several counterfeit Chanel goods were being sold by The RealReal, Chanel informed The RealReal that such items were in fact not genuine. Upon information and belief, rather than confirm to Chanel that such goods were in fact counterfeit, The RealReal instead rejected the claims. After Chanel brought this action to protect its Chanel Trademarks and Brand, The RealReal removed such serial numbers from all of its Chanel-branded leather goods product listings, thereby eliminating one means for consumers (and Chanel) to determine their authenticity before purchase. Because removal of such serial numbers is of no benefit to consumers, and could only be done to try and frustrate

attempts to attempt to determine whether The RealReal Chanel-branded goods are of questionable origin or counterfeit, such actions were, on information and belief, done in bad faith and done to the detriment both to Chanel and the consuming public, and done as a dishonest means unfairly competing. By removing the serial numbers from advertised products, The RealReal has purposely, deliberately, intentionally, and willfully tried to deprive consumers of this important information making it very difficult if not impossible to make an independent determination as to the authenticity of the products sold by The RealReal, and leaving consumers no choice but to rely on The RealReal's false representations and guarantees regarding its status as Chanel "expert", authentication process, and the so-called "100% authentic" nature of all the Chanel branded products it advertises and sells. Moreover, the removal of the serial numbers from advertised products impedes Chanel's ability to identify counterfeit goods and to control the quality of its legitimate products by identifying counterfeit CHANEL-branded products in the marketplace.

61. The RealReal's Misleading Conduct, and its removal of the Chanel serial numbers from its website listings creates real and harmful injury to both consumers and to Chanel. When consumers purchase counterfeit Chanel-branded goods from The RealReal, Chanel suffers reputational harm, as products that are being passed off as genuine (when in fact they are made of substandard materials and/or not manufactured and approved by Chanel) are carried, displayed, and shared in the marketplace. This reputational harm is compounded when consumers have the understanding and belief that there is an implied association or affiliation between Chanel and The RealReal. Chanel additionally is harmed though the loss of the ability to identify counterfeit goods and to control the quality of its legitimate products by identifying counterfeit CHANEL-branded products in the marketplace. Consumers that purchase counterfeit

products advertised by The RealReal to be "100% authentic" (as supported by The RealReal's

purported expert authentication process) are harmed not only by the financial harm of purchasing

counterfeit products, but also by the opportunity cost and reputational harm associated with such

a purchase.  While significant even on an individual basis, in the aggregate, this harm is

substantial and injurious to the public.

      62.     The harm suffered by consumers and the buying public as a result of The

RealReal's false and misleading business practices is well-documented online.  Indeed, the

Better Business Bureau customer reviews for TheRealReal.com (available at www.bbb.org)

show numerous consumer complaints relating to purchases of inauthentic "luxury" goods from

The RealReal, including instances of non-genuine Chanel-branded products.

      63.     For example, such consumers reviews include the following: "I unfortunately let

the love of a good deal get the best of me, and purchased a 'Vintage Chanel Flap,' which I use in

quotation marks because when it arrived, it was clearly fake.  Not the size as listed, not even

leather, nothing about the interior, labels, or hardware was remotely real.  Even an untrained eye

could tell how poorly it was constructed, but the photos they have online were few and not of

any detail.  I contacted them the minute I looked at the bag, and they agreed to look into the

matter, have their 'Chanel Authenticator' look into it and call me back.  Well, here we are weeks

later, and still no call.  Still no 'whoops! We're sorry for trying to dupe you AGAIN'[.]"

      64.     Such consumers reviews also include the following: "I paid $1,400 for a handbag

that was advertised as authentic Coco Chanel. The advertising even contained a picture of the

serial number on a tag that was sewn into the inside of the handbag When I received the

handbag, which was a Christmas present for my wife, there was no serial number whatsoever

anywhere in, on or around the handbag. TheRealDeal customer service department tried to dupe

me into believing that there was a serial number affixed to the bag, claiming, 'We have verified the serial number is on a hologram sticker placed at an interior corner.' However, there was no trace of any sort of serial number affixed to the bag, inside or outside. . . . The bag is a counterfeit. TheRealReal is an unethical company with absolutely no concern in even the slightest degree for the welfare of their customers. They are greedy and avaricious. Caveat emptor certainly applies here."

65.     Upon information and belief, The RealReal's representations and guarantees are false and misleading statements of fact, material to consumer purchasing decisions, and meant to be relied on by consumers to influence such decisions; but The RealReal practices have not matched its guarantees and assurances of authentication and genuineness in the products it sells, plain and simple, which has resulted in real and substantial harm to both Chanel and the consuming public.

66.     Upon information and belief, Defendant The RealReal has caused its false and deceptive advertising to be distributed and the goods to be sold in interstate commerce and into this district.

67.     Defendant The RealReal's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to Chanel.  Chanel has no adequate remedy at law.

### FIRST CLAIM FOR RELIEF:
### <u>TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))</u>

68.     Chanel repeats and realleges paragraphs 1 through 67 above, as if fully set forth herein.

69.     Defendant The RealReal's infringing activities are likely to cause confusion, or to cause mistake or to deceive Defendant The RealReal's customers, potential consumers, and/or the public as to the source or sponsorship of Defendant The RealReal's goods and services.

Consumers are likely to be misled into believing that Defendant's website and sale of goods bearing the CHANEL Trademarks are licensed, sponsored, or otherwise approved by Chanel.

70. Upon information and belief, Defendant was on both actual and constructive notice of Chanel's exclusive rights in the registered CHANEL Trademarks when they adopted the CHANEL Trademarks for use in advertising and marketing on its website and in its retail stores to offer for sale and sell infringing and counterfeit products that exactly copy those sold by Chanel under the CHANEL Trademarks. Defendant The RealReal's actions are designed to trade on Chanel's CHANEL Trademarks. Defendant's use of the CHANEL Trademarks is willful, in bad faith, and with full knowledge of Chanel's prior use of, exclusive rights in, and ownership of the CHANEL Trademarks, with full knowledge of the goodwill and reputation associated with the CHANEL Trademarks, and with full knowledge that Defendant has no right, license, or authority to use the CHANEL Trademarks or any other mark confusingly similar thereto. *See* Exhibit F.

71. Upon information and belief, Defendant The RealReal has offered for sale and sold infringing CHANEL-branded goods, and has represented such goods to the public as genuine and authentic CHANEL products.

72. Defendant's acts are intended to reap the benefit of the goodwill that Chanel has created in its CHANEL Trademarks and constitute infringement of Chanel's federally-registered trademarks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

73. Defendant's conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and deceive the public unless enjoined by this Court. Chanel has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## TRADEMARK COUNTERFEITING IN VIOLATION OF 15 U.S.C. 1114(1)

74.     Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 73 above, as if fully set forth herein.

75.     This is an action for trademark counterfeiting against Defendant based on its promotion, advertisement, distribution, sale and/or offering for sale handbags bearing counterfeits of one or more of the CHANEL trademark.

76.     Specifically, Defendant The RealReal is selling, offering for sale and distributing handbag products bearing counterfeits of the CHANEL trademarks.  Upon information and belief, Defendant The RealReal is continuously infringing and including others to infringe the CHANEL Trademarks.

77.     Defendant The RealReal's counterfeiting activities are likely to cause and actually are causing confusion, mistake, and deception among the general consuming public as to the original and quality of Defendant The RealReal's CHANEL-branded goods.

78.     Defendant's illegal acts are intended to reap the benefit of the goodwill that CHANEL has created in its CHANEL Trademarks and constitute counterfeiting of CHANEL's federally-registered trademarks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

79.     Defendant The RealReal's conduct has caused and is causing immediate and irreparable injury to CHANEL and will continue to both damage CHANEL and deceive the public unless enjoined by this Court.  Chanel has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
## FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)

80.     Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 79 above, as if fully set forth herein.

