SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore C. Max
Tyler E. Baker
tmax@sheppardmullin.com
tbaker@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

Dylan I. Ballard (admitted *pro hac vice*)
dballard@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

*Attorneys for Plaintiff/Counterclaim-Defendant Chanel, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHANEL, INC.,<br><br>　　　　Plaintiff and Counterclaim-Defendant,<br>　　v.<br><br>THE REALREAL, INC.,<br><br>　　　　Defendant and Counterclaim-Plaintiff. | Civil Action No. 1:18-cv-10626-VSB-GWG<br><br>*ORAL ARGUMENT REQUESTED* |

**PLAINTIFF CHANEL, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS DEFENDANT THE REALREAL, INC.'S**
**COUNTERCLAIMS AND MOTION TO STRIKE THE REALREAL, INC.'S  SEVENTH**
**AFFIRMATIVE DEFENSE OF UNCLEAN HANDS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................. 1

SUMMARY OF TRR'S ALLEGATIONS................................................................... 2

ARGUMENT ............................................................................................................. 5

    I.     TRR's Counterclaims Are Barred By The Statute of Limitations. ........................ 5

    II.    TRR's Asserted Antitrust Violations Are Implausible On Their Face. ................. 7

        A.    TRR's Contention That Chanel Is A Monopolist Is Contradicted By Its
             Own Allegations That Chanel Is But One of Many Brands In A Thriving,
             Highly Competitive Market. .................................................................... 7

            1.    A "Holy Trinity" Is Not a Monopoly As A Matter of Law. ........... 8

            2.    TRR's "Gerrymandering" of The Relevant Antitrust Market Is
                Improper................................................................................... 8

            3.    TRR's Own Allegations Demonstrate That Chanel As A Matter of
                Law Lacks Monopoly Power. ....................................................... 11

            4.    TRR Fails To Allege Any Anticompetitive Conduct Undertaken
                To Exclude Competition. ............................................................. 15

            5.    Rather Than Plausibly Allege An Injury To Market-Wide
                Competition, TRR Alleges That Market Competition Is Thriving.
                .......................................................................................... 18

        B.    TRR Fails To Plausibly Allege A Claim of Attempted Monopolization
             Under Section 2 of The Sherman Act. ...................................................... 19

            1.    TRR Fails To Plausibly Allege That Chanel Has A "Dangerous
                Probability" of Achieving A Monopoly. ..................................... 19

            2.    TRR Fails To Plausibly Allege That Chanel Had The Specific
                Intent To Monopolize The Proposed Relevant Market................. 21

            3.    TRR Fails To Plausibly Allege A "Vertical Group Boycott"
                Conspiracy Under The Sherman Act. ........................................... 22

    III.    TRR Fails to State Claims For Tortious Interference ........................................... 23

        A.    TRR's Claim For Tortious Interference with Contract Fails .................... 23

        B.    TRR's Claim for Tortious Interference with Business Relations Fails .... 25

IV.    TRR's "Unclean Hands" Affirmative Defense Should Be Stricken..................... 26

V.     These Motions Should Be Granted With Prejudice. ............................................... 29

CONCLUSION ................................................................................................................... 30

## **TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*
   56 F. Supp. 3d 436 (S.D.N.Y. 2014)......................................................................................19

*AD/SAT, a Div. of Skylight, Inc. v. Associated Press*
   885 F. Supp. 511 (S.D.N.Y. 1995)........................................................................................21

*AD/SAT, a Div. of Skylight, Inc. v. Associated Press*
   920 F. Supp. 1287 (S.D.N.Y. 1996)......................................................................................23

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*
   181 F.3d 216 (2d Cir. 1999)..................................................................................................19

*In re Adderall XR Antitrust Litig.*
   754 F.3d 128 (2d Cir. 2014)..................................................................................................15

*Affinity LLC v. GfK Mediamark Research & Intelligence, LLC*
   547 F. App'x 54 (2d Cir. 2013) ............................................................................................17

*All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund*
   887 F. Supp. 2d 448 (E.D.N.Y. 2012) .......................................................................12, 13, 19

*Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc.*
   100 F. Supp. 2d 178 (S.D.N.Y. 2000).....................................................................................5

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*
   356 F. Supp. 3d 379 (S.D.N.Y. 2019)...................................................................................26

*Bayer Schera Pharma AG v. Sandoz, Inc.*
   No. 08-cv-03710, 2010 U.S. Dist. LEXIS 33252 (S.D.N.Y. Mar. 29, 2010).........................12

*Bayer Schering Pharma AG v. Sandoz, Inc.*
   813 F. Supp. 2d 569 (S.D.N.Y. 2011)............................................................10, 12, 13, 19, 20

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)..................................................................................................... *passim*

*Brooke Grp. v. Brown & Williamson Tobacco Corp.*
   509 U.S. 209 (1993)..............................................................................................................18

*Caithness Long Island II, LLC v. SEG Long Island LLC*
   No. 18-CV-4555(JS)(AYS), 2019 U.S. Dist. LEXIS 174866 (E.D.N.Y. Sep.
   30, 2019) ..............................................................................................................................23

*Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*
  298 F. Supp. 1309 (S.D.N.Y. 1969), *modified sub nom.* 433 F.2d 686 (2d Cir.
  1970) ...............................................................................................................28, 29

*Cartier Int'l AG v. Motion in Time, Inc.*
  No. 12 CIV. 8216 JMF, 2013 U.S. Dist. LEXIS 50035 (S.D.N.Y. Apr. 5,
  2013) .............................................................................................................................27

*Chapman v. N.Y. State Div. for Youth*
  546 F.3d 230 (2d Cir. 2008)........................................................................................9

*City of New York v. Grp. Health Inc.*
  649 F.3d 151 (2d Cir. 2011)........................................................................................9

*Coca-Cola Co. v. Howard Johnson Co.*
  386 F. Supp. 330 (N.D. Ga. 1974) ............................................................................29

*Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.*
  166 F. Supp. 2d 891 (S.D.N.Y. 2001).......................................................................11

*Concord Assocs., L.P. v. Entm't Props. Tr.*
  817 F.3d 46 (2d Cir. 2016)...............................................................................8, 10, 11

*Craftsmen Limousine, Inc. v. Ford Motor Co.*
  491 F.3d 380 (8th Cir. 2007) ......................................................................................9

*In re CRM Holdings, Ltd. Sec. Litig.*
  No. 10 CIV 00975 (RPP), 2013 U.S. Dist. LEXIS 30116 (S.D.N.Y. Mar. 4,
  2013) .............................................................................................................................30

*Cuoco v. Moritsugu*
  222 F.3d 99 (2d Cir. 2000).........................................................................................29

*In re Currency Conversion Fee Antitrust Litig. v. Am. Express Co.*
  773 F. Supp. 2d 351 (S.D.N.Y. 2011).......................................................................23

*DiFolco v. MSNBC Cable L.L.C.*
  622 F.3d 104 (2d Cir. 2010).................................................................................3, 24

*In re Elevator Antitrust Litig.*
  502 F.3d 47 (2d Cir. 2007)..............................................................................6, 15, 22

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*
  189 F.R.D. 269 (S.D.N.Y. 1999) ...............................................................................27

*Eveready Wholesale Drugs, Ltd. v. Pfizer, Inc.*
  No. 04cv6590, 2006 U.S. Dist. LEXIS36677 (S.D.N.Y. June 5, 2006)..................16

*Falstaff Brewing Co. v. Stroh Brewery Co.*
  628 F. Supp. 822 (N.D. Cal. 1986) ..................................................21

*Fineman v. Armstrong World Indus.*
  980 F.2d 171 (3d Cir. 1992)...........................................................14

*Fla. Seed Co. v. Monsanto Co.*
  105 F.3d 1372 (11th Cir. 1997) ......................................................17

*France Telecom S.A. v. Novell, Inc.*
  No. 102-437-GMS, 2002 U.S. Dist. LEXIS 19967 (D. Del. Oct. 17, 2002) ...........27

*Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*
  602 F.2d 1025 (2d Cir. 1979)..........................................................15

*GEOMC Co. v. Calmare Therapeutics Inc.*
  918 F.3d 92 (2d Cir. 2019)..........................................................7, 26

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*
  17 F. Supp. 2d 275 (S.D.N.Y. 1998)...............................................23, 25

*Gucci Am., Inc. v. Exclusive Imps. Intll*
  99 Civ. 11490 (RCC) (FM), 2001 U.S. Dist. LEXIS 67 (S.D.N.Y. Jan. 8,
  2001) ...............................................................................6

*H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*
  879 F.2d 1005 (2d Cir. 1989)...........................................................8

*Hallmark Inv. Holding Corp. v. Donald Paul Braman Tr.*
  No. 12-cv-8045, 2013 U.S. Dist. LEXIS 84607 (S.D.N.Y. June 13, 2013) ...........26

*Heerwagen v. Clear Channel Communs.*
  435 F.3d 219 (2d Cir. 2006)...........................................................12

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*
  713 F. Supp. 2d 286 (S.D.N.Y. 2010)..................................................18

*It's My Party, Inc. v. Live Nation, Inc.*
  811 F.3d 676 (4th Cir. 2016) ..........................................................9

