<pre>
                  UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK

In re:                           :
                                    Docket #18cv10626
 CHANEL, INC.,                   : 1:18-cv-10626-VSB-GWG

                    Plaintiff,   :

   - against -                   :

 THE REALREAL, INC.,             : New York, New York
                                   February 24, 2023
                 Defendant.      :
                                   TELEPHONIC
----------------------------------: DISCOVERY HEARING

                  PROCEEDINGS BEFORE
           THE HONORABLE GABRIEL W. GORENSTEIN,
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      SHEPPARD MULLIN RICHTER & HAMPTON
                        BY:  THEODORE CONRAD MAX, ESQ.
                             KHIRIN BUNKER, ESQ.
                             TYLER E. BAKER, ESQ.
                        30 Rockefeller Plaza
                        New York, New York 10112

For the Defendant:      KING & SPALDING LLP
                        BY:  LEIGH MAGER NATHANSON, ESQ.
                        1185 Avenue of the Americas
                        New York, New York 10036

                        KING & SPALDING
                        BY:  JULIANNE LEE DURAN, ESQ.
                        1700 Pennsylvania Avenue N.W.
                        Washington, D.C.  20006

Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service.
</pre>

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None    |        |       |           |          |       |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None           |             |     |     |           |

1

```
 1                         PROCEEDINGS                      3

 2            THE CLERK:  This is in the matter of Chanel,

 3   Inc. versus The RealReal, Inc., case number 18-cv-10626.

 4   Starting with plaintiff's counsel, please state your

 5   appearance for the record.

 6            MR. THEODORE C. MAX:  Theodore C. Max from

 7   Sheppard Mullin for plaintiff, Chanel, Inc.  And I'm

 8   here with Khirin Bunker and Tyler Baker.

 9            MS. LEIGH NATHANSON:  This is Leigh Nathanson

10   from King & Spaulding, for defendant, The RealReal.  And

11   I'm here with my colleague, Julianne Duran.

12            THE HONORABLE GABRIEL W. GORENSTEIN (THE

13   COURT):  Okay, welcome, everyone.  We're being recorded;

14   but any other further recording or dissemination or

15   broadcast of this proceeding is prohibited.

16            We're here based on the letters, 294 and 302.

17   I'm going to deal primarily with the RFA Set Six issue

18   and want to talk to you in detail about the RFA Set

19   Seven issues.  With respect to RFA Set Six, the case law

20   is clear that a denial is a denial.  I do not have --

21   it's only in the rarest instances -- and this is not one

22   of them -- that a Court should look beyond a denial.

23   The remedy, if there is to be one, is in Rule 37, if

24   something has to be proved that the Court later finds

25   was encompassed by this request for admission.  I'm not
```

```
 1                          PROCEEDINGS                    4

 2   going to start giving advisory opinions about how that's

 3   to come out.  So that's just the end of that.

 4          Now, with respect to Set Seven, I think that

 5   there was a lot of confusion probably generated by me at

 6   the last conference as to how we were going to deal with

 7   these.  I ended up coming up with a definition of

 8   "genuine" that I thought was fair, that I think that

 9   even TRR thought was fair.  And I guess we now have to

10   deal with what that means in terms of these request for

11   admissions.  I think we need to start this de novo and

12   just try to do this logically and see what needs to be

13   done.

14          So, with that in mind, I'm now going to turn to

15   the requests and figure out what the objection is and

16   what the problem is as to answering them.  And I gather

17   that we should be thinking about these differently

18   depending upon whether these were items that were

19   actually sold and then returned or whether they were

20   items that were listed at one point and then got

21   delisted.  I don't mind breaking it into those two

22   categories if TRR wants to discuss them separately.  But

23   I want to have this as a discussion without regard to

24   the past.  I'm certainly not going to award attorney's

25   fees to the plaintiff because, as I say, there was plain
```

```
 1                         PROCEEDINGS                    5
 2   confusion about this.  I just want to solve the problem
 3   and deal with it going forward and deal with whether we
 4   need to have new answers or whether the RFA that's
 5   raised now is for some reason objectionable.
 6            So I think we start with -- and I'm using
 7   Mr. Max's letter -- I'm on page four.  I think we'd
 8   start with number two.  And I note -- I can see how
 9   there may be some issues about timing, about when this
10   process took place.  Maybe there's some objection from
11   TRR about the phrasing as it is now regardless of
12   timing.  So let me understand -- now that we have a
13   definition of "genuine," tell me what the objection is
14   to number two.  And if you have to divide it into
15   returned items and delisted items, that's fine with me.
16            MS. NATHANSON:  Good morning, your Honor.  So I
17   think the issue with number two -- at first I won't
18   divide it into those categories; but then when I discuss
19   our responses, I will.  As to the request for admission
20   itself, the def -- and I appreciate that we're starting
21   de novo, but I just want to refer to the past to explain
22   how we were thinking of this.  The definition of
23   "genuine" that we were using from the prior conference
24   involved manufactured and sold by Chanel.  And when The
25   RealReal authenticates an item -- and we've discussed
```

