UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                           :

CHANEL, INC.,                     :

                           :

               Plaintiff,   :

                           :        18-CV-10626 (VSB)

        -against-       :

                           :        **<u>OPINION & ORDER</u>**

THE REALREAL, INC.,         :

                           :

              Defendant.  :

                           :
--------------------------------------------------------X

<u>Appearances</u>:

Karen L. Dunn
Dunn Isaacson Rhee LLP
Washington, DC

William Baly Michael
Darren Wright Johnson
Paul, Weiss
New York, NY

Allison Hill White
King & Spalding
Atlanta, GA

Laura Elizabeth Harris
Leigh Mager Nathanson
Lilian Klatskin
King & Spalding LLP
New York, New York

Julianne Lee Duran
King & Spalding
Washington, DC

*Counsel for Defendant-Counterclaimant The RealReal, Inc.*

Maja Szumarska
Hyo Jin Paik
Sheppard, Mullin, Richter & Hampton LLP

New York, New York

Khirin Bunker
Bridget Russell
Dylan John Price
Tyler Enright Baker
Sheppard, Mullin, Richter & Hampton LLP

Jeffrey L. Kessler
Sofia Roa Arguello
Susannah Providence Torpey
Winston & Strawn LLP
New York, New York

Dylan Ballard
Vinson & Elkins
San Francisco, California

Thomas Tyson
Gibson Dunn & Crutcher LLP
San Francisco, California

*Counsel for Plaintiff-Counterdefendant Chanel, Inc.*

VERNON S. BRODERICK, United States District Judge:

Plaintiff-Counterdefendant Chanel, Inc. ("Chanel") initially brought this action against Defendant-Counterclaimant The RealReal, Inc. ("TRR") alleging claims for trademark infringement, counterfeiting, false endorsement, unfair competition, false advertising, and several related claims under New York state common and statutory law.  On March 30, 2020, I granted in part and denied in part TRR's motion to dismiss Chanel's First Amended Complaint ("FAC").  (Doc. 39.)  On May 29, 2020, TRR filed an answer to the amended complaint.  (Doc. 44.)  On February 25, 2021, TRR filed an amended answer and asserted five counterclaims against Chanel for (1) violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, for concerted refusal to deal; (2) monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (3) anticompetitive arrangement, agreement, and combination in

2

violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340; (4) tortious interference with contract; and (5) tortious interference with prospective business relations.  (Doc. 120 ("Amended Answer" or "Counterclaims").)

Before me is Chanel's motion to dismiss TRR's Counterclaims and motion to strike TRR's affirmative defense of unclean hands.  Because TRR's Counterclaims fail to state a claim upon which relief may be granted, Chanel's motion to dismiss is GRANTED.  Chanel's motion to strike the affirmative defense of unclean hands is untimely, and it is DENIED.

## I.      **Factual & Procedural History**[1]

"Chanel is an iconic fashion company whose luxury products are advertised and sought worldwide" with its principal place of business in Manhattan, New York.  (Doc. 26 ("FAC") ¶¶ 1, 10.)  TRR is a California-based "retailer specializing in pre-owned handbags, jewelry, and apparel with an online site and brick and mortar retail locations for luxury consignment."  (*Id.* ¶¶ 11, 31.)  In addition to offering many other luxury branded products, TRR offers purportedly genuine secondhand Chanel products, and in 2018 acknowledged that Chanel was one of the most popular brands bought and sold through consignment.  (*Id.* ¶ 33; *see also id.* Ex. C, at 7.)  Chanel does not sell to or authorize sale of its products through TRR, and does not authenticate TRR's inventory of Chanel-branded products.  (*Id.* ¶¶ 30, 37.)

---

[1] I assume general familiarity with the facts of this case, which are detailed in my March 30, 2022 Opinion & Order granting in part and denying in part TRR's motion to dismiss Chanel's First Amended Complaint.  (Doc. 39.)  I only cite facts necessary to address the instant motion.  Any facts recited herein are taken from the First Amended Complaint, (Doc. 26 ("FAC")), and/or TRR's Amended Answer and Counterclaims, (Doc. 120 ("Answer"); *id.* at 18–47 ("Countercl.")).  I assume the factual allegations set forth in the Amended Complaint and the Amended Answer and Counterclaims to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *Demirovic v. Ortega*, 771 F. App'x 111, 113 (2d Cir. 2019) (holding that, in considering a motion to dismiss a counterclaim under Rule 12(b)(6), courts must "accept[] factual allegations as true and draw[] all reasonable inferences in the claimant's favor" (internal quotation marks omitted and alterations adopted)); *Gerdau Ameristeel U.S. Inc. v. Ameron Int'l Corp.*, No. 13-CV-07169, 2014 WL 3639176, at *2–3 (S.D.N.Y. July 22, 2014).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

