

faegredrinker.com

**Jared B. Briant**
Partner
jared.briant@faegredrinker.com
+1 303 607 3588 direct

**Faegre Drinker Biddle & Reath** LLP
1144 15th Street, Suite 3400
Denver, Colorado  80202
+1 303 607 3500 main
+1 303 607 3600 fax

July 8, 2026

<u>**VIA ECF**</u>

Hon. Gabriel W. Gorenstein
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

>    Re:    ***Chanel, Inc. v. The RealReal, Inc.***, No. 18-CV-10626-VSB-GWG (S.D.N.Y.)

Dear Judge Gorenstein:

Pursuant to Your Honor's Individual Practice Rule 2.A, we write on behalf of The RealReal, Inc. ("TRR") in response to Plaintiff and Counterclaim Defendant Chanel, Inc.'s ("Chanel") July 6, 2026 Letter concerning outstanding discovery disputes with TRR.

## I.    The Dispute Regarding Customer Complaints and Authentication Records is Not Ripe for Court Intervention.

Chanel takes issue with the adequacy of TRR's production of customer complaints based on the existence of complaints on third-party websites such as the Better Business Bureau ("BBB") and Trustpilot and the lack of such complaints within TRR's production to date. This discovery dispute is not ripe for the Court's intervention.

Contrary to what Chanel's Letter suggests, TRR has searched for and produced documents and communications reflecting customer complaints and concerns related to authenticity. TRR ran agreed-upon search terms across its ESI collection designed to capture authentication-related complaints related to Chanel products. In addition, to identify customer complaints concerning the specific SKUs Chanel identified as allegedly counterfeit, TRR ran 75 SKU numbers across Zendesk[1] and produced all complaints relating to those SKUs. TRR has therefore produced documents on this issue already.

Chanel first raised the issue of the lack of documents reflecting complaints submitted to the BBB and Trustpilot in a June 24, 2026 deficiency letter. However, prior to the parties' most recent June 30, 2026 meet-and-confer, TRR understood that Chanel was raising this issue in the context of item-specific discovery and was seeking complaints concerning the specific SKUs Chanel alleged to be counterfeit. TRR had already run searches for the 75 SKUs designed to

---

[1] In its Letter, Chanel appears to confuse the issue of BBB and Trustpilot complaints with TRR's position concerning additional Zendesk searches and the burden associated with such searches. Zendesk is TRR's customer support platform and would not include correspondence received from the BBB or Trustpilot.

capture relevant complaints. During the meet-and-confer, Chanel clarified that it was raising a dispute beyond item-specific discovery and was seeking customer complaints concerning Chanel products generally. TRR then informed Chanel that its prior response on this issue was based on its understanding that the issue was cabined to item-specific discovery and further stated that it would evaluate and provide additional information concerning its ability to produce customer complaints submitted to the BBB or Trustpilot. TRR is currently in the process of identifying whether it can locate and produce complaints and responses submitted to the BBB or Trustpilot concerning authenticity of Chanel products, to the extent such records have not already been produced. Accordingly, the parties have not had a meaningful opportunity to meet and confer on this broader issue, and TRR expects that this is an issue that will benefit from further conferrals between the parties.

The same is true with respect to Coaching Reports. TRR understood that Chanel took issue with the lack of Coaching Reports produced in connection with item-specific discovery and did not appreciate until the most recent meet-and-confer that Chanel is seeking Coaching Reports related to Chanel-branded items more generally. TRR is still in the process of investigating this issue and will provide a response to Chanel in due course.

## II.    TRR Has Produced Extensive Item-Specific Discovery and Offered to Supplement Specific Items Chanel Views as Deficient.

Chanel next takes issue with the adequacy of TRR's production of item-specific discovery (i.e., discovery related to specific SKUs Chanel has alleged to be counterfeit), identifying in chart form a host of alleged gaps and deficiencies in TRR's production across 14 categories of information. In addition, Chanel points out two specific examples of alleged deficiencies in its letter: (1) the lack of screenshots for a Chanel-branded J-12 watch removed from TRR's website *in 2019* and recently alleged by Chanel to be counterfeit; and (2) the lack of item-specific documents "concerning CHA665513 that support TRR's explanation that the scanning of photographs which advertised a TRR-authenticated CHANEL-branded handbag with a Michael Kors lining were an error and the subsequent efforts to correct the mistake." As set forth below, TRR has already produced reasonable and proportional item-specific discovery for the allegedly counterfeit products, and any alleged gaps in its production are in all likelihood because such documents do not exist.

