faegre drinker

faegredrinker.com

**Jared B. Briant**
Partner
jared.briant@faegredrinker.com
+1 303 607 3588 direct

**Faegre Drinker Biddle & Reath LLP**
1144 15th Street, Suite 3400
Denver, Colorado 80202
+1 303 607 3500 main
+1 303 607 3600 fax

October 15, 2026

**VIA ECF**

The Honorable Gabriel W. Gorenstein
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

**Re: *Chanel, Inc. v. The RealReal, Inc.*, No. 18-CV-10626-VSB-GWG (S.D.N.Y.)**

Dear Judge Gorenstein:

We represent Defendant The Real Real, Inc. ("TRR") in the above-referenced matter, and we write jointly with plaintiff Chanel, Inc. ("Chanel") pursuant to the Your Honor's Individual Practice Rule 2.A. The parties have met and conferred[1] regarding the discovery dispute raised herein and remain at an impasse regarding the scope of discovery on TRR's unclean hands affirmative defense. The parties respectfully request the Court's intervention and set forth their respective positions below.

## I. Scope of Discovery Regarding TRR's Unclean Hands Defense

The parties remain at an impasse concerning the scope of discovery on TRR's affirmative defense of unclean hands. At the July 31, 2026 conference, Magistrate Judge Gorenstein directed that discovery on TRR's unclean hands defense should go forward and instructed the parties to "talk about specific requests and figure out whether they meet the unclean-hands-defense case law or not." (July 31, 2026 Hr'g Tr. 38:10–21.) Following that directive, TRR identified specific Requests for Production which it contends fall within the scope of the unclean hands defense and provided explanations of the relevance of each request. Chanel asserts that none of the Requests for Production fall within the scope of unclean hands. The parties have been unable to resolve this dispute and respectfully submit their competing positions for the Court's consideration.

[1] In addition to and following multiple written email exchanges on the issue, on October 8, 2026, counsel for TRR (Jared Briant, Katlyn Moseley, and Arathi Kumar) conferred with counsel for Chanel (Ted Max, Tyler Baker, and Olga Zaynetdinova) for approximately one hour to discuss the parties' discovery dispute regarding the scope of unclean hands but were unable to resolve the issue. TRR informed Chanel during the meet-and-confer that it believed the parties to be at an impasse and that it would be seeking a conference with the Court.

**A. TRR's Position**

The doctrine of unclean hands is recognized as a valid affirmative defense in a trademark infringement case that may bar some or all relief sought by the plaintiff if the plaintiff is "'guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999) (*quoting Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996)). The misconduct at issue must relate to the plaintiff's acquisition or use of its trademark. *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 276 (S.D.N.Y. 2022). An example "of conduct that might qualify as sufficiently related to a trademark action to support an unclean hands defense [is] when a plaintiff encouraged or induced the commission of a wrong." *Id.* Unclean hands is also a defense against false advertising claims and will bar relief where the plaintiff has engaged in the same or materially similar deceptive advertising practices. *Stokely–Van Camp, Inc. v. Coca–Cola Co.*, 646 F. Supp. 2d 510, 533 (S.D.N.Y. 2009) (holding that unclean hands applies where the misconduct has a "material relation" to the equitable relief the plaintiff seeks and barring injunctive relief on a false advertising claim where the plaintiff "engaged in the same alleged misconduct"); *POM Wonderful LLC v. Coca Cola Company*, 166 F. Supp. 3d 1085, 1088 (C.D. Cal. 2016).

Courts in this district and elsewhere recognize that an allegation of trademark misuse and/or an antitrust violation can form the basis of an unclean hands defense where the trademark itself "has been the basic and fundamental vehicle required and used to accomplish the violation." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969). In *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, for example, the district court denied a motion to strike the defendants' affirmative defense of unclean hands where the defendants—who were legally entitled to sell the plaintiffs' products—alleged that the plaintiffs had attempted to block their participation in the sale of the plaintiffs' products and were therefore "attempting to misuse their trademarks for anticompetitive purposes." 189 F.R.D. at 273. Other conduct that may support an affirmative defense of unclean hands includes threats by the plaintiff to retailers to withhold the right to use the plaintiff's trademark unless the retailer assisted in anticompetitive conduct. *See Carl Zeiss*, 298 F. Supp. at 1316.

Here, Chanel asserts claims against TRR for both false advertising and counterfeiting and seeks broad injunctive relief. TRR contends that each of these claims is barred by Chanel's own unclean hands, including because Chanel has used its CHANEL trademark to shut down lawful competition and resale in the secondary market and is otherwise guilty of materially similar false and deceptive advertising conduct that forms the basis of Chanel's claims against TRR. Indeed, TRR alleges that Chanel engaged in specific conduct that supports TRR's unclean hands defense, including (1) suggesting that Chanel, as the owner of the CHANEL mark, is the only company that can provide authentic products; (2) telling consumers that products sold through TRR are likely to be fake; and (3) threatening to withhold the right to use its trademarks from retailers that partner with TRR or other resellers in the secondary market.

Consistent with these allegations, TRR identified for Chanel at least ten Requests for Production that seek documents and information relevant to its unclean hands defense:

1. Requests for Production No. 6: All documents and communications concerning the resale of Chanel handbags by Chanel, TRR, or on the secondary resale market.
2. Requests for Production No. 7: All studies, evaluations, surveys, or analyses conducted by or on behalf of Chanel regarding the secondary resale market for Chanel products.
3. Requests for Production No. 8: All communications between Chanel and retailers (including without limitation Neiman Marcus and Saks Fifth Avenue) regarding TRR or any other reseller of Chanel handbags.
4. Requests for Production No. 9: All documents and communications concerning communication between or on behalf of Chanel and any digital or print media outlet (including without limitation New York Magazine, Vogue, The New York Times, and/or CNBC) regarding TRR or any other reseller of Chanel handbags.
5. Requests for Production No. 16: Documents sufficient to show the policies, procedures, guidelines, rules and regulations governing Chanel's approval of authorized sellers of Chanel products.
6. Requests for Production No. 27: All documents and communications concerning your desire to prevent TRR or any other reseller from reselling Chanel goods.
7. Requests for Production No. 28: All documents and communications concerning opposition research, public relations strategy, advertising, or marketing regarding TRR or any other reseller of Chanel handbags.

