UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

CHANEL, INC., :

Plaintiff, : ORDER

-v.-

: 18 Civ. 10626 (VSB) (GWG)

THE REALREAL, INC.,

:

Defendant.

---------------------------------------------------------------X

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

Chanel, Inc. and The RealReal, Inc. ("TRR") seek the Court's intervention with respect to ten requests for production ("RFP"). See Docket # 516. The dispute centers on what discovery is appropriate to address TRR's unclean hands defense. TRR asserts two separate bases for that defense. One concerns Chanel's alleged "attempt[] to weaponize the CHANEL trademark" and the other concerns Chanel's alleged false advertising. See Docket # 516 at 3–7. We address each in turn.

Chanel's Trademark

It is settled that an unclean hands defense in a trademark infringement case must relate to the plaintiff's "acquisition or use of the . . . trademark, and . . . not apply to issues which are collateral to the infringement litigation." Gidatex, S.r.L. v. Campaniello Imports, Ltd. 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999) (emphasis in original) (citation omitted). Thus, when a defendant interposes an unclean hands defense to a trademark infringement lawsuit based on the plaintiff's anticompetitive conduct, the defendant must allege that the "mark itself has been the basic and fundamental vehicle required and used to accomplish the violation." Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969). TRR contends that its discovery requests are consistent with this standard because Chanel "weaponized" its trademark by threatening to deny authorized resellers "the ability to carry Chanel-branded products unless those retailers terminated their partnerships with TRR." See Docket # 516 at 5. But as this Court previously explained at the time a stay of discovery was sought, "it is not enough merely to prove that the merchandise bearing a trademark has been used in furtherance of antitrust violations." See March 10, 2022 Tr. (Docket # 210) at 6. While misuse of a trademark itself supports an unclean hands defense, the existence of anticompetitive activity involving goods bearing the trademark is not enough to support the defense. For example, Alcon Vision, LLC v. Lens.com, Inc., 2022 WL 1665453 (E.D.N.Y. May 25, 2022), found that plaintiff's efforts to establish a "group boycott" of defendant's business and create "exclusive-dealing agreements," see id. at *2, did not relate to the use of the trademark at issue but instead "relat[ed] to the goods bearing the marks," id. at *10 (emphasis added). Other cases have recognized a similar distinction. See, e.g., Carl Zeiss, 298 F. Supp. at 1315 ("it is not enough merely to prove that merchandise bearing a trademark, however valuable the trademark, has been used in furtherance of antitrust violations"); R.J. Reynolds Tobacco Co. v. Premium Tobacco

Stores, Inc., 2001 WL 747422, at *4 (N.D. Ill. June 29, 2001) (the contention that plaintiff "has engaged in conduct that violates the antitrust laws in connection with products bearing its trademarks is insufficient to support the [unclean hands] defense"); see generally De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc., 2005 WL 1164073, at *3–4 (S.D.N.Y. May 18, 2005) ("As grave as the [plaintiff's] monopolistic behavior . . . may be," including "restrain[ing] competition . . . [and] fixing the prices of industrial diamonds," it did not constitute the misuse of a trademark.).

TRR cites to Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269 (S.D.N.Y. 1999), which declined to strike an unclean hands defense where the defendant alleged the plaintiffs were seeking to "block [defendant's] participation in the sale of Plaintiffs' products." Id. at 273. With no further analysis, Estee Lauder found such allegations showed that plaintiffs were "directly attempting to misuse their trademarks for anticompetitive purposes." Id. But we cannot reconcile Estee Lauder's conclusion with the body of case law we have just cited. Indeed, we are unaware of any other case, nor does TRR cite to any such case, in which an unclean hands defense was permitted based on conduct regarding the sale of goods. Instead, as the cases previously cited demonstrate, courts have consistently rejected the notion that an unclean hands defense can be established based solely on anticompetitive activity involving goods bearing the trademark. This is for good reason: if anticompetitive activity involving the sale of goods is all that were required, "any antitrust violation in the distribution of such merchandise would result in a forfeiture of the trademark with a consequent unnecessary frustration of the policy underlying trademark enforcement." Carl Zeiss, 298 F. Supp. at 1315. Instead, as explained in Carl Zeiss, an unclean hands defense may be appropriate where there is "proof that the trademarks, as distinguished from the merchandise manufactured by plaintiffs, were . . . the subject of discussion with dealers, customers, [and] anyone else." Id. at 1316.

The discovery requests listed in the parties' letter do not seek information concerning the trademarks themselves being misused and therefore the requests do not seek information relevant to the unclean hands defense. We therefore turn to the false advertising branch of TRR's unclean hands defense to determine whether that branch supports any of the discovery requests.

False Advertising

Chanel alleges in its complaint that TRR falsely advertises that TRR has the expertise to authenticate Chanel products and that the products TRR sells are authentic. See Amended Complaint, filed Feb. 1, 2019 (Docket # 26) ("Amended Compl."), ¶¶ 35–36. TRR contends that Chanel's "hands are unclean" with respect to its false advertising claim because Chanel itself misrepresented (1) that "only Chanel can identify a genuine Chanel product" or "provide authentic products" and (2) that products sold by "websites such as TRR" are "likely to be fake." Docket # 516 at 3–4.