81.     In representing to consumers through its advertising and representations on its website that so-called CHANEL-branded products are "100% authentic" and that The RealReal "does not accept…counterfeit merchandise" when Defendant The RealReal has and knowingly continues to sell counterfeit CHANEL-branded products, Defendant The RealReal is falsely and/or misleadingly passing off its products as products inspected or guaranteed by Chanel or guaranteed genuine CHANEL-branded products.  By so doing, Defendant The RealReal is misrepresenting the nature, characteristics and/or qualities of certain of its goods and services and other commercial activities.

82.     Upon information and belief, in representing to consumers on its website and advertising that its employs "50+ brand authenticators" so that consumers can be sure that "every item is 100% authentic," when, in fact, they are not authorized or trained by Chanel, Defendant The RealReal is falsely and/or misleadingly represents to consumers The RealReal's ability to authenticate secondhand CHANEL products.

83.     Upon information and belief, Defendant The RealReal made these false and misleading representations in order to take advantage of Chanel's renown and reputation to induce consumers to purchase Defendant The RealReal's products as genuine CHANEL-branded products.

84.     Chanel has an interest in stopping Defendant The RealReal from deceiving and misleading consumers into believing that Defendant The RealReal offers products that are either authentic and/or verified by Chanel to be authentic.

85.     Defendant's implicitly false statements of the authenticity of its goods and services have caused and are likely to cause consumers to believe mistakenly that Chanel

verified their authenticity of the CHANEL-branded products when, in fact, Chanel did not verify their authenticity and did not authorize or train Defendant The RealReal or its personnel to do so.

86.     Defendant The RealReal's false and misleading advertisements and CHANEL-branded products have actually deceived or are likely to deceive a substantial portion of the intended audience and harm Chanel's reputation.

87.     The false and misleading misstatements made by Defendant The RealReal as to whether Chanel has verified the product authenticity are material and are likely to influence purchasing decisions, including decisions to purchase from Defendant The RealReal.  Indeed, Defendant The RealReal premises its business on its claimed ability to provide authentic CHANEL-branded products to consumers and attract consumers by its misleading claim of authenticity.

88.     Defendant The RealReal's conduct is willful.

89.     Defendant The RealReal's conduct described herein is causing immediate and irreparable injury to Chanel, by holding its employees out as Chanel "experts" and selling counterfeit Chanel-branded goods as genuine Chanel goods authenticated by its Chanel "experts", diverting  consumer purchases of genuine Chanel goods, and by harming Chanel's goodwill and reputation by virtue of its misleading advertising and marketing efforts, and will continue to damage Chanel and deceive consumers unless enjoined by this Court.

90.     Upon information and belief, in representing to consumers on its website that certain CHANEL-branded goods are "vintage," when, in fact, they are not, the RealReal is falsely and/or misleadingly consumers as to the purportedly "vintage" nature of the secondhand CHANEL products offered for sale by The RealReal.

91.     Upon information and belief, The RealReal made these false and misleading representations in order to take advantage of Chanel's renown and reputation so as to induce consumers to purchase Defendant WGACA's products under the false impression that they were in fact vintage items.

92.     Chanel has an interest in stopping The RealReal from deceiving consumers into believing that The RealReal offers products that purportedly vintage products when those items are not in fact vintage.

93.     The RealReal's false statements of the vintage nature of certain of its goods and services have caused and are likely to harm consumers by causing them to mistakenly believe that certain Chanel products are vintage when they are not.

94.     The RealReal's false and misleading advertisements and CHANEL-branded products have actually deceived or are likely to deceive a substantial portion of the intended audience and harm Chanel's reputation.

95.     The false and misleading misstatements made by The RealReal as to the "vintage" status of certain products are material and are likely to influence purchasing decisions.

96.     Defendant The RealReal's acts constitute false advertising and false representations in violation of 15 U.S.C. § 1125(a).  Chanel has no adequate remedy at law.

97.     Upon information and belief, Defendant The RealReal received substantial revenues and substantial profits arising out of its acts of passing off and false advertising to which it is not entitled, and Chanel also suffered damages as a result of Defendant The RealReal's acts of false advertising, for which Defendant The RealReal is responsible.

## THIRD CLAIM FOR RELIEF
## FALSE ENDORSEMENT/UNFAIR COMPETITION
## IN VIOLATION OF 15 U.S.C. § 1125(a)

98.     Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 97 above as if fully set forth herein.

99.     Defendant The RealReal is engaged in a pattern of conduct and a business practice designed to cause confusion and mistake, and to deceive consumers by conveying the erroneous impression that The RealReal engages in the resale of authentic CHANEL-branded products that its goods and services are authentic and approved by Chanel even though Chanel has no affiliation with The RealReal or its inventory.  Furthermore, Defendant The RealReal's business practice claims to be offering for sale of "100% authentic" CHANEL-branded products, when, in fact, some of the goods are counterfeit Chanel products.

100.    Defendant The RealReal's conduct is willful and causing immediate and irreparable injury to Chanel, both by holding its employees out as Chanel "experts" and selling counterfeit Chanel-branded goods as genuine Chanel goods authenticated by its Chanel "experts", diverting  consumer purchases of genuine Chanel goods, and by harming Chanel's goodwill and reputation by virtue of its misleading advertising and marketing efforts, , and will continue to damage Chanel and deceive consumers unless enjoined by this Court.

101.    Defendant The RealReal's actions alleged above constitute a false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which have caused, and are likely to cause, confusion, mistake and deception, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Chanel has no adequate remedy at law.

102.    Upon information and belief, Defendant The RealReal received substantial revenues and substantial profits arising out of its acts of false advertising to which it is not

entitled, and Chanel also suffered damages as a result of Defendant The RealReal's acts of false advertising, for which Defendant The RealReal is responsible.

## FOURTH CLAIM FOR RELIEF
## UNFAIR COMPETITION IN VIOLATION OF NEW YORK COMMON LAW

103.    Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 102 above, as if fully set forth herein.

104.    In repeatedly offering for sale counterfeit CHANEL-branded products while assuring consumers of the authenticity of its inventory as determined by "brand authenticators" who inspect goods to be sure that every item is "100% authentic," while failing to inform consuming public that Defendant The RealReal has no affiliation with Chanel and further deceiving consumers by engaging in sale of counterfeit CHANEL-branded items, Defendant The RealReal is engaged in a pattern of willful and intentional conduct and a business practice designed to cause confusion and mistake, and to deceive consumers by conveying the erroneous impression that its goods and services are authentic Chanel even though Chanel has no affiliation with The RealReal or its inventory.

105.    Defendant The RealReal's conduct complained of herein is likely to confuse the public as to the origin, source or sponsorship of Defendant The RealReal's CHANEL-branded goods and services, or to cause mistake or to deceive the public into believing that Defendant The RealReal's goods and services are authorized, sponsored, endorsed, licensed by, or affiliated with Chanel and/or that Chanel has authenticated Defendant The RealReal's goods and services, in violation of Chanel's rights in the CHANEL brand and the CHANEL Trademarks under New York State common law.

106.    Upon information and belief, Defendant The RealReal has engaged in wrongful conduct with constructive and/or actual knowledge that it would mislead consumers as to

Defendant The RealReal's relationship with Chanel. By willfully misleading consumers in this manner, Defendant The RealReal has been unjustly enriched and Chanel has been damaged.

107. By misappropriating and trading upon the goodwill and business reputation of Chanel, Defendant The RealReal has been and, unless enjoined by this Court, will continue to be unjustly enriched at Chanel's expense.

108. Defendant The RealReal's wrongful conduct constitutes unfair competition under New York common law. Chanel has no adequate remedy at law.

109. Defendant The RealReal's conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and deceive the public unless enjoined by this Court.

## FIFTH CLAIM FOR RELIEF
### VIOLATION OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### IN VIOLATION OF N.Y. GEN. BUS. LAW § 349

110. Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 109 above, as if fully set forth herein.

111. By reason of the acts set forth above, Defendant The RealReal has been and is engaged in deceptive acts or practices in the conduct of a business, trade or commerce, in violation of Section 349 of the New York General Business Law.

112. Defendant The RealReal's conduct is willful and in knowing disregard of Chanel's rights.

113. Defendant The RealReal has been and is engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law. Chanel has no adequate remedy at law.

114.    Defendant The RealReal's conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and deceive the public unless enjoined by this Court.

### SIXTH CLAIM FOR RELIEF
### FALSE ADVERTISING IN VIOLATION OF N.Y. GEN. BUS. LAW § 350

115.    Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 114 above, as if fully set forth herein.

116.    By reason of the acts set forth above, Defendant The RealReal has been and is engaged in consumer-oriented advertising and marketing in the conduct of its business, trade and/or commerce that is false and misleading in material respects, in violation of Section 350 of the New York General Business Law.

117.    Upon information and belief, Defendant The RealReal has engaged in false advertising in order to induce consumers to purchase used products from Defendant The RealReal.  Chanel has no adequate remedy at law.

118.    Defendant The RealReal's conduct described herein is causing immediate and irreparable injury to Chanel, both by holding its employees out as Chanel "experts" and selling counterfeit Chanel-branded goods as genuine Chanel goods authenticated by its Chanel "experts", diverting  consumer purchases of genuine Chanel goods, and by harming Chanel's goodwill and reputation by virtue of its misleading advertising and marketing efforts, and will continue to damage Chanel and deceive and harm the public unless enjoined by this Court.

WHEREFORE, Plaintiff Chanel, Inc. respectfully demands judgment as follows:

1)    That a permanent injunction be issued enjoining Defendant The RealReal from:

(a)    selling, offering, advertising, marketing, distributing, disseminating, or

otherwise providing any product that bears any mark that is a simulation,

reproduction, copy, colorable imitation, or confusingly similar variation of any of the CHANEL Trademarks; marketing, promoting or advertising any goods and services in a manner that causes consumers to believe that Defendant The RealReal is associated or affiliated with Chanel in any way or that Defendant The RealReal's goods have been approved or authenticated by Chanel or individuals affiliated with Chanel;

(b)  disseminating any false and/or misleading information relating to the authenticity, nature or age of Defendant The RealReal's goods and services with respect to Chanel;

(c)  disseminating any false and/or misleading information about Chanel, the CHANEL Trademarks, and/or Chanel products;

(d)  listing and/or advertising CHANEL-branded products as "vintage" unless such items meet the definition of "vintage collectible" set forth in the FTC's advisory "Shopping for Antiques" of being "at least 50 years old";

(e)  engaging in any activity constituting counterfeiting of CHANEL Trademarks under 15 U.S.C. § 1114(1)(a);

(f)  engaging in any other activity constituting false advertising of Chanel products;

(g)  engaging in any other activity constructing false endorsement or false affiliation with Plaintiff Chanel and/or the CHANEL Trademarks;

(h)  engaging in any other activity constituting unfair competition with Chanel; and

        (i)      assisting, aiding, or abetting any other person or business entity in

engaging in or performing any of the activities referred to in

subparagraphs (a) through (g) above.

2)      That the Court issue an order directing Defendant The RealReal to include a

disclaimer on all advertising, marketing and promotional materials concerning or relating to

purportedly CHANEL-branded products that Defendant The RealReal is not sponsored,

associated, authorized or affiliated with Chanel nor do its "brand authenticators," including

valuation managers, brand compliance managers, and brand authenticators have any relationship

with or training from Chanel and that such disclaimer must be prominently displayed with large

and legible text placed upon the secondhand materials, as well as in all of The RealReal's

advertising, marketing and promotional materials.

3)      That the Court issue an order directing Defendant The RealReal to notify potential

consumers that the purported authenticity of the products for sale by Defendant The RealReal is

**<u>not</u>** verified or authenticated by Chanel and that Chanel does **<u>not</u>** guarantee items sold by

Defendant The RealReal are genuine and that such notice must be prominently displayed with

large and legible text placed upon the materials, as well as in all of The RealReal's advertising,

marketing and promotional materials.

4)      Directing that Defendant The RealReal, at its own expense, be directed to recall

any and all counterfeit products from any consumers, distributors, retailers, vendors or others to

whom it has distributed or sold her counterfeit products.

5)      Directing such other relief as the Court may deem appropriate to prevent the

public from deriving erroneous impressions regarding Defendant The RealReal, its affiliation

with Chanel and/or the authenticity of its products.

6)    Directing that Defendant The RealReal file with the Court and serve upon Chanel's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above.

7)    Awarding Chanel its actual damages, trebled pursuant to 15 U.S.C. § 1117(a) and (b), or, if Chanel elects, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c), arising out of Defendant's acts of willful trademark infringement and counterfeiting based on Defendant's use of the CHANEL Trademarks.

8)    Awarding Chanel its actual damages, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendant's acts of willful unfair competition.

9)    Requiring Defendant to account for and pay over to Chanel three times the profits realized by Defendant from its infringement of the CHANEL Trademarks and unfair competition with Chanel.

10)    Awarding Chanel such further amounts as the Court may in its discretion find to be just should the amount of profits be inadequate, pursuant to 15 U.S.C. § 1117(a).

11)    Awarding Chanel exemplary and punitive damages to deter any further deceptive and unfair conduct as the Court finds appropriate.

12)    Awarding Chanel its costs and disbursements incurred in this action, including, but not limited to, reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

13)    Awarding Chanel its actual damages, trebled pursuant to Section 349(h) of the New York General Business Law, arising out of Defendant's acts of willfully and knowingly engaging in deceptive business practices that disregarded Chanel's rights.

14)    Awarding Chanel reasonable attorney's fees, pursuant to Section 349(h) of the New York General Business Law.

15)    Awarding Chanel its actual damages, trebled pursuant to Section 350-e(3) of the New York General Business Law, arising out of Defendant's acts of willful and knowing false advertisement using the CHANEL Marks.

16)    Awarding Chanel reasonable attorney's fees, pursuant to Section 350-e(3) of the New York General Business Law.

17)    Awarding Chanel interest, including pre-judgment interest on the foregoing sums.

18)    Awarding Chanel such other and further relief as the Court may deem just and proper.

JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:   February 1, 2019
New York, New York

*/s/Theodore C. Max*
Theodore C. Max
tmax@sheppardmullin.com
Thomas M. Monahan
tmonahan@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

*Attorneys for Plaintiff Chanel, Inc.*

# Exhibit A



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

**United States Patent and Trademark Office**

May 23, 2008

THE ATTACHED U.S. TRADEMARK REGISTRATION *626,035* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM  *May 01, 1956*
*3rd* RENEWAL FOR A TERM OF *10* YEARS FROM  *May 01, 2006*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
   *CHANEL, INC.*
   *A NEW YORK CORPORATION*

By Authority of the
**Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office**

N. WILLIAMS

**Certifying Officer**

Int. Cl.: 18

Prior U.S. Cl.: 3

United States Patent and Trademark Office

**Reg. No. 626,035**
**Registered May 1, 1956**

10 Year Renewal

**Renewal Term Begins May 1, 1996**

## TRADEMARK
## PRINCIPAL REGISTER

## CHANEL

CHANEL, INC. (NEW YORK CORPORA-
TION)
9 WEST 57TH STREET
NEW YORK, NY 10019, BY ASSIGN-
MENT AND ASSIGNMENT FROM
CHANEL, INC. (NEW YORK CORPO-
RATION) NEW YORK, NY

OWNER OF U.S. REG. NOS. 195,360,
513,132 AND OTHERS.
SEC. 2(F).
FOR: WOMEN'S HANDBAGS, IN
CLASS 3 (INT. CL. 18).
FIRST USE 0-0-1938; IN COMMERCE
11-24-1954.

SER. NO. 71-678,436, FILED 12-16-1954.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Aug. 27, 1996.*

COMMISSIONER OF PATENTS AND TRADEMARKS



7237113

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

**May 04, 2010**

THE ATTACHED U.S. TRADEMARK REGISTRATION *902,190* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *November 10, 1970*
*3rd* RENEWAL FOR A TERM OF *10* YEARS FROM   *November 10, 2010*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
   *REGISTRANT*

By Authority of the
**Under Secretary of Commerce for Intellectual Property**
**and Director of the United States Patent and Trademark Office**

**W. MONTGOMERY**
**Certifying Officer**

Int. Cl.: 14

Prior U.S. Cl.: 28

**United States Patent and Trademark Office**

10 Year Renewal

Reg. No. 902,190
Registered Nov. 10, 1970
Renewal Approved Oct. 15, 1990

## TRADEMARK
## PRINCIPAL REGISTER

## CHANEL

CHANEL, INC. (NEW YORK CORPORA-
TION)
9 W. 57TH ST.
NEW YORK, NY 10019

OWNER OF U.S. REG. NO. 612,169.

FOR: BRACELETS, PINS, AND EAR-
RINGS , IN CLASS 28 (INT. CL. 14).
FIRST USE 0-0-1914; IN COMMERCE
0-0-1925.

SER. NO. 72-339,492, FILED 5-28-1969.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Nov. 27, 1990.*

COMMISSIONER OF PATENTS AND TRADEMARKS

# United States Patent Office

**902,190**
Registered Nov. 10, 1970

## PRINCIPAL REGISTER
### Trademark

Ser. No. 339,492, filed May 28, 1969

## CHANEL

Chanel, Inc. (New York corporation)
1 W. 57th St.
New York, N.Y.   10019

For: BRACELETS, PINS, AND EARRINGS, in
CLASS 28 (INT. CL. 14).
First use in 1914; in commerce in or before 1925.
Owner of Reg. No. 612,169.

Int. Cls.: 16 and 18

Prior U.S. Cls.: 3 and 37

**United States Patent and Trademark Office**

Reg. No. 1,314,511
Registered Jan. 15, 1985

## TRADEMARK
### Principal Register



Chanel, Inc. (New York corporation)
9 W. 57th St.
New York, N.Y. 10019

For: NOTEBOOKS AND STATIONERY-TYPE PORTFOLIOS, in CLASS 16 (U.S. Cl. 37).

First use Sep. 1981; in commerce Sep. 1981.

For: LEATHER GOODS—NAMELY, HAND-BAGS, WALLETS, TRAVEL BAGS, LUGGAGE, CREDIT CARD AND BUSINESS CARD CASES, MAKE-UP BAGS AND VANITY CASES SOLD EMPTY, BRIEFCASE-TYPE PORTFOLIOS; ATTACHE CASES, CHANGE PURSES, SUIT-CASES, TOTE BAGS, GARMENT BAGS AND TRAVELLERS' SHOE BAGS, in CLASS 18 (U.S. Cl. 3).

First use Nov. 24, 1954; in commerce Nov. 24, 1954.

Owner of U.S. Reg. No. 1,075,016.

Ser. No. 356,733, filed Mar. 26, 1982.

FRANCIE R. GOROWITZ, Examining Attorney

Int. Cls.: 16 and 18

Prior U.S. Cls.: 3 and 37

Reg. No. 1,347,677

## United States Patent and Trademark Office    Registered July 9, 1985

### TRADEMARK
PRINCIPAL REGISTER

## CHANEL

CHANEL, INC. (NEW YORK CORPORATION)
9 W. 57TH ST.
NEW YORK, NY 10019

FOR: NOTEBOOKS AND STATIONERY TYPE PORTFOLIOS, IN CLASS 16 (U.S. CL. 37).
FIRST USE 9-0-1981; IN COMMERCE 9-0-1981.
FOR: LEATHER GOODS—NAMELY, HAND-BAGS, WALLETS, TRAVEL BAGS, LUGGAGE, BUSINESS AND CREDIT CARD CASES, BRIEF CASE TYPE PORTFOLIOS, ATTACHE CASES, CHANGE PURSES, SUITCASES, TOTE BAGS,

MAKE-UP BAGS AND VANITY CASES SOLD EMPTY, GARMENT BAGS FOR TRAVEL AND TRAVELLERS' SHOE BAGS, IN CLASS 18 (U.S. CL. 3).
FIRST USE 0-0-1938; IN COMMERCE 11-24-1954.

OWNER OF U.S. REG. NO. 626,035.

SER. NO. 356,734, FILED 3-26-1982.

ROBERT PEVERADA, EXAMINING ATTOR-NEY

Int. Cls.: **6, 14, 16, 25 and 26**

Prior U.S. Cls.: **13, 28, 37, 39 and 40**

## United States Patent and Trademark Office

Reg. No. 1,501,898
Registered Aug. 30, 1988

## TRADEMARK
### PRINCIPAL REGISTER



CHANEL, INC. (NEW YORK CORPORATION)
9 WEST 57TH STREET
NEW YORK, NY 10019

FOR: KEYCHAINS, IN CLASS 6 (U.S. CL. 13).
FIRST USE 9-0-1981; IN COMMERCE 9-0-1981.
FOR: COSTUME JEWELRY, IN CLASS 14 (U.S. CL. 28).
FIRST USE 9-0-1981; IN COMMERCE 9-0-1981.
FOR: GIFT WRAPPING PAPER , IN CLASS 16 (U.S. CL. 37).
FIRST USE 8-0-1986; IN COMMERCE 8-0-1986.

FOR: BLOUSES, SHOES, BELTS, SCARVES, JACKETS, MEN'S TIES, IN CLASS 25 (U.S. CL. 39).
FIRST USE 9-0-1981; IN COMMERCE 9-0-1981.
FOR: BROOCHES, BUTTONS FOR CLOTHING, IN CLASS 26 (U.S. CL. 40).
FIRST USE 9-0-1981; IN COMMERCE 9-0-1981.
OWNER OF U.S. REG. NOS. 195,359, 1,347,094 AND OTHERS.

SER. NO. 644,065, FILED 2-9-1987.

JANE MCCABE, EXAMINING ATTORNEY

Int. Cl.: 18

Prior U.S. Cl.: 3

**Reg. No. 1,733,051**

## United States Patent and Trademark Office   Registered Nov. 17, 1992

### TRADEMARK
#### PRINCIPAL REGISTER

## CHANEL

CHANEL, INC. (NEW YORK CORPORATION)
9 WEST 57TH STREET
NEW YORK, NY 10019

   FOR: LEATHER GOODS; NAMELY, HAND-BAGS, WALLETS, TRAVEL BAGS, LUGGAGE, BUSINESS AND CREDIT CARD CASES, CHANGE PURSES, TOTE BAGS, COSMETIC BAGS SOLD EMPTY, AND GARMENT BAGS FOR TRAVEL, IN CLASS 18 (U.S. CL. 3).

FIRST USE 0-0-1954; IN COMMERCE 0-0-1954.

   OWNER OF U.S. REG. NOS. 626,035, 1,347,677 AND OTHERS.

   SER. NO. 74-242,426, FILED 1-31-1992.

KEITH L. HENDERSON, EXAMINING ATTOR-NEY

Int. Cl.: 18

Prior U.S. Cl.: 3

## United States Patent and Trademark Office

Reg. No. 1,734,822
Registered Nov. 24, 1992

### TRADEMARK
### PRINCIPAL REGISTER



CHANEL, INC. (NEW YORK CORPORATION)
9 WEST 57TH STREET
NEW YORK, NY 10019

FOR: LEATHER GOODS; NAMELY, HAND-
BAGS, WALLETS, TRAVEL BAGS, LUGGAGE,
BUSINESS CARD CASES, CHANGE PURSES,
TOTE BAGS, AND COSMETIC BAGS SOLD
EMPTY, IN CLASS 18 (U.S. CL. 3).

FIRST USE 0–0–1954; IN COMMERCE
0–0–1954.

OWNER OF U.S. REG. NOS. 1,293,298, 1,314,511
AND OTHERS.

SER. NO. 74–242,471, FILED 1–31–1992.

KEITH L. HENDERSON, EXAMINING ATTOR-
NEY

Int. Cl.: 18

Prior U.S. Cls.: 1, 2, 3, 22 and 41

**United States Patent and Trademark Office**

Reg. No. 3,025,934
Registered Dec. 13, 2005

### TRADEMARK
### PRINCIPAL REGISTER



CHANEL, INC. (NEW YORK CORPORATION)

9 WEST 57TH STREET

NEW YORK, NY 10019

FOR: HANDBAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 6-1-2004; IN COMMERCE 6-1-2004.

OWNER OF U.S. REG. NOS. 195,359, 1,734,822 AND OTHERS.

THIS MARK IS A THREE-QUARTER VIEW OF THE CHANEL CC MONOGRAM WHICH IS COMPRISED OF INTERLOCKING C'S.

SER. NO. 76-615,089, FILED 10-8-2004.

KIMBERLY PERRY, EXAMINING ATTORNEY

# Exhibit B

10/2/2018

Case 1:18-cv-10626-VSB-GWG   Document 89-1   Filed 12/21/20   Page 49 of 86
Case 1:13-cv-10626-VSB   Document 26-2   Filed 02/04/19   Page 2 of 6

4,419 views | Aug 22, 2018, 12:01pm

# Luxury Brands Can't Ignore Fashion Reseller The RealReal Anymore



**Pamela N. Danziger** Contributor ⓘ
*Retail*
*I study the world's most powerful consumers -- The American Affluent*

**TWEET THIS**

 Gently used luxury fashion is a real trend

 If you know you can make 80% of [the price] of an item back, you are more likely to go ahead and make the purchase in the primary market



The RealReal Melrose Avenue store, Los Angles   JOYCE LEE STUDIOS

Long dismissed as an opportunistic upstart of little consequence by the luxury establishment, The RealReal is proving it is on to something big. **Gently used luxury fashion is a real trend** 🐦 and The RealReal has discovered the secret sauce: become a trusted and authoritative partner for luxury-fashion consigners and buyers, many of who are the same person.

The resale market for fashion is particularly hot. Thredup, an online reseller of mass-fashion brands as distinguished from The RealReal in luxury, predicts the total resale retail market to reach $41 billion in 2022. Further the latest Census report on the retail market identifies used-merchandise stores among the fastest-growing sectors this year, up 7.6% through the first half of 2018 following an 11.6% gain last year. And that number doesn't even include online sellers like Thredup and The RealReal.

In 2017 Julie Wainwright, founder of The RealReal, told CNBC that sales had topped $500 million in the first six years after doing $10 million its first year in 2011. To date, the company has raised $288 million in funding, according to Crunchbase.

**The RealReal becomes real**

The RealReal got its start online, but like so many other digitally native companies, it is now expanding into brick-and-mortar retail with two permanent locations where luxury consigners and customers can congregate.

10/2/2018

Case 1:18-cv-10626-VSB-GWG Document 39-1 Filed 12/31/20 Page 50 of 86
Case 1:18-cv-10626-VSB Document 26-2 Filed 02/04/19 Page 3 of 6

One store is located in New York City's SoHo neighborhood and another just opened on Los Angeles' Melrose Avenue close to the Nordstrom Local concept store and Glossier, another digitally native beauty company.

**YOU MAY ALSO LIKE**

Unique to the new Los Angeles location is a section devoted to men's fashion, a rapidly growing segment of The RealReal's business. It also continues to test opportunities in physical retail through opportunistic pop-up shops, in places like Las Vegas and San Francisco.

Wainwright told me that the stores fill a need for the business that its online presence can't match. The average order size in The RealReal stores are two times larger than online and it is a way to secure the best-quality consignments to sell on.

"It is a marketing tactic, sales tactic and product acquisition tactic," Wainwright says. "We find we get lots of high-quality consignments when we do pop-ups."

### The RealReal's appeal

For many older affluent consumers, shopping secondhand has been a well-kept secret, something they do on the sly. "Some of the smartest people I know have been buying consignment forever but never talked about it — even some of the richest people I know, because they like good value," Wainwright told CNBC.



Julie Wainwright, founder The RealReal  MARGOT DUANE

But Millennial shoppers have no such qualms. They love the treasure-hunt experience that only secondhand shopping gives them.

American shoppers are inundated with too much of the same-old, same-old fashion that results in them looking like everyone else. Millennials, most especially, want a look that is all their own, and The RealReal helps them get that.

"Layering, mixing patterns and pairing luxury with contemporary, formal with casual are what's happening now," says Rati Levesque, chief merchant at The RealReal. "It's very individualistic, customizable and authentic."

10/2/2018

Case 1:18-cv-10626-VSB-GWG Document 89-1 Filed 12/21/20 Page 51 of 86
Case 1:13-cv-10026-VSB Document 25-2 Filed 02/04/14 Page 4 of 6

The RealReal delivers that and at a price, though hardly cheap, that opens the door to luxury that more people to afford. "Americans are value shoppers more than anything," Wainwright says.

"So we find they buy from our site and buy new and then consign things they may have kept for a couple of months. Then they use the money from consignments to buy new or buy from us again."

What drives them all to The RealReal is a passion for fashion. "Whether someone is a collector, archivist or simply loves fashion, they see something on the site that they remember on the cover of *Vogue*, or who wore it on the runway, and they have to buy it," explains Levesque. "Often new trends take time to catch on and by the time you're lusting for it, the item may have sold out in the boutique."

"Customers love shopping on The RealReal to find treasures that slipped through their hands or that they never had the opportunity to own before," he continues.

### What's hot, what's not

What The RealReal recognizes, and the luxury brands may yet have to learn, is that its resale market is a vital part of the greater luxury market infrastructure. It helps support first-time sales.

"Whenever we survey our consigners or buyers, they say they check out our site before they buy new. It helps them if they are going to spend a lot of money to know that the value is good. Even if they have never consigned, they want to know they can," Wainwright says. "People can't underestimate how smart shoppers are."

" If you know you can make 80% of [the price] of an item back, you are more likely to go ahead and make the purchase in the primary market 🐦 ," Levesque adds.

Because luxury fashion trends track in tandem both in the primary and secondary luxury market, The RealReal's new "State of Luxury Resale" report gives a valuable perspective on what luxury fashionistas crave now.

Backed by data on 8 million items sold, The RealReal reports that Gucci has pushed Chanel aside as the No. 1 brand searched on the site, while Louis Vuitton continues as the second-most-searched for brand, followed by Chanel.

Also moving up on its hot list are Cartier (No. 10), Dolce & Gabbana (No. 12), Tiffany (No. 13), Tory Burch (No. 13), Saint Laurent (No. 15) and Fendi (No. 16). Losing traction this year were Goyard, dropping from No. 8 last year to No. 17, and Isabel Marant (now No. 18 from No. 11).

Rounding out the top ten luxury brands in search is Christian Louboutin (No. 4), Hermès (No. 5), Prada (No. 6), Céline (No. 7), Burberry (No. 8) and Valentino (No. 9).

In sales Gucci is the fastest growing, up 62% YoY, followed by Hermès, +40%, and Chanel, +34%. Of note, Hermès is reported to be the fastest-growing brand among Millennials, up 71% among shoppers 18-34 years old.

Regarding this year's fashion trends, Levesque says logo-mania is back. "Iconic, logo-centric styles, notably Dior, Gucci and Fendi, are coming on

strong in resale value, while past-season's styles without 'in-your-face' labels are on the decline."

For men The RealReal is tracking a trend toward casual street styles, with Kanye West's Yeezy X Adidas the sneaker of the moment across most of the country. Along with streetwear, The RealReal is also seeing a trend for what it calls "dad-style." Hawaiian shirts are hot (cool), as are "dad" ball caps and fanny packs.

### Tracking The RealReal

Online The RealReal is dramatically increasing its traffic this year, according to data compiled by SimilarWeb. "Over the past 18 months, U.S. desktop & mobile Web traffic to therealreal.com averages 2.2 million visits per month. This number is up nearly one-third, increasing from an average of 1.9 million visits in first half of 2017 to 2.5 million in the first half of 2018," says Liron Hakim-Bobrov, Marketing Insights Manager.



The RealReal website traffic   SIMILARWEB

"Beyond more traffic, the really important news is that The RealReal visitors are highly engaged, averaging ten pages per visit and bouncing off just 35% of the time," she continues.

In another measure of engagement, The RealReal's online visitors know what they are looking for, with nearly half of its website traffic arriving after people type the URL in their search bar and an additional 22% coming from organic search. "The RealReal doesn't have to pay to get people to visit," Hakim-Bobrov says, noting only about 8% of traffic is from paid search.

Demographically The RealReal's visitors skew toward the Millennial generation's affluents and up-and-comers, with nearly one-third of its traffic

10/2/2018

Case 1:18-cv-10626-VSB-GWG Document 88-1 Filed 12/21/20 Page 53 of 86
Case 1:18-cv-10626-VSB Document 26-2 Filed 02/04/19 Page 6 of 6

coming from people ages 24 to 34, and another 18% on each side of them, ages 18 to 23 and 35 to 44.

Having been in the luxury business for the last seven years, The RealReal has a long enough track record to have seen the shift in generations. The trailing edge of the GenXers were 38 then, and the leading edge of the Millennial generation is 38 now.

Millennials, ages 18 to 38, with their taste for luxury and their willingness to search high and low for it, are the key to The RealReal's past and future success. As Wainwright reminds us, "Never underestimate how sharp Millennials are."

*I am a market researcher, speaker and author focused on the affluent consumers' behavior and mindset, including the HENRYs (high-earners-not-rich-yet) mass affluent. I founded Unity Marketing in 1992 as a research-led marketing consultancy, following a corporate career in re...* **MORE**

*My book, "Shops that POP! 7 Steps to Extraordinary Retail Success," reveals how to make shopping an experience. Meet me at Unity Marketing or connect via Twitter, LinkedIn, Facebook*

50,813 views | May 30, 2018, 11:04am

## 5 Cybersecurity Measures Mid-Sized Businesses Need To Take Today

 **SunTrust** BRANDVOICE

---

 **SunTrust** Smart Planning for Smart Growth     [ Follow ]

At SunTrust, our purpose is to Light the Way to Financial Well-Being for you and your business, our communities and our teammates. When you work with us, we'll work to achieve this purpose through our unique SunTrust OneTeam ApproachSM. We assemble an integrated team of ... **Read More**

---

# Exhibit C



# State of Luxury Resale | Midyear 2018

Exclusive data from The RealReal charting marketplace trends, bestselling brands and emerging designers in luxury fashion resale.

TheRealReal



"Luxury resale has become bigger and more mainstream than ever. The industry and the public are looking to this market to determine consumer behavior, and to reveal the brands and trends luxury consumers are after right now.

With over 8 million items sold, we have unique access to data that speaks to these trends, and we're excited to share it in this report."

–*Rati Levesque*
Chief Merchant



INDUSTRY INSIGHTS
Women's

The RealReal

**BY SEARCH**

# Gucci Is King Among Millennials

Search Ranking

| 2018 | 2017 | |
|---|---|---|
| 1 | 3 | Gucci |
| 2 | 2 | Louis Vuitton |
| 3 | 1 | Chanel |
| 4 | 4 | Christian Louboutin |
| 5 | 5 | Hermès |
| 6 | 7 | Prada |
| 7 | 8 | Céline |
| 8 | 9 | Burberry |
| 9 | 10 | Valentino |
| 10 | 13 | Cartier |
| 11 | 15 | Balenciaga |
| 12 | 17 | Dolce & Gabbana |
| 13 | 16 | Tiffany & Co. |
| 14 | 12 | Tory Burch |
| 15 | 18 | Saint Laurent |
| 16 | 22 | Fendi |
| 17 | 8 | Goyard |
| 18 | 11 | Isabel Marant |
| 19 | 24 | Yves Saint Laurent |
| 20 | 19 | Chloé |



Search volume for **Gucci bumped Chanel and LV** from the top spots this year for the first time, and **is growing 48% faster among millennials** than other age groups.



**Fendi** is on the rise as logos like the house's **iconic Zucca see a resurgence.**



Céline by **Phoebe Philo** sees an uptick in search with the **departure** of the iconic designer.

Sales Growth Across All Age Groups

| | | |
|---|---|---|
| | 1. GUCCI | +62% |
| | 2. HERMÈS | +40% |
| | 3. CHANEL | +34% |
| | 4. CÉLINE | +32% |
| | 5. TIFFANY & CO. | +32% |
| | 6. LOUIS VUITTON | +31% |
| | 7. CHRISTIAN LOUBOUTIN | +29% |
| | 8. VALENTINO | +29% |
| | 9. PRADA | +25% |
| | 10. CARTIER | +13% |

The RealReal

## Year-Over-Year Growth Among
## The 10 Top-Selling Brands



**Gucci leads the pack** under Creative Director Alessandro Michele, **growing 62%** among all age groups in the first half of the year.



**Hermès is the fastest-growing brand among millennials,** growing 71% among shoppers 18-34.

BY SALES

The 5 Most Popular Brands
Millennial Women Are Buying & Consigning

**1**
# CHANEL

**2**
# HERMÈS

**3**
# LOUIS VUITTON

**4**
# GUCCI

**5**

The RealReal

BY SALES & CONSIGNMENT

# Shifts In Consignment Resale Value

**BY CONSIGNMENT RESALE VALUE**

**+12%**



### GUCCI

Gucci is up as **Alessandro Michele's new vision** for the house reigns supreme.

**+33%**

### GOLDEN GOOSE

Golden Goose increases as **women's sneakers & luxury streetwear gain in popularity.**

**+15%**

 ULLA JOHNSON

Ulla Johnson is up as **new contemporary brands are on the rise.**

**−34%**

 TORY BURCH

Tory Burch declines as **older contemporary brands struggle.**

**−22%**

### VETEMENTS

Vetements is down as **shoppers turn to Balenciaga** for Demna Gvasalia's latest designs.

**−27%**

 JOHANNA ORTIZ

Johanna Ortiz is down as **competing brands offer similar styles at a lower price point.**

The RealReal



**BY CONSIGNMENT RESALE VALUE**

## Logo Bags Are Back & Selling Better Than Ever

Past-season styles without in-your-face labels are on the decline.

Balenciaga Motocross **-14%**

JW Anderson Pierce **-14%**

Fendi 2Jours **-21%**

Chloé Faye **-20%**

Iconic, logo-centric styles by heritage brands are seeing rising resale value.

Gucci Web **+51%**

LV Montsouris **+26%**

Dior Saddle Bag **+89%**

Fendi Zucca **+32%**

The RealReal



INDUSTRY INSIGHTS
Men's



## MEN

### BY SALES & CONSIGNMENT

# The Top 10 Brands Millennial Men Are Buying & Consigning

**Top 10 Brands Bought By Men 18-34**

1. ROLEX
2. GUCCI
3. LOUIS VUITTON
4. CARTIER
5. HERMÈS
6. SAINT LAURENT
7. TOM FORD
8. PRADA
9. BRUNELLO CUCINELLI
10. LORO PIANA

**Top 10 Brands Consigned By Men 18-34**

1. GUCCI
2. LOUIS VUITTON
3. HERMÈS
4. SAINT LAURENT
5. TOM FORD
6. SUPREME
7. GIVENCHY
8. CARTIER
9. CHRISTIAN LOUBOUTIN
10. PRADA

TheRealReal

**MEN** | **BY SALES & CONSIGNMENT**

## Trends In Mens' Consignment Resale Value

Brands focused on logo revivals and with strong sneaker and statement outerwear offerings are seeing gains in resale value.



**+21%** GUCCI

**+17%** A M I R I

**+16%** BALENCIAGA

Vetements ready-to-wear, Balmain ready-to-wear and Bottega Veneta leather goods are seeing a decline in resale value.

**-20%** VETEMENTS

**-17%** BALMAIN

**-7%** BOTTEGA VENETA

The RealReal

MEN | BY SEARCH

# Dad Knows Best

As designers have made chunky sneakers and formerly frumpy denim cool again, men are searching for dad-style staples.



**FANNY PACK**
**+614%**




**DAD HAT**
**+67%**

The RealReal

**HAWAIIAN STYLE**
**+84%**



# Exhibit D



The RealReal
AUTHENTICATED LUXURY CONSIGNMENT

NEW ARRIVALS    WOMEN    MEN    JEWELRY & WATCHES    ART & HOME    SALE    CONSIGN

The RealReal  ›  Buyer

## How do you authenticate each item?

May 31, 2017 12:44

Each product we accept is put through a multiple-point, brand-specific authentication process by a team of luxury experts headed by our Director of Authentication & Brand Compliance. To learn more about our brand experts and how we authenticate, click **here**. For questions regarding authenticity, please contact us at authenticity@therealreal.com.

Was this article helpful?   👍   👎
95 out of 130 found this helpful

Have more questions? Submit a request

## Articles in this section

What is your authentication process?

How do you authenticate each item?

Which items are excluded from promotions and discounts?

Can I offer a lower bid for an item?

How are your diamonds and gemstones graded?

What are your condition standards?

What is your return policy?

What if I am not satisfied with my jewelry purchase?

Does The RealReal have stores and locations to consign in person?

What are your shipping and delivery options?

See more

 *REALStyle*    f   ⊙   p   🐦

© The RealReal

10/25/2018

Case 1:18-cv-10626-VSB-GWG Document 89-1 Filed 12/21/20 Page 70 of 86
Case 1:13-cv-10626-VSB Document 26-4 Filed 02/01/19 Page 3 of 4



The RealReal  ›  Buyer

## What is your authentication process?

January 22, 2018 18:25

**The RealReal Policy on Authenticity**

Authenticity is the cornerstone of The RealReal. We staff trained, in-house professionals including gemologists, horologists, art appraisers and apparel experts who work to ensure the items we sell are authentic and in beautiful condition.

**Multi-Point Inspection and Evaluation**

All items are put through a multi-point, brand-specific authentication process by a trained team of luxury experts headed by our Senior Director of Authentication & Brand Compliance before they are accepted for consignment. We inspect all goods for appropriate brand markings, date codes, serial tags and hologram stickers. Everything passes through our strict authenticity tests before it is curated into daily sales. Our fine jewelry and watches are authenticated and appraised by our gemologists and horologists and each piece comes with a valuation certificate. Art items are thoroughly researched and validated by our team of fine art specialists.

The RealReal's authentication process is unique to The RealReal and independent of any brands. Brands identified are not involved in the authentication of the products being sold, and none of the brands sold assume any responsibility for any products purchased from or through the website. Brands sold on The RealReal are not partnered or affiliated with The RealReal in any manner. However, The RealReal fully cooperates with brands and state and federal agencies seeking to track down the source of stolen or counterfeit items, which includes revealing the contact information of consignors submitting counterfeit goods.

**Goods Determined to be Counterfeit**

The RealReal does not accept fake or counterfeit merchandise. If we suspect for any reason that a submitted consignment is not authentic we will contact the consignor for proof of purchase in an effort to establish the items authenticity. **Items The RealReal determines are counterfeit will not be returned to the consignor and will be destroyed.**

Was this article helpful?  👍 👎
231 out of 259 found this helpful

Have more questions? Submit a request

## Articles in this section

What is your authentication process?

How do you authenticate each item?

Which items are excluded from promotions and discounts?

Can I offer a lower bid for an item?

How are your diamonds and gemstones graded?

What are your condition standards?

What is your return policy?

What if I am not satisfied with my jewelry purchase?

Does The RealReal have stores and locations to consign in person?

What are your shipping and delivery options?

See more



Case 1:18-cv-10626-VSB Document 26-4 Filed 02/01/19 Page 4 of 4

© The RealReal



# Exhibit E



























# Exhibit F



SIDLEY AUSTIN LLP
555 WEST FIFTH STREET
LOS ANGELES, CA 90013
+1 213 896 6000
+1 213 896 6600 FAX

RRANSOM@SIDLEY.COM

AMERICA • ASIA PACIFIC • EUROPE          +1 213 896 6047

July 10, 2018

**VIA E-MAIL (tmax@sheppardmullin.com)**

Theodore C. Max, Esq.
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015

     Re:    <u>The RealReal/Chanel</u>

Dear Mr. Max:

    I write in response to your letter of June 22, 2018, to our client, The RealReal, Inc. ("The RealReal"). Your letter contains several inaccuracies about The RealReal's business model and practices, as well as unfounded accusations of trademark infringement and false advertising.

    First, your letter claims that The RealReal advertised as genuine and sold four counterfeit Chanel, Inc. ("Chanel") handbags, pictured in Exhibit C to your letter, and that Chanel "determined" that these handbags are counterfeit "based upon its review of the bags and the related identification materials." Noticeably absent from your letter is any substantiation supporting your unfounded assertion that the handbags are counterfeit. Absent additional details, The RealReal cannot credit, let alone evaluate, your claims. Please provide The RealReal with the details supporting your conclusion, and The RealReal will consider that information.

    As aptly quoted in your letter, The RealReal does not knowingly accept fake or counterfeit merchandise on its website, and if The RealReal suspects or has reason to believe that property submitted for consignment is not authentic, The RealReal contacts the consignor for proof of purchase in an effort to establish the authenticity of the property. Items that The RealReal determines to be counterfeit are not returned to the consignor, but rather are destroyed. The RealReal stands by its guarantee of the authenticity of the products sold on its website. Your letter provides no information that calls into question its robust authentication process or the propriety and legitimacy of its guarantee.

    Second, you make the baseless claim in your letter that The RealReal misleads consumers into falsely believing that its authentication specialists "have been in some way authorized, approved or trained by Chanel to be 'experts' about Chanel," or that "there might be some relationship or affiliation with Chanel." In putative support, you cite to several statements from The RealReal's website, none of which actually states or suggests, either directly or indirectly,

Sidley Austin (CA) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Theodore C. Max, Esq.
July 10, 2018
Page 2

that The RealReal is affiliated with any brand or that its authentication experts are trained by any brand, let alone Chanel.  In fact, Exhibit B to your letter, which is a copy of an FAQ from The RealReal's website, flatly contradicts your assertion.  In the referenced FAQ, The RealReal affirmatively and expressly disclaims any affiliation with any brand:

> Brands identified are not involved in the authentication of the products being sold, and none of the brands sold assume any responsibility for any products purchased from or sold through the website.  Brands sold on the RealReal are not partnered or affiliated with The RealReal in any manner.

Your letter also appears to suggest that only Chanel has the training and knowledge to authenticate Chanel goods, and as a result, The RealReal's experts (or any other persons) are unable to identify genuine or counterfeit Chanel goods.  This is simply wrong.  The RealReal employs its own team of trained authentication specialists who inspect every Chanel-branded product using a sophisticated and thorough process.  As explained on The RealReal's website, and included in your Exhibit B, The RealReal's experts have developed a multi-point, brand-specific authentication process, which includes a detailed inspection for appropriate brand marking, date codes, serial tags, hologram stickers, and other unique indicia of authenticity.  Put simply, The RealReal is clearly capable of authenticating the luxury items offered for sale on its website, and further actually guarantees the authenticity of every item sold on the site.

In short, you have failed to set forth any facts that substantiate your assertion that consumers are confused or misled by The RealReal in any respect, whether as to the nature of The RealReal's authentication process or an affiliation with Chanel.  Your allegations of false advertising and consumer deception against The RealReal are therefore baseless.

Third, your letter makes several demands for relief to which Chanel is plainly not entitled:

1. You demand that The RealReal cease advertising and marketing its employees as experts regarding the authenticity of Chanel goods, and cease conducting expert-led workshops on Chanel products and their authentication.

   As set forth above, The RealReal's specialists are fully capable of authenticating consigned luxury items, including Chanel goods. Further, The RealReal has never represented that its experts are trained or approved by Chanel, or possess some type of singular knowledge regarding Chanel goods.  Rather, The RealReal accurately describes the qualifications of its experts, as well as its process for authenticating the luxury goods sold on its website, including expressly advising consumers of its experts' independence from Chanel and other brands.  Chanel also has no right to

# SIDLEY

Theodore C. Max, Esq.
July 10, 2018
Page 3

      demand that The RealReal cease conducting workshops or any other practice related to The RealReal's in-house authentication process.

2.    You next demand that The RealReal cease offering for sale, selling, and distributing counterfeit goods bearing the Chanel marks.

      Your apparent suggestion that The RealReal is intentionally selling counterfeit goods bearing the Chanel marks is both baseless and wrong. As explained above, The RealReal does not knowingly accept fake or counterfeit merchandise. It engages in a rigorous process both to authenticate items accepted for consignment and to respond to all allegations of counterfeit products being sold on its website. Unlike other online platforms that allow consumers to resell their goods without any review of the products offered for sale, The RealReal takes possession of and inspects the items before they are accepted for consignment and then guarantees to its customers the authenticity of the products that it resells. The RealReal then stands behind that guarantee if any issue is raised as to authenticity.

3.    You also demand that The RealReal cease using the Chanel marks, or any confusingly similar variation of the Chanel marks, in connection with exportation, promotion, advertisement, offering for sale, sale, manufacture, production, or distribution of any business, product, or service.

      This demand is apparently based on the erroneous belief that The RealReal has no right to use Chanel trademarks or trade dress to sell genuine Chanel products. The law is otherwise. *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) ("[A] defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendants."). Chanel has no right to prohibit consumers that have purchased genuine Chanel goods from reselling those goods in a secondary market. Chanel also has no right to bar secondary marketplaces, like The RealReal, from using its trademarks to accurately refer to and describe genuine Chanel goods that are offered for sale.

4.    You also demand that The RealReal cease offering for sale and selling any product with the Chanel marks in a manner that causes consumers to believe that The RealReal is affiliated with Chanel in any way or that the goods have been authenticated by individuals trained or affiliated with Chanel.

      As explained above, and as established in Exhibit B to your letter, The RealReal expressly disclaims any affiliation or association with any brand, including Chanel. You have failed to point to a single example of The RealReal representing to

# SIDLEY

Theodore C. Max, Esq.
July 10, 2018
Page 4

consumers that it is affiliated with Chanel or that its employees are trained by Chanel, or to any evidence of consumer confusion in that regard.

5.      You further demand that The RealReal cease disseminating false or misleading information relating to The RealReal's expertise and ability to determine the authenticity of Chanel goods or that such authentication is approved and authorized by Chanel.

This demand is similar to and overlaps with your first demand, and The RealReal's response is the same. The RealReal and its team of trained experts are fully capable of authenticating luxury goods, and The RealReal guarantees the authenticity of every item it offers for consignment, including Chanel items. There is nothing false or misleading about The RealReal's accurate explanation of its process to authenticate luxury consignment items.

6.      You next demand that The RealReal cease engaging in any activity constituting false advertising, and that The RealReal include a large and prominent disclaimer that The RealReal is not sponsored by, authorized by, or affiliated with Chanel and has no relationship with or training from Chanel. Similarly, you demand that The RealReal notify potential consumers that the products for sale on its website are not authenticated by Chanel and that Chanel does not guarantee that the items sold are genuine.

As discussed at length above, The RealReal is not engaged in any false advertising about its authentication process, particularly with respect to any purported relationship between The RealReal and brands offered for consignment on its website. While The RealReal does not believe that *any* disclaimer is required, your own letter reflects that The RealReal already states in its FAQ section that brands sold on the RealReal are not partnered or affiliated with The RealReal in any manner.

7.      You demand that The RealReal provide the identity and documentation concerning the source of all the counterfeit Chanel goods sold or offered for sale on its website, and copies of any and all correspondence received or sent by The RealReal concerning counterfeit Chanel goods, including but not limited to consumer inquiries and complaints, and any contracts between The RealReal and any seller or vendor of Chanel goods.

Based on the limited information provided in your letter regarding the four handbags you claim are counterfeit, The RealReal is unable to assess the credibility of your claim, and therefore cannot provide you with the information requested by this demand. As explained above, The RealReal takes all claims of counterfeit or fake

# SIDLEY

Theodore C. Max, Esq.
July 10, 2018
Page 5

merchandise offered for sale on its website very seriously. If you have additional information regarding your analysis of the handbags and the reason for your belief that they are counterfeit, please submit that information to The RealReal so that it can evaluate the legitimacy of your claim.

8. You next demand that The RealReal provide documentation regarding its authentication of the allegedly counterfeit Chanel goods.

Again, without more information, The RealReal is unable to assess the credibility of your contention that these four handbags are counterfeit, and therefore declines to provide you with the documentation requested by this demand.

9. You further demand that The RealReal cease use of the word "vintage" in the advertising and sale of used Chanel goods unless they are verified as being at least fifty years old, and ensure that any sales of used Chanel products are described as "used," and that "the sale of these used products in no way constitutes any license, sponsorship or authorization by Chanel."

It is unclear how the use of the word "vintage" in connection with the advertising and sale of used Chanel goods has any bearing on your claim of trademark infringement and unfounded accusation that The RealReal sold counterfeit Chanel goods. The word "vintage" does not suggest an affiliation with Chanel, and Chanel has no right to preclude The RealReal from using it or to dictate to The RealReal how to use it (or any word). Further, as repeatedly explained herein, The RealReal expressly disclaims any affiliation with any brand, including Chanel.

10. You demand that The RealReal provide you with an accounting regarding the sale of counterfeit Chanel goods and false advertising regarding such goods, and pay Chanel all such monies together with "a sum representing damages and attorney's fees" to be determined after an accounting by Chanel.

The RealReal has created an informed, proprietary, and detailed process by which it evaluates all of the used brand items offered for consignment and sale on its site. You have failed to provide any substantiation for your claim that Chanel goods offered for sale on The RealReal's website are counterfeit or falsely advertised, rendering your demand both baseless and moot (and we dispute that Chanel would either have or be entitled to "damages" in any event).

In closing, we observe that rather than setting forth a credible claim of trademark infringement or false advertising, your letter instead reflects part of Chanel's improper and anti-competitive campaign to squelch the secondary market for its products, in this instance by

# SIDLEY

Theodore C. Max, Esq.
July 10, 2018
Page 6

bullying participants in that market such as The RealReal.  It is troubling – to say the least – that Chanel would seek to prevent its *own* customers from reselling their Chanel items in the secondary market, which both suppresses consumer property rights and undermines the benefits that resale provides to Chanel in the form of increased demand for new luxury items.  The RealReal will not be intimidated by Chanel's sham threats of litigation and attempts to monopolize the market for its products. The RealReal is well within its rights, and will continue to provide consumers with a safe and sophisticated platform to consign and purchase authentic luxury items, including Chanel goods.

This letter is without waiver of or prejudice to any and all of The RealReal's rights, remedies, and arguments, all of which are hereby expressly reserved.

Very truly yours,

Rollin A. Ransom

cc:     Dana DuFrane, Esq.
        Hank Barry, Esq.