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*
  466 U.S. 2 (1984)....................................................................13

*Kaw Valley Elec. Coop. Co. v. Kan. Elec. Power Coop., Inc.*
  872 F.2d 931 (10th Cir. 1989) ..........................................................6

*Masefield AG v. Colonial Oil Indus.*
  No. 05 CIV. 2231 (PKL), 2006 U.S. Dist. LEXIS 5792 (S.D.N.Y. Feb. 15,
  2006) ..................................................................................................................26

*Mayor & City Council of Balt., Md. V. Citigroup, Inc.*
  709 F.3d 129 (2d Cir. 2013)...............................................................................7

*MB Sportswear, Inc. v. VF Outdoor, Inc.*
  No. 06 cv 300 (KMW), 2007 U.S. Dist. LEXIS 118397 (S.D.N.Y. Apr. 17,
  2007) ..................................................................................................................21

*Michael E. Jones, M.D., P.C. v. Aetna, Inc.*
  No. 19-cv-9683, 2020 U.S. Dist. LEXIS 174440 (S.D.N.Y. Sept. 23, 2020) ........................14

*Moccio v. Cablevision Sys. Corp.*
  208 F. Supp. 2d 361 (E.D.N.Y. 2002) ...........................................................21, 22

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*
  861 F. Supp. 2d 344 (S.D.N.Y. 2012).................................................................7

*Natsource LLC v. GFI Grp., Inc.*
  332 F. Supp. 2d 626 (S.D.N.Y. 2004).................................................................20

*Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*
  614 F.2d 832 (2d Cir. 1980).........................................................................11, 13

*O.E.M. Glass Network, Inc. v. Mygrant Glass Co.*
  436 F. Supp. 3d 576 (E.D.N.Y. 2020) .................................................................5

*Obabueki v. Int'l Bus. Machines Corp.*
  145 F. Supp. 2d 371 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003)...........................27

*Pac. Bell Tel. Co. v. LinkLine Commns., Inc.*
  555 U.S. 438 (2009).............................................................................................12

*PepsiCo, Inc. v. Coca–Cola Co.*
  315 F.3d 101 (2d Cir. 2002)................................................................................14

*Piccolo v. Singleton*
  No. 18-CV-1324 (SJF) (GRB), 2019 U.S. Dist. LEXIS 153283 (E.D.N.Y.
  Sep. 9, 2019) ........................................................................................................5

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*
  508 U.S. 49 (1993)...............................................................................................17

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*
  49 F. Supp. 3d 385 (S.D.N.Y. 2014)...................................................................17

*Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*
   No. 19-CV-8359 (VEC), 2020 U.S. Dist. LEXIS 128260 (S.D.N.Y. July 20,
   2020) ........................................................................................................................22

*Rome Ambulatory Surgical Ctr., LLC v. Rome Mem'l Hosp., Inc.*
   349 F. Supp. 2d 389 (N.D.N.Y. 2004) .................................................................10

*RSM Prod. Corp. v. Fridman*
   643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) .................24, 25

*Sell It Soc., LLC v. Acumen Brands, Inc.*
   No. 14 CIV. 3491 RMB, U.S. Dist. LEXIS 35404 (S.D.N.Y. Mar. 20, 2015) .......................18

*Shak v. JPMorgan Chase & Co.*
   156 F. Supp. 3d 462 (S.D.N.Y. 2016) .....................................................................8

*Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*
   No. 97-cv-5499, 2004 U.S. Dist. LEXIS 5411 (S.D.N.Y. Mar. 31, 2004),
   *aff'd, at* 124 F. App'x 73 (2d Cir. 2005) ..............................................................20

*Specialty Minerals, Inc. v. Pluess-Staufer AG*
   395 F. Supp. 2d 109 (S.D.N.Y. 2005) ...................................................................28

*Spectrum Sports, Inc. v. McQuillan*
   506 U.S. 447 (1993) ....................................................................................18, 19

*Subsolutions, Inc. v. Doctor's Assocs.*
   62 F. Supp. 2d 616 (D. Conn. 1999) .....................................................................22

*In re Super Premium Ice Cream Distribution Antitrust Litig.*
   691 F. Supp. 1262 (N.D. Cal. 1988) .....................................................................11

*Tese-Milner v. Diamond Trading Co., Ltd.*
   No. 04cv5203, 2014 U.S. Dist. LEXIS 1046 (S.D.N.Y. Jan. 6, 2014) ..............................15

*Tops Mkts., Inc. v. Quality Mkts., Inc.*
   142 F.3d 90 (2d Cir. 1998) ............................................................................14, 18

*Trans Sport, Inc. v. Starter Sportswear, Inc.*
   775 F. Supp. 536 (N.D.N.Y. 1991), *aff'd*, 964 F.2d 186 (2d Cir. 1992) ...........................16

*Trump v. Vance*
   480 F. Supp. 3d 460 (S.D.N.Y. 2020) .....................................................................7

*Twin Labs., Inc. v. Weider Health & Fitness*
   900 F.2d 566 (2d Cir. 1990) ...............................................................................20

*U.S. Football League v. Nat'l Football League*
　　634 F. Supp. 1155 .................................................................................................16

*Ulrich v. Moody's Corp.*
　　No. 13-cv-0008, 2014 U.S. Dist. LEXIS 145898 (S.D.N.Y. Mar. 31, 2014),
　　*rep. and rec. adopted as mod.* 2014 U.S. Dist. LEXIS 138082 (S.D.N.Y. Sep.
　　30, 2014) .............................................................................................................6

*United Air Lines, Inc. v. Austin Travel Corp.*
　　867 F.2d 737 (2d Cir. 1989)................................................................................13

*United States v. Aluminum Co. of America*
　　148 F.2d 416 (2d Cir. 1945)................................................................................14

*Verizon Commc'ns., Inc. v. Law Offices of Curtis V. Trinko, LLP*
　　540 U.S. 398 (2004)......................................................................................15, 17

*Virgin Enters. v. Virginic LLC*
　　No. 19-CV-0220-F, 2020 U.S. Dist. LEXIS 63580 (D. Wyo. Apr. 10, 2020) .......................29

*Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*
　　229 A.D.2d 486 (2d Dep't 1996) ........................................................................25

*Worldhomecenter.com, Inc. v. KWC Am., Inc.*
　　2011 U.S. Dist. LEXIS 104496 (S.D.N.Y. Sep. 15, 2011)....................................7

*In re Zinc Antitrust Litig.*
　　155 F. Supp. 3d 337 (S.D.N.Y. 2016)................................................8, 16, 19, 21

Statutes

15 U.S.C. § 15b.............................................................................................................5

N.Y. Gen. Bus. Law § 340(5) .....................................................................................5

Other Authorities

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1

Fed. R. Civ. P. 12(f)..........................................................................................1, 26, 27

Fed. R. Civ. P. 15......................................................................................................28

N.Y. C.P.L.R. § 214....................................................................................................5

Plaintiff/Counterclaim-Defendant Chanel, Inc. ("Chanel") respectfully submits this memorandum of law in support of its motion to dismiss Defendant/Counterclaim-Plaintiff The RealReal, Inc.'s ("TRR") counterclaims [*see* ECF No 120 at 18-47 ("Counterclaims" or "Countercls.")] and motion to strike TRR's seventh affirmative defense of "unclean hands" [*see id.* at 15] pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f).

## PRELIMINARY STATEMENT

After contending for nearly two years that this should be a narrow counterfeiting and false advertising case with limited discovery,[1] TRR now injects a full-blown antitrust and tortious interference lawsuit, unrelated in time or nexus to the Chanel's original claims, based entirely upon conclusory allegations about purported conduct that TRR contends took place well before the acts and occurrences alleged by Chanel and outside the statutes of limitations. Moreover, TRR's scant factual allegations establish that TRR's antitrust counterclaims are implausible and without merit as a matter of law.

*First*, TRR accuses Chanel of holding (either currently or imminently) an unlawful monopoly — that is, of singlehandedly dominating the sale and resale of all "top tier" handbags in the United States.  But TRR's own factual allegations on their face tell a very different story. After arbitrarily ignoring the vast majority of luxury handbags sold in the U.S., and gerrymandering a proposed market, TRR alleges: (1) the most powerful competitor in the market is Hermes, not Chanel; (2) the market is dominated by 3 different companies, with Chanel only having a 30% market share; (3) the competition provided by Chanel's "dominant" competitors "has not wavered"; and (4) many *re-sellers* of handbags in the market, including TRR, are thriving and no injury to the market has occurred.  Further, the source of TRR's market

---

[1] *See* ECF No. 47 at 2 (TRR describing the case's narrow nature).

information contradicts its proposed narrow market definition and identifies at least *14 well-known competing brands* in the U.S. luxury handbag market, some of which have enjoyed dramatically increased brand values in the last year.  In short, while TRR *baldly asserts* that Chanel enjoys a monopoly, what TRR *factually alleges* is a diverse, dynamic, and highly competitive market, where Chanel is not dominant but instead one brand among many.  On its face, TRR's allegations doom TRR's antitrust claims as a matter of law.

*Second*, TRR's claim that Chanel participated in a group conspiracy involving *The New York Times* and three other publications, as well as luxury retailers Neiman Marcus and Saks, to jointly "boycott" TRR offers only conclusory allegations that, at various times in 2015 and early 2016, a few publications declined to run a TRR advertisement and that in "fall 2015" a couple of retailers declined to allow TRR to operate a consignment concession within their stores, followed by a conclusion that these events must be the result of a coordinated "group" conspiracy against TRR.  That is exactly the kind of conclusory pleading that *Twombly* forbids.

*Finally*, each of TRR's antitrust theories require TRR to plausibly allege not merely that Chanel has injured TRR, but that Chanel has harmed *competition itself* by raising prices or limiting supply *market-wide*.  TRR does not and cannot make such allegations because, by its own allegations, competition in the luxury handbag sale and resale markets is thriving.  For all of these reasons, and the additional reasons below, TRR's counterclaims should be dismissed with prejudice.

## SUMMARY OF TRR'S ALLEGATIONS

TRR's antitrust Counterclaims rest on two theories.  First, TRR accuses Chanel of unlawfully monopolizing (or, alternatively, unlawfully attempting to monopolize) a supposed relevant market for the "first sale and resale" of two narrowly-defined handbag categories in the United States:  (i) "hold-value handbags" which are defined as handbags "that sell for over

$2,000 and have a resale value of 50% to 100% of the initial sale value" (Countercls., ¶¶ 11, 18); and (ii) "investment grade handbags" which are defined as handbags that sell for over $2,000 and have a resale value of greater than 100% (*id.*, ¶ 13).  TRR asserts that no other handbags should be included in the relevant market because all other handbags "neither increase their value nor retain substantial value."  *Id.*, ¶ 21.  TRR asserts that Chanel's share of the proposed relevant market is 30%, which TRR inflates to a maximum of 50% by focusing only on a supposed "submarket" for "hold-value" handbags.  *Id.*, ¶ 23.

TRR further alleges that its proposed relevant market is "dominated" by a "Holy Trinity" consisting of the design houses of Hermes, Chanel, and Louis Vuitton.  *Id.*, ¶¶ 12, 18.  TRR alleges that, of these three, Hermes holds the strongest position in TRR's proposed relevant market, and its handbags maintain 80% of their value, the highest percentage of any brand, compared to 63% for Chanel and Louis Vuitton.  *Id.*, ¶ 18.  TRR alleges that, notwithstanding the growth of the sale of secondhand handbags, the brand values of Chanel's powerful competitors "have not wavered[.]"  *Id.*

TRR also relies on a handbag industry report called the Clair Report, which opines that, contrary to TRR's narrow definition of the relevant market, the "Luxury" handbag market features *14 different competing brands*, with handbags selling at average resale values ranging from $500 to almost $8,000 dollars.  *Clair Rebag's 2020 Luxury Resale Report*, Rebag (2020), https://rebag.com/clairreport#value-of-brands ("Clair Report") (incorporated by reference at Countercls., ¶ 18, n. 8).[2]  The Clair Report further states that even TRR's alleged relevant market

---

[2] *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (on motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, *and documents incorporated by reference in the complaint*.") (emphasis added).

(which, as noted, excludes all handbags that are priced below $2,000 or have a resale value below 50%), includes, on average, at least five powerful and well-known brands: Hermes, Louis Vuitton, Saint Laurent, Dior, and Chanel, and notes that two competing handbag makers, Dior (from 43% to 45%) and Bottega Veneta (from 28% to 38%), have dramatically increased their respective average resale values in just the last 12 months. *Id.* TRR also affirmatively alleges that, in addition to the handbag makers, there are many sellers in its proposed relevant market. Countercls., ¶ 27 (identifying multiple resellers participating in the proposed relevant market), ¶ 80 (identifying multiple retailers participating in the proposed relevant market).

Despite these affirmative and incorporated allegations of a highly competitive marketplace, TRR's asserts a scattershot of anticompetitive conduct on Chanel's behalf. *First*, TRR accuses Chanel of participating in a "vertical group" conspiracy with 3 magazines, 1 newspaper, and 2 luxury retailers for the purpose of "boycotting" TRR. This asserted "group" conspiracy is premised entirely on the allegations that (1) at various times, 3 magazines and 1 newspaper declined to run TRR advertisements; and (2) 2 retailers precluded TRR from consigning Chanel handbags within their brick-and-mortar store locations. *Id.*, ¶¶ 85, 90.

*Second*, TRR asserts, in largely conclusory terms, that Chanel has purportedly unlawfully achieved a monopoly by: (1) deciding the price and supply of its own products sold by its boutiques; (2) controlling the distribution of its own products by asking two retailers to stop third-party consignment of Chanel handbags in their stores; (3) asking certain publications not to run TRR advertisements; (4) engaging consumers on its website on "Fighting Counterfeits" and how to avoid counterfeit Chanel products; (5) making statements in this litigation regarding Chanel's authentication process; and (6) investing in a company named Farfetch and treating that company differently than TRR. *Id.*, ¶¶ 35-71.

Despite its assertions about antitrust and tort violations, TRR alleges that its business is thriving.  Its "wide variety of products, authentication services, and easy-to-use platform have generated massive consumer appeal."  *Id.*, ¶ 32.  "Since its founding in 2011, TRR has sold over 12.8 million items and paid out over $1.3 billion to consignors."  *Id.*  "As of March 2019, TRR commanded an impressive 11.4 million members."  *Id.*

## **ARGUMENT**

I.   **TRR's Counterclaims Are Barred By The Statute of Limitations.**

Each of TRR's Counterclaims is barred by the applicable statute of limitations: (1) four years under the Sherman Act and Donnelly Act; and (2) three years under New York law for tortious interference claims.  15 U.S.C. § 15b; N.Y. Gen. Bus. Law § 340(5); N.Y. C.P.L.R. § 214; *Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 183 (S.D.N.Y. 2000).  Indeed, TRR's allegations concerning TRR's inability to do business with Neiman Marcus ("fall of 2015"), Saks ("[a]round the same time"), *New York Magazine* ("in late 2015 or early 2016"), *The New York Times* and *Vogue* (occurred at the same time as *New York Magazine* incident), all date between 2015 and early 2016, *more than four years* before TRR gave notice of its intent to move for leave to amend to include such counterclaims in Fall 2020, and *more than five years* before TRR filed its Counterclaims on February 25, 2021.  *See* ECF Nos. 75,77; Countercls., ¶¶ 42; 45; 50; 51.  As a result, each of these Counterclaims is barred by the statute of limitations under the Sherman Act, Donnelly Act and New York law.  *See O.E.M. Glass Network, Inc. v. Mygrant Glass Co*., 436 F. Supp. 3d 576, 594 (E.D.N.Y. 2020) (antitrust statutes); *Piccolo v. Singleton*, No. 18-CV-1324 (SJF) (GRB), 2019 U.S. Dist. LEXIS 153283, at *13 (E.D.N.Y. Sep. 9, 2019) (tort claims).  The remaining allegation involving *WWD* is alleged to have occurred in 2019, but TRR's single paragraph claiming nothing more than that *WWD* declined to run a TRR advertisement and that "WWD informed TRR that it could not run TRR's

advertisements as a result of a conflict with one of its 'huge partners'" (*see* Countercls., ¶ 53) does not come close to plausibly alleging the elements of any of TRR's Counterclaims.[3] *Transhorn, Ltd. v. United Techs. Corp. (In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("it is not enough to make allegations of an antitrust conspiracy that are consistent with an unlawful agreement"; claimant must plausibly allege "that an agreement was made").

TRR's time-barred Counterclaims cannot be resurrected by the "heavily disfavored" "continuing violation" doctrine.  As stated below, the one-paragraph *WWD* allegation is neither properly or plausibly alleged to be part of a single, overarching conspiracy with the alleged incidents occurring four years earlier.  *See, e.g.*, *Ulrich v. Moody's Corp.*, No. 13-cv-0008, 2014 U.S. Dist. LEXIS 145898, at *97 (S.D.N.Y. Mar. 31, 2014) ("The continuing violation doctrine, however, is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."), *rep. and rec. adopted as mod.* 2014 U.S. Dist. LEXIS 138082 (S.D.N.Y. Sep. 30, 2014) (Broderick, J.); *Kaw Valley Elec. Coop. Co. v. Kan. Elec. Power Coop., Inc.*, 872 F.2d 931, 933 (10th Cir. 1989) (the overt act triggering tolling "must continue the same conspiracy.").  Nor can TRR avoid the statute of limitations by casting its belated Counterclaims as "compulsory," because the Counterclaims are divorced in time and factual nexus from each other and from Chanel's **counterfeiting** and **false advertising** claims concerning TRR's sales and advertising in 2017-2018.  *See Gucci Am., Inc. v. Exclusive Imps. Intll*, 99 Civ. 11490 (RCC) (FM), 2001 U.S. Dist. LEXIS 67, at *20 (S.D.N.Y. Jan. 8, 2001) (finding antitrust counterclaims "factually remote" from counterfeiting issues); [ECF No. 26, Exs. D, E (detailing TRR's false statements and the counterfeits at issue.)].

---

[3] Additionally, as discussed in Section II.A.4 below, while TRR also alleges that Chanel invested in the online platform Farfetch in 2018 and treats Farfetch differently (Countercls., ¶¶ 67-71), such allegations have nothing to do with any cognizable legal theory in the Counterclaims.

## II.   **TRR's Asserted Antitrust Violations Are Implausible On Their Face.**

It is well-established that a counterclaim "should be dismissed if the plaintiff has not

offered factual allegations sufficient to render the claims facially plausible." *Trump v. Vance*,

480 F. Supp. 3d 460, 477 (S.D.N.Y. 2020); *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d

92, 99 (2d Cir. 2019) (*Twombly* plausibility standard applies equally to counterclaims).  Strict

application of this plausibility standard is especially critical with respect to antitrust claims,

where "[t]he costs of modern federal antitrust litigation" counsel against sending "defendants

into expensive antitrust discovery on the basis of acts that could just as easily turn out to have

been rational business behavior." *Mayor & City Council of Balt., Md. V. Citigroup, Inc.*, 709

F.3d 129, 137 (2d Cir. 2013).  TRR alleges three species of antitrust claims against Chanel: (1)

unlawful monopolization; (2) attempted unlawful monopolization, and (3) a "vertical group

boycott" conspiracy.[4]  All three of these claims are implausible and legally insufficient on their

face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (where an antitrust claimant's

allegations "have not nudged [its] claims across the line from conceivable to plausible, [its]

complaint must be dismissed.").

### A.   **TRR's Contention That Chanel Is A Monopolist Is Contradicted By Its Own Allegations That Chanel Is But One of Many Brands In A Thriving, Highly Competitive Market.**

To plead unlawful monopolization, TRR was required to plausibly allege: (1) a relevant

product and geographic market, (2) that Chanel has dominant "monopoly power" in that market,

---

[4] TRR's monopolization and attempted monopolization allegations arise only under the Sherman Act; such conduct is not actionable under New York's Donnelly Act.  *Worldhomecenter.com, Inc. v. KWC Am., Inc.*, 2011 U.S. Dist. LEXIS 104496, at *16 (S.D.N.Y. Sep. 15, 2011) (statute does not apply to alleged unilateral action).  With respect to TRR's remaining group boycott claim, the Donnelly Act is coextensive with the Sherman Act, and therefore both claims must fail for the same reasons.  *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012) (the two statutes have identical pleading requirements).

(3) that Chanel has achieved or maintained its monopoly through anticompetitive "exclusionary conduct" prohibited by the antitrust laws, and (4) that the alleged conduct has caused an injury to market-wide competition.  *See Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 480 (S.D.N.Y. 2016).  TRR cannot and does not plausibly allege any of these things.

> ### 1.   *A "Holy Trinity" Is Not a Monopoly As A Matter of Law.*

TRR affirmatively alleges that the proposed relevant market is "dominated" by a "Holy Trinity" consisting of Hermes, Chanel, and Louis Vuitton and that *Hermes* is the dominant actor. Countercls., ¶¶ 12, 18.  Even if that was a plausible allegation (and, as explained in Section II.A.3 below, it is not) the "Holy Trinity" allegedly led by Hermes is not a monopoly under the US antitrust laws.  There is no such thing as a "joint" or "shared" monopoly.  *See In re Zinc Antitrust Litig*., 155 F. Supp. 3d 337, 382 (S.D.N.Y. 2016) ("a shared monopoly theory may not support a monopolization or attempted monopolization claim under Section 2.") (collecting authorities).  Thus, it is well-established that a "monopoly" requires the concentration of dominant market power in a *single* company.  *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc*., 879 F.2d 1005, 1018 (2d Cir. 1989) ("to sustain a charge of monopolization or attempted monopolization, a plaintiff must allege the necessary market domination of a particular defendant.") (citation omitted).  TRR's own "Holy Trinity" allegations on their face therefore refute the notion that Chanel holds a monopoly over the "sale and re-sale" of all "top tier handbags in the United States."

> ### 2.   *TRR's "Gerrymandering" of The Relevant Antitrust Market Is Improper.*

To survive a motion to dismiss, TRR must plausibly define both a relevant product market and a relevant geographic market.  *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016).  A relevant antitrust market must reflect "market realities" and TRR may not artificially manipulate the market definition to inflate Chanel's market share or otherwise

create an antitrust claim where none exists.  *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d

676, 683 (4th Cir. 2016) ("No party can expect to gerrymander its way to an antitrust victory

without due regard for market realities.").  The relevant product market "must be defined as all

products reasonably interchangeable by consumers for the same purposes[.]"  *City of New York*

*v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011) (internal quotation marks omitted).

Accordingly, the Second Circuit has affirmed dismissal where the complaint fails to explain why

similar products are outside the relevant market:

> [W]here the plaintiff fails to define its proposed relevant market with reference to
> the rule of reasonable interchangeability and cross-elasticity of demand, or alleges
> a proposed relevant market that clearly does not encompass all interchangeable
> substitute products even when all factual inferences are granted in plaintiff's
> favor, the relevant market is legally insufficient and a motion to dismiss may be
> granted[.]"

*Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008) (citation and internal

quotation marks omitted).  TRR attempts to define the relevant market as limited to two handbag

categories based upon price and resale value: (1) "hold-value handbags" "that sell for over

$2,000 and retain a resale value of 50% to 100% of the initial sale value" and (2) "investment

grade handbags."[5]  Countercls., ¶¶ 11, 13, 18.  The fact that TRR neither provides any plausible

justification for these arbitrary criteria, *see Craftsmen Limousine, Inc. v. Ford Motor Co.*, 491

F.3d 380, 389 (8th Cir. 2007) (no plausible basis for including limousine stretched by 121 inches

---

[5]While TRR does not clearly identify its criteria for defining this second category, it is
presumably limited to handbags with a resale value of greater than 100%.  *See* Countercls., ¶ 13
(handbags in this category have had "an average increase in value of 83%").  TRR offers no
explanation for why consumers supposedly view a $2,001 handbag with a resale value of 100%
as so fundamentally different than a $2,001 handbag with a resale value of 101%, that they
belong in distinct "submarkets."  Indeed, TRR offers no facts plausibly suggesting that one can
*predict* with any accuracy whether a particular handbag will achieve a resale value of 50%, or
75%, or 100%, or 125%.  *See* Clair Report (resale pricing is difficult to "decode" and reporting
"unexpected and fascinating twist" that certain luxury handbag brands experienced a substantial
increase in resale value in the past year).

in relevant market, but not one stretched 120 inches), nor any plausible explanation why a handbag priced at $2,001 with a resale value of 50% is within the relevant market but an excluded handbag priced at $2,000 with a resale value of 49% is not "reasonably interchangeable," violates the rule of reasonable interchangeability and is fatal to TRR's antitrust Counterclaims. *See Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 576-78 (S.D.N.Y. 2011) (granting motion to dismiss where complaint failed to plausibly address why related products were not part of the same market). These defects, "standing alone," require the dismissal of TRR's monopolization claim. *Concord Assocs.*, 817 F.3d at 55 ("the plaintiffs' failure to define the market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.") (quoting *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171-72 (S.D.N.Y. 1995)).

TRR's contention that its gerrymandered "relevant market" is justified because all other handbags "neither increase their value nor retain substantial value" is equally without merit. Countercls., ¶ 21. TRR cannot explain how a handbag with a resale value of 49% (which TRR excludes from its proposed market) is not reasonably interchangeable with a similarly-priced handbag with a resale value of 50% (which TRR includes in the proposed market). TRR likewise cannot explain why a handbag priced at $1,999 that retains far more value of 90% of its value has been excluded and is not reasonably interchangeable with an included handbag priced at $2,001 that retains only 50% of its value. *See Rome Ambulatory Surgical Ctr., LLC v. Rome Mem'l Hosp., Inc.*, 349 F. Supp. 2d 389, 419 (N.D.N.Y. 2004) ("a court cannot accept the market boundaries offered by plaintiff without at least a theoretically rational explanation for excluding [alternatives]") (quoting *Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1354 (S.D.N.Y. 1982)). As summarized above, the Clair Report (incorporated by reference in

TRR's Counterclaims), which identifies the "Luxury" handbag market as consisting of *fourteen* different brands selling handbags which range in average resale value from $500 to almost $8,000 (reflecting average resale value percentages between 25% to 85%), directly contradicts TRR's attempt to narrowly gerrymander the market.  Clair Report; *see* Countercls., ¶ 18 & n. 8. Courts have routinely rejected such proposed relevant markets which select a narrow price range as the "relevant market" rather than reflecting market realities, especially where the number of relevant competitors has been artificially limited.  *See, e.g.*, *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 840 (2d Cir. 1980) (collecting authorities); *In re Super Premium Ice Cream Distribution Antitrust Litig.*, 691 F. Supp. 1262, 1268 (N.D. Cal. 1988) ("Courts have repeatedly rejected efforts to define markets by price variances or product quality variances. Such distinctions are economically meaningless where the differences are actually a spectrum of price and quality differences.") (collecting authorities).[6]

### 3.  *TRR's Own Allegations Demonstrate That Chanel As A Matter of Law Lacks Monopoly Power.*

Even if TRR has properly alleged a plausible relevant product market and relevant geographic market, TRR's Counterclaims must be dismissed because, on their face, they fail to plausibly allege that Chanel exerts monopoly power in the proposed relevant market.  It is well-

---

[6] TRR also fails to plausibly allege the relevant geographic market by defining "the precise geographic boundaries of effective competition."  *Concord Assocs.*, 817 F.3d at 52-53 (affirming grant of motion to dismiss).  TRR's single, conclusory three-sentence paragraph that its proposed geographic market is "the United States" is belied by TRR's admission in its Answer that consumers *worldwide* seek to purchase Chanel's products.  *See, e.g.*, Countercls., at p. 1. Moreover, TRR's website, which is incorporated by reference (Countercls., ¶ 31), states that it "ship[s] to over 60 countries."  *See General Shipping Guidelines*, The RealReal (2020), https://www.therealreal.com/shipping.  As a result, because TRR has failed to plausibly exclude the ability of consumers to purchase relevant products outside the proposed geographical area, TRR's Counterclaims must be dismissed.  *See Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 166 F. Supp. 2d 891, 897 (S.D.N.Y. 2001).

established that there are only two ways to plausibly allege "monopoly power": (1) "direct evidence" that the defendant is literally controlling prices or excluding competitors from the relevant market; and (2) "indirect evidence" that defendant has a "predominant share of the relevant market" and the relevant market is protected by high barriers to entry. *See Heerwagen v. Clear Channel Communs.*, 435 F.3d 219, 227 (2d Cir. 2006); *Bayer Schering*, 813 F. Supp. 2d at 578-79.

TRR appears to be invoking the "direct evidence" method when it alleges that Chanel (i) has the ability to raise the prices of *its own* products, (ii) carefully controls the distribution and sale of its products in the marketplace, and (iii) limits the quantities sold. *See* Countercls., ¶ 25. But TRR misconstrues what type of price "control" constitutes illegal monopoly power. Chanel's careful control over the exclusive sales of its designs in the marketplace is not illegal. It is basic hornbook law that "the term 'power to control prices,' refers to the control of prices *in the relevant market*, and not to the power to set prices that are charged to the defendant's customers." *All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund*, 887 F. Supp. 2d 448, 453 (E.D.N.Y. 2012) (citing *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 393 (1956) (power to control the price of a manufacturer's own product "is not the power that makes an illegal monopoly")). TRR does not, nor can it, allege that Chanel singlehandedly controls the pricing of all handbags in the alleged relevant market. Simply put, because Chanel has a *right* under the antitrust laws to make decisions regarding the pricing and distribution of its products, *Pac. Bell Tel. Co. v. LinkLine Commns., Inc.*, 555 U.S. 438, 448 (2009) ("businesses are free to choose . . . the prices, terms, and conditions" of their own products), Chanel's control over "the production and sale of its own product cannot be the basis for antitrust liability[,]" *Bayer Schera*

*Pharma AG v. Sandoz, Inc.*, No. 08-cv-03710, 2010 U.S. Dist. LEXIS 33252, at *23, n.10 (S.D.N.Y. Mar. 29, 2010) (dismissing Section 2 claims).

Nor does TRR allege that Chanel has succeeded in excluding any competitor from the relevant market. At best, TRR's vague and conclusory allegations claim that Chanel has excluded TRR from selling CHANEL-branded products at Neiman Marcus and Saks or from advertising with *The New York Times*, *WWD*, *Vogue* and *New York Magazine*. *See All Star Carts*, 887 F. Supp. 2d at 458 (power to "exclude competition" means power to actually remove a firm from the market). Yet TRR alleges that its overall business in the relevant market is thriving. *See* Countercls, ¶¶ 28-32 (discussing TRR's "impressive" growth).

TRR likewise fails to allege monopoly power through the typical "indirect" method. TRR does not plausibly allege that: (1) Chanel has a "predominant share of the [relevant] market" and (2) that the relevant market is protected by high "barriers to entry." *Bayer Schering*, 813 F. Supp. 2d at 578-79. First, while TRR's market share allegations are at best vague and conclusory, TRR's allegations that Chanel's overall market share in the proposed relevant market is 30%, which it inflates to a maximum of 50% through an artificially narrow market definition, cannot be used to establish monopoly power. *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 37-38, n.7 (1984) (market shares are relevant to establish monopoly power "only if the market is properly defined to include all reasonable substitutes for the product.").

Moreover, even if Chanel did have a 30% market share in the overall relevant market, that figure is too low to establish monopoly power as a matter of law. *See, e.g.*, *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 742 (2d Cir. 1989) (finding that defendant with a 31 percent market share "lacks the market power necessary to constitute a national monopoly."); *Nifty Foods*, 614 F.2d at 841 (market share estimates of 48.3% and 33% "are not

sufficient evidence to make out a claim of unlawful monopolization."); *United States v. Aluminum Co. of America*, 148 F.2d 416, 424 (2d Cir. 1945) (33% of the relevant market is "certainly" not a monopoly); *Michael E. Jones, M.D., P.C. v. Aetna, Inc.*, No. 19-cv-9683, 2020 U.S. Dist. LEXIS 174440, at *6 (S.D.N.Y. Sept. 23, 2020) (granting motion to dismiss complaint alleging 33% market share; "courts regularly reject" market shares "between 30 percent and 40 percent as inadequate" to establish monopoly power).  Indeed, even TRR's assertion that Chanel holds a maximum 50% market share in a "submarket" for "hold-value" handbags — and putting aside the fact that TRR fails to allege any antitrust conduct targeting this narrow "submarket" — is legally insufficient.  *See, e.g.*, *PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 109 (2d Cir. 2002) ("Absent additional evidence, such as an ability to control prices or exclude competition, a 64 percent market share is insufficient to infer monopoly power."); *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 202 (3d Cir. 1992) ("A significantly larger share than 55 percent has been required to demonstrate prima facie monopoly power.").

While TRR may point to authorities acknowledging that in "rare" cases where a market share as low as 50% can be legally sufficient to plead monopoly power when that figure is paired with plausible allegations that the existing or potential competitors in the relevant market are incapable of meaningfully competing with the defendant, such facts are not present here where the Clair Report (Countercls., ¶ 18) makes plain that *Hermes* is the most dominant of *fourteen* competitors, and of which designers Dior and Bottega Veneta have dramatically increased their respective average resale values.  *See Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 99 (2d Cir. 1998) ("a share between 50% and 70% can occasionally show monopoly power," but only if other facts show lack of competition).  There are dozens of significant *sellers and re-sellers* of luxury handbags in the United States, including brick-and-mortar retailers like Bloomingdale's,

Jeffrey, Neiman Marcus, and online re-sellers like TRR, Farfetch, WGACA, and others — all of which should be included in TRR's proposed relevant markets.  *See* Countercls., ¶¶ 11, 27, 80. The existence of extensive competition in TRR's proposed relevant market demonstrates that TRR's allegations that Chanel singlehandedly dominates as a monopolist are not plausible.

      **4.**     ***TRR Fails To Allege Any Anticompetitive Conduct Undertaken To Exclude Competition.***

Even assuming *arguendo* that TRR could plausibly allege that Chanel has actually monopolized a well-defined relevant market, TRR must also plausibly allege that Chanel has willfully acquired or maintained monopoly power by engaging in a specific category of exclusionary conduct that is prohibited by the Sherman Act.  *Verizon Commc'ns., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) ("*Trinko*").  To fall within a proscribed category, the alleged conduct must be "conduct without a legitimate business purpose that makes sense only because it eliminates competition."  *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014).  First, TRR's allegations consist almost entirely of conclusory assertions in violation of *Twombly*.  *See In re Elevator Antitrust Litig.*, 502 F.3d at 50 (applying *Twombly* to Section 2 claim).  Second, *none* of TRR's asserted forms of conduct is actionable as "exclusionary conduct" under the antitrust laws.

    <u>*Distribution of Chanel's Own Products.*</u>  TRR's conclusory allegations that Chanel entered into agreements with two retailers, Neiman Marcus and Saks, to cease consignments of Chanel's own products at their brick-and-mortar stores (Countercls., ¶¶ 38-49) are not actionable because "suppliers [under US law] are generally permitted to control how their products are sold[.]" *Tese-Milner v. Diamond Trading Co., Ltd.*, No. 04cv5203, 2014 U.S. Dist. LEXIS 1046, at *9 (S.D.N.Y. Jan. 6, 2014); *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 602 F.2d 1025, 1030 (2d Cir. 1979) (a "manufacturer is free to choose the type of mechanism through which he

will distribute his goods").  Accordingly, federal courts have consistently upheld arrangements precluding a customer from dealing in a manufacturer's own products obtained from unauthorized sources.  *See, e.g.*, *Eveready Wholesale Drugs, Ltd. v. Pfizer, Inc*., No. 04cv6590, 2006 U.S. Dist. LEXIS 36677, at *3-4 (S.D.N.Y. June 5, 2006) (sole-source contracting not anticompetitive); *Trans Sport, Inc. v. Starter Sportswear, Inc*., 775 F. Supp. 536, 543 (N.D.N.Y. 1991) ("Direct dealing enables defendant to maintain more control over the problem of counterfeiting"), *aff'd*, 964 F.2d 186 (2d Cir. 1992).

    *TRR's Advertisements*.  TRR's conclusory allegations that Chanel somehow forced four publications not to run TRR's advertisements (Countercls., ¶¶ 50-55) do not make out an actionable antitrust claim.  *See In re Zinc Antitrust Litig.*, 155 F. Supp. 3d at 370-77 (allegation of parallel conduct alongside suspicious events insufficient to state a claim).  Similarly, TRR's allegation that an unidentified "huge partner" of *WWD* was responsible for blocking TRR's advertisement does not suffice under the *Twombly* pleading standard.  *Id.*

    *Providing Consumers With "Pointers" For Avoiding Counterfeit Chanel Products.*
TRR's allegations that Chanel demonstrated "exclusionary conduct" by advising consumers that "[t]here are no authorized sellers of Chanel leather goods, fashion items, and watches on the Internet" and "[i]tems sold at flea markets, home parties, by street vendors or unauthorized websites are likely to be fake," (Countercls., ¶¶ 56-59) (quoting https://www.chanel.com/us/anti-counterfeit/), is as a matter of law wholly without merit.  First, these statements are true. Second, these statements are not actionable because no reference is made to TRR (or to re-sellers as a category) in any way.  *See U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1182 n.16, 1183 n.17 (S.D.N.Y. 1986) (competitor disparagement under antitrust laws has "narrow legal meaning"; statement must be directed at aggrieved party).

Moreover, even if TRR could somehow contort these truthful, innocuous statements into a false advertising claim, TRR does not even properly allege sufficient facts to overcome the legal "presumption that the effect on competition of such a practice was *de minimis*" and therefore not a violation of the antitrust laws.[7]  *See, e.g.*, *Affinity LLC v. GfK Mediamark Research & Intelligence, LLC*, 547 F. App'x 54, 56-57 (2d Cir. 2013) (affirming dismissal of Section 2 claims where party failed to allege facts overcoming *de minimis* presumption); *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385, 419 (S.D.N.Y. 2014) (to overcome presumption, claimant must plausibly allege six facts, including that statement was "clearly false," "clearly material," and "not readily susceptible of neutralization or other offset by rivals.").

*Actions Concerning Farfetch Are Not Exclusionary*.  Finally, TRR's allegations that Chanel's investment in the Farfetch online platform and alleged actions permitting Farfetch to re-sell Chanel handbags (Countercls., ¶¶ 67-71) constitute exclusionary conduct is likewise without merit because every manufacturer is free "to exercise his own independent discretion as to parties with whom he will deal." *Trinko*, 540 U.S. at 408.  Further, it is well-established that investment in a downstream company and/or allegedly treating one downstream company differently than another are not illegal.  *See, e.g.*, *Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374-75 (11th Cir. 1997) (holding refusal to deal theory based on dealing only with related distributor failed because business decision was not anticompetitive) (collecting authorities).

---

[7]The same arguments apply to TRR's allegation that Chanel violated the antitrust laws by stating "in this lawsuit" that Chanel is in the best position to assess the genuineness of its own products. Countercls., ¶¶ 60-66.  Moreover, statements made prior to or during the course of litigation are categorically not actionable under the *Noerr-Pennington* doctrine.  *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993) ("Those who petition government for redress are generally immune from antitrust liability.").

5.     *Rather Than Plausibly Allege An Injury To Market-Wide Competition, TRR Alleges That Market Competition Is Thriving.*

"It is axiomatic that the antitrust laws were passed for the protection of *competition*, not *competitors*." *Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) (emphases in original) (internal quotation marks omitted).  Thus, in order to successfully plead any valid antitrust claims, TRR must plausibly allege harm to "competition *as a whole* in the relevant market" and not just to TRR.  *Tops Markets*, 142 F.3d at 96 (emphasis added); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) (antitrust law "directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy *competition itself*.") (emphasis added).  This harm requirement "must be alleged at the pleading stage and [the absence of such allegations] can be the basis for a motion to dismiss." *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 299 (S.D.N.Y. 2010).

In this case, TRR's two paragraphs of its Counterclaims devoted to antitrust injury are devoid of a single assertion that Chanel's supposed antitrust violations have harmed competition and are instead comprised solely of TRR's allegations of the "individual and collective impact of Chanel's actions on *TRR's business*[.]"  Countercls., ¶¶ 75-76 (emphasis added).   No mention is made of how prices were raised *market-wide* or production was decreased *market-wide*, or how Chanel's alleged conduct had any effect whatsoever beyond allegedly harming TRR's own business.  As a result, dismissal of the Counterclaims is required.  *See Integrated Sys. & Power*, 713 F. Supp. 2d at 299 (dismissing complaint that "does not allege facts showing an injury to competition, as opposed to merely showing an injury to Plaintiff."); *Sell It Soc., LLC v. Acumen Brands, Inc.*, No. 14 CIV. 3491 RMB, U.S. Dist. LEXIS 35404, at *11-13 (S.D.N.Y. Mar. 20, 2015) (same).  TRR's failure to allege market-wide injury is not surprising because, even if taken

-18-

as alleged, conduct which allegedly harmed TRR does not possibly reduce competition *throughout* the relevant market of *all* sellers and re-sellers of "top-tier" handbags.  *See Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 449 (S.D.N.Y. 2014) (conduct "to the detriment of a single competitor" does not harm market-wide competition).

**B.      TRR Fails To Plausibly Allege A Claim of Attempted Monopolization Under Section 2 of The Sherman Act.**

TRR's attempted monopolization claim is subject to the very same relevant market, exclusionary conduct, and antitrust injury requirements set forth above, and therefore that claim must be dismissed for all of the same reasons explained in Sections II.A.2-5 above.  *See Spectrum Sports*, 506 U.S. at 456.  In addition to the pleading requirements set forth above, TRR's attempted monopolization claim also requires plausible allegations that (1) Chanel has a "dangerous probability" of achieving monopoly power in that market; and (2) Chanel engaged in the alleged conduct with the "specific intent to monopolize a particular and defined market." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d at 381 (citing *Spectrum Sports*, 506 U.S. at 456).  TRR's Counterclaims do not satisfy these strict pleading requirements.

**1.      *TRR Fails To Plausibly Allege That Chanel Has A "Dangerous Probability" of Achieving A Monopoly.***

TRR does not nor can it plausibly allege that Chanel is on the verge of monopolizing TRR's proposed relevant market or "submarkets," which requires that TRR allege that (1) Chanel has a sufficiently high market share in the relevant market <u>and</u> (2) other competitors or potential competitors are unlikely to successfully compete against Chanel.  *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 226 (2d Cir. 1999) (a high market share is a "threshold" requirement for pleading the dangerous probability element); *Bayer Schering*, 813 F. Supp. 2d at 578-79 (discussing the competition showing).

TRR's conclusory market share allegation of 30% is insufficient as a matter of law to establish that Chanel has a "dangerous probability" of monopolizing the relevant market.  *See, e.g.*, *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 570 (2d Cir. 1990) ("We have held that a 33% market share does not even approach the level required for dangerous probability of success.") (citing *Nifty Foods*, 614 F.2d at 841).  Indeed, even assuming *arguendo* that TRR's inflated 50% market share figure were plausible, that figure is legally insufficient to satisfy the "dangerous probability" element without coexisting plausible allegations that Chanel does not face serious competition from others in the market.  *See, e.g.*, *Natsource LLC v. GFI Grp., Inc.*, 332 F. Supp. 2d 626, 635-37 (S.D.N.Y. 2004) (holding that attempted monopolization claim failed where plaintiff failed to plausibly allege low strength of competition in the relevant market); *Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, No. 97-cv-5499, 2004 U.S. Dist. LEXIS 5411, at *37-38 (S.D.N.Y. Mar. 31, 2004) (defendant's alleged market share of 53% was not sufficient to support a dangerous probability "as a matter of law"), *aff'd*, at 124 F. App'x 73 (2d Cir. 2005).

As explained in Section II.A.3 above, however, TRR not only fails to allege a lack of competition in the proposed market but also its Counterclaims *affirmatively demonstrate* that Chanel faces extensive, durable, and dynamic competition.  Countercls., ¶¶ 28-32.  These allegations preclude any plausible inference that Chanel has a "dangerous probability" of imminently monopolizing TRR's proposed market.  *See, e.g.*, *Twin Labs*, 900 F.2d at 570 ("The probability of success is reduced even further where, as here, the remainder of the market is divided among dozens of competitors."); *Bayer Schering*, 813 F. Supp. 2d at 580 (dismissing attempted monopolization claim because "the presence of other large competitors in the market undermines Sandoz's claim.") (citing *Foam Supplies, Inc. v. Dow Chem. Co.*, No. 4:05CV1772

CDP, 2007 U.S. Dist. LEXIS 4210354, at *15-16 (E.D. Mo. Nov. 27, 2007) ("The fact that Dow has large competitors . . . indicates that Dow lacks monopoly power or the ability to obtain such power.")).

### 2. *TRR Fails To Plausibly Allege That Chanel Had The Specific Intent To Monopolize The Proposed Relevant Market.*

Attempted monopolization requires a specific intent to become a *monopolist* in the relevant market. *See In re Zinc Antitrust Litig.*, 155 F. Supp. 3d at 381. As a result, "[e]ven direct evidence of intent to vanquish a rival or exclude competition is insufficient to establish specific intent to monopolize by some illegal means." *Falstaff Brewing Co. v. Stroh Brewery Co.*, 628 F. Supp. 822, 829 (N.D. Cal. 1986); *see also MB Sportswear, Inc. v. VF Outdoor, Inc.*, No. 06 cv 300 (KMW), 2007 U.S. Dist. LEXIS 118397, at *5-6 (S.D.N.Y. Apr. 17, 2007) (allegations that defendant intended to harm competitors or benefit at their expense did not establish specific intent to monopolize); *AD/SAT, a Div. of Skylight, Inc. v. Associated Press*, 885 F. Supp. 511, 516 (S.D.N.Y. 1995) (same). TRR's conclusory allegations that Chanel intends to "push[] out resellers of Chanel handbags" or "maintain Chanel's market power," (Countercls., ¶¶ 24, 49), do not establish a specific intent to become a monopolist. TRR nowhere plausibly alleges that Chanel *even recognizes* TRR's ad hoc "relevant market" as a distinct market, much less that Chanel has the specific goal of *singlehandedly dominating* that "market." There is no allegation, for example, that Chanel specifically intends to monopolize the "sale and re-sale"[8] of all handbags "that sell for over $2,000 and retain a resale value of 50% to 100% of the initial sale value." *Id.*, ¶ 18. TRR's claim must fail. *See Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d

---

[8] In fact, there is no allegation that Chanel even *engages*, or plans to engage, in the re-sale of handbags.

361, 378 (E.D.N.Y. 2002) ("Plaintiffs failed to allege, however, that Cablevision or MSGN specifically intended to monopolize the premium channel market[.]").

     **3.**     ***TRR Fails To Plausibly Allege A "Vertical Group Boycott" Conspiracy Under The Sherman Act.***

TRR's remaining "vertical group boycott" theory (Countercls., ¶¶ 84-95) is likewise deficient because it fails to meet the very same relevant product market, relevant geographic market, and antitrust injury requirements as TRR's Section 2 claims, as explained in Sections II.A.2, 5 above. *Moccio*, 208 F. Supp. 2d at 378-79 (vertical group boycott claims analyzed under "rule of reason," which includes same relevant market pleading required under Section 2). This claim also fails because of the *Twombly* precedent which prohibits alleging the existence of parallel or independent conduct and then *declaring*, without plausible support, that the conduct was part of a grand antitrust conspiracy. *In re Elevator Antitrust Litig.*, 502 F.3d at 50 ("it is not enough to make allegations of an antitrust conspiracy that are consistent with an unlawful agreement"; claimant must plausibly allege "that an agreement [to engage in anticompetitive conduct] was made") (quoting *Twombly*, 550 U.S. at 556); *Subsolutions, Inc. v. Doctor's Assocs.*, 62 F. Supp. 2d 616, 627 (D. Conn. 1999) ("a Section 1 conspiracy claim supported by vague and conclusory allegations of concerted activity cannot withstand a motion to dismiss.").

It is well-established that to adequately plead such a "vertical boycott," TRR must plausibly allege that the alleged conspirators had a "conscious commitment to a common scheme" of excluding TRR. *Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*, No. 19-CV-8359 (VEC), 2020 U.S. Dist. LEXIS 128260, at *13 (S.D.N.Y. July 20, 2020). TRR nowhere alleges any facts demonstrating that its alleged co-conspirators—which it alleges includes Chanel and a newspaper and three magazines and two retailers—ever coordinated with each other, much less entered into a common, illegal scheme targeting TRR. Indeed, the *only*

factual allegation TRR makes is that Chanel independently asked Saks and Neiman Marcus to stop consignment of Chanel's own products at their stores.  Countercls., ¶¶ 42, 45.  All other allegations are at best conclusory.  *See id.*, ¶¶ 50-55.  None of these allegations plausibly suggest that these seven companies got together and formed a group "boycott" of TRR.  *Caithness Long Island II, LLC v. SEG Long Island LLC*, No. 18-CV-4555(JS)(AYS), 2019 U.S. Dist. LEXIS 174866, at *11 (E.D.N.Y. Sep. 30, 2019) (claimant failed to plausibly allege the requisite "meeting of the minds" between the alleged conspirators).  Such a group boycott, moreover, would not "make economic sense."  *In re Currency Conversion Fee Antitrust Litig. v. Am. Express Co.*, 773 F. Supp. 2d 351, 365 (S.D.N.Y. 2011) (to be plausible, alleged antitrust conspiracy must be economically rational on its face); Countercls., ¶ 51 (providing no alternative financial justification even though conspiracy was contrary to participants' "economic interest" because it required them to forego "valuable advertising dollars").  Further, without the cooperation of the many other luxury handbag makers, magazines, newspapers, and retailers who are *not* alleged to have participated in the conspiracy, the supposed boycott "would be unlikely to produce the desired results" of excluding TRR.  *See AD/SAT, a Div. of Skylight, Inc. v. Associated Press*, 920 F. Supp. 1287, 1310 (S.D.N.Y. 1996) (group boycott economically irrational where alleged conspirators included only a portion of the relevant market participants).

## III.   TRR Fails to State Claims For Tortious Interference

### A.   TRR's Claim For Tortious Interference with Contract Fails

Under New York law, "to state a claim for tortious interference with contractual relations under New York law, a plaintiff must allege "(1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages."  *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 292–93 (S.D.N.Y. 1998).  A claim for tortious interference with

business relations requires the pleading of "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the business relationship." *DiFolco*, 622 F.3d at 114.

TRR has not sufficiently alleged that Chanel intentionally caused Neiman Marcus or Saks to breach their contracts with TRR. "The law requires some factual specificity in pleading tortious interference." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010). TRR does not allege with any specificity when the alleged interference took place, whether Saks cancelled its contract before the six-month term of said contract had expired, nor what form the interference took. This is insufficient to state a claim for tortious interference. *Id*. at 406-07 (finding plaintiff did not adequately allege intentional interference where pleading lacked details about then when, where, and how of an alleged bribe to breach). With regard to Neiman Marcus, while TRR alleges that Chanel "threatened to pull all of its products from Neiman Marcus stores if Neiman Marcus did not make immediate changes to the program" (Countercls., ¶ 42), and that "Chanel intentionally interfered with TRR's contract with Neiman Marcus, including demanding . . . that Neiman Marcus terminate the contract" (*id*. ¶ 112), TRR does not specify how, why and when Neiman Marcus made its decision. Similarly, TRR while alleges that "Saks insist[ed] on the same changes to the program that Chanel had demanded of Neiman Marcus" and that when TRR "declined to agree to the changes . . . Saks similarly agreed with Chanel not to move forward with the partnership with TRR" (*id*., ¶ 45), TRR ***does not*** allege that Saks terminated the contract prior to the end of its term. TRR's claims must be dismissed because there are no factual allegations specifying when or how Chanel demanded that Neiman Marcus or Saks terminate

their relationships with TRR.  This is not sufficient to state a claim.  *See RSM Prod. Corp.*, 643

F. Supp. 2d at 406-07; *Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487

(2d Dep't 1996) (assertion that defendant "had conversations with [third party] which caused

[third party] to breach . . . agreement" was not enough of "a factual basis" for the contention that

breach was because of defendant's actions.).

### B.    TRR's Claim for Tortious Interference with Business Relations Fails

TRR's conclusory allegations that Chanel interfered with TRR's business relations with

*The New York Times*, *New York Magazine*, *Vogue*, and *WWD* are conclusory and not supported

by sufficient allegations of fact.  It is well-established that a tortious interference claim "may not

be conclusory; rather they must be supported by sufficient allegations of fact."  *Granite Partners,*

*L.P.*, 17 F. Supp. 2d at 293; *RSM Prod. Corp.*, 643 F. Supp. 2d at 405 ("The law requires some

factual specificity in pleading tortious interference.").  TRR's Counterclaims consist of only

conclusory allegations:

- ***New York Magazine:***  "TRR was in discussions with New York Magazine about a digital and print media campaign. Although the discussions had progressed substantially, Chanel used its dominance as the most powerful luxury brand to force New York Magazine into an agreement not to deal with TRR."  (Countercls., ¶ 50.)

- ***Vogue* and the *New York Times*:** "Chanel used its influence to reach agreements with Vogue and The New York Times to refuse to deal with TRR and boycott TRR's advertisements."  (*Id.*, ¶ 51.)

- ***WWD***: "In 2019, TRR was in discussions with Women's Wear Daily ("WWD") to run an advertisement promoting its recent landmark partnership with luxury brand Burberry. However, shortly before the ad was set to run, Chanel used its dominance and influence to convince WWD not to run TRR's ads. WWD informed TRR that it could not run TRR's advertisements as a result of a conflict with one of its 'huge partners.'"  (*Id.*, ¶ 53.)

None of these allegations state a claim for tortious interference with business relations.

Nor has TRR pleaded facts concerning its relationship with any of the publishers

sufficient to plausibly state that it had or *would have* entered into a contract with any of the

above publishers <u>but for</u> the alleged interference by Chanel.  *See Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 405 (S.D.N.Y. 2019) (dismissing claim for tortious interference with prejudice where the plaintiff did not plead that they would have entered into a contract with the third party absent the alleged interference, and where allegations "were entirely conclusory" and "provide[d] no further factual allegations to substantiate the assertion").  TRR's claim is therefore insufficient and should be dismissed.

Moreover, TRR "has alleged no specific action on the part of" Chanel to cause a disruption in TRR's alleged relationships with any of these entities.  *See, e.g.*, *Masefield AG v. Colonial Oil Indus.*, No. 05 CIV. 2231 (PKL), 2006 U.S. Dist. LEXIS 5792, at *11-14 (S.D.N.Y. Feb. 15, 2006) (dismissing tortious interference claim where plaintiff did not allege what specific action defendant took to interfere, and citing cases noting that "the law requires some factual specificity in pleading tortious interference."); *Hallmark Inv. Holding Corp. v. Donald Paul Braman Tr.*, No. 12-cv-8045, 2013 U.S. Dist. LEXIS 84607, at *18-20 (S.D.N.Y. June 13, 2013) (dismissing tortious interference claim where complaint failed to allege what actions constituted interference).  TRR's conclusory allegations that Chanel "used its dominance" (*New York Magazine*), "used its influence" (*Vogue* and *The New York Times*), and "used its dominance and influence" (*WWD*) are insufficient as a matter of law to state a claim tortious interference with business relations.  *See Masefield AG*, 2006 U.S. Dist. LEXIS 5792 at *12.

## IV.    TRR's "Unclean Hands" Affirmative Defense Should Be Stricken

Under Rule 12(f), "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims."  *GEOMC Co.*, 918 F.3d at 98.  In this regard, "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense[.]"  *Id.*  While Rule 12(f) states that a motion to strike should be filed "within 21 days after being served with the

pleading," Fed. R. Civ. P. 12(f), the courts have broad authority to consider a Rule 12(f) motion "at any time," rendering the 21-day period "essentially unimportant." *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999) (internal citations omitted) (collecting Second Circuit authority; refusing to deny a 12(f) motion for untimeliness).  Indeed, as recently observed by Magistrate Judge Gorenstein, "given the complete absence of factual allegations in the Answer, **[Chanel] might have good reason to be relieved of the deadline in Fed. R. Civ. P. 12(f)(2)**[.]"  [ECF No. 119 at 2 (emphasis added).]

In its entirety, TRR's sixteen-word Seventh Affirmative Defense of "Unclean Hands" is legally insufficient under *Twombly* and provides Chanel with "no indication as to how the doctrine of unclean hands would bar [its] claims." *Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001) (granting motion to strike unclean hands affirmative defense), *aff'd*, 319 F.3d 87 (2d Cir. 2003); *France Telecom S.A. v. Novell, Inc.*, No. 102-437-GMS, 2002 U.S. Dist. LEXIS 19967, at *3 n.1 (D. Del. Oct. 17, 2002) ("The undefined nature of defendant's current pleading could permit defendant to change the theory of its defense, without putting plaintiffs on notice that this has occurred").  It is telling that TRR's recently-filed Amended Answer does not amend that boilerplate language *in any way*.  [ECF No. 120 at 18.]  It is well established that: "Pleading the words 'unclean hands' without more" is "not a sufficient statement of such defense." *Obabueki*, 145 F. Supp. 2d at 401; *Cartier Int'l AG v. Motion in Time, Inc.*, No. 12 CIV. 8216 JMF, 2013 U.S. Dist. LEXIS 50035, at *7-10 (S.D.N.Y. Apr. 5, 2013) (granting motion to strike).  Thus, TRR's Seventh Affirmative Defense on its face is without merit.

During oral argument on its motion for leave to amend, TRR, for the first time, took the position that its single-sentence unclean hands defense is co-extensive with the 128 paragraphs

of allegations which comprise its Counterclaims.[9]  Statements by TRR's counsel at a hearing do not suffice to amend TRR's unclean hands defense, which, as noted, is not amended in any way in the Amended Answer.  *See generally* Fed. R. Civ. P. 15 (detailing procedural requirements for seeking leave to amend).

Moreover, even if TRR was allowed to fundamentally transmogrify its unclean hands defense into an antitrust defense, "[t]he Second Circuit has repeatedly emphasized the narrowness of the [unclean hands] doctrine's application."  *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112-13 (S.D.N.Y. 2005) (striking unclean hands defense; defense "applies only where the misconduct alleged as the basis for the defense '***has immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation***.'") (emphasis added).  TRR's antitrust counterclaim allegations do not pass this test.

Where, as here, a defendant "charges the plaintiff with a boycott, with conspiring to establish retail price control, and with various other matters, which taken together constitute a claim that the plaintiff is violating the anti-trust laws in certain respects, but not that it is using the trade-mark to do so[,] [s]uch a defense is insufficient in a trade-mark infringement case."  *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969) ("An essential element of the antitrust misuse defense in a trademark case is **proof that the mark itself has been the basic and fundamental vehicle required and used to accomplish the violation.**") (emphasis added), *modified sub nom.* 433 F.2d 686 (2d Cir. 1970).  It is well-established that a defendant may assert antitrust violations as a defense to trademark

---

[9] *See* ECF No. 105, Ex. A at 45:21-24 (Jan. 2 2021 transcript, in which counsel for TRR alleged, with regard to whether "the unclean-hands defense . . . overlaps with the counterclaim," "our position is going to be that it's the same conduct."); ECF No. 47 at 3 (Joint Letter in which TRR alleges that "Chanel has unclean hands by virtue of its anticompetitive schemes in the secondary market.").

infringement claims only in the rare case where the supposed antitrust violations involve the plaintiff's "misuse" of the very trademark being asserted—a theory referred to as "trademark misuse" or "antitrust misuse."  As a result, "it might be stated, as a general rule, that an antitrust defense is insufficient in a trademark infringement case[,]" *Coca-Cola Co. v. Howard Johnson Co.*, 386 F. Supp. 330, 335 (N.D. Ga. 1974), and "***in no final reported decision involving trademark infringement has a court actually refused to enforce a trademark because it was used in violation of antitrust law***[,]" *Virgin Enters. v. Virginic LLC*, No. 19-CV-0220-F, 2020 U.S. Dist. LEXIS 63580, at *9 (D. Wyo. Apr. 10, 2020) (quoting 6 *McCarthy on Trademarks and Unfair Competition* § 31:91 (5th ed.)) (emphasis added).  *See also Carl Zeiss Stiftung*, 298 F. Supp. at 1314 ("[I]t is significant that in almost every reported instance where the antitrust misuse of a trademark has been raised as a defense, it has been rejected.").  Moreover, TRR does not even attempt to plausibly allege an "antitrust misuse" violation.  There is no allegation that Chanel has somehow used its trademarks to monopolize the relevant market or implement a "group boycott" conspiracy — *i.e.*, that "the *mark itself* has been the basic and fundamental vehicle required and used to accomplish" Chanel's purported antitrust violations.  *Carl Zeiss Stiftung*, 298 F. Supp. at 1315 (emphasis added) ("[I]t is not enough merely to prove that merchandise bearing a trademark, however valuable the trademark, has been used in furtherance of antitrust violations. . . . An essential element of the antitrust misuse defense in a trademark case is proof that the mark itself has been the basic and fundamental vehicle required and used to accomplish the violation").  TRR's supposed antitrust misuse defense is legally invalid.

## V.       <u>These Motions Should Be Granted With Prejudice.</u>

These Motions should be granted with prejudice because TRR has already had an opportunity to amend its Answer, and further leave to amend is unlikely to be productive.  *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied

where "the problem with [the plaintiff's] causes of action is substantive[,]" such that "better

pleading will not cure it."); *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 CIV 00975 (RPP), 2013

U.S. Dist. LEXIS 30116, at *32 (S.D.N.Y. Mar. 4, 2013) (further leave to amend should be

denied where opportunity has already been provided).

## **CONCLUSION**

For the foregoing reasons, Chanel respectfully requests that the Court grant Chanel's

motion to dismiss TRR's Counterclaims and grants Chanel's motion to strike TRR's unclean

hands defense.


Dated: March 18, 2021       Respectfully submitted,
  New York, New York

              SHEPPARD MULLIN RICHTER & HAMPTON LLP


              /s/*Theodore C. Max*
              Theodore C. Max
              Tyler E. Baker
              30 Rockefeller Plaza
              New York, New York 10112
              Telephone: 212-653-8700
              Facsimile: 212-653-8701

              Dylan I. Ballard (admitted *pro hac vice*)
              dballard@sheppardmullin.com
              Four Embarcadero Center, 17th Floor
              San Francisco, CA 94111-4109
              Telephone: 415-434-9100
              Facsimile: 415-434-3947

              *Attorneys for Plaintiff/Counterclaim-Defendant*
              *Chanel, Inc.*