this a couple of times -- it doesn't necessarily ask for

proof of first sales.  It takes as a conclusion that

follows from the determination that an item can be

authenticated; in other words, that there are not

questions raised for TRR as to its authenticity.  It is

assumed that that item was manufactured and sold by

Chanel.  I don't know exactly what Chanel is getting at

with that because Mr. Max has raised a few times this

concept of a shifting burden whereby The RealReal, in

his view -- and we disagree with this -- needs to show

some sort of proof of first sales.

So to avoid that issue, in other words, the

discrepancy between whether The RealReal was able to

authenticate an item, meaning it believed there was not

a question as to its authenticity and felt comfortable

selling the item, we answered by saying that The

RealReal authenticated that item through its process.

And for items that were not -- that were removed, we

sort of *sua sponte* by The RealReal after listing, we

admitted that The RealReal removed the listing because

it was not ultimately able to do that authentication.

So I think the issue with the RFA as drafted is

that the definition of "genuine" that Chanel was using

based on our prior conference involves some sort of

```
 1                        PROCEEDINGS                  7
 2   first-sale proof of purchase type of thing, and that's
 3   not what the authentication process necessarily asks
 4   for.  In some cases, The RealReal has that information,
 5   but it is not a prerequisite for authentication.
 6              THE COURT:  All right, let me -- I'm trying to
 7   understand, because it seems to be the lynchpin of all
 8   this, what you're talking about when you say "for sale."
 9   Do you mean -- when I defined "genuine" as manufactured
10   and sold, I meant, you know, Chanel manufactured it and
11   sold it, you know, it came out Chanel's door.  How does
12   a product enter the market without being manufactured
13   and sold?  How does it -- is there some product that you
14   call authentic that was not manufactured and sold by
15   Chanel?
16              MS. NATHANSON:  I think Chanel is taking the
17   position that there is.
18              THE COURT:  But I'm asking you.
19              MS. NATHANSON:  Well, so, we have items, for
20   example, that have come up in the context of this
21   litigation that Chanel alleges were stolen.  So they are
22   authentic Chanel items in the sense that they were
23   manufactured by Chanel, but they were stolen before they
24   were sold either by a Chanel store or a Chanel
25   authorized retailer.
```

```
 1                      PROCEEDINGS                    8

 2           THE COURT:  Okay.

 3           MS. NATHANSON:  In a case like that, that is

 4  something that The RealReal would not necessarily have

 5  any ability to know.  And so we're trying to be very

 6  careful -- and I mean, I'll say, your Honor, we're not

 7  trying to be cute in using this language.  But we've

 8  talked in this case about a number of different

 9  situations where the term "genuine, "authentic,"

10  "manufactured and sold," etc., overlap in slightly

11  different ways.  So what we answered is what we wanted

12  to be clear we were admitting.

13           THE COURT:  Okay.  So let me ask you this.  And

14  I'm not saying Mr. Max is going to agree to it.  It's

15  genuine -- if we defined "genuine" to mean manufactured,

16  would you be able to admit or deny the request as it is,

17  if that's what "genuine" meant, just manufactured?

18           MS. NATHANSON:  Just number two --

19           THE COURT:  Yes.

20           MS. NATHANSON:  I think so.

21           THE COURT:  Okay.  So, all right, well, this is

22  really explaining what the problem is.  So, Mr. Max, do

23  you have a problem with "genuine" being defined as

24  manufactured?

25           MR. MAX:  Yes, your Honor, because it does need
```

```
 1                        PROCEEDINGS                   9
 2   to be sold.  And part of the process is going through,
 3   you know, the quality control and the sales process at
 4   Chanel.  So we do have --
 5              THE COURT:  Okay.  That's fine.
 6              MR. MAX:  -- an issue with that.
 7              THE COURT:  That's fine.  If you were to
 8   bring --
 9              MR. MAX:  Pardon me, your Honor?
10              THE COURT:  -- the RFA -- the solution to all
11   this is to just specify exactly what we want.  So I'm
12   not going to make you have your RFA's mean anything in
13   particular that you don't want.  But we are going to
14   make it clear.
15              Go ahead, you wanted to say something.
16              MR. MAX:  Yes, your Honor.  In terms of the
17   point about stolen items, to your knowledge, none of the
18   items that are identified in the RFAs are stolen items.
19   And on the meet-and-confer call that we had prior to
20   writing the letters, we said if there are items that you
21   think were stolen, you know, bring that to our
22   attention, and we'll address that.  So I think that may
23   be a bit of a red herring unless there's new information
24   that we're not aware of.
25              You know, the other thing here is part of the
```

1                          PROCEEDINGS              10

2  reason at the last conference we came up with the

3  definition was so that we could get these RFAs out there

4  and get an answer to what is a simple question, that is,

5  you know, did TRR authenticate an item as genuine.

6  That's -- and the crux here -- and I think it's

7  important to focus on it -- is that relates to the claim

8  that TRR has made and counsel has shared, as well, that

9  every item that is offered for sale by The RealReal is

10 authenticated by one of their experts.  And that's

11 really where we're focusing on.  And it either happened

12 or it didn't happen.  It's not a complicated RFA.  And

13 there weren't objections to the wording of the RFA or

14 the structure of the RFA or anything like that.  So this

15 seems like a shifting of positions a little bit.

16         THE COURT:  Well, I'm not doing the path any

17 longer.  We're solving the problem now.

18         MR. MAX:  All right.

19         THE COURT:  I find this RFA to be ambiguous.

20 And it needs to be re written.  I'm not going to require

21 them to answer it again the way it is now.  So here's

22 your choices.  First, I think the word "authenticated,

23 it's throwing us off, which sounds to me what you want

24 to find out, what you want to have them admit or not is

25 that TRR determined that item X was manufactured -- and

```
 1                         PROCEEDINGS              11
 2    I guess in your case, and sold, by Chanel.  So if you
 3    want to ask that question, I don't think that's
 4    ambiguous.  And you're welcome to ask it.  And if you
 5    want to instead ask the question TRR determined that the
 6    item was manufactured by Chanel without using the word
 7    "sold," you're welcome to do that.  But that, I think,
 8    precisely states a factual question that is deserving of
 9    an answer.  But the way it's written now, there's just
10    too much potential ambiguity.
11             So first let me -- I'll just check with
12    defendants that they're not going to have an ambiguity
13    objection to either of the two things I just said.  And
14    then I'll talk to plaintiffs.
15             MS. NATHANSON:  No, I don't think we have an
16    ambiguity objection.  But the one point that I would
17    make about "sold" is just that -- I mean, I think we
18    could answer it.  I think Chanel would have an issue
19    with our answer along the lines of the fact that, you
20    know, it is a legal question, I think, whether it is --
21    or at least a hybrid legal-factual question -- whether
22    it is appropriate to assume that an item was sold by
23    Chanel when it appears to be -- and I'll use a very
24    colloquial term now so we avoid the whole "genuine-
25    authentic" -- but when it appears to be not a fake
```

PROCEEDINGS                    12

1

2    Chanel, there's an assumption that it was sold by Chanel

3    because Chanel or its authorized retailers are the only

4    retail -- that's the only way that you can buy a Chanel

5    in the first-sale market.

6          THE COURT:  I'm not sure what you're getting

7    at.  I want to make this --

8          MS. NATHANSON:  What I'm getting at is that

9    Chanel --

10         THE COURT:  -- simple -- well, hold on, hold

11   on, hold on.  Let me finish.  Let me finish.

12         If you get an RFA that says at some point I

13   think we need some time frame, or it can say at any

14   time, TRR determined that item number X was manufactured

15   by Chanel, whatever you just said now, that's not going

16   to be objectionable, am I right?

17         MS. NATHANSON:  Yes.

18         THE COURT:  Okay, and if it says TRR determined

19   that item was sold at one point by Chanel, are you going

20   to have an objection to that?

21         MS. NATHANSON:  I do not think we will have an

22   objection, but I suspect we might be back here based on

23   what our answer will be.

24         THE COURT:  Well, your answer really should be

25   "admit," "deny," or "we don't have enough information."

```
 1                      PROCEEDINGS              13
 2  It's going to be something else?
 3            MS. NATHANSON:  No.
 4            THE COURT:  Okay.  Because if the answer's
 5  "deny," I'm not going to be hearing from anybody --
 6  don't worry about that -- or "admit."
 7            MS. NATHANSON:  Okay.  Okay.
 8            THE COURT:  All right.  Now, so Mr. Max, tell
 9  me what -- if you have any problem with what I just
10  said.
11            MR. MAX:  Your Honor, can I suggest an
12  alternative that I think Ms. Nathanson just, you know,
13  sort of posed in her response to you?  Maybe instead of
14  not using "genuine" and not using "authentic," we use
15  "not fake," because that was the word she used.  And I'm
16  looking at an article that's in "Haute Living," and it's
17  an interview with the founder, Julie Wainwright.  And in
18  the article she talks about that, you know, they have
19  people, brand authenticators, who know how to spot
20  fakes.  So maybe just say "not fake."
21            What we're trying to do here is not to base it
22  on what Chanel determines is authentic; it's really
23  their authentic, you know, that TRR considered
24  authentic.  So if "not fake" works for Ms. Wainwright,
25  the founder, and works for Ms. Nathanson, maybe we just
```

```
 1                         PROCEEDINGS              14

 2  say "not fake."  You know, it's colloquial, but it has a

 3  meaning.  And then we don't have to get into whether it

 4  was manufactured or sold or anything like that.  I think

 5  that may be simpler, your Honor, and may avoid the

 6  concern that Ms. Nathanson has that, you know, we'll be

 7  back after they give answers.

 8          THE COURT:  Ms. Nathanson?

 9          MS. NATHANSON:  I think that would be equally

10  objectionable.  And I apologize for introducing it.  But

11  there's a reason that I prefaced the phrase "not fake"

12  with, "I'm using this only colloquially in the context

13  of this conference."  I think if the facts that they are

14  getting at is whether The RealReal -- I mean, Mr. Max

15  just said what we want to know is whether The RealReal

16  authenticated the item.  We've already admitted that The

17  RealReal either authenticated or did not authenticate

18  the item.  And now -- and Chanel did not find that to be

19  a sufficient answer.  So I think if it wants something

20  more, if it wants "manufactured and/or sold," those are

21  facts that we can admit or deny or deny having

22  sufficient information.

23          But I think what Mr. Max seems to be getting at

24  and what has been problematic with these requests and

25  other requests for admission in the past is some
```

PROCEEDINGS                    15

1

2   admission of the legal question of whether an item was

3   genuine, authentic, whatever you want the term to mean.

4   And we've made clear that the factual term that we will

5   admit is authenticated, we can admit or deny the

6   manufactured and sold question.  But I think introducing

7   more terminology that has the same issue as "genuine" is

8   not going to resolve this issue.

9          THE COURT:  Okay.  I'm adhering to what I said

10  before.  And just for the record and for the big picture

11  here, this -- requests for admission should be

12  straightforward, factual; they're not a discovery

13  device.  You shouldn't have endless disputes about them.

14  They're merely an effort to avoid having to prove some

15  particular item at trial.  Usually it's things like, you

16  know, is this an accurate deposition transcript?  Is

17  this document the one that was produced by so-and-so?

18  That's when they're most useful.

19          So I'm prepared to allow very clear factual

20  requests for admission that are easily understandable

21  and are not vague.  But that's it.  And there's too much

22  dispute about authentic and genuine.  So I've given my

23  ruling on that.  You can use the word "determined."  You

24  should specify whatever the time frame is.  You can use

25  a word, either manufactured, or you can use sold, but

1

2 not genuine.

3           With that ruling, do we need to deal with

4 perhaps number three or with any other subcategories of

5 delisted or returned?  I'll hear from either side on

6 this.

7           MR. MAX:  Your Honor, with regard to number

8 three, I think, given that we're going to rework the

9 RFAs, I think, you know, it's better to leave that for

10 another day, especially given what your Honor said about

11 the past and so forth.  But I'm happy to discuss it if

12 Ms. Nathanson wants to discuss it.  But I think it's

13 better to leave that for another day.

14           THE COURT:  Well, when you say "leave it for

15 another day," you're the one who made the application.

16 So if you're not seeking --

17           MR. MAX:  That's correct, your Honor.  And --

18           THE COURT:  If you're not seeking any -- I

19 mean, if you're seeking further relief as to number

20 three, the way it's written now, I think we need to deal

21 with it now.  If you're saying, "I'm no longer seeking

22 relief" as to number three, than that's fine; we can end

23 it.

24           MR. MAX:  Well, then, your Honor, with regard

25 to number three, the point with regard to number three

```
 1                        PROCEEDINGS                    17
 2  is we're talking about it's not a genuine Chanel item.
 3  So that's what I'm saying; it goes to the definition.
 4  And I think the other point related to that is that
 5  they, you know, they refuse to answer those.  And I
 6  guess my point there was part of that was relate -- they
 7  were relying on what your Honor had said at the last
 8  conference.  So that's why I was saying it's an issue
 9  that's still at play.  But I was just trying to avoid
10  going over it without the additional RFAs.
11           I think with regard to that particular -- that
12  point is that I think your Honor has pointed out
13  previously, you know, they either have to admit, deny or
14  they explain why they can't admit or deny.  And I think
15  that was something that these responses were lacking.
16  You know, they didn't have that because of the prior
17  statements that the Court made which they were relying
18  on.  So that's why I was saying if your Honor wants to
19  rule on that, that's fine.  But it seems to me that that
20  -- you know, that given that the RFAs are going to be
21  reworded, that that may be an issue for later.  But I --
22           THE COURT:  Right.  Okay.  So if you're -- I
23  just need to know whether I need to do anything on the
24  current responses to number three.  I think your answer
25  is no.  It sounds like you plan to reword number three
```

1
2    with either "manufactured" or "sold" or both, and we'll
3    see what you get as an answer.  Did I understand you
4    correctly?

5          MR. MAX:  Yeah.  It may not be "manufactured"
6    or "resold" *[sic]*; it might be a different word.  As I
7    said, your Honor, what we are trying to do is understand
8    what they -- you know, they say they authenticate
9    everything.  That's what we're focusing on.  That's what
10    their advertisements are all about.  We're not talking
11    about Chanel's definition of authentication.  And if
12    they wave a magic wand over everything and that's their
13    authentication, well, that would be an authentication.
14    The point is not just whether something was
15    authenticated; it's what that means.  Because what they
16    say in their advertisements is everything's real, we use
17    "real price" in our name and so on and so forth.

18          So I think this is a little bit of a semantic
19    argument.  And with regards to the First Sale doctrine,
20    that's their burden, not our burden.  And that's really
21    -- as I said, I think that's a red herring.  But we will
22    rephrase the RFAs, and that would, I think necessarily
23    impact the third RFA, as well.

24          THE COURT:  Okay.  Let me just remind you of
25    something, Mr. Max.

```
 1                        PROCEEDINGS                  19
 2            MR. MAX:  Sure.
 3            THE COURT:  These are not contention
 4  interrogatories.  A lot of what you just said gleamed
 5  out.  We're trying to figure out what their position is.
 6  That is not the purpose of a request for admission.  So
 7  please keep that in mind.  Maybe there will be
 8  contention interrogatories at some point in this case,
 9  normally at the end of discovery.  And then they'll
10  figure out what their position is, and/or maybe they'll
11  be objectionable -- I don't know.  But you absolutely
12  should not be using requests for admissions to figure
13  out what their position is, whether it's consistent with
14  provisions they've taken in the past with respect to
15  what they do on their website.  Whatever you rephrase,
16  it has to be very clear and very fact-based.  Okay?  Do
17  you understand what I'm getting at, Mr. Max?
18            MS. NATHANSON:  Yes, your Honor.  I do.  And
19  I'm sorry for the misunderstanding.  I was not saying
20  that we were going to assert contention interrogatories
21  or anything of the sort.  What I was saying was at the
22  last conference, the parties, with your Honor's
23  assistance agreed on a definition.  Ms. Nathanson was
24  okay with that definition.  And, you know, today for the
25  first time, because in the meet-and-confer, she didn't
```

1

2   say that, but today for the first time she said, "Well,

3   that definition wasn't a good definition.

4           So I'm a little surprised by that.  And; if she

5   wants to, while we're on the phone with the Court, say,

6   "What we mean by authenticate is X," I'm happy to listen

7   to that, and we can include that as the definition for

8   authenticate or -- if she wants to do it for what is

9   genuine, I'm happy to include that.  We follow the

10  definition that the Court and TRR had agreed upon.  So

11  we're not trying to be contentious here; we're just

12  trying to take what your Honor has said and follow that

13  -- that's what we did last time.  And we'll do it this

14  time, as well.

15          And if Ms. Nathanson wants to share what The

16  RealReal considers is genuine, I thought she said "not

17  fake," so that's why I suggested that.  Bur if she has a

18  better way of saying it -- I mean, the plain meaning of

19  "genuine" and the plain meaning of "not fake," it's

20  pretty plain.  We're not trying to complicate this.  It

21  seems like it's getting complicated because

22  Ms. Nathanson's reading things into what are plain

23  words.  But we just want to ask the RFA and get an admit

24  or deny.

25          THE COURT:  Good.  I regret that we had

1

2   confusion based on the last conference.  I should have

3   realized that the word "authenticate" in itself was

4   creating problems and ambiguities and was becoming in

5   the nature of a contention interrogatory rather than

6   request for admission.  We're going to take

7   authenticated out of the request for admission process.

8   We're going to take "genuine" out.  We're going to use a

9   word like "determined" instead of "authenticated," and

10  we're going to state specifically manufactured, sold, or

11  if there' some other factual thing,  you're welcome to

12  include that.  They probably should be broken up.  But,

13  again, just confine it to the factual requests.

14          MR. MAX:  Your Honor --

15          THE COURT:  Yes.

16          MR. MAX:  If I may?  On the word

17  "authenticated," I understand -- I understand the issue

18  with "genuine," but with regard to authenticated, in the

19  documents that they've produced, "authenticated" is used

20  as a sort of, a point in time, before an item is

21  photographed and put up for advertising and sale.  And

22  so I think "authenticated" is a term that they use

23  repeatedly in their documents.  And, you know, they also

24  use it in the advertising copy.  So I don't think that

25  word is ambiguous.

1

2          And I think it's important because in

3 Ms. Nathanson's letter she seemed to suggest at the end

4 that, you know, authentication -- in footnote two, that

5 the authentication process is an ongoing item.  That's

6 not what they advertised, that's not what the documents

7 reflect.  So I think -- and she said on the phone that

8 she's willing to say whether or not something was

9 authenticated or not.  I think that RFA is clear, and

10 it's purely factual.  It's not subject to

11 interpretation, and they have documents that indicate

12 that somebody authenticated something.

13          THE COURT:  No.

14          MR. MAX:  So I would just --

15          THE COURT:  No, no, no, no, no.  I don't think

16 you understood my ruling.

17          MR. MAX:  Okay, maybe I didn't.

18          THE COURT:  (indiscernible) is absolutely not

19 clear.  It doesn't matter whether they used it.  That

20 doesn't make it clear or not or factual or not.  You

21 could, I suppose, theoretically -- and I don't know if

22 this is of any interest -- you could say, "Did item X go

23 through," whatever the authentication process is, or the

24 process that TRR calls the authentication process.  I'm

25 just speaking off the top of my head.  That might be

1
2   possible, but not to have a request for admission that

3   said TRR authenticated something as manufactured or not

4   fake or genuine, and so forth.  There's too much

5   ambiguity there.  The word "determined" is very clear.

6   It means TRR made a decision that something was or was

7   not manufactured.  If you start adding the

8   authentication process in, it just muddies the waters.

9   We have to be as narrow as possible in these.

10          MR. MAX:  Your Honor, can I tie it to the

11   advertising copy which says, "All authenticated buyer

12   experts," that's repeatedly in their advertising, it's

13   on their website, all over the place.

14          THE COURT:  You can -- you can --

15          MR. MAX:  Can I say the only retail company --

16          THE COURT:  -- I would have thought there --

17   hold on, hold on, hold on.

18          I would have thought there'd be discovery on

19   what this authentication process is.  And it's not going

20   to be determined through a request for admission.  If

21   you want to try an interrogatory about the

22   authentication process by itself and say, "Admit that

23   the authentication process consists of X."  Or, if you

24   want to have an integral -- you could try that.  I would

25   think, you know, that's not the kind of thing you should

do -- I just used the word "interrogatory," which shows

what the problem is here.  If you think it's all been

determined and it wouldn't be a big waste of time, you

could say, "Admit that your authentication process

consists of X."  You could say, "Admit that Item X went

through TRR's authentication process," period.  But I

don't want to start combining the authentication with

notions of genuineness, manufactured or sold.

MR. MAX:  Your Honor, that's not what I was

suggesting.  What I was saying was they make advertising

claims that they are the only resale company in the

world that authenticates every single item sold.  And I

would like to just, with regards to the items at issue,

ask whether they were authenticated by The RealReal.

Because that goes directly -- if they weren't, then

that's --

THE COURT:  Okay, now, stop.  That's -- I think

I said you could do that.  I think you --

MR. MAX:  Okay.

THE COURT:  -- could say, "Did Item X go

through TRR's authentication process?"  Isn't that what

you want to ask?

MR. MAX:  Well, I think it's -- it hasn't been

admitted.  But that's beside the point.  Your Honor, I -

1

2 -

3          MS. NATHANSON:  Your Honor --

4          THE COURT:  Hold on.  I want Mr. Max to answer

5 my question.  Is that what you want to asks?

6          MR. MAX:  Your Honor, what I'm trying to ask is

7 whether that -- whether that statement is true with

8 respect to each of these items.  That's what I'm saying.

9          THE COURT:  Okay.  So you would like to

10 propound an RFA that said, "Did Item X go through TRR's

11 authentication process?"  Have I phrased it correctly?

12          MR. MAX:  Well, but your Honor, my concern with

13 that is every -- if every item goes through the process,

14 and let's say the item goes through the process and is

15 rejected,  but it's still put up.  The RFA would say

16 that it went through the process.  But what the

17 advertising statement is that they authenticate

18 everything that's -- so it suggests, because the word

19 "authentic" means genuine -- it's a synonym -- so what

20 they're saying is that every item is genuine because it

21 goes through the process.  So, Judge, going through the

22 process doesn't get to that point.  And --

23          THE COURT:  I don't know what -- I don't know

24 what to tell you.  I've told you what you can do with

25 the one I have in front of me.  I guess I'm willing to

1

2   try giving an advisory opinion as to some other RFA.  I

3   just came up with one, but you don't seem interested in

4   it.  But you haven't said precisely what you -- and I

5   don't expect you to -- but you're sort of -- it seemed

6   to me that you wanted to ask me some questions.  If you

7   want to ask me about a specific wording of an RFA that

8   you want, and I'll tell you whether it fits in with my

9   ruling today.  I'm happy to try it.  Do you want a

10  minute to collect your thoughts?  I'm happy to give you

11  a minute.  If you want to just think about it on your

12  own and issue an RFA and see what they say about it,

13  that's fine, too.  I'm even willing to shorten the time

14  period for any objection so we move this along.  It's

15  been two weeks.  As long as it's within this, you know,

16  topic area.  But that's all I can do for you right now.

17         MR. MAX:  Your Honor, would it be possible to

18  tie the RFA to the advertising statement, say with

19  regard to item blank, is the statement that TRR is the

20  only resale company in the world that authenticates

21  every single item sold is accurate?

22         THE COURT:  I don't understand the RFA, so I'm

23  sure they're going to have an objection to it.  With

24  regard -- the one thing to say --

25         MR. MAX:  They make a statement that they

```
 1                        PROCEEDINGS                 27
 2  authenticate --
 3           THE COURT:  No, I -- I understand that.  And
 4  it's one thing if you said is TRR the only company in
 5  the world that authenticates every single item sold, if
 6  you want to do that on the theory that they did it, try
 7  it.  I don't think I want to rule on that right now.
 8           But now you're tying it to specific items.  And
 9  I already said once we start using the word
10  "authenticate" on specific items, I don't -- there's
11  ambiguity, and that's not what RFAs are for.
12           MR. MAX:  What is the ambiguity, your Honor --
13           THE COURT:  No, I'm not -- I'm not going over
14  this again.
15           MR. MAX:  -- that you're concerned -- well, I'm
16  just trying to understand so I can draft these.  All
17  right.
18           THE COURT:  The word "authenticated" is
19  ambiguous.
20           Mr. Max, I've had enough of this.
21           MR. MAX:  Okay.
22           THE COURT:  I believe I've given you my
23  rulings.  You now have, I believe, a much clearer idea
24  about what you can do with an RFA, and I don't think
25  there's anything more for us to do today.
```

```
 1                        PROCEEDINGS                    28

 2              Anything from the defendant side?

 3              MS. NATHANSON:  No, your Honor.

 4              THE COURT:  Okay.  Thank you, everyone.  Good-

 5   bye.

 6              (Whereupon the matter is adjourned.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

29

<u>C E R T I F I C A T E</u>

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Chanel, Inc. versus The RealReal, Inc., docket #18cv10626, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature   *Carole Ludwig*

_____

Date:   February 27, 2023