In 2018 and thereafter, Chanel conducted an investigation of TRR's Chanel product offerings and discovered that TRR advertised as genuine and authentic at least seven counterfeit Chanel handbags.  (*Id.* ¶ 45; *id.* Ex. E.)  On February 1, 2019, Chanel filed the FAC, alleging that:  (1) TRR's authentication experts do not have the necessary qualifications to authenticate Chanel products and have failed to identify counterfeit Chanel bags; (2) TRR does not disclose sufficient information for consumers to understand that Chanel is not involved in TRR's authentication process or affiliated with TRR's business; and (3) TRR's advertising of its authentication process is false in light of TRR's failures to identify counterfeit goods.  (FAC ¶¶ 34–35, 37–39, 48, 65–66.)

TRR filed its motion to dismiss the FAC on March 4, 2019.  (Doc. 29.)  On March 30, 2020, I granted in part and denied in part TRR's motion to dismiss.  (Doc. 39.)  In particular, I granted the motion with respect to Counts One (trademark infringement under 15 U.S.C. § 1114(1)(a)), Four (false endorsement and unfair competition under 15 U.S.C. § 1125(a)(1)(A)), Six (violations of GBL section 349), and Seven (violations of GBL section 350).  (*Id.*)  I denied the motion with respect to Counts Two (trademark counterfeiting/infringement under 15 U.S.C. § 1114(1)(a)), Three (false advertising under 15 U.S.C. § 1125(a)(1)(B)), and Five (unfair competition under New York common law).  (*Id.*)

On May 29, 2020, TRR filed its answer to the FAC.  (Doc. 44.)  On October 4, 2020, I referred this case to Magistrate Judge Gabriel W. Gorenstein for general pretrial matters, including scheduling, discovery, non-dispositive pretrial motions, and settlement.  (Doc. 59.)  On February 25, 2021, TRR filed its Amended Answer and Counterclaims.  (Amended Answer.)  TRR's Counterclaims allege, among other things, that Chanel violated antitrust laws through its unlawful efforts to suppress competition that would have benefited TRR and consumers.  (*Id.* at

4

18–19.)  TRR alleges that Chanel illegally excluded TRR from competing with Chanel in an effort to monopolize the market.  (*Id*.)  TRR alleges that Chanel (1) entered into exclusive contracts with retailers and forced retailers to refuse to engage with resale competitors such as TRR; (2) engaged in a refusal to deal—*i.e.* a vertical boycott—with advertisers that deprived competitors like TRR from advertising in desirable locations; (3) propagated false advertisements representing that Chanel handbags purchased from resellers like TRR were likely to be fake; and (4) claimed that only Chanel could authenticate Chanel handbags in an effort to drive out competition by resellers like TRR.  (*Id*.)  Specifically, TRR asserts claims for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 for concerted refusal to deal (First Claim for Relief); monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (Second Claim for Relief); anticompetitive arrangement, agreement, and combination in violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340 (Third Claim for Relief); tortious interference with contract (Fourth Claim for Relief); and tortious interference with prospective business relations (Fifth Claim for Relief).  (*Id*.)

On March 18, 2021, Chanel filed its motion to dismiss TRR's Counterclaims and a motion to strike TRR's affirmative defense of unclean hands, (Doc. 136), as well as a supporting memorandum of law, (Doc. 137 ("MTD")).  On April 1, 2021, TRR filed its opposition brief.  (Doc. 138 ("Opp'n").)  On April 5, 2021, Magistrate Judge Gorenstein granted the parties' joint request that all deadlines in the case be stayed for three months while the parties pursued private mediation.  (Doc. 140.)  After several extensions of the stay, on November 18, 2021, the parties requested that Magistrate Judge Gorenstein lift the stay and reinstate Chanel's motion to dismiss TRR's Counterclaims and motion to strike the affirmative defense.  (Doc. 153.)  Magistrate Judge Gorenstein granted that request on November 22, 2021.  (Doc. 154.)  TRR's motion

5

became fully briefed on November 30, 2021, when Chanel filed its reply memorandum of law. (Doc. 157.)  On July 20, 2023, Magistrate Judge Gorenstein reinstated the stay at the parties' request.  (Docs. 344–45.)

On March 5, 2026, Magistrate Judge Gorenstein held a settlement conference.  (*See* Doc. 411.)  The parties were unable to reach a resolution and Magistrate Judge Gorenstein lifted the stay on discovery on March 6, 2026.  (*Id.*)  On that same date, I issued a short order permitting the parties to submit supplemental briefing related to Chanel's motion to dismiss TRR's Counterclaims and to strike its affirmative defense.  (Doc. 412.)  On March 13, 2026, TRR filed a supplemental letter brief.  (Doc. 414.)  On March 13, 2026, Chanel also filed a supplemental letter brief.  (Doc. 416.)

## II.    **Legal Standard**

### A.  *Rule 12(b)(6)*

The pleading standard applicable to complaints under Federal Rule of Civil Procedure 12(b)(6) applies equally to counterclaims.  *See Gerdau Ameristeel U.S. Inc.*, 2014 WL 3639176, at *2 ("Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint"); *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (noting that a "motion to dismiss counterclaims is governed by Rule 12(b)(6)").

To survive a motion to dismiss under Rule 12(b)(6), counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A counterclaim will have "facial plausibility when the [pleading party] pleads

6

factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that [the opposing party] has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the [counterclaims], the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render [the pleading party's] inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the counterclaims and must draw all reasonable inferences in the non-movant's favor. *See Kassner*, 496 F.3d 229 at 237.  The counterclaims need not make "detailed factual allegations," but must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the counterclaims are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### B.  *Rule 12(f)*

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The movant must file a motion to strike "within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).  To succeed on a motion to strike an affirmative defense, a plaintiff or defendant-counterclaimant must "show that:  (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff [or defendant-counterclaimant] would be prejudiced by inclusion of the defense." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019) (quoting

7

*S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)).  The first factor must be considered by reference to "the plausibility standard of *Twombly*" but with the recognition of the "context-specific" matter of "pleading an affirmative defense.'"  *Id*. at 98.  The third factor must be considered in light of the rule that "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation."  *Id.* at 98.  "Federal courts have discretion in deciding whether to grant motions to strike," *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13-CV-0538, 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013) (internal quotation marks omitted), and such motions are generally disfavored and will not be granted "unless it appears to a certainty that plaintiff [or defendant-counterclaimant] would succeed despite any state of the facts which could be proved in support of the defense," *Salcer v. Envicon Equities Corp*., 744 F.2d 935, 939 (2d Cir.1984), *vacated and remanded on other grounds*, 478 U.S. 1015 (1986) (internal quotation marks omitted).

### III.    Discussion

#### A.  *Motion to Dismiss*

##### 1.  Statute of Limitations

Chanel argues that each of TRR's Counterclaims is barred by the applicable statute of limitations and should therefore be dismissed pursuant to Rule 12(b)(6).  It is undisputed that the statutes of limitations are four years under the Sherman Act and Donnelly Act and three years under the law for tortious interference claims.  *See* 15 U.S.C. § 15(b); N.Y. Gen. Bus. Law § 340(5); N.Y. C.P.L.R. § 214.  According to Chanel, all the underlying acts occurred in 2015 and 2016.

TRR first alerted this Court that it intended to file its Counterclaims on October 30, 2020,

when it moved to amend its answer.  (Doc. 75.)  Magistrate Judge Gorenstein granted the motion to amend on February 24, 2021, (Doc. 119), and TRR filed its Amended Answer and Counterclaims on February 25, 2021, (Amended Answer).

TRR's allegations that Chanel committed antitrust violations stem from its inability to do business with Neiman Marcus in the "fall of 2015," with Saks "around the same time," with *New York Magazine* "in late 2015 or early 2016," and with *The New York Times* and *Vogue* around the same time as the incident with *New York Magazine*.  (Countercl. ¶¶ 42, 45, 50–51.)  All of these incidents occurred over five years before TRR filed its Amended Answer and Counterclaims on February 25, 2021, and over four years before TRR gave notice that it intended to file counterclaims alleging violations stemming from these incidents.  Any alleged violations tied to this conduct are thus barred by the four-year statutes of limitations under the Sherman Act and Donnelly Act and the three-year statute of limitations for tortious interference. TRR does not meaningfully dispute the untimeliness of the conduct alleged in its Counterclaims, but instead relies on the "continuing violation" doctrine in an attempt to bring the alleged conduct within the limitations period.

TRR argues that its Counterclaims allege independent antitrust violations that fall within the statute of limitations period that qualify as "overt acts," which in effect restart the statute of limitations period under the continuing violation doctrine.  (Opp'n 24.)  Specifically, TRR argues that it alleged in the Counterclaims that, from 2018 onward, "only Chanel itself can know what is genuine Chanel while refusing to license the authentication database that is purportedly required to authenticate Chanel items;" that Chanel "falsely represents to consumers, *to this day*, that Chanel handbags purchased from resellers (like TRR) are likely to be fake;" that Chanel "conspired and agreed with [Women's Wear Daily] *in 2019* to block advertisements by TRR;"

that Chanel "limited supply and raised prices when it perceived its bags as becoming too ubiquitous, *in recent years and to this day*;" and that Chanel "tolerated similar conduct by Farfetch, *in 2018 and to this day*." (Opp'n 25 (citing Countercl. ¶¶ 2, 35–37, 53, 56–59, 60–71) (emphasis in original).)

A cause of action in antitrust cases accrues each time a plaintiff or defendant-counterclaimant is injured by an act of the defendant and the statute of limitations runs from the commission of the act. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 338 (1971) (collecting cases). However, the exception to the typical statute of limitations rules requires "an overt act by the defendant . . . to restart the statute of limitations." *Rite Aid Corp. v. Am. Exp. Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 268 (E.D.N.Y. 2010) (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)). The limitations period then begins to run from the last overt act. *Id*.; *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) ("[E]ach overt act that is part of the violation and that injures the plaintiff [or defendant-counterclaimant] . . . starts the statutory period running again." (internal quotation marks omitted)). "An overt act 'is characterized by two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff [or defendant-counterclaimant].'" *Rite Aid Corp.*, 708 F. Supp. 2d at 268 (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996)). However, "the plaintiff [or defendant-counterclaimant] cannot use an independent, new act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period." *Klehr*, 521 U.S. at 190.

TRR acknowledges that the incidents it claims constitute antitrust violations were a "series of illegal vertical agreements by Chanel with retailers and publishers." (Opp'n 21.) An

10

ongoing agreement in the absence of any overt acts cannot trigger a new beginning of the statute of limitations period. *Chalmers v. Nat'l Collegiate Athletic Ass'n*, No. 24-CV-5008, 2025 WL 1225168, at *9 (S.D.N.Y. Apr. 28, 2025) ("[P]erformance of a contract is a manifestation of the overt act, namely the decision to enter the contract, rather than an independent overt act of its own," sufficient to restart the statute of limitations under the continuing violation doctrine (internal quotation marks omitted and alterations adopted)), *aff'd*, No. 25-1307-CV, 2025 WL 3628416 (2d Cir. Dec. 15, 2025). In other words, a plaintiff or defendant-counterclaimant cannot successfully argue application of the continuing violation doctrine based on conduct that occurred outside the limitations period by simply pointing to an alleged conspiracy to commit antitrust violations that continued into the limitations period. In *Ulrich v. Moody's Corporation*, I held that the defendant's alleged "continuing conspiracy to violate the antitrust laws," stemming from an agreement entered into outside the limitations period, did not constitute a continuing violation simply because the agreement continued into the limitations period. No. 13-CV-0008, 2014 WL 12776746, at *29 (S.D.N.Y. Mar. 31, 2014), *report and recommendation adopted as modified*, 2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014); *see also US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019) ("[P]erformance of a contract [is] a manifestation of . . . the decision to enter the contract, rather than an independent overt act of its own."); *Giordano v. Saks Inc.*, 654 F. Supp. 3d 174, 191–92 (E.D.N.Y. 2023) ("Consistent with the Second Circuit's decision in *US Airways*, Plaintiffs fail to allege a continuing violation exception to the statute of limitations. The decision to enter the contract . . . is the overt act that starts the limitations period. Actions taken by Defendants in performance of the no-hire agreement . . . are manifestations of the overt act.") (internal quotation marks omitted and alterations adopted)), *aff'd sub nom. Giordano v. Saks & Co. LLC*, No. 23-600-CV, 2025 WL

11

799270 (2d Cir. Mar. 13, 2025).

TRR's allegations that "only Chanel itself can know what is genuine Chanel while refusing to license the authentication database that is purportedly required to authenticate Chanel items," that Chanel "falsely represents to consumers, *to this day*, that Chanel handbags purchased from resellers (like TRR) are likely to be fake," or that Chanel "limited supply and raised prices when it perceived its bags as becoming too ubiquitous, *in recent years and to this day*" are insufficient to restart the tolling period. (Opp'n 25 (citing Countercl. ¶¶ 2, 35–37, 53, 56–59, 60–71) (emphasis in original).) This alleged conduct does not constitute either "new and independent act[s] that [are] not merely a reaffirmation of a previous act," nor does it "inflict new and accumulating injury on" TRR in order to qualify as separate overt acts. *Rite Aid Corp.*, 708 F. Supp. 2d at 268. Rather, these allegations merely "bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period" by attempting to connect the earlier events and bring the unactionable conduct within the limitations period. *Klehr*, 521 U.S. at 190.

TRR's monopolization claims under Section 2 of the Sherman Act, which stem from the same fact pattern, are time-barred for the same reasons. TRR alleges that Chanel engaged in "exclusionary conduct" and attempted to monopolize the market by "(1) depriving [Chanel's] competitors of access to necessary relationships with high-end retailers at brick-and-mortar locations, (2) excluding them from advertising in the most desirable print and digital locations, (3) making false advertisements characterizing their products as 'likely to be fake,' and (4) claiming that only Chanel can authenticate Chanel handbags while denying competitors access to the authentication database Chanel claims is required to authenticate an item." (Countercl. ¶¶ 99–100.) TRR points to the same set of factual allegations in support of the Section 2 claim. As

12

with the Section 1 claim, all the agreements allegedly aimed at monopolizing the market occurred in 2015 and 2016, outside of the limitations period.  For the same reasons stated above, TRR does not assert any overt acts of monopolization that would toll the statute of limitations period.  TRR's Section 2 monopolization claims are thus also time-barred.

Because these Counterclaims are time-barred, any amendment of these Counterclaims would be futile.  *See Wallace v. N.Y.C. Dep't of Corr.*, 112 F. App'x 794, 795 (2d Cir. 2004) (summary order) (affirming district court's denial of leave to amend where the statute of limitations had run and amendment would be futile).

### 2.   Failure to State a Claim

TRR's Counterclaims allege two events that occurred within the limitations period and which could arguably form the foundation of a continuing violation:  (1) that Chanel conspired and agreed with Women's Wear Daily ("WWD") to block advertisements by TRR in 2019 and (2) that Chanel "tolerated similar conduct [relating to vertical boycott allegations] by Farfetch, *in 2018 and to this day*."  (Opp'n 25 (citing Countercl. ¶¶ 53, 94) (emphasis in original).)  Both of these allegations, on their own, fail to state a claim upon which relief may be granted, and they cannot serve as the basis for a continuing violation that would toll the statute of limitations period.  I will address each in turn.

### a.   Women's Wear Daily Conspiracy

#### i.   *Antitrust Claims*

The only factual support TRR provides for its claim regarding WWD is that TRR was in discussions with WWD to advertise WWD's partnership with Burberry, but Chanel "used its dominance and influence to convince WWD not to run TRR's ads."  (Countercl. ¶ 53.)  According to TRR, WWD could not run the advertisements because of a "conflict with one of its

'huge partners.'"  (*Id*.)

To survive a motion to dismiss, "it is not enough to make allegations of an antitrust conspiracy that are consistent with an unlawful agreement; to be viable, a complaint [or counterclaim] must contain 'enough factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made.'"  *In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).  TRR's allegations that Chanel convinced WWD not to run TRR's advertisements because of a conflict with a "huge partner[]" are insufficient to state a claim for antitrust violations.  TRR does not offer any factual support that an agreement to engage in antitrust violations was actually made, nor does it offer any facts beyond the conclusory assertion that Chanel was the "huge partner[]" involved.  *See id*. at 50–52 (affirming dismissal of antitrust claims based on plaintiff's "averments of agreements made at some unidentified place and time"); *see also Twombly*, 550 U.S. at 557 (affirming dismissal because "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Moreover, TRR fails to demonstrate that Chanel's conduct harmed competition in the market rather than just TRR itself.  "The Sherman Act protects competition as a whole in the relevant market, not the individual competitors within that market."  *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 96 (2d Cir. 1998).  This means that "otherwise routine disputes between business competitors do not escalate to the status of an antitrust action."  *Id*.  Therefore, in order to state a valid antitrust claim, a plaintiff or defendant-counterclaimant must plead harm to "*competition*, not *competitors*."  *Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) (internal quotation marks omitted) (emphasis in original).  Here, TRR does not plausibly allege that Chanel's agreement with WWD caused any market-wide

14

disruptions.

TRR claims in its supplemental letter brief, (Doc. 414), that *DIRECTV, LLC v. Nexstar Media Group* supports the proposition that antitrust injury is sufficiently pled here.  162 F.4th 295 (2d Cir. 2025).  However, the Second Circuit's holding in *DIRECTV* does no such thing. The Court in *DIRECTV* found that "the district court erred by limiting the cognizable antitrust injury to the payment of supracompetitive prices and excluding the antitrust injury of reduced output."  *Id.* at 309.  This is because a price-fixing conspiracy can lead to higher prices for goods or reduced output of those same goods and sufficient allegations of harm to competition can be predicated on either kind of anticompetitive outcome.  *See id.*

Here, however, TRR's antitrust counterclaims relating to Chanel's agreements with WWD do not fail because of the type of alleged harm to competition is not cognizable, but rather because they do not allege any harm to competition at all.  TRR's claims concerning WWD address the negative effects on TRR, such as depriving TRR of access to potential customers and the ability to build its reputation and brand through public media outlets.  (*See* Countercl. ¶¶ 84–95.)  However, injury experienced only by TRR cannot form the basis of a valid antitrust claim without a showing that competition, as a whole, was affected in some way.  *See Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 245 (2d Cir. 1997) ("Without any allegation as to how market-wide competition will be affected, the complaint fails to allege a claim on which relief may be granted.").  More is needed than a conclusory allegation that TRR was unable to take out an advertisement in WWD in 2019 because of a conflict with a "huge partner." (*See* Countercl. ¶ 53.)  TRR fails to show how its failure to take out an advertisement in WWD in 2019 caused the price of that advertisement to rise in any way, much less that its failure to take out that advertisement resulted in a reduction in advertising output in

WWD.  Thus, even if TRR were able to plausibly allege anticompetitive behavior by Chanel, it

fails to allege injury beyond "simple loss of business," which "does not establish an antitrust

injury."  *Connecticut Ironworkers Employers' Ass'n v. New England Reg'l Council of

Carpenters*, 324 F. Supp. 3d 293, 310 (D. Conn. 2018) (internal quotation marks omitted).  "[A]t

most it reflects only harm to individual competitors, not to competition."  *Id.* (quoting *Minnesota

Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 661 (8th Cir. 2000)); *see also Casey's

Distrib., Inc. v. Nat'l Football League*, No. 22-CV-03934, 2025 WL 1928544, at *4 (S.D.N.Y.

July 14, 2025) ("Although the alleged scheme excludes Plaintiffs from purchasing from some

licensees, the scheme does not, as alleged, harm competition.  Antitrust law protects competition

not competitors.").  Therefore, even though Chanel's alleged agreement with WWD falls within

the statute of limitations period, TRR fails to plead facts sufficient plausibly allege an antitrust

claim.

ii.  *Tortious Interference Claim*

To the extent TRR alleges that the conduct involving WWD's advertisements constitutes

a claim for tortious interference with prospective business relations, TRR also fails to state a

plausible claim.[2]  To state a valid claim for tortious interference with business relations, a

plaintiff or defendant-counterclaimant must demonstrate the following:  "(i) the plaintiff had

business relations with a third party; (ii) the defendants interfered with those business relations;

(iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means;

and (iv) the defendants' acts injured the relationship."  *Scutti Enterprises, LLC. v. Park Place*

---

[2] TRR's allegations related to WWD's advertisements also do not support a claim for tortious interference with
contract.  "To state a claim for tortious interference with contractual relations under New York law, a plaintiff must
allege (1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's
knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages."  *Granite Partners,
L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 292–93 (S.D.N.Y. 1998) (internal quotation marks omitted).
TRR does not plead any facts to establish that Chanel intentionally caused WWD to breach any contract with TRR.

16

*Ent. Corp.*, 322 F.3d 211, 215 (2d Cir. 2003) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002)).  TRR's conclusory claim does not satisfy this standard.  TRR does not provide any factual support that Chanel acted for a "wrongful purpose" or "used dishonest, unfair, or improper means."  *Id*.  The Second Circuit defines "wrongful purpose" in this context as exerting "some degree of economic pressure" that "amounts to 'a crime or an independent tort.'"  *Scutti Enterprises, LLC v. Park Place Ent. Corp.*, 173 F. App'x 75, 76 (2d Cir. 2006) (summary order) (citing *Scutti*, 322 F.3d at 215–16 and quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (2004)).  TRR's conclusory statements regarding Chanel's interference do not allege economic pressure that amounts to an independent crime or tort and therefore do not constitute a valid claim for tortious interference with prospective business relations.

### b.   Actions Regarding Farfetch

The second action that TRR alleges to have occurred within the statute of limitations period relates to TRR's allegations that Chanel "tolerated similar conduct [relating to vertical boycott allegations] by Farfetch, *in 2018 and to this day*."  (Opp'n 25 (citing Countercl. ¶ 94) (emphasis in original).)  TRR's allegation that Chanel "tolerated" Farfetch's conduct does not satisfy the pleading standard for an antitrust violation.  TRR claims that Chanel made a "significant" investment in Farfetch in 2018, and that Chanel thereby became Farfetch's "juicy side hustle."  (Countercl. ¶¶ 67–68.)  According to TRR, Farfetch recently began reselling luxury handbags but only includes items from a few brands, including Chanel.  (*Id*. ¶ 69.)  TRR claims that Chanel only "tolerate[s]" the resale of its handbags by Farfetch because Chanel holds a significant investment in Farfetch.  (*Id*. ¶ 71.)  It is not entirely clear from the face of the pleading what kind of anticompetitive conduct TRR is claiming that Chanel engaged in with

17

regard to Farfetch.  TRR does not provide any factual details demonstrating that Chanel engaged in tying, bundling, refusal to deal, or some other sort of actionable conduct under the Sherman Act, or that it was somehow responsible for Farfetch's conduct.  In fact, TRR alleges the opposite—that Chanel merely "tolerate[d]" Farfetch's conduct.  I do not identify—and TRR does not supply—any cognizable legal claim against Chanel based on Farfetch's independent conduct.[3]

### 3.  Compulsory Counterclaims

In a second attempt to establish that its allegations are timely, TRR claims that all of its Counterclaims are compulsory under Rule 13 and therefore are not barred by the statute of limitations.  (Opp'n 26.)  According to TRR, Chanel's filing of the complaint on November 14, 2018 tolled the statute of limitations.  (*Id.*)

"[C]ourts generally hold that the filing of an action tolls the limitations period for compulsory counterclaims."  *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, No. 08-CV-1533, 2011 WL 13262163, at *4 (S.D.N.Y. May 4, 2011), *report and recommendation adopted*, 2011 WL 3163570 (S.D.N.Y. July 26, 2011) (internal quotation marks omitted).  A compulsory counterclaim is "any claim that . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a).  A counterclaim is compulsory under Rule 13 if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and this standard is met when there is a "logical relationship" between the counterclaim and the main claim.  *Jones v. Ford Motor Credit Co.*,

---

[3] TRR avers in its opposition brief that it "does not allege that Chanel's partnership with Farfetch is in itself anticompetitive," but rather that Chanel has tolerated conduct similar to its own allegations, seemingly those in the FAC.  (Opp'n 18.)  To the extent TRR alleges that this conduct relates to the affirmative defense of unclean hands, because I deny Chanel's motion to strike, (*see infra* Section II.B.), this argument is not barred.  However, Chanel's conduct regarding Farfetch does not support a claim for antitrust violations and, for this reason and the other reasons stated in this Opinion & Order, those claims are dismissed.

358 F.3d 205, 209 (2d Cir. 2004) (quoting Fed. R. Civ. P. 13(a)).  The "logical relationship" test asks "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

Here, Chanel alleges false advertising and counterfeiting through its claims that TRR sold counterfeit products and falsely advertised them in 2017 and 2018.  (*See* FAC.)  TRR's Counterclaims allege tortious interference and antitrust violations based on its claims that Chanel entered into vertical boycott agreements and attempted to monopolize the market in 2015 and 2016.  (*See* Countercl. ¶¶ 84–101.)  These allegations do not relate to the same conduct.  In fact, the alleged conduct occurred in entirely different timeframes, which cuts against TRR's argument that the conduct arises out of the same transaction.  *See Treppel v. Biovail Corp.*, No. 03-CV-3002, 2005 WL 2086339, at *11 (S.D.N.Y. Aug. 30, 2005) (holding that counterclaims were not compulsory in part because the transactions occurred over two years apart).  Nor do the alleged transactions rely on the same facts and evidence.  Chanel's claims require showing that TRR sold counterfeit products and falsely advertised them.  TRR's claims require that TRR establish Chanel engaged in illegal agreements with advertisers.  Because of these variations between the facts and evidence, judicial economy and fairness would not dictate that the issues be resolved in one lawsuit, and TRR's Counterclaims are therefore not compulsory.

### B.  *Motion to Strike*

TRR argues that Chanel's motion to strike TRR's affirmative defense of unclean hands is untimely because it was not filed "within 21 days after being served with the pleading," which in this case is TRR's initial answer.  (Opp'n 21 (citing Fed. R. Civ. P. 12(f).)  Chanel argues that this should not limit its motion because Chanel did not have any indication how the doctrine of

19

unclean hands would bar its claims, which is supported by the fact TRR pled the affirmative defense without any factual support or allegations.  (MTD 26–27.)  Chanel asserts that courts have broad authority to consider a Rule 12(f) motion "at any time."  (*Id*. at 27 (citing *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999).)  Although it is true that "the twenty (20) day rule [is] 'essentially unimportant,'" *Ciminelli v. Cablevision*, 583 F. Supp. 158, 161 (E.D.N.Y. 1984) (quoting 2A J. Moore, *Moore's Federal Practice,* ¶ 12.21), nonetheless, "[m]otions to strike under Rule 12(f) 'are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute.'"  *Moore v. Sequeira*, No. 21-CV-00787, 2022 WL 970094, at *3 (D. Conn. Mar. 31, 2022) (quoting *Corr. Officers Benevolent Ass'n of Rockland Cnty. v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005).

TRR's various submissions in this action demonstrate that Chanel's claim that it did not have any indication how the doctrine of unclean hands would bar its claims is not accurate.  TRR made various references to Chanel's own alleged anticompetitive conduct through the course of this action.  (*See, e.g.*, Doc. 17, at 1 ("Chanel seeks to shut down the secondary market for Chanel goods by permanently preventing TRR from reselling its consignors' products"); Doc. 17, at 14 ("Chanel's goal to shut down the lawful secondary market for Chanel goods is precisely the sort of anti-competitive maneuver the first-sale doctrine prohibits"); *id*. at 25 ("Chanel's real concern is not with public injury but with the very existence of the secondary market for Chanel goods"); Doc. 34, at 1 ("Chanel's objective is not to police the market for counterfeit goods, but rather to stifle the legitimate secondary market").)  On June 12, 2020, in the parties' joint letter in response to my Order and Notice of Initial Conference, which was filed only fourteen days after TRR filed its initial answer asserting the affirmative defense of unclean hands, (*see* Doc. 44), TRR explicitly stated its reasoning behind the affirmative defense:  "Chanel has unclean hands

20

by virtue of its anticompetitive schemes against the secondary market," (Doc. 47, at 3). Chanel did not move to strike the affirmative defense until March 18, 2021. (Doc. 136.) It is evident from the record that Chanel had ample notice of TRR's affirmative defense of unclean hands and the reasoning and the factual allegations behind it, thereby making Chanel's motion to strike untimely. Therefore, I exercise my discretion to deny Chanel's motion to strike.

## IV.    Conclusion

For the foregoing reasons, Chanel's motion to dismiss TRR's Counterclaims is GRANTED. In its supplemental letter brief, TRR requests leave to amend its Counterclaims. (Doc. 414 at 5.) In its supplemental letter brief, Chanel requests "an opportunity to respond more fully to demonstrate that amendment would be futile." (Doc. 416 at 5.) Because the Counterclaims denied in § III.A.1 are untimely, I find that any amendment would be futile. *See supra* at 13. However, TRR may seek formal leave to file Amended Counterclaims regarding the Counterclaims denied in § III.A.2. Any motion seeking such leave shall be filed by April 10, 2026, and must include as exhibits a copy of the proposed amended answer and counterclaims and a markup to show the revisions. Chanel shall file any opposition by April 24, 2026.

Further, Chanel's motion to strike the affirmative defense of unclean hands is DENIED. Accordingly, the Clerk of Court is respectfully directed to terminate the open motion at Document 136.

SO ORDERED.

Dated:  March 26, 2026
New York, New York

_____
Vernon S. Broderick
United States District Judge

21