### A.    Item-Specific Discovery Generally

As a threshold issue, Chanel's approach of pointing to the existence of a particular record type (such as a website screenshot or advertisement printout) for one product to argue that the same record must exist for a different product is fundamentally flawed.  Each item listed or sold by TRR has its own unique history — including what records were created, what images were captured, and what information was entered into TRR's systems at the time of listing.  The absence of, for example, a screenshot for the J-12 watch does not mean that such a screenshot exists and was withheld; it simply means that no such screenshot was created or retained for that item.  Chanel cannot bootstrap a discovery deficiency for a product from the mere existence of a particular document type for another product. The fact that different items are associated with different records reflects the reality of TRR's business operations, not a failure to comply with discovery obligations.

Hon. Gabriel W. Gorenstein                     - 3 -                          July 8, 2026

TRR has diligently searched for and produced item-specific discovery through a series of custodial and non-custodial searches. For all SKUs, TRR searched for and produced Dior[2] and MySales records. TRR also ran searches across its ESI collection to identify additional relevant documents concerning each SKU. For the 75 SKUs identified by Chanel pre-stay, TRR also searched and produced Zendesk records and holograms to the extent they existed.

The reality is that the majority of "missing" documents identified by Chanel simply do not exist outside of Dior records or MySales pages (e.g., sales records, sales price, commissions) or have already been produced to the extent any responsive documents were captured by TRR's ESI searches and non-custodial collections (e.g., customer complaints and internal correspondence). TRR cannot produce what it does not have. Nor should TRR be required to hunt for specific documents for each individual SKU to confirm for Chanel that they do not exist when it has already made reasonable efforts to search for and produce responsive documents. *See, e.g., Margel v. E.G.L. Gem Lab Ltd.*, 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) (observing that a party's good faith averment that its production is complete and the documents sought do not exist is sufficient unless requesting party can make an adequate showing to overcome this assertion); *Johnson v. L'Oréal USA*, 2020 WL 5530022, at *3 (S.D.N.Y. Sept. 15, 2020) ("Plaintiff is not entitled to every single document that could possibly have existed. Discovery must be reasonable, not perfect."). If a particular document has not been produced for a specific item, Chanel is free to ask questions about why certain records do not exist in depositions.

Nevertheless, TRR has offered — and continues to offer — to review, and if necessary retake, screenshots or re-pull records for any specific items for which Chanel contends that existing productions are cut off or unclear. In fact, TRR is currently in the process of reviewing a list of Bates numbers provided by Chanel in this category and evaluating whether re-production is needed. Nothing more should be required at this point.

B.      **The J-12 and Michael Kors Examples**

TRR has produced Dior and MySales records related to the J-12 watch Chanel alleged is counterfeit for the first time in April 2026. TRR informed Chanel that it does not have additional records beyond what has been produced, including screenshots or copyrighting materials, but Chanel continues to request such records. TRR cannot produce what it does not have.

As to the second example cited by Chanel, Chanel claims that the item sold under TRR CHA665513 is counterfeit because the handbag shown in the product listing is a Michael Kors-branded bag and Chanel does not produce Michael Kors branded products. TRR has repeatedly explained that CHA665513 was a pink Chanel 3-piece beach tote set (originally consigned under SKU CHA593808 and later re-SKUed as CHA665513) that was sold and shipped in February 2022. The Michael Kors item identified by Chanel was erroneously scanned into the CHA665513 database record shortly after the original item shipped, displacing the beach tote's original photos. TRR produced documents confirming the error, specifically, the Dior database listing for the original item which confirmed that the item sold under CHA665513 in February 2022 was the CHANEL-branded beach tote set. TRR has repeatedly explained that it is not aware of any additional email correspondence or documents concerning this issue beyond what has been

---

[2] TRR's Dior database contains records of items consigned with and sold through TRR, including product details, product images, intake and authentication information, and consignment and sales information.

produced, yet Chanel continues to seek additional documents on this item. Again, TRR cannot produce what it does not have.

### C.    Consignor Agreements

The Court previously ordered at a May 2023 discovery conference that Chanel provide TRR a list of 10 SKUs for which TRR would be required to produce signed consignor agreements. The Court found that if TRR could show it had signed agreements for all 10 SKUs, it would not need to produce any additional consignor agreements. (May 15, 2023 Hr'g Tr. 56:11–15 ("[Chanel] can pick ten numbers. If they're all signed, that'll be enough.").) After the stay was lifted, Chanel provided the 10 SKUs, and TRR provided signed agreements for 5 of the SKUs and is in the process of collecting documents that reflect that TRR's Terms of Service and consignment terms were accepted for the remaining SKUs.

### D.    Additional SKUs

Lastly, Chanel claims that TRR is "unwilling to undertake discovery relating to general discovery that is likely to identify additional counterfeit CHANEL-branded items, or related to additional counterfeit items that have been recently discovered," and has "limited discovery in this case to the 75 [allegedly] counterfeit CHANEL-branded items previously identified by Chanel." (ECF No. 481 at 4.)  It is unclear what "discovery relating to general discovery" or "related to additional counterfeit CHANEL-branded items" Chanel is referring to, but it is not true that TRR has refused to produce discovery beyond the 75 allegedly counterfeit items identified by Chanel pre-stay. To the contrary, TRR produced Dior and MySales records for an additional ten items identified by Chanel post-stay and conducted additional searches across its ESI collection for potentially responsive documents.

While TRR has produced some discovery concerning the additional ten items as a compromise, it cannot keep re-doing its document collection and production each time Chanel identifies another allegedly counterfeit product. As Your Honor observed during the May 15, 2023 discovery conference, "This case has to end at some time. They could be finding items up until the day of trial. We can't proceed in that manner. We have to have some orderly end to discovery." No further item-specific discovery should be required.

### III.    TRR Has Produced Documents Sufficient to Substantiate its Contention Concerning Errors in Serial Numbers.

TRR previously produced a list reflecting purchases of Chanel products for the three-month period spanning October 1, 2017 to December 31, 2017, and Chanel noted that certain Chanel products listed in the records contained non-existent serial numbers.  Certain of these discrepancies were the result of typographical errors and mistakes made by TRR employees, and the Court ordered TRR to produce evidence of that fact, including photographs. TRR did so in the form of a spreadsheet containing photos of the serial number stickers. The photographs demonstrate that the serial numbers on the physical items do not match the entries in TRR's records, thereby confirming the errors were typographical in nature.

Chanel claims that it is "requesting Product-Specific Information regarding each of the CHANEL-branded items which were identified by TRR as containing typographical errors and mistakes." Though it is not at all clear from Chanel's letter what "Product-Specific Information"

Hon. Gabriel W. Gorenstein                      - 5 -                      July 8, 2026

it is seeking, Chanel has previously demanded additional documentation, such as internal system records or written confirmations. This goes beyond what the Court ordered and what is necessary to establish that a typographical error occurred.  The Court ordered production of evidence of that fact, and TRR has complied by producing such information.  TRR maintains that no further production is warranted on this issue.

**IV.    Chanel is Not Entitled to Every Serial Number for Every Chanel-branded Product TRR Has Ever Sold, Regardless of Whether Chanel Has Alleged that Product to be a Counterfeit.**

Chanel devotes half of its Letter to arguing that it is entitled to serial numbers for every Chanel-branded product TRR has ever advertised or sold. TRR has sold over *1 million* Chanel-branded products during the life of the company. Chanel's position that TRR should be required to provide Chanel with over *1 million* serial numbers so it can identify and allege additional counterfeit products is untenable and would turn the proportionality standard on its head. If Chanel obtains the discovery it seeks, this case will never end.

As a threshold matter, the Court has already addressed this issue. During an October 13, 2020 discovery conference, the Court ordered TRR to provide a three-month sampling of serial numbers as a "first step" to addressing the dispute concerning production of serial numbers and observed that "if it turns out that there's significant counterfeiting, that will take us one way, if it turns out there is no additional counterfeiting, that will take us another." (Oct. 13, 2020 Hr'g Tr. 36:3-17.)  The sample provided did not show any evidence of "significant counterfeiting." Despite this and contrary to the Court's guidance, Chanel again advances a series of arguments as to why it is entitled to wide-ranging discovery untethered from the actual claims and defenses in this case. None have merit.

*First*, Chanel argues that TRR has put the entire universe of Chanel-branded products at issue by arguing to the Court that Chanel has identified only a small fraction of items sold by TRR as infringing or counterfeit.  But it is Chanel's burden to prove that TRR sold counterfeit products. Chanel's position that TRR cannot point out that Chanel has identified only a small fraction of counterfeit products when compared to the total universe of products sold by Chanel without opening the door to a fishing expedition on every product ever sold is not reasonable, practical, or supported by any case law. Moreover, as Chanel should know, many authentic Chanel items (such as jewelry, shoes, and ready to wear items) do not have serial numbers, such that additional discovery concerning serial numbers is not even relevant to this point.

*Second*, Chanel argues that it is entitled to broad discovery of serial numbers because Section 1117 of the Lanham Act requires a plaintiff to prove sales only when seeking disgorgement of profits; the burden then shifts to the defendant to prove deductions and/or that the sales were not attributable to the infringement. But the Lanham Act's burden-shifting framework for disgorgement has nothing to do with the scope of discovery. It is Chanel's burden to prove infringement and/or the sale of counterfeit products; only once that threshold burden of liability is established do damages come into the equation at all. Chanel's argument in this regard is nonsensical.

*Third*, based on the three-month sampling TRR provided, Chanel now argues that it is entitled to all serial numbers for all CHANEL-branded products ever sold because it identified "at least three items with Chanel Serial Numbers for which no genuine CHANEL-branded items were

manufactured or sold by Chanel" and over 100 products with non-existent serial numbers from the sample. TRR has already explained, and produced documents to substantiate, that the products with non-existent serial numbers were the result of typographical errors. As to the three items Chanel alleges contain serial numbers that do not correspond to genuine CHANEL-branded products, the sample produced by TRR contained almost **4,000** entries containing serial numbers for CHANEL-branded handbags.  That Chanel identified 0.075% of products from the sample as allegedly counterfeit is hardly evidence of "significant counterfeiting" that would justify opening the door to discovery on every serial number for every CHANEL-branded product ever sold by TRR.

*Fourth*, Chanel argues that TRR "engaged in wholesale 'scrubbing' of its website of all Chanel Serial Numbers" from its listings for CHANEL-branded products after this lawsuit was filed to hinder Chanel's ability to discover the true extent of alleged counterfeit products. TRR has repeatedly explained that its decision to remove serial numbers from its website *in 2018* – which decision was not limited to Chanel items – was a business decision arising out of concerns that Chanel was using the serial numbers to blacklist customers that sold genuine products through TRR. Further, the availability of serial numbers *helps* counterfeiters, not consumers, such that the removal of serial numbers was part of an effort to *reduce* counterfeiting by preventing counterfeiters from collecting and replicating serial numbers from TRR's website. (ECF 337 at 12-13.) In any event, TRR's decision to remove the serial numbers from its website does not have any bearing on whether Chanel is entitled to broad discovery on all serial numbers under the Federal Rules of Civil Procedure.

*Finally,* Chanel argues that it should be permitted discovery on every serial number for every Chanel-branded product TRR advertised or sold because it has allegedly identified additional counterfeit products throughout this litigation. As a threshold issue, these are allegations only, and Chanel has not proven that these purportedly counterfeit products are, in fact, counterfeit. But more fundamentally, Chanel's ability to allegedly identify counterfeit products *without* the benefit of serial numbers, including through test buys, examination of TRR's documents, and third-party websites, underscores that it does not actually need the extremely broad discovery it seeks to support its claims in this case.

In short, the sample set of serial numbers provided by TRR pursuant to this Court's October 2020 Order did not establish significant counterfeiting. Chanel has provided the Court with no justification as to why it should be entitled to obtain discovery on serial numbers for every CHANEL-branded product ever advertised or sold by TRR.  Opening the door to discovery on more than **1 million products** has the potential to significantly expand the scope of discovery in this case, which has been pending for eight years. This request amounts to a fishing expedition and the parties should instead focus on pursuing discovery that is relevant, proportional, and tailored to the claims and defenses that were actually pled in this case.

Respectfully submitted,

*/s/ Jared B. Briant*

Jared B. Briant

cc:      All counsel of record