Third Set of Requests for Production

8. Requests for Production No. 54: All Documents concerning estimations of what proportion, percentage, or number of purported Chanel handbags sold or offered for sale on the secondary market are inauthentic.
9. Requests for Production No. 67: All Documents concerning Chanel's efforts made or strategies formulated to permit, allow or encourage certain entities to sell or offer for sale Chanel handbags in the secondary market, or to discourage certain entities from selling or offering for sale Chanel handbags in the secondary market.
10. Requests for Production No. 68: All Documents concerning efforts Chanel has made or strategies Chanel has formulated to prevent, limit or discourage media outlets from promoting TRR, partnering with TRR, or accepting, running and/or publishing TRR advertisements.

As explained below, each of these Requests seeks information that is relevant to TRR's unclean hands defense and therefore well within the scope of permissible discovery. Chanel has objected wholesale to all of the Requests.

**1. False Advertising**

With respect to false advertising, Chanel alleges that TRR's representations and guarantees about the reliability and expertise of its authentication process are false and misleading because only Chanel can identify a genuine Chanel product. (*See* ECF 26 at ¶¶ 34–35, 80–97.) In defense,

TRR alleges that Chanel's hands are unclean with respect to its false advertising allegations against TRR because Chanel has engaged in the same or similar deceptive conduct, namely, making false and misleading representations regarding the reliability of TRR's authentication process. Specifically, TRR has alleged that Chanel has made its own false statements concerning the legitimacy of lawful resale, including by suggesting that Chanel, as the owner of the CHANEL mark, is the only company that can provide authentic products, and by telling consumers that products sold through websites such as TRR are "likely to be fake"—a statement that is directly contradicted by the sampling previously produced in this case. (*See, e.g.*, ECF 138 at 36-39 (identifying these statements and allegations as the basis for TRR's unclean hands defense); Countercl. (Dkt. 120) at ¶ 57 (citing statements on Chanel's website that goods purchased from resellers are "likely to be fake"); Opinion & Order (Dkt. 422) at 21 (finding allegations in the counterclaim gave Chanel ample notice of the basis of TRR's unclean hands defense.)[2]

Under Rule 26(b), TRR may pursue discovery to explore both the scope of Chanel's alleged false advertising and the bases for these false and deceptive statements. Accordingly, TRR seeks discovery on Chanel's communications with consumers and third parties regarding TRR and the resale market (RFPs 6, 8, 9), any studies or evaluations Chanel has conducted concerning the proportion of counterfeiting proven or suspected on the resale market (RFPs 7, 54), and Chanel's overall attitudes and strategies with respect to TRR and the resale market (RFPs 7, 27, 28). Each of these categories seeks information that is relevant to TRR's unclean hands defense, and they are targeted to identify documents or information related to the scope and nature of any statements or representations made by Chanel regarding the authenticity of TRR's products and/or TRR's ability to authenticate CHANEL-branded products, as well as the truth or falsity of such statements. *Stokely–Van Camp*, 646 F. Supp. 2d at 533; *POM Wonderful LLC v. Coca Cola Company*, 166 F. Supp. 3d 1085, 1088 (C.D. Cal. 2016) (holding that the plaintiff's false statements about the health benefits of its product barred false advertising claims against the defendant alleging that the defendant made false statements concerning the ingredients in its product, even if the court were to apply a strict "direct relation" standard).

In refusing to provide discovery in response to these requests, Chanel raised two primary arguments: (1) TRR's unclean hands defense is not related to Chanel's offensive claim because it is not the same advertising at issue; and (2) the conduct at issue is neither inequitable nor in bad faith. This position is untenable. As to the first argument, TRR need not show that Chanel has made the exact same statements that it asserts are false and misleading when made by TRR. Instead, all that is required is that the conduct alleged as giving rise to unclean hands bear a "material relation" to the allegations in suit. *Stokely–Van Camp*, 646 F. Supp. 2d at 533. That standard is met here. Chanel alleges that TRR has made materially false and misleading statements concerning its authentication processes and abilities. In turn, TRR has alleged that Chanel has made materially false and misleading statements concerning both parties' authentication processes and abilities.

Chanel also relies heavily on *Tiffany (NJ) Inc. v. eBay, Inc.* for the proposition that aggressive enforcement of trademark rights, including through statements that may imply products sold by third-party sellers are likely to be counterfeit, cannot form the basis of an unclean hands

[2] TRR has also alleged that Chanel itself has sold counterfeit Chanel items in its boutiques and has thus made false statements regarding the authenticity of products sold by Chanel. (ECF 138 at 38 n.29.)

defense because (1) such actions do not rise to the level of unconscionable or brazen behavior and (2) the defense was not related to the subject matter of the plaintiff's claims. 2006 WL 8461405, at *3 (S.D.N.Y. Mar. 31, 2006). *Tiffany* is distinguishable in multiple respects. First, in *Tiffany*, Tiffany suspected that ***up to 90 percent*** of Tiffany products sold on eBay were counterfeit. In contrast, the evidence produced to date indicates that less than one-tenth of a percent of products sold by TRR in Q4 2017 were allegedly counterfeit. (*See* Dkt. 497 at 9.) Allegations that Chanel has made statements that products sold by TRR are "likely to be fake" when only a negligible portion of CHANEL-branded products sold are alleged to be counterfeit are sufficient to allege bad faith. Second, *Tiffany* did not involve a false advertising claim. As such, the court's determination that Tiffany's alleged false statements did not relate to the subject matter of the trademark infringement claims is inapposite here.

While it is of course a question for the factfinder to decide whether the conduct is in bad faith or inequitable, allegations of deliberate false statements concerning the authenticity of TRR's products are, at least at the discovery stage, more than enough to support a claim of bad faith. The requested discovery satisfies Rule 26(b).

**2. Counterfeiting**

Chanel has asserted a counterfeiting claim against TRR and seeks broad injunctive relief prohibiting TRR from selling, offering, advertising, marketing, or distributing any product that bears any mark that is a simulation, reproduction, copy, colorable imitation, or confusingly similar variation of the CHANEL trademarks. (ECF 26 at 30.) If, according to Chanel, only it can identify genuine CHANEL products, the broad relief it seeks would, in essence, shut down sales of even genuine CHANEL-branded products on the secondary market by TRR to the extent such products have not been deemed genuine by Chanel.

The crux of TRR's unclean hands defense is that Chanel has attempted to weaponize the CHANEL trademark to eliminate or substantially reduce ***lawful*** resale in the secondary market—a practice that unquestionably involves "fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party" and is related to the broad injunctive relief that Chanel seeks. *Estee Lauder*, 189 F.R.D. at 272. While the full scope of Chanel's conduct is currently unknown (and will remain unknown if Chanel continues to stonewall discovery), TRR has alleged that Chanel has, at a minimum, threatened to deny authorized retailers—including Neiman Marcus and Saks Fifth Avenue—the ability to carry CHANEL-branded products unless those retailers terminated their partnerships with TRR. (*See* ECF 138 at 25 (discussing allegations that Chanel demanded Neiman Marcus amend its partnership with TRR to prevent consignment of CHANEL-branded merchandise); *id.* at 36–39 (noting TRR's unclean hands defense is based on overlapping anticompetitive conduct in the secondary market).) These actions constitute anticompetitive conduct intended to block TRR—which is legally entitled to resell genuine CHANEL-branded products—from participating in the sale of the plaintiff's products and go to the heart of Chanel's requested injunctive relief.

This conduct constitutes use of the CHANEL mark itself in an anticompetitive fashion because Chanel's leverage over these retailers derives from Chanel's control over access to the CHANEL trademark and the branded goods that bear it. This is precisely the type of trademark misuse for anticompetitive purposes that formed the basis of the defendants' unclean hands defense

in *Estee Lauder*, and the court allowed discovery to proceed, including specifically discovery into the plaintiff's policies and procedures and relationship with its authorized retailers. TRR seeks the same and similar discovery here (*see* RFPs 8, 9, 16, 27, 67). *Estee Lauder*, 189 F.R.D. at 272–73 (denying motion to strike unclean hands defense where defendant alleged plaintiff attempted to block its participation in the sale of plaintiff's trademarked products); *Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*, 251 F. Supp. 968 (W.D. Mo. 1966) (evidence that trademarks were used to license a single company and eliminate competition was sufficient to support unclean hands); *cf. Carl Zeiss*, 298 F. Supp. at 1316 (finding no unclean hands where "plaintiffs never threatened to withhold the right to use the trademarks from a dealer or distributor unless he assisted in anti-competitive activities").

In response to TRR's multiple emails explaining the bases for its unclean hands defense and during the parties' meet-and-confer, Chanel has argued that each of the Requests are "unrelated to claims asserted against TRR" and concern collateral conduct. Not so. The Requests are related to the counterfeiting claims asserted against TRR because the CHANEL trademark is the "basic and fundamental vehicle required and used to accomplish" this inequitable and bad-faith conduct.[3] Indeed, the value to retailers and consumers of carrying or purchasing CHANEL-branded products is inseparable from the mark itself. *See Carl Zeiss*, 298 F. Supp. at 1315 (articulating the "basic and fundamental vehicle" standard and noting that evidence that the "trademarks were a competent producing cause which made possible the alleged antitrust violation" would support an unclean hands defense); *Estee Lauder*, 189 F.R.D. at 272 (applying the same standard). Discovery concerning Chanel's efforts to reduce or eliminate competition from TRR or others in the secondary resale market is proper.

In support of its argument, Chanel cites this Court's observations at the March 10, 2022 conference, in which the Court stayed discovery on TRR's unclean hands defense and antitrust counterclaim pending Judge Broderick's determination of Chanel's motion to dismiss. In so holding, the Court relied heavily on *Carl Zeiss*, in which the district court dismissed an antitrust misuse defense (now known as unclean hands) *after* a trial on the merits and where the evidence failed to show that plaintiffs denied, or threatened to deny, access to their trademarks to third parties unless they engaged in certain anticompetitive conduct. Questions related to the merits of TRR's unclean hands defense are not a basis to deny discovery. *See Estee Lauder*, 189 F.R.D. at 273 ("While the evidence provided is, at best, inconclusive, it suggests the possibility that Plaintiffs are attempting to misuse their trademarks for anticompetitive purposes."). Here, TRR has alleged that Plaintiffs are misusing their trademark for anticompetitive purposes, including through threats to retailers. At this juncture, that is sufficient to allow discovery to proceed.

Chanel further contends that discovery on these Requests should not move forward because "TRR has not alleged the existence of deceptive trademarks or that Chanel engaged in fraud in connection with the procurement or maintenance of its trademarks" and has further demanded that TRR "provide specific facts to explain how the RFPs" relate to Chanel's registration and maintenance of its trademarks. Chanel's position is contrary to law in two respects. ***First***, a defendant need not allege that a trademark is deceptive or that the plaintiff procured or maintained

[3] Chanel contends in its portion of the Joint Letter that "TRR's counsel conceded" during the parties' meet-and-confer conference that the inequitable conduct alleged "did not involve the use of the Chanel trademarks as the vehicle required and necessary to achieve the alleged inequitable conduct." TRR made no such concession.

its trademark registration through fraud. Unclean hands applies broadly to misconduct relating to the plaintiff's acquisition ***or use of its trademark.*** *Jackpocket*, 645 F. Supp. 3d at 276. It is Chanel's improper use of its trademark that is at issue here. ***Second***, TRR need not come forward with "specific facts" simply to obtain discovery on its unclean hands defense. It need only show that the discovery it seeks is relevant to its claim or defense. Here, TRR easily clears that low bar for the reasons set forth above. *See Cohen v. Cohen*, 2015 WL 4469704, at *3 (S.D.N.Y. June 29, 2015) (internal quotation marks and citations omitted) ("The bar is relatively low, requiring the requestor to demonstrate only any possibility of relevance sufficient to warrant discovery.").

Chanel has also argued that TRR is not entitled to this discovery because "[t]here have been no credible allegations or threats to or coercion of retailers." Chanel once again puts the cart before the horse. Whether TRR's allegations are "credible" is ultimately an issue for the factfinder. At this stage, TRR has alleged bad-faith conduct with respect to the use of the CHANEL mark in Chanel's communications with retailers, and such allegations remain in the case. As such, the requested discovery satisfies Rule 26(b).

Finally, Chanel argues that none of these Requests are "based on any allegation of inequitable or bad faith conduct" because its actions "were taken in the protection of the valuable Chanel trademarks" and "do not constitute unconscionable or bad faith behavior but serve the competitive purpose of furthering trademark policies sanctioned by the passage of the Lanham Act and its amendments." But that is not for Chanel to decide. As *Estee Lauder* makes clear, allegations that the plaintiff has taken actions to block a defendant from participating in the lawful sale of the plaintiff's products can serve as the basis of an unclean hands defense. Such allegations are present here, and the Requests identified above fall within the scope of discovery under Rule 26(b). Whether Chanel's conduct was unconscionable or in bad faith is a question for the factfinder.

* * *

In sum, TRR has stated a legally viable theory of unclean hands involving Chanel's use of the CHANEL mark to prevent legitimate and lawful resale in the secondary market, as well as false advertising by Chanel concerning the same or similar deceptive conduct of which Chanel accuses TRR. Discovery on TRR's unclean hands defense, including the specific Requests identified herein, satisfies the requirements of Rule 26(b) and should proceed.

**B. Chanel's Position**

TRR's motion should be denied because the discovery sought by TRR is beyond the narrow and specific scope of the "unclean hands" defense for the affirmative defense to Chanel's asserted claims of trademark infringement and counterfeiting and false advertising asserted here. TRR's discovery demands at issue are simply a re-labeling of the same discovery TRR sought concerning TRR's antitrust counterclaims when TRR expressly stated that its "unclean hands" defense relates to its allegations of Chanel's "anticompetitive schemes against the secondary market." (ECF. 47, at 3). Judge Broderick dismissed TRR's counterclaims earlier this year, and while his ruling did not strike TRR's unclean hands defense on procedural grounds, TRR is not permitted discovery concerning dismissed counterclaims through an overbroad and erroneous interpretation of the unclean hands defense. As Your Honor recognized on March 10, 2022, when staying discovery as to TRR's unclean hands defense, the classic "examples of conduct that might qualify as sufficiently

related to a trademark action to support an unclean hands defense are when a plaintiff's trademark," which is alleged to be infringed by the defendant, "is itself deceptive, or . . . the plaintiff procured or maintained his trademark registrations by false or fraudulent misrepresentations," but that "collateral" actions involving misconduct that is not immediately and necessarily related to Chanel's rights in suit do not qualify. *See* March 10, 2022 Tr. at 6-7 (quoting *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, 04 Civ. 4099, 2005 WL 1164073, at *4 (S.D.N.Y. May 18, 2005)). Here, TRR's counsel, including at the meet-and-confer conference last week, has unambiguously stated that TRR's unclean hands theory is not based on any misconduct or fraudulent activity relating to Chanel's trademarks or Chanel's claims asserted in this case. Instead, TRR's discovery requests are all premised on conduct with an attenuated link to Chanel's trademarks, and therefore are not within the recognized narrow scope of the unclean hands doctrine for a Lanham Act case. Moreover, TRR's arguments with respect to a false advertising basis for an unclean hands defense are foreclosed by *Tiffany (NJ) Inc. v. Ebay, Inc.*, No. 04-CV-4607, 2006 WL 8461405 (S.D.N.Y. Mar. 31, 2006), which rejected the same arguments as to nearly-identical statements by the plaintiff in that case as what TRR cites with respect to Chanel here. TRR's discovery requests should therefore be denied.

Rule 26(b)(1), as amended in 2015, limits discovery to information "relevant to a party's claim or defense," with a strong emphasis on proportionality. *Lifeguard Licensing Corp. v. Kozak*, No. 15 CIV. 8459 (LGS)(JCF), 2016 WL 3144049, at *3 (S.D.N.Y. May 23, 2016) (emphasizing the plain language of Rule 26(b)(1) does not provide for discovery of "likely," "anticipated," or "potential" or "dismissed" claims or defenses). As currently propounded, TRR's RFPs concerning its "unclean hands" defense do not concern a defense to Chanel's asserted claims, and seek burdensome, irrelevant, and unimportant discovery concerning TRR's dismissed counterclaims concerning Chanel's alleged "anticompetitive schemes against the secondary market." TRR is not entitled to pursue a fishing expedition for now-dismissed antitrust counterclaims by recasting those theories into an "unclean hands" defense based on activity collateral to and attenuated from Chanel's trademark registrations. Only discovery concerning Chanel's inequitable use of its trademarks, which has a direct, immediate, and necessary connection with Chanel's claims where the marks are the basic and fundamental vehicle required and used to accomplish the violative actions, should be permitted. That is not what TRR's requests for production ("RFPs") seek. During the meet-and-confer conference, Chanel's counsel asked TRR to narrow its broad RFPs to the scope of the unclean hands defense, but TRR refused; TRR's unwillingness to revise and limit its discovery necessitated this Joint Letter.

### 1. Factual Background

The unclean hands discovery that TRR seeks is premised on its ongoing theory that "Chanel has unclean hands by virtue of its anticompetitive schemes against the secondary market." (ECF. 47, at 3). TRR's portion above reaffirms this, stating expressly that TRR's unclean hands theory is based on its antitrust allegations from its counterclaims and "TRR's "anticompetitive conduct in the secondary market"). *See*, *infra*, citing ECF. 138 (TRR's counterclaim allegations).

Chanel asked TRR to identify the specific RFPs which TRR contends relate to TRR's unclean hands defense and the facts underlying TRR's requests. In response, TRR identified the following three categories of alleged conduct and related requests for production: (1) <u>Alleged Misrepresentations by Chanel to Consumers Regarding Authenticity of Resale Products:</u> RFP No.

9: All documents and communications concerning communication between or on behalf of Chanel and any digital or print media outlet (including without limitation *New York Magazine*, *Vogue*, *The New York Times*, and/or CNBC) regarding TRR or any other reseller of Chanel handbags; RFP No. 28: All documents and communications concerning opposition research, public relations strategy, advertising, or marketing regarding TRR or any other reseller of Chanel handbags; RFP No. 54: All Documents concerning estimations of what proportion, percentage, or number of purported Chanel handbags sold or offered for sale on the secondary market are inauthentic; RFP No. 68: All Documents concerning efforts Chanel has made or strategies Chanel has formulated to prevent, limit or discourage media outlets from promoting TRR, partnering with TRR, or accepting, running and/or publishing TRR advertisements; (2) Alleged Threats to and Coercion of Retailers (Chanel threatened to deny retailers the ability to use Chanel's trademarks by pulling Chanel handbags from stores unless they terminated partnerships with TRR: RFP No. 8: All communications between Chanel and retailers (including without limitation Neiman Marcus and Saks Fifth Avenue) regarding TRR or any other reseller of Chanel handbags; RFP No. 16: Documents sufficient to show the policies, procedures, guidelines, rules and regulations governing Chanel's approval of authorized sellers of Chanel products; RFP No. 27: All documents and communications concerning your desire to prevent TRR or any other reseller from reselling Chanel goods; RFP No. 67: All Documents concerning Chanel's efforts made or strategies formulated to permit, allow or encourage certain entities to sell or offer for sale Chanel handbags in the secondary market, or to discourage certain entities from selling or offering for sale Chanel handbags in the secondary market; (3) Chanel's Alleged Suppression of the Legitimate Secondary Resale Market (Chanel uses its trademark rights to eliminate or substantially reduce legitimate resale in the secondary market): RFP No. 6: All documents and communications concerning the resale of Chanel handbags by Chanel, TRR, or on the secondary resale market; RFP No. 7: All studies, evaluations, surveys, or analyses conducted by or on behalf of Chanel regarding the secondary resale market for Chanel products; RFP No. 27: All documents and communications concerning your desire to prevent TRR or any other reseller from reselling Chanel goods; RFP No. 67: All Documents concerning Chanel's efforts made or strategies formulated to permit, allow or encourage certain entities to sell or offer for sale Chanel handbags in the secondary market, or to discourage certain entities from selling or offering for sale Chanel handbags in the secondary market.

TRR identified the following cases in support of its position: *Häagen-Dazs, Inc. v. Frusen Gladje, Ltd.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1980); *Stokely–Van Camp, Inc. v. Coca–Cola Co.*, 646 F. Supp. 2d 510, 533 (S.D.N.Y. 2009); *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999); *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 276 (S.D.N.Y. 2022); *POM Wonderful LLC v. Coca Cola Company*, 166 F. Supp. 3d 1085, 1088 (C.D. Cal. 2016); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969); and *Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*, 251 F. Supp. 968 (W.D. Mo. 1966).

**2. The Doctrine of Unclean Hands Requires Inequitable Conduct Related to the Trademark as the Basic and Fundamental Vehicle for Such Conduct and the Subject Matter of the Claims Asserted Rather Than Alleged Collateral Actions**

The doctrine of unclean hands affords a defense to a suit in equity where the party seeking to stop the other from infringing its trademark under the Lanham Act "is guilty of conduct involving fraud, deceit, unconscionability, or bad faith ***related to the matter at issue to the detriment of the other party***." *Gidatex, S.r. L. v. Campaniello Imps., Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999) (citations omitted) (emphasis added). A "[d]efendant must show that "Plaintiffs' conduct is (1) inequitable and (2) related to the subject matter of its claims. . ." *Tiffany (NJ) Inc. v. Ebay, Inc.*, No. 04-CV-4607, 2006 WL 8461405, at *3 (S.D.N.Y. Mar. 31, 2006) (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)). As this Court noted in *Carl Zeiss Stiftung*, to assert an unclean hands defense, a defendant also must allege that the plaintiff's "misuse" of the very trademark being asserted bears an immediate relationship to the plaintiff's Lanham Act claims and that the "mark itself has been the basic and fundamental vehicle required and used to accomplish the violation." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969); *see also Deere & Co. v. MTD Holdings, Inc.*, No. 00 Civ. 5936, 2004 WL 1794507, at *3 (S.D.N.Y. Aug. 10, 2004). The *Tiffany* court further noted that "[i]t is undisputed that an unclean hands defense requires a finding of bad faith." *Tiffany (NJ) Inc.*, 2006 WL 8461405, at *4 (quoting *Jones Apparel Group, Inc. v. Piccone*, No. 94 Civ. 0754, 1994 WL 260767, at *4 (S.D.N.Y. June 8, 1994)); *see also Deere Co,* 2004 WL 1794507, at *2. The *Tiffany* court also cautioned "the 'unclean hands doctrine' is 'not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct.'" *Id.* (quoting *Am. Hos . Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 601 (7th Cir. 1985)). As this Court noted in *Specialty Minerals, Inc. v. Pluess-Stauffer AG*, 395 F.Supp.2d 109, 112 (S.D.N.Y. 2005), "[t]he Second Circuit has repeatedly emphasized the narrowness of the doctrine's application." *Id.* (citing *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir 1983); *Maatschappij Tot Exploitatie Van Rademaker's Koninklijke Cacao & Chocoladefadrieken v. Kosloff*, 45 F.2d 94, 96 (2d Cir. 1930) (unclean hands doctrine only applies to "wrongdoing directly connected with the right sought").

During the parties' meet-and-confer conference, TRR's counsel conceded that Chanel's trademarks at issue were not deceptive and that there was no inequitable conduct concerning the registration or maintenance of the Chanel trademarks. *See, e.g.*, *Russian Kurier, Inc. v. Russian Am. Kurier, Inc.*, 899 F. Supp. 1204, 1211 (S.D.N.Y. 1995). TRR's counsel also conceded that (1) the alleged misrepresentations by Chanel to consumers regarding authenticity of resale products; (2) the alleged threats by Chanel to and coercion of retailers; and (3) Chanel's alleged suppression of the legitimate secondary resale market did not involve the use of the Chanel trademarks as the vehicle required and necessary to achieve the alleged inequitable conduct. Instead, TRR's counsel took the position that the unclean hands defense was available where the trademark itself is not deceptive, but the plaintiff acted inequitably towards the defendant in relation to the trademark. TRR claimed all of the RFPs at issue here related to actions where Chanel acted inequitably toward TRR. TRR's unclean hands discovery duplicates its discovery regarding TRR's antitrust counterclaims, which were dismissed by Judge Broderick. In the meet-and-confer conference, TRR stated that its unclean hands defense would include *collateral* activity by Chanel, including, for example, where Chanel allegedly made statements in its Amended Complaint that "Only Chanel itself can know what is genuine Chanel" (Am. Compl. ¶ 34, ECF. No. 26) or where Chanel allegedly developed strategies to encourage certain entities to sell or offer for sale Chanel handbags in the secondary market, or to discourage certain entities from selling or offering for sale Chanel handbags in the secondary market or where Chanel expressed a desire to prevent TRR or any other reseller from reselling Chanel goods. None of those alleged actions constitute trademark

use or advertising by Chanel. In considering whether conduct is inequitable, courts look to measure whether plaintiffs have "misused their trademarks or trade identities in furtherance of inequitable conduct" or "procured or maintained [its] trademark registrations by false or fraudulent misrepresentation." *See De Beers,* 2005 WL 1164073, at *4.

This Court previously noted that TRR's allegations that "Chanel has unclean hands by virtue of its anticompetitive schemes against the secondary market" do not relate to "the ability to use Chanel's trademarks" but the ability to advertise and sell Chanel's goods which bore the trademarks, which is collateral:

> As a leading district court case says, *Carl Zeiss Stiftung*, 289 F. Supp. 1309, it is not enough merely to prove that the merchandise bearing a trademark has been used in furtherance of antitrust violations. If that was all that was required, any antitrust violation in the distribution of such merchandise would result in a forfeiture of the trademark with a consequent unnecessary frustration of the policy underlying trademark enforcement. An essential element of the antitrust misuse defense in a trademark case is proof that the mark itself has been the basic and fundamental vehicle required and used to accomplish the violation. We agree with the way this was applied in *DeBeers*, which note that "examples of conduct that might qualify as sufficiently related to a trademark action to support an unclean hands defense are when a plaintiff's trademark," which is alleged to be infringed by the defendant, "is itself deceptive, or...the plaintiff procured or maintained his trademark registrations by false or fraudulent misrepresentations." In this case, TRR describes that it does not need that, but rather, describes improper but essentially "collateral" actions that Chanel took with respect to goods bearing its trademark. What mattered to the retailers who were allegedly pressured by Chanel was not "the ability to use Chanel's trademarks" but the ability to sell Chanel's goods which bore the trademark. That's why the trademark is collateral.

March 10, 2022 Tr. at 6-7. "The unclean hands doctrine applies only where the misconduct alleged as the basis for the defense 'has immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation.'" *Specialty Minerals, Inc. v. Pluess-Stauffer AG*, 395 F. Supp. 2d at 112.

TRR's arguments with respect to an unclean hands defense to Chanel's affirmative false advertising claim fare no better. Chanel's false advertising claims are based upon two categories of advertising claims asserted by TRR: (1) Each CHANEL-branded item sold by TRR is authentic and genuine (when the evidence shows TRR has advertised and sold counterfeits); and (2) TRR's representations about the foolproof nature of its authentication expertise and abilities are false (also based on its sales of counterfeits). TRR argues above as part of its antitrust counterclaims that it has a viable unclean hands defense to Chanel's false advertising claim because Chanel tells "consumers that products sold through websites such as TRR are 'likely to be fake'". *See infra*. But Chanel never made such statement, or made any statement concerning TRR specifically. Instead, when the statement is read in context, Chanel cautions consumers in a broad fashion regarding the risks of buying items at "flea markets, home parties, by street vendors or unauthorized websites:

> ***Fighting counterfeit goods is a major concern for CHANEL.*** *We dedicate considerable financial and human resources to the fight against counterfeit producers all over the world.*
>
> . . .
>
> ***There is one way to ensure that articles are genuine: purchase them only in CHANEL boutiques or from retailers authorized by CHANEL****.*
>
> . . .
>
> *Unfortunately, Chanel cannot provide the public with detailed information on how to identify genuine Chanel products as this information could be used by the counterfeiters. However,* ***the main rule of thumb, again, is that if the deal looks too good to be true, then you are probably being sold a counterfeit.*** *This is true in bricks and mortar retailers and over the Internet.*
>
> ***A few other pointers: (I) Location – Purchase only from an authorized Chanel vendor. Items sold at flea markets, home parties, by street vendors or unauthorized websites are likely to be fake. (II) Price – The quality of a genuine Chanel accounts for its price. If the price seems very low, then it is probably a counterfeit.*** *(III) Detail – Counterfeiters often make errors in the details of the products. Poor stitching, misspellings or mistakes in the logo are often indication of counterfeits. There are no "second quality" or factory seconds of Chanel products.*

*See* https://www.chanel.com/us/anti-counterfeit/ (emphasis added). These general statements are inarguably true (and therefore not false advertising), apply broadly to all items sold online (and therefore do not target TRR), and are not in any way provided in bad faith but rather to protect the consuming public generally about buying CHANEL-branded items online. Such statements, grounded in truthfully informing and protecting consumers, are akin to the statements that the Better Business Bureau provides on its website:

> *The Better Business Bureau (BBB) urges consumers and businesses to be vigilant about the presence of counterfeit goods in the marketplace. Counterfeit products are not only illegal to sell but also pose significant risks to both buyers and legitimate businesses.*
>
> . . .
>
> *Brand damage: Counterfeit products often carry the logos and trademarks of legitimate brands, tarnishing their image and reputation. Selling counterfeit goods might seem like an easy way to make a quick profit, but it can ultimately damage your business reputation and even lead to legal consequences. It's crucial for businesses to prioritize ethical sourcing and protect their brand integrity.*
>
> *Tips to avoid counterfeit products*
> *Shop from reputable sources:* ***Purchase goods from authorized retailers*** *and websites with secure payment systems.*

> ***Be wary of deals that seem too good to be true: If a price seems significantly lower than the average market price, it may be a counterfeit product.***
> *Inspect products carefully: Look for signs of poor quality, such as misspellings, blurry logos, and inconsistent packaging.*
> *Report suspected counterfeit goods: If you suspect you have purchased a counterfeit product, report it to the BBB, the brand owner, and the appropriate authorities.*
>
> ***BBB is committed to protecting consumers and businesses from the harmful effects of counterfeit goods.*** *By working together, we can ensure a safe and fair marketplace for everyone.*

*See* https://www.bbb.org/article/news-releases/16910-bbb-tip-counterfeit-product-scams.[4]

This Court in the *Tiffany* case rejected the very type of argument that TRR now advances here with respect to Tiffany's advertising in that case where defendant eBay claimed such alleged false advertising supported an "unclean hands" defense. There, where the defendant alleged "Plaintiffs have falsely advised eBay customers and other consumers that Tiffany & Co. is the only authorized seller of Tiffany merchandise, thus erroneously implying that Tiffany & Co. is the only authorized seller of Tiffany merchandise, thus erroneously implying that Tiffany's merchandise sold or resold by any other supplier, including one using eBay, is counterfeit", the Court ruled that "[s]uch actions in the defense of a mark, even if aggressive, do not rise to the level of unconscionable or brazen behavior that is necessary to succeed under the unclean hands doctrine," and "Plaintiffs' representations as to the scope of its trademark to eBay users are unrelated to Plaintiffs suit against Defendant" as "there is nothing in Defendant's proposed use of the unclean hands doctrine that would serve as a valid defense to Plaintiffs' allegations." *Tiffany,* 2006 WL 8461405, at *4. The same logic holds true for TRR's argument that TRR's arguments with respect to statements made by Chanel in its complaint that only Chanel can authenticate Chanel products, warnings to consumers about purchasing counterfeit goods and Chanel's purported statements to retailers not to sell goods from TRR are by definition are not advertising and furthermore, like in the *Tiffany* case, do not constitute a use of the trademarks, and at best are collateral.

The law is clear that activities that are collateral, such as with the advertising and sale of CHANEL-branded goods bearing the trademark or anti-competitive actions, do not meet this standard and, as a result, the defense has been rejected. *See, e.g., GCCA, LLC v. MACCG, LLC*, No. 21-CV-5022 (JGK), 2024 WL 837883, at *16 (S.D.N.Y. Feb. 28, 2024) ("in a trademark infringement case the 'alleged unclean hands must relate to [the plaintiff's] acquisition or use of the ... trademark...'"); *see also Gen. Petroleum GmbH v. Stanley Oil & Lubricants, Inc.*, No. 2:24-CV-02324-NRM-LGD, 2024 WL 4143535, at *15 n.12 (E.D.N.Y. Sept. 11, 2024) (finding no basis for applying unclean hands to trademark infringement action where the record containing no

[4] The International AntiCounterfeiting Coalition (IACC) makes similar, broad, informative statements on its website to inform and protect consumers. *See* https://iacc.org/resources/about/how-to-spot-a-fake/a-final-word ("as a rule of thumb for any product you purchase, use the Three P's: Price, Product and Place. Price: If the price is too good to be true, it probably is. Know the usual price range for your intended purchases. . . . Place: Legitimate product is not sold on street corners, in flea markets, mall kiosks, dark alleys or on suspect online auction sites. Know who is an authorized dealer for the product you are planning to purchase and make your purchases from the most legitimate source possible.").

misconduct related to "acquisition or use" of the trademark); *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-cv-00407, 2022 WL 1665453, at *9 (E.D.N.Y. May 25, 2022) (claims of collateral group boycott, strategy to bring trademark lawsuits after changing product packaging, exclusive dealing agreements, tying arrangements and price-fixing relating to goods bearing the trademarks do not constitute unclean hands); *De Beers*, 2005 WL 1164073, at *4 (claims of collateral global antitrust activities did not rely on the specific enforcement of the trademark in question). This limitation to the defense has been affirmed as recently as January of this year. *Sam Bernstein L. Firm, PLLC v. Sam*, No. 25-CV-0252-MAV, 2026 WL 61261, at *6 (W.D.N.Y. Jan. 8, 2026) ("[T]he '[u]nclean hands must relate to the getting or using the alleged trademark rights.'"). The same is true with respect to TRR's allegations concerning Chanel's statements which it made in its complaint and allegedly in advertising.

TRR's RFP Nos. 9, 28, 54, and 68 do not relate to the acquisition or use of the Chanel trademarks or the subject matter of the claims asserted by Chanel or TRR's unclean hands defense or any inequitable conduct related to the use of the Chanel trademarks as the basic and fundamental vehicle for TRR's alleged conduct. For example, requiring Chanel to collect "[a]ll documents and communications concerning communication between or on behalf of Chanel and any digital or print media outlet (including without limitation *New York Magazine*, *Vogue*, *The New York Times*, and/or CNBC) regarding TRR or any other reseller of Chanel handbags" is neither related to a legitimate unclean hands defense or the subject matter of Chanel's claims nor proportional to the needs of the case. RFP Nos. 5 (Second Set, Revised), 8, 16, 27 and 67 do not relate to the subject matter of the claims asserted by Chanel or TRR's unclean hands defense or any inequitable conduct related to the use of the Chanel trademarks as the basic and fundamental vehicle for TRR's alleged conduct. Requiring Chanel to assemble "[a]ll Documents concerning what effect, if any, the availability of Chanel bags in the secondary market has had on sales of Chanel bags by a Chanel boutique or authorized Chanel retailer" is neither related to TRR's unclean hands defense or the subject matter of Chanel's claims nor proportional to the needs of the case. TRR's RFP Nos. 6, 7, 27, 29, 55, 67 do not relate to the subject matter of the claims asserted by Chanel or TRR's unclean hands defense or any inequitable conduct related to the use of the Chanel trademarks as the basic and fundamental vehicle for TRR's alleged conduct. Requiring Chanel to assemble "[a]ll Documents concerning Chanel's efforts made or strategies formulated to permit, allow or encourage certain entities to sell or offer for sale Chanel handbags in the secondary market, or to discourage certain entities from selling or offering for sale Chanel handbags in the secondary market" is neither related to TRR's unclean hands defense or the subject matter of Chanel's claims nor proportional to the needs of the case.

None of the discovery sought by TRR's RFPs is related to the claims in this case, nor would any of the discovery sought by such RFPs provide a defense to Chanel's claims for trademark infringement and counterfeiting and the advertising of infringing or counterfeit CHANEL-branded items as genuine. *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969), cited by TRR, does not support its claim for discovery because the "anticompetitive schemes against the secondary market" alleged by TRR are collateral; the Chanel marks are not "the basic and fundamental vehicle required and used" to accomplish the alleged schemes. *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 188-89 (S.D.N.Y. 2022), cited by TRR, supports this narrow construction of the unclean hands defense:

> [T]he "defense of unclean hands applies only with respect to the right in suit." *Warner Bros. Inc., v. Gay Toys, Inc*., 724 F.2d 327, 334 (2d Cir. 1983). Thus, in a trademark infringement case, the "alleged unclean hands must relate to [plaintiff's] *acquisition or use* of the . . . trademark, and does not apply to issues which are collateral to the infringement litigation." *Gidatex, S.r.L. v. Campaniello Imports, Ltd*., 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999); *see also De Beers LV Trademark Ltd. v. DeBeers Diamond, Inc.,* 2005 U.S. Dist. LEXIS 9307, 2005 WL 1164073, at *4 (S.D.N.Y. May 18, 2005) ("Defendants [must] allege that plaintiffs have misused their trademarks or trade identities in furtherance of inequitable conduct."). "[E]xamples of conduct that might qualify as sufficiently related to a trademark action to support an unclean hands defense are when a plaintiff encouraged or induced the commission of a wrong, or . . . a trademark, allegedly infringed by the defendant, is itself deceptive, or . . . the plaintiff procured or maintained his trademark registrations by false or fraudulent misrepresentations." *DeBeers*, 2005 U.S. Dist. LEXIS 9307, 2005 WL 1164037, at *4 (internal quotation marks and citation omitted).

Given the recognized narrowness of the unclean hands defense, the high potential for TRR's expansive discovery requests to embroil the parties in greatly broadened discovery which is unlikely to provide a defense for TRR to Chanel's claims, Judge Broderick's dismissal of TRR's antitrust claims, and the lack of any factual basis for TRR's remaining unclean hands defense based upon claims of "anticompetitive schemes against the secondary market," the discovery TRR seeks is overbroad and burdensome. *See Virgin Enterprises Ltd. v. Virginic LLC*, 19-CV-0220-F, 2020 WL 1845232 at *15 (D. Wy. April 10, 2020). The discovery requested in the RFPs above would not serve as a valid defense to Chanel's allegations and claims in this case. The cases that TRR has cited are not on point. *Häagen-Dazs, Inc. v. Frusen Gladje, Ltd.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1980) is distinguishable because the case involved securing and enforcing trademark and trade dress rights in and to a Scandinavian-related ice cream. Similarly, *Stokely–Van Camp, Inc. v. Coca–Cola Co.*, 646 F. Supp. 2d 510, 533 (S.D.N.Y. 2009), involved a claim by Stokely-Van Camp, Inc. ("SVC") of false advertising against Coca-Cola concerning the advantages of adding calcium and magnesium, when SVC had made similar marketing claims about the advantage of adding calcium and magnesium to Gatorade Endurance Formula. TRR's contention that "[w]ith respect to Chanel's trademark counterfeiting claim, TRR's theory of unclean hands and the discovery it seeks falls squarely within the scope of *Estee Lauder*" is without merit. *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999), is distinguishable because that case involved the antitrust misuse of trademark defense, which is not applicable here given that TRR's antitrust counterclaims were dismissed and its motion to amend is *sub judice*. *Pom Wonderful LLC v. Coca-Cola Co.*, 166 F. Supp. 3d 1085, 1088 (C.D. Calif. 2016), is distinguishable because in *Pom Wonderful LLC* the alleged misconduct was of the same character as the false advertising claim itself. In this case, TRR seeks discovery into Chanel's business strategies, retailer relationships and policies concerning the secondary market that are not the subject of Chanel's false advertising and trademark infringement and counterfeiting claims. *Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*, 251 F. Supp. 968 (W.D. Mo. 1966), which involved a trademark dispute concerning a fraternity insignia and merchandise, concerns conduct directly linked to the trademark rights at issue not a defense based upon a broad attack based upon Chanel's purported "anticompetitive schemes against the secondary market."

Chanel respectfully requests that the Court direct TRR to propound, if it desires, RFPs that seek discovery which comports with alleged “wrongdoing directly connected with the right sought” by Chanel.

Respectfully submitted,

*/s/ Jared B. Briant*

Jared B. Briant

cc: All counsel of record

-