To succeed in an unclean hands defense, TRR must show that Chanel is "guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of [TRR]." Gidatex, 82 F. Supp. 2d at 131 (emphasis in original) (internal

quotations and citation omitted). Specifically, TRR "must show that [Chanel's] conduct is (1) inequitable and (2) related to the subject matter of its claims." Tiffany (NJ) Inc. v. eBay, Inc., 2006 WL 8461405, at *2 (S.D.N.Y. Mar. 31, 2006) (citation omitted). Chanel contends that its conduct was neither inequitable nor related to its claims against TRR. See Docket # 516 at 12–14.

As to inequity, Chanel argues that its statements are "inarguably true . . . and are not in any way provided in bad faith but rather to protect the consuming public generally." Id. at 12. But at this stage of the case, we have no warrant to determine whether Chanel's statements are "inarguably true" or not, nor whether or not they were made in bad faith. Although Chanel relies principally upon Tiffany (NJ) Inc., this reliance is misplaced as the court there recognized that, it sometimes "would appear to be a fact question" whether or not a manufacturer's statements are false or misleading. Id. at *3. Such a fact question cannot be decided at this stage of the proceedings. Moreover, Tiffany was not a case about discovery but was rather a motion to strike the unclean hands defense. Thus, Tiffany undertook the exercise of examining the allegations of the defense to conclude that they did not sufficiently allege bad faith. Here, Judge Broderick denied Chanel's motion to strike TRR's unclean hands defense. (Docket # 422). Thus, all that we must determine now is whether, and to what extent, TRR should be permitted discovery. Chanel may raise any claim that TRR has failed to show misrepresentations or bad faith (or inequitable conduct generally) at summary judgment or at trial.

As noted, the second element of an unclean hands defense requires that any claims of inequity relate to the subject matter of Chanel's claims. Chanel again relies on Tiffany to contend that TRR's false advertising theory is unrelated to Chanel's underlying claims. See Docket # 516 at 13–14. But in Tiffany, the only claim at issue was trademark infringement and thus Tiffany found that defendant's unclean hands defense, based on false advertising, had no relation to plaintiff's trademark. Id. at *4. Here, Chanel has made not only a trademark infringement claim but also a false advertising claim. Chanel's false advertising claim is based on TRR's alleged misrepresentation that each Chanel item sold is "100% authentic" and TRR's representations as to its authentication process. See Amended Compl. ¶¶ 81–82. TRR's unclean hands defense alleges misrepresentations by Chanel on these very same topic areas and thus we find its defense to be related to Chanel's claims.

Turning to the discovery requests at issue, a request must "describe with reasonable particularity each item or category" of documents sought. Fed. R. Civ. P. 34(b)(1)(A). Additionally, requests must also be relevant and proportional to the claims or defenses at issue in the litigation. Fed. R. Civ. P. 26(b). TRR claims that the following RFPs relate to its false advertising theory: 6, 7, 8, 9, 27, 28, 54, and 68. See Docket # 516 at 4, 9.

First RFPs 6, 8, and 9 are impermissible given their lack of particularity and overbreadth. The requests are generalized inquiries into all communications and documents between Chanel and various entities regarding TRR and the resale market. But as courts have explained "the 2015 amendments to the [discovery rules] were designed to stop counsel from relying on

standard, overbroad requests, and to also require tailoring based on particular issues." Michael Kors, L.L.C. v. Su Yan Ye, 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019). Absent from these RFPs is any tailoring to the specific issues concerning the authenticity and authentication process of Chanel, TRR, and other resellers. To be permissible, these document requests must be narrowly tailored to the particulars of TRR's unclean hands defense and not the resale market generally.

RFPs 27, 28, and 68 all suffer from a similar lack of particularity as they seek documents concerning Chanel's marketing strategy and efforts to restrict TRR and resale market generally. But TRR's unclean hands defense relating to false advertising concerns only the authentication process and authenticity of products sold. The document requests are therefore not "targeted to identify documents or information related to . . . representations made by Chanel regarding the authenticity of TRR's products and/or TRR's ability to authenticate CHANEL-branded products." Docket # 516 at 4. TRR must tailor its requests to documents relating to authentication.

RFP 54 is proper as formulated. It is relevant to TRR's false advertising contention as it seeks documents and data about the number of inauthentic handbags sold on the secondary market and thus will address whether Chanel knowingly misrepresented that products sold by unauthorized resellers are "likely to be fake."

TRR has leave to promptly narrow the requests — other than RFP 54, which requires no narrowing — to conform to this Order (or the parties can agree to narrow through appropriate search terms). If this narrowing does not resolve the dispute, the parties may file another joint letter.

SO ORDERED.

Dated: